

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000
**orrick.com**

August 1, 2023

**Laura Metzger**

E  lmetzger@orrick.com
D  +1 212 506 5149
F  +1 212 506 5151

*Via ECF*

The Honorable Christopher M. Lopez
United States Bankruptcy Court
Southern District of Texas
515 Rusk Street, Courtroom 401
Houston, TX  77002

> Re:   *In re: Strudel Holdings LLC*, Case No. 23-90757 (CML); *In re: AVR AH LLC*, Case No. 90758 (CML) (together, the "Case")

Dear Judge Lopez:

  We represent Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd. ("Lenders"), and UBS O'Connor LLC (together with Wilmington Trust National Association, the "Secured Parties") and write to object to the emergency relief sought by Debtors' Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, (VI) Authorizing the Debtors to Enter into Definitive Purchase Agreements, and (VII) Granting Related Relief (the "Bid Procedures Motion").

  There is no reason for the Bid Procedures Motion to be heard on an emergency basis.[1]  This Case is a classic two-party dispute over a secured lending transaction where Debtors (as defined below) are misusing the Bankruptcy Court as a new forum to press claims that they already have asserted elsewhere and to frustrate the Secured Parties' exercise of contractual remedies as to pledged collateral.  Instead of repaying their debt obligations, the Debtors sued the Secured Parties in the New York Supreme Court nearly five months ago, pressing almost identical claims and allegations that the Debtors now seek to litigate in this Court (and which the New York court has so far rejected).  The New York litigation followed years of negotiations between the Secured Parties and the Debtors concerning obligations owed by the Debtors' principal, Charif Souki, and guaranteed by the Debtors.  The Debtors did not commence this Case due to some emergency event that put the Debtors into financial distress.  Indeed, the Debtors and Mr. Souki have been in default of their obligations for more than two years.  Rather, the Debtors filed this Case on July

---

[1]   The Secured Parties also object to the substance of the Bid Procedures Motion and related proposed order and will file an objection before the required deadline.

The Honorable Christopher M. Lopez
August 1, 2023
Page 2

27, 2023 to stop a foreclosure hearing scheduled for July 28, 2023 in Colorado regarding an 800-acre luxury resort/ranch outside of Aspen, Colorado (the "Aspen Valley Ranch Property"), which is AVR AH LLC's ("AVR") sole asset, and which Debtor AVR pledged as collateral to secure loans by the Secured Parties to Mr. Souki.  The Debtors first tried to stop the foreclosure in the New York litigation, but Justice Andrea Masley of the New York Supreme Court denied their request for a preliminary injunction, finding that the Debtors did not have a likelihood of success on the merits of their claims (the same claims they are now asserting in this Court) and could not show irreparable harm.[2]  Having lost in the New York litigation, the Debtors decided to try another forum and filed this Case on the eve of the scheduled foreclosure hearing.

Simply put, the Debtors have no "emergency" here, and the Bid Procedures Motion does not identify a single factor demonstrating that emergency "relief is necessary to avoid immediate and irreparable harm," as required under Bankruptcy Rule 6003.  Accordingly, as demonstrated further below, the Court should reject the Debtors' request to hear the Bid Procedures Motion on an expedited basis and order the Debtors to comply with Bankruptcy Rule 2002(a)2), which would set the motion for a hearing on 21 days' notice.

**I. Background**

***Loan Agreements.***  Under agreements executed in 2017 and 2018 (the "Loan Agreements"), Lenders loaned $138 million to Charif Souki, an energy-industry executive, who as relevant here, is the sole owner of both Debtors.  The Debtors served as guarantors under the Loan Agreements and pledged certain collateral as security for Mr. Souki's obligations.  AVR AH LLC pledged its interest in the Aspen Valley Ranch Property and executed a Deed of Trust granting the Secured Parties a valid, perfected lien on the property.  Strudel Holdings LLC ("Strudel", together with AVR, the "Debtors") pledged its equity interest in Mr. Souki's commercial real estate company called Ajax Holdings LLC ("Ajax Holdings"), which represents 50% of the outstanding membership interests in Ajax Holdings.  The Secured Parties also have a valid, perfected lien on Strudel's equity in Ajax Holdings.  The Secured Parties have also noticed a foreclosure under the Uniform Commercial Code with respect to Strudel's interest in Ajax Holdings, which is currently scheduled to occur on August 30, 2023.  The Debtors do not challenge the Secured Parties' liens.

