# EXHIBIT 12

| | |
|---|---|
| **From:** | Kercado, Nelson |
| **Sent:** | Thursday, May 26, 2022 9:14 AM |
| **To:** | charif.souki |
| **Cc:** | Rose, Jeffery; Little, Antone; brooke.peterson ; karim.souki andrew.hollenback baxter.wasson rodrigo.trelles lilly.kaufmann randal.johnson Rosen, B. J.; Metzger, Laura; Lin, David Y.; Schmidt, Andrew; DIAZ, CONNOR |
| **Subject:** | Charif Souki Notices- Notice of Termination of Agreement Period, Continuting Defaults and Reservation of Rights |
| **Attachments:** | Chiron- CO preforeclosure notice 4161-0874-5528 2  05 26 2022.pdf; Souki - Notice of Termination of Agreement Period and Continuing Defaults (2017 Loan Agreement) (May 2022) 4152-4177-6184 2  05 26 2022.pdf; Souki - Notice of Termination of Agreement Period and Continuing Defaults (2018 Loan Agreement) (May 2022) 4126-4942-5208 4  05 26 2022.pdf |
| **Importance:** | High |

Dear Charif,

As Administrative Agent we are delivering these notices to you pursuant to the below transaction.

Reference is hereby made to (i) the Loan Agreement, dated as of April 27, 2017 (as amended, supplemented, restated or otherwise modified from time to time, the "Loan Agreement"), among Charif Souki, an individual (the "Borrower"), the Lenders party thereto (each, a "Lender" and, collectively the "Lenders"), the Guarantors party thereto (the "Guarantors") and Wilmington Trust, National Association, as administrative agent (in such capacity, including any successor thereto, the "Administrative Agent") for the Lenders; and (ii) that certain Agreement (the "Bridge Agreement"), dated as of May 5, 2020, among the Borrower, the Guarantors, the Lenders, and the Administrative Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement or the Bridge Agreement, as applicable.

**This letter notifies the Borrower and each Guarantor of the expiration of the Agreement Period, the occurrence of the Maturity Date, and that certain Termination Events and/or defaults remain outstanding under the Loan Agreement, the other Loan Documents, and the Bridge Agreement.**

Thank you for your attention to this matter.


**Nelson Kercado**
Vice President | Wilmington Trust, N.A.
Loan Agency Group | Relationship Manager



This email may contain privileged and/or confidential information that is intended solely for the use of the addressee. If you are not the intended recipient or entity, you are strictly prohibited from disclosing, copying, distributing or using any

of the information contained in the transmission. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act and the Sarbanes-Oxley Act. You may not directly or indirectly reuse or disclose such information for any purpose other than to provide the services for which you are receiving the information. There are risks associated with the use of electronic transmission. The sender of this information does not control the method of transmittal or service providers and assumes no duty or obligation for the security, receipt, or third party interception of this transmission.

*Via Electronic Mail and Certified Mail*

Charif Souki



May 25, 2022

Re:     Colorado Notices

Dear Charif:

We are writing to provide you with formal notice that is required in accordance with Colo. Rev. Stat. § 38-38-102.5 prior to the initiation of a foreclosure against the property described in the Deed of Trust and Fixture filing dated March 30, 2018, recorded on the same date in the Pitkin County Records, Reception number 646225:

If you are interested in loss mitigation, please contact the COLORADO HOPE HOTLINE at ███████████████████████████████.

**"Pursuant to section 6-1-1107, C.R.S., it is illegal for any person acting as a foreclosure consultant to charge an up-front fee or deposit to the borrower for services related to the foreclosure."**

**This matter is very important. Please give it your immediate attention.**

Very truly yours,

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Administrative Agent

By: _____
  Name:  Nelson Kercado
  Title:  Vice President

*Via Electronic Mail and Certified Mail*

Charif Souki



May 25, 2022

Re:	Notice of Termination of Agreement Period, Continuing Defaults and Reservation of Rights

Dear Charif:

Reference is hereby made to (i) the Loan Agreement, dated as of April 27, 2017 (as amended, supplemented, restated or otherwise modified from time to time, the "Loan Agreement"), among Charif Souki, an individual (the "Borrower"), the Lenders party thereto (each, a "Lender" and, collectively the "Lenders"), the Guarantors party thereto (the "Guarantors") and Wilmington Trust, National Association, as administrative agent (in such capacity, including any successor thereto, the "Administrative Agent") for the Lenders; and (ii) that certain Agreement (the "Bridge Agreement"), dated as of May 5, 2020, among the Borrower, the Guarantors, the Lenders, and the Administrative Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement or the Bridge Agreement, as applicable.

