# EXHIBIT 15

| | |
|---|---|
| DISTRICT COURT, PITKIN COUNTY, STATE OF COLORADO<br>506 East Main Street<br>Aspen, Colorado 81611<br>(970) 925-7635 | |
| **Plaintiff: Wilmington Trust National Association**<br><br>vs.<br><br>**Defendants: AVR AH, LLC, a Colorado limited liability company and Charif Souki** | ▲ COURT USE ONLY ▲ |
| Attorneys for Defendants<br><br>Oates, Knezevich, Gardenswartz, Kelly & Morrow, PC<br>Maria Morrow, Atty. Reg. 30194<br>Anne Marie McPhee, Atty. Reg. 32327<br>533 E. Hopkins Ave.<br>Aspen, CO 81611<br>Phone Number: (970) 920-1700<br>FAX Number: (970) 920-1121<br>Emails: maria@okglaw.com; amm@okglaw.com | Case Number: 2023 CV 30050<br><br>Div: _____ |
| **RESPONSE TO VERIFIED MOTION FOR ORDER AUTHORIZING SALE OF REAL ESTATE BY THE PUBLIC TRUSTEE PURSUANT TO C.R.C.P. 120** | |

AVR AH LLC ("AVR") and Charif Souki ("Souki") (together "Defendants"), by and through their attorneys, Oates, Knezevich, Gardenswartz, Kelly & Morrow, P.C., submit the following Response to Plaintiff's Amended Verified Motion for Order Authorizing a Foreclosure Sale Under C.R.C.P. 120, stating as follows:

### I. PRELIMINARY STATEMENT

1. As an initial matter, Wilmington Trust National Association ("Wilmington") failed to strictly comply with multiple provisions of C.R.C.P. 120 that are intended to protect debtors by providing notice of the effect of Rule 120 proceedings and debtors' rights. For that reason alone, this Court should deny the Rule 120 motion.

2.	Wilmington also failed to produce the original evidence of the debt and deed of trust, or provide the certification required under C.R.S. §38-38-101, that is necessary to establish that Wilmington is a qualified holder. By failing to provide these required documents, Wilmington cannot establish that it is the "real party in interest" that may prosecute the Rule 120 proceedings.

3.	Finally, this Court should deny the Rule 120 motion because it asks the Court to decide a question – whether there is an ongoing default that would justify foreclosure – that the parties expressly agreed would be decided by a New York court under New York law. Furthermore, the parties are in active litigation in New York over that very issue. Neither the parties' agreement nor applicable law contains any "foreclosure exception" that would allow Wilmington to leapfrog over the mandatory forum selection clause. Because the question of default must be decided by and is currently pending before a New York court, this Court should deny the Rule 120 motion.

## II.  BACKGROUND

4.	AVR is the owner of an 800-acre ranch outside Aspen commonly referred to as Aspen Valley Ranch (the "Ranch"). Souki is the ultimate owner of AVR.

5.	In 2017 and 2018, Souki entered loan agreements that named Wilmington the Administrative Agent ("Loan Agreements"). The Loan Agreements provide in relevant part:

> Each loan party irrevocably and unconditionally agrees that any judicial proceeding with respect to this agreement, any other loan document or any matter relating to or arising out of this agreement or any other loan document may be brought only in the United States District Court for the Southern District of New York or any New York state court located in the City of New York, Borough of Manhattan (and each court where appeals of the decisions of such courts may be sought).

Ex. 1 at ¶¶ 11(c).

6. Pursuant to the Loan Agreements, Wilmington is the owner and holder of two amended promissory notes executed by Souki as borrower and by AVR as guarantor (the "Notes"). The Notes are secured by a deed of trust executed by AVR dated and recorded on March 30, 2018 at Reception Number 646225, Pitkin, Colorado Records (the "Deed of Trust").

7. AVR pledged the Ranch for the benefit of Souki, as borrower, pursuant to a pledge agreement ("Pledge Agreement"). Ex. 2. The Pledge Agreement provides that the collateral pledged for the loan may be foreclosed upon in certain enumerated circumstances. Paragraph 7(f) of the Pledge Agreement provides, however, that the Administrative Agent may only exercise powers to "[l]iquidate, withdraw or sell all or any part of the collateral" . . . "following the occurrence of and continuance of an Event of Default" and only "until all of the Obligations have been paid in full and the Loan Agreement has been terminated." Ex. 2 at ¶ 7(f).