***Mr. Souki's and Guarantors' Failure to Pay.***  The Loan Agreements were subject to various amendments, extensions, and ultimately, forbearance, over several years.  The maturity date for the loan obligations was May 6, 2020, and the Secured Parties agreed to forbear exercising remedies until March 30, 2021.  In that forbearance agreement, Mr. Souki and the Debtors acknowledged that they were in default under the Loan Agreements and that all obligations under the Loan Agreements were due and payable.  Mr. Souki did not pay back his obligations under the

---

[2]   *See Souki, et al. v. Nineteen77 Capital Solutions A LP, et al.*, Case No. 651164/2023 (N.Y. Sup. Ct.), Dkt. No. 116 (denying Debtors' motion for a preliminary injunction).

The Honorable Christopher M. Lopez
August 1, 2023
Page 3

Loan Agreements as of that date and currently has an outstanding balance of more than $95 million. As a result, after many months of additional attempts to negotiate a deal with Mr. Souki and his affiliates, including the Debtors, the Secured Parties began exercising remedies in late 2022.

***Mr. Souki's and Guarantors' Litigation Tactics.*** Rather than challenging any aspect of the Secured Parties' liens, the Debtors allege in this Court that the Secured Parties' claims should be disallowed because the Secured Parties' disposition of other collateral pledged to secure the obligations under the Loan Agreements was commercially unreasonable under New York law. The Debtors argue that such dispositions entitle them to damages in New York and/or a declaratory judgment that the obligations have been extinguished. The Debtors already brought these exact claims in New York, which are subject to the Secured Parties' pending motion to dismiss. As noted above, in March 2023, the Debtors moved for a preliminary injunction that would have prevented the Secured Parties' foreclosures and sales of the pledged collateral, but the New York court categorically denied their motion. AVR then advanced similar arguments in Colorado, arguing that the Colorado foreclosure proceeding should not go forward because the issue of whether AVR should be deemed in default under the Loan Agreements was being litigated in New York. It is exceedingly obvious that the Debtors filed this Case solely to obstruct the Secured Parties' rightful exercise of remedies and obtain a new forum for their litigation claims against the Secured Parties.

**II. The Bid Procedures Motion Fails to Demonstrate Irreparable Harm.**

The Debtors' request for emergency relief should be rejected because the Debtors have not satisfied Bankruptcy Rule 6003, which requires the Debtors to demonstrate the relief is necessary to avoid "immediate and irreparable harm." Debtors proffer two reasons for emergency relief: (i) "sav[ing] costs and avoid undue administrative burden and confusion"; and (ii) the "imminent and ongoing disputes between the Debtors and" the Secured Parties. (Bid Procedures Motion ¶ 74.) Neither reason comes close to demonstrating immediate and irreparable harm.

*First*, the Debtors do not specify what "costs" or "administrative burden and confusion" would result from hearing the Bid Procedures Motion under the standard schedule—never mind put forward any evidence of such costs or burden that would justify emergency relief. If anything, the filing of the Case has only increased cost, administrative burden, and confusion. The Debtors previously sued the Secured Parties in New York and sought to preliminarily enjoin the Secured Parties from exercising foreclosure remedies. The Debtors lost. Now, the Debtors seek to re-litigate the same issue in this Court. All that the Debtors have done through their conduct is multiply litigation, imposing additional cost, burden, and confusion all around.

*Second*, the ongoing disputes between the Debtors and the Secured Parties cannot serve as a basis for emergency relief. The Debtors have been in default of their obligations for several years and sued the Secured Parties nearly five months ago in New York state court. It simply makes no sense that a five-month-old litigation could warrant emergency relief, and the Debtors do not even attempt to explain how it could.

The Honorable Christopher M. Lopez
August 1, 2023
Page 4

At bottom, the Bid Procedures Motion makes no showing that emergency relief is required, and the Court should not consider the motion in an expedited fashion.

### III. This Case, Including the Bid Procedures Motion, Has Fundamental Flaws.

Beyond the baseless request for emergency relief, this Case has several other fundamental flaws that the Secured Parties (and the Debtors) should be permitted to brief before this Court on a schedule that affords the appropriate due process to all parties in interest.