**This letter notifies the Borrower and each Guarantor of the expiration of the Agreement Period, the occurrence of the Maturity Date, and that certain Termination Events and/or defaults remain outstanding under the Loan Agreement, the other Loan Documents, and the Bridge Agreement.**

The Administrative Agent also reminds you that the Maturity Date has occurred, and the Obligations under the Loan Agreement are due and payable in accordance with the terms of the Loan Agreement. The Administrative Agent hereby notifies you that the Agreement Period, as set forth in the Bridge Agreement, has terminated as a result of the passage of the Outside Date and several Termination Events. In addition, the Specified Defaults (as defined in the Bridge Agreement) remain outstanding and continuing.

The foregoing does not purport to be a complete or exclusive list of Defaults, Events of Default or Termination Events that may occur or currently exist under the Loan Agreement, the other Loan Documents, or the Bridge Agreement.

Pursuant to Section 3 of the Bridge Agreement, as a result of the termination of the Agreement Period, the occurrence of the Maturity Date and the continuation of the Specified Defaults, all amounts outstanding are immediately due and payable in full. The Administrative Agent is entitled to exercise any all of its default-related rights and remedies under the Loan Documents, at law, and in equity for all unpaid amounts including, without limitation, foreclosure on the Mortgaged Property and other property constituting Collateral under the Loan Agreement and the other Loan Documents. All applicable

4152-4177-6184.2

standstill and cure periods, including, without limitation, those specified in Section 4.3 of the Bridge Agreement, have expired. Interest, fees and out-of-pocket costs and expenses shall accrue as incurred. As a result of the continuation of the Specified Defaults, pursuant to Section 2.5(b) of the Loan Agreement, all Obligations have accrued, and will continue to accrue, interest at the Default Rate.

Neither the delivery of this letter, nor the prior or future collection of any principal or interest or other charges by the Administrative Agent or the Lenders with respect to the Loan Agreement, the other Loan Documents, or any other Obligations owed by the Borrower under the Loan Agreement shall be construed to: (i) limit the Administrative Agent's or any Lender's rights to receive any and all other sums which may be or may become due or payable under any document, including, without limitation, the costs of collection or the costs of enforcement; or (ii) waive, limit, prejudice or otherwise adversely affect any of the Administrative Agent's or any Lender's rights, remedies or powers under any document or instrument delivered in connection with the obligations under the Loan Agreement or the other Loan Documents, any other document or any statute, at law or in equity, or any other rights or remedies (including, but not limited to, those under common law), all of which rights and remedies and powers are expressly reserved.

Please be advised that acceptance by the Administrative Agent (on behalf of the Lenders) or any Lender of partial payments of any portion of the indebtedness owed by the Borrower or any Guarantor to the Administrative Agent or the Lenders is without prejudice and under protest and does not and will not constitute a waiver of any rights and remedies under the Loan Agreement or the other Loan Documents, at law, in equity or otherwise.

The Administrative Agent, on behalf of the Lenders, expressly reserves the right to take any action or remedy in accordance with the terms of the Loan Agreement, the other Loan Documents and applicable law as a result of the Maturity Date, the Termination Events and the Specified Defaults.

[*Remainder of page intentionally left blank*]

4152-4177-6184.2

Very truly yours,

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Administrative Agent

By: _____

    Name: Nelson Kercado
    Title: Vice President

cc (via e-mail only):    Brooke Peterson ███████████████
    Karim Souki ███████████████
    Andrew Hollenback ███████████████
    Baxter Wasson ███████████
    Rodrigo Trelles ███████████
    Lilly Kaufmann ███████████████
    Randal Johnson ███████████████
    B. J. Rosen ██████████
    Laura Metzger ███████████
    David Lin █████████
    Drew Schmidt ████████████

FILED: NEW YORK COUNTY CLERK 07/25/2023 10:31 PM                INDEX NO. 651164/2023
NYSCEF DOC. NO. 221                                                                RECEIVED NYSCEF: 07/25/2023

Case 23-90757   Document 75-13   Filed in TXSB on 08/24/23   Page 7 of 10

[*Signature Page to Notice of Termination and Continuing Defaults*]

*Via Electronic Mail and Certified Mail*

Charif Souki



May 25, 2022

Re:   Notice of Termination of Agreement Period, Continuing Defaults and Reservation of Rights