8. On March 24, 2023, Souki, AVR, and other guarantors who had pledged collateral pursuant to the Pledge Agreement filed their amended complaint against Wilmington, Souki's lenders (Nineteen77 Capital Solutions A LP and Bermudez Mutari, Ltd.), and their investment advisor (UBS O'Connor LLC) ("New York Lawsuit"). Ex. 3. In the New York Lawsuit, Souki and the guarantors allege that Wilmington and the lenders, through their reckless disposition of other of Souki's collateral, have materially breached the Loan Agreements in such a manner that the Loan Agreements have been effectively paid off. *Id.* ¶ 2. As a result, Souki and the guarantors "ask the Court for a declaration that Souki's debt has been satisfied, ***there is no continuing Event of Default***, the loans are terminated, and the Defendants are not entitled to foreclose on any additional collateral as well as an injunction that would stop the sale of any additional collateral." *Id.* (emphasis added).

3

9. Even though the Loan Agreements require the question of default under the Loan Agreements to be decided by a New York court, and even though there is already a pending suit in New York about whether a default exists, Wilmington filed this action on May 16, 2023 seeking to foreclose on the Ranch based on alleged defaults.

## II. STANDARD OF REVIEW

10. A foreclosing party must strictly comply with C.R.C.P. 120, including the notice provisions contained under C.R.C.P. 120(b). *Dews v. Dist. Ct.,* 648 P.2d 662, 664 (Colo. 1982) ("The provisions of Rule 120 must be strictly complied with by one seeking foreclosure under a power of sale through the public trustee."). "[D]ue process requires that the notice provisions [of Rule 120] must be strictly followed in foreclosure cases . . . ." *Id*. If a foreclosing party does not strictly comply, an order authorizing sale is null and void. *Id*.

11. In *Dews*, the Colorado Supreme Court determined that a moving party failed to strictly comply with Rule 120's notice provisions. *Id*. Given this failure and Rule 120's strict due process notice requirements, the Colorado Supreme Court determined that the District Court's sale authorization was null and void. *Id*.

12. While the scope of proceedings under C.R.C.P. 120 is somewhat narrow, it does allow this Court to determine both whether a default exists and if the moving party is a real party in interest. C.R.C.P. 120(d)(1)(C). Moreover, the Colorado Supreme Court has stated as follows:

> While the rule was originally conceived as a vehicle for meeting the requirements of the Soldiers' and Sailors' Civil Relief Act of 1940 and thereby establishing the marketability of title obtained through foreclosure proceedings, it now has been expanded in scope for the purpose of according a debtor due process protections against summary foreclosure actions consistent with those protections against deprivations of property without a prior judicial hearing . . .

*See Moreland v. Marwich, Ltd*., 665 P.2d 613, 617 (Colo. 1983).

13. In the context of modern-day Rule 120 proceedings, the Court may consider the defense that the alleged holder is not the real party in interest entitled to commence the Rule 120 proceedings. In *Goodwin v. Dist. Ct.*, 779 P.2d 837 (Colo. 1989), the Colorado Supreme Court made clear that "the scope of inquiry in a Rule 120 proceeding encompasses an inquiry into whether the moving parties are the real parties in interest by virtue of their right to enforce the power of sale contained in the instrument on which the Rule 120 proceeding is based . . . ." *Id.* at 843. The *Goodwin* Court reasoned that:

> Rule 120(a) authorizes "any interested person" to file a motion for an order of sale, and Rule 120(c) permits the debtor to dispute the moving party's entitlement to the order. Implicit in Rule 120 is the requirement that the party seeking an order of sale have a valid interest in the property allegedly subject to the power of sale. Unless the "real party in interest" defense is considered at a Rule 120 hearing, any order for sale might well result in the sale of property in favor of a party who has no legitimate claim to the property at all.

*Id.*

14. Once a debtor raises the defense that the alleged holder is not the real party in interest, the burden shifts to the alleged holder to prove that it is in fact the real party in interest. *Id.* at 843. As explained more fully below, Wilmington has not strictly complied with C.R.C.P. 120's notice requirements, and Wilmington has not provided all documentation necessary to proceed with the foreclosure. Wilmington has not shown that it is a real party in interest or that it is the qualified holder of the Notes and deed of trust at issue in this matter. Finally, the parties expressly agreed that the question whether a default has occurred under the Notes is to be decided in New York courts under New York law, and that issue is currently being litigated in New York courts. Accordingly, the Motion should be denied.

### III.     ARGUMENT

A.     <u>**Wilmington Has Not Strictly Complied with C.R.C.P. 120.**</u>

15.     Before a foreclosure sale can occur, the alleged holder must initiate a proceeding under C.R.C.P. 120. *See* C.R.S. § 38-38-105(2)(a). As part of the civil action, the moving party must file several documents that must contain specifically mandated language, which is intended to protect the responding party's interests. Neither Wilmington's Motion nor its Notice of Hearing ("Notice"), filed contemporaneously with the Motion, complies with the strict requirements of C.R.C.P. 120.