*First*, as described above, the Debtors have put this Court in the middle of a classic two-party dispute, which warrants dismissal of this case. The Secured Parties intend to file a Motion to Dismiss and related relief in the near term. It is inefficient and a waste of judicial resources for the Court to consider or approve the Bid Procedures Motion when it will first need to consider whether it should dismiss the Case. To the extent that Debtors wish to move forward in an expeditious fashion, the Bid Procedures Motion and a motion to dismiss can be considered contemporaneously.

*Second*, the Debtors are seeking truly extraordinary relief in connection with this Case. They are attempting to jam through a sale and deny the Secured Parties the rights to credit bid and to participate at all in the *sales of the Secured Parties' collateral*. The entire basis for the attempt to deny the Secured Parties' right to credit bid is the series of allegations the Debtors already have attempted to prosecute in New York (to no success). The Secured Parties are preparing a more comprehensive response to Debtors' Motion Seeking Entry of an Order Precluding Certain Alleged Secured Parties from Submitting Credit Bids Pursuant to Sections 105(a) and 363(k) of the Bankruptcy Code (Dkt. No. 6). The Bid Procedures are similarly flawed, as they exclude the Secured Parties from standard and customary consultation and approval rights that are routinely provided to lenders under court approved bid procedures. The Secured Parties will register their complete objection to both the Bid Procedures Motion and the motion to preclude its credit bid in due course. In this letter, the Secured Parties only ask for a reasonable amount of time to oppose the draconian relief the Debtors seek on an unjustifiably truncated timeframe.

*Third*, to the extent that the Case is not dismissed as a bad faith filing, the Secured Parties will likely ask that this Court appoint a chapter 11 trustee. The Debtors have taken the utterly baseless position that they do not owe the Secured Parties the $95 million that Mr. Souki borrowed and the Debtors guaranteed. Given the litigation history and the fact that the Debtors are seeking to extinguish the Secured Parties' claims before this Court, the Debtors cannot be trusted to act as a fiduciary for the Secured Parties, who are the primary entities not affiliated with Mr. Souki that will recover from the bankruptcy estate.

*Fourth*, as the Court can clearly see, there will be significant matters for it to decide. This Court is entitled to the time, and more importantly, evidentiary record, to consider the parties' submissions. As of this filing, the Debtors have yet to file a first day declaration or any evidentiary

The Honorable Christopher M. Lopez
August 1, 2023
Page 5

support for the factual statements they tossed into their motions.[3] The Debtors' schedules are clearly inaccurate—showing identical debts for Strudel and AVR, which makes no sense. The Court is entitled to consider the numerous issues raised on Debtors' various submissions on an evidentiary record. To support its motions and objections, the Secured Parties intend to serve Rule 2004 requests on the Debtors and several of their affiliates. These requests will develop a record that will clearly demonstrate that the Secured Parties have worked in good faith with the Debtors for many years and that the simple problem the parties face is that the Debtors are unwilling to pay back the Secured Parties and would rather spend their time and efforts in litigation, including litigation now before this Court.

*     *     *

As shown above, the Bid Procedures Motion should not be considered on an expedited basis. As discussed, the Secured Parties will file a full objection to the Bid Procedures Motion on or before the objection deadline set by the Court. We appreciate the Court's attention to this matter.

---

[3] The Debtors also have not demonstrated any ability to fund the Case. The Secured Parties will object to any proposed use of their cash collateral or any debtor-in-possession financing proposed on a priming or pari passu basis.

The Honorable Christopher M. Lopez
August 1, 2023
Page 6

                                                Respectfully submitted,

                                                */s/ Laura Metzger*

Laura Metzger (*pro hac vice* application pending)
Orrick, Herrington & Sutcliffe LLP
51 W 52nd St.
New York, NY 10019
T: (212) 506-5149
F: (212) 506-5151
lmetzger@orrick.com

Ryan C. Wooten
State Bar No. 24075308
S.D. Tex. Bar No. 1259974
Orrick, Herrington & Sutcliffe LLP
609 Main St. 40th Fl.
Houston, TX 77002
T: (713) 658-6400
F: (713) 658-6401
rwooten@orrick.com

*Attorneys for Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd, and UBS O'Connor LLC*

cc:  Counsel of record *via ECF*