Dear Charif:

Reference is hereby made to (i) the Loan Agreement, dated as of March 30, 2018 (as amended, supplemented, restated or otherwise modified from time to time, the "Loan Agreement"), among Charif Souki, an individual (the "Borrower"), the Lenders party thereto (each, a "Lender" and, collectively the "Lenders"), the Guarantors party thereto (the "Guarantors") and Wilmington Trust, National Association, as administrative agent (in such capacity, including any successor thereto, the "Administrative Agent") for the Lenders; and (ii) that certain Agreement (the "Bridge Agreement"), dated as of May 5, 2020, among the Borrower, the Guarantors, the Lenders, and the Administrative Agent.  Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement or the Bridge Agreement, as applicable.

**This letter notifies the Borrower and each Guarantor of the expiration of the Agreement Period, the occurrence of the Maturity Date, and that certain Termination Events and/or defaults remain outstanding under the Loan Agreement, the other Loan Documents, and the Bridge Agreement.**

The Administrative Agent also reminds you that the Maturity Date has occurred, and the Obligations under the Loan Agreement are due and payable in accordance with the terms of the Loan Agreement.  The Administrative Agent hereby notifies you that the Agreement Period, as set forth in the Bridge Agreement, has terminated as a result of the passage of the Outside Date and several Termination Events.  In addition, the Specified Defaults (as defined in the Bridge Agreement) remain outstanding and continuing.

The foregoing does not purport to be a complete or exclusive list of Defaults, Events of Default or Termination Events that may occur or currently exist under the Loan Agreement, the other Loan Documents, or the Bridge Agreement.

Pursuant to Section 3 of the Bridge Agreement, as a result of the termination of the Agreement Period, the occurrence of the Maturity Date and the continuation of the Specified Defaults, all amounts outstanding are immediately due and payable in full.  The Administrative Agent is entitled to exercise any all of its default-related rights and remedies under the Loan Documents, at law, and in equity for all unpaid amounts including, without limitation, foreclosure on the Mortgaged Property and other property constituting Collateral under the Loan Agreement and the other Loan Documents.  All applicable

4126-4942-5208.4

standstill and cure periods, including, without limitation, those specified in Section 4.3 of the Bridge Agreement, have expired. Interest, fees and out-of-pocket costs and expenses shall accrue as incurred. As a result of the continuation of the Specified Defaults, pursuant to Section 2.5(b) of the Loan Agreement, all Obligations have accrued, and will continue to accrue, interest at the Default Rate.

Neither the delivery of this letter, nor the prior or future collection of any principal or interest or other charges by the Administrative Agent or the Lenders with respect to the Loan Agreement, the other Loan Documents, or any other Obligations owed by the Borrower under the Loan Agreement shall be construed to: (i) limit the Administrative Agent's or any Lender's rights to receive any and all other sums which may be or may become due or payable under any document, including, without limitation, the costs of collection or the costs of enforcement; or (ii) waive, limit, prejudice or otherwise adversely affect any of the Administrative Agent's or any Lender's rights, remedies or powers under any document or instrument delivered in connection with the obligations under the Loan Agreement or the other Loan Documents, any other document or any statute, at law or in equity, or any other rights or remedies (including, but not limited to, those under common law), all of which rights and remedies and powers are expressly reserved.

Please be advised that acceptance by the Administrative Agent (on behalf of the Lenders) or any Lender of partial payments of any portion of the indebtedness owed by the Borrower or any Guarantor to the Administrative Agent or the Lenders is without prejudice and under protest and does not and will not constitute a waiver of any rights and remedies under the Loan Agreement or the other Loan Documents, at law, in equity or otherwise.

The Administrative Agent, on behalf of the Lenders, expressly reserves the right to take any action or remedy in accordance with the terms of the Loan Agreement, the other Loan Documents and applicable law as a result of the Maturity Date, the Termination Events and the Specified Defaults.

[*Remainder of page intentionally left blank*]

Very truly yours,

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Administrative Agent

By: _____
    Name:  Nelson Kercado
    Title:   Vice President

cc (via e-mail only):    Brooke Peterson
    Karim Souki
    Andrew Hollenback
    Baxter Wasson
    Rodrigo Trelles
    Lilly Kaufmann
    Randal Johnson
    B. J. Rosen
    Laura Metzger
    David Lin
    Drew Schmidt

[*Signature Page to Notice of Termination and Continuing Defaults*]