16.     First, C.R.C.P. 120(a) states that "[t]he motion **shall** be captioned: 'Verified Motion for Order Authorizing a Foreclosure Sale under C.R.C.P. 120.'" (emphasis added) In contrast, Wilmington's Motion is captioned "Verified Motion for Order Authorizing Sale of Real Estate by the Public Trustee Pursuant to C.R.C.P. 120." While the difference in language for the caption may seem of little import, Colorado's General Assembly intentionally changed the requirement for how a Rule 120 motion should be captioned to better convey the effect of Rule 120 proceedings to the responding party. Wilmington's failure to use the mandated captioning violates the plain language of C.R.C.P. 120(a).

17.     In addition, the moving party must issue a notice of the pending Rule 120 action that **shall** include the following advisement:

> If this case is not filed in the county where your property or a substantial part of your property is located, you have the right to ask the court to move the case to that county. If you file a response and the court sets a hearing date, your request to move the case must be filed with the court at least 7 days before the date of the hearing unless the request was included in your response.

C.R.C.P. 120(b)(3). Wilmington's Motion does not include this required language.

18. Additionally, "[i]f the moving party or authorized servicer, if different, is not authorized to modify the evidence of the debt, the notice **shall** state in addition the name, mailing address, and telephone number of a representative authorized to address loss mitigation requests." C.R.C.P. 120(b)(4) (emphasis added).

19. By the express terms of the Loan Agreements, Wilmington's duties are "administrative in nature" and Wilmington may only negotiate, enforce or settle any claim "at the direction of each Lender." Ex. 1 at ¶ 9. Any amendments to any of the loan documents must be in writing entered into by the Borrower and each Lender. Wilmington, as the Administrative Agent, does not have the authority to amend any terms of the evidence of debt. Ex. 1 at ¶ 12. The Notice should have therefore included contact information regarding the representative authorized to address loss mitigation requests. It did not.

20. The use of "shall" requires a mandatory procedure, which Wilmington failed to follow. *See Rags Over Ark. River, Inc. v. Colo. Parks and Wildlife Bd.,* 360 P.3d 186, 192 (Colo. App. 2015) (holding that use of "shall" "unambiguously prescribes a mandatory procedure").

21. Wilmington failed to include the mandated captioning and advisements outlined in C.R.C.P. 120(b)(3) and 120(b)(4) for filing a response to the motion and notifying the Defendants of the contact information for a representative authorized to address loss mitigation requests. Rule 120 does not contain a "substantial compliance" provision that militates against Wilmington's failures. *See Golf v. Town of La Veta,* 252 P.3d 1196, 1201 (Colo. App. 2011) (noting that a statute's use of "shall" and lack of "substantial compliance" language suggests that strict compliance is required); *see also Bd. of County Comm'rs v City & County of Denver*, 547 P.2d 459 (Colo. 1976) (holding that only requiring substantial compliance when a statute mandates a

7

specific action would result in judicial repeal of the statute). To the contrary, strict compliance is required. *Dews*, 648 P.2d at 664.

22.     Finally, Wilmington provides inconsistent information in its Notice regarding the date when a response to the motion is due and a hearing on the matter is scheduled. C.R.C.P. 120(a)(2) states that "the response deadline set by the clerk shall be regarded as the scheduled hearing date unless a later hearing date is set by the court pursuant to section (c)(2) below."[1] Despite this clear language, Wilmington provides two different dates in its Notice, stating that Defendants' response must be filed on or before June 13, 2023 while the scheduled hearing date is June 20, 2023. These inconsistencies invite potential error and default by Defendants as Defendants have to guess which is the true deadline for filing a response.

23.     Wilmington failed to comply with the strict requirements of C.R.C.P. 120(a) and (b). Because strict compliance with Rule 120's notice provisions is required, any order granting the Motion and authorizing a foreclosure sale would be an error. *Dews*, 648 P.2d at 664 ("Because due process requires that the notice provisions must be strictly followed in foreclosure cases, we hold the order of the court authorizing the sale by the public trustee to be null and void . . . ."). For these reasons, Wilmington's Motion should be dismissed.

**B.     Wilmington Has Not Established that it is the Real Party in Interest.**

24.     Even if Wilmington could prove that it satisfied the preliminary requirements to initiate a Rule 120 proceeding, it has not established that it is the real party in interest entitled to enforce the alleged default under the evidence of debt because it has not provided the documents required under C.R.S. § 38-38-101.

---

[1] C.R.C.P. 120(c)(2) provides the process for scheduling a hearing before the court if a response in opposition to a Rule 120 Motion is filed.

25. When initiating a foreclosure, C.R.S. § 38-38-101(1)(b) and (c) require a foreclosing party to file with the public trustee the "original evidence of debt, including any modifications to the original evidence of debt, together with the original indorsement or assignment thereof . . . ." In lieu of the original evidence of debt, a holder may file one of the following documents: (i) a corporate surety bond in the amount of 1.5 times the amount of the principal debt, (ii) a copy of the evidence of debt with a properly acknowledged certification by the holder or its agent, nominee or trustee, citing the paragraph of §38-38-100.3 under which the holder claims to be a qualified holder and certifying the copy of the evidence of debt is true and correct and that the copy is subject to the conditions described in §38-38-101, or (iii) a certified copy of a monetary judgment entered by a Court. *See* C.R.S. § 38-38- 101(1)(b)(I) – (III).

26. Because Wilmington has not provided the original evidence of debt to the Public Trustee, a corporate surety bond in the amount of 1.5 times the face value of the evidence of debt, or a certified monetary judgment, it is required to provide a certification to establish that it is a qualified holder. C.R.S. §§ 38-38-101(1)(b)(II). Wilmington has not filed the required certification with the Public Trustee. Consequently, Wilmington has not established that it is a qualified holder, has not met the requirements of C.R.S. § 38-38-101, and therefore cannot proceed with the pending foreclosure action as the real party in interest.

C. **New York Courts Have Exclusive Jurisdiction to Determine Whether a Default Exists Under the Deed of Trust.**

27. To prevail on its Rule 120 motion, Wilmington must show there is a continuing default under the Deed of Trust. C.R.C.P. 120(d)(1)(A) (scope of inquiry at Rule 120 hearing includes determining "the existence of a default authorizing exercise of a power of sale under the terms of the deed of trust described in the motion"). However, and with respect to this honorable Court, the parties agreed that the exclusive forum to decide that very question is a New York court.

9

And to that end, Souki and the guarantors have asked a New York court for a declaratory judgment that no default exists and that Wilmington and the lenders cannot foreclose on the Ranch, and Wilmington and the lenders have recently filed a motion to dismiss those claims. Ex. 4. This Court should defer to the New York court, as the parties agreed.

28. "A forum selection clause is a contractual provision agreed to by private parties that constitutes the parties' agreement as to the place of the action where the parties will bring any litigation related to the contract." *Cagle v. Mathers Family Trust*, 295 P.3d 460, 464 (Colo. 2013) (citations omitted). "[A] a forum selection clause is presumptively valid unless it is unreasonable, fraudulently induced, or against public policy." *Id.* at 465. Here, Souki filed suit in New York asking for, among other things, a declaration that no default exists. Wilmington Trust has not suggested—because it cannot—that there is anything unreasonable about litigating that issue in the New York court, that the provision was fraudulently induced, or that the provision is against public policy.

### IV.   CONCLUSION

29. This Court should deny the Rule 120 motion without even delving into the questions of default or whether Wilmington is the real party in interest because Wilmington has failed to strictly comply with the most basic, but statutorily required, initial notice and captioning requirements of Rule 120. Further, Wilmington has failed to provide the documents required by statute to establish that Wilmington is the real party in interest authorized to prosecute the Rule 120 proceedings. Finally, it is simply not possible to determine in this judicial proceeding whether an ongoing default exists that would justify a foreclosure sale without violating the forum selection provisions.  Only a New York court can make the necessary determination regarding whether such a default exists.

DATED this 9th day of June 2023.

                              OATES, KNEZEVICH, GARDENSWARTZ,
                              KELLY & MORROW, P.C.


                              By:   */s/ Anne Marie McPhee*
                              Maria Morrow, #30194
                              Anne Marie McPhee, #32327
                              533 E. Hopkins, Third Floor
                              Aspen, CO 81611
                              Telephone:   (970) 920-1701
                              Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Response to Verified Motion for Order Authorizing Sale of Real Estate by the Public Trustee Pursuant to C.R.C.P. 120** was served on June 9, 2023 via Colorado Courts E-Filing as follows:

Michael E. Lindsay, Esq.
James Snow, Esq.
Snell & Wilmer L.L.P.
1200 Seventeenths Street, Suite 1900
Denver, CO 80202

By: ___/s/ Anne Marie McPhee_____
Anne Marie McPhee