IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC and<br>AVR AH LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered) |
| AVR AH LLC; STRUDEL HOLDINGS LLC; CHARIF SOUKI; and KARIM SOUKI, CHRISTOPHER SOUKI, and LINA RIZZUTO, as Trustees of the SOUKI FAMILY 2016 TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>NINETEEN77 CAPITAL SOLUTIONS A LP; BERMUDEZ MUTUARI, LTD; WILMINGTON TRUST NATIONAL ASSOCIATION, and USB O'CONNOR LLC,<br><br>Defendants. | Adv. Pro. No. 23-09003 |

**PLAINTIFFS' <u>EMERGENCY</u> MOTION TO
COMPEL DISCOVERY AND REQUEST FOR STATUS CONFERENCE**

> **Emergency relief has been requested. Relief is requested not later than August 31, 2023.**
>
> **If you object to the relief requested, or you believe that emergency consideration is not warranted, you must appear at the hearing, if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Plaintiffs AVR AH LLC ("<u>AVR</u>"), Strudel Holdings, LLC ("<u>Strudel</u>") and together with AVR, the "<u>Debtors</u>"), Charif Souki ("<u>Souki</u>"), and Karim Souki, Christopher Souki, and Lina Souki Rizzuto, in their capacities as Trustees of the Souki Family 2016 Trust (the "<u>Trust</u>" and together with the Debtors and Souki, "<u>Plaintiffs</u>") file this *Emergency Motion to Compel Discovery*

1

*and Request for Status Conference* (the "Motion")[1], and in support thereof respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiffs ask this Court to compel Nineteen77 Capital Solutions A LP, Bermudez Mutuari, LTD, Wilmington Trust National Association, and UBS O' Connor LLC (collectively, "Defendants") to produce documents responsive to Plaintiffs' First Set of Requests for Production (the "Production Requests") and answers to Plaintiffs' First Set of Interrogatories (the "Interrogatories" and together with the Production Requests, the "Requests"). The parties have agreed that document production will be substantially complete by September 1, 2023, immediately followed by a short deposition window from September 2 to 8, 2023. This short timeline necessitates the Court's intervention in this ongoing dispute.

2.      Pursuant to Rule 7034 of the Federal Rules of Bankruptcy Procedure, on August 11, 2023, Plaintiffs served the Requests on Defendants, the responses and objections to which were due on August 25, 2023, per the parties' agreement. The Requests seek categories of documents and information at the heart of Plaintiffs' claims that Defendants engaged in unconscionable, unreasonable, bad faith conduct and repeated violations of their duties under the parties' loan agreements. It is thus critical that Defendants honor their discovery obligations prior to the September 21, 2023 hearing on Debtors' Motion Seeking Entry of an Order Precluding Certain Alleged Secured Parties from Submitting Credit Bids Pursuant to Sections 105(a) and 363(k) of the Bankruptcy Code (the "Credit Bid Motion") [*See* Main Case Dkt. No. 6].

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in Debtors' Motion Seeking Entry of an Order Precluding Certain Alleged Secured Parties from Submitting Credit Bids Pursuant to Sections 105(a) and 363(k) of the Bankruptcy Code [Main Case Dkt. No. 6] and Plaintiffs' Objections to Claims and Complaint [Adv. P. Dkt. No. 1].

14153411

3.      Defendants have unilaterally attempted to narrow the scope of Plaintiffs' discovery to only those items Defendants deem relevant.  Defendants apparently believe that whether they complied, as a factual matter, with their duty of good faith and duty to dispose of the Collateral in a commercially reasonable manner is determined solely by the language of the parties' loan agreements.  In other words, Defendants have declared that "extrinsic evidence" is irrelevant to determining what happened post-execution of the loan agreements or whether Defendants acted with objective or subjective good faith.  On this basis, Defendants have essentially rewritten 30 of the Production Requests by narrowing them to only what Defendants feel is necessary while also refusing to specifically search for or produce documents in connection with the remaining 16 Production Requests.  In a similar vein, Defendants have entirely refused to answer two Interrogatories simply asking Defendants to describe the process by which they sold the Collateral and explain Defendants' position, if any, regarding the commercial reasonableness of that process.

4.      Defendants completely refuse to provide any discovery on matters at the center of both the Credit Bid Motion and the complaint (the "Complaint") filed against Defendants [Adv. Pro. No. 23-09003] (the "Adversary Proceeding") [*See* Adv. P. Dkt. No. 1].  Plaintiffs now respectfully seek expedited entry of an order, compelling Defendants to produce documents and answers responsive to the Requests (the "Proposed Order").  Plaintiffs also request a status conference to address scheduling and logistical issues with the Court.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference from the United States Court for the Southern District of*

*Texas*, dated May 24, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein is Federal Rules of Civil Procedure (the "Federal Rules") 34 and 37, as made applicable hereto by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7034 and 7037.

## BACKGROUND

8. On July 27, 2023, (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtors continue operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. Debtors commenced the Chapter 11 Cases to achieve an orderly sale of certain of their assets thereby maximizing the value of their estates. Contemporaneous with the filing of Debtors' chapter 11 petitions, Debtors also filed the Credit Bid Motion [*See* Main Case Dkt. No. 6] and a motion seeking entry of orders for, among other things, (i) establishing bidding procedures (the "Bidding Procedures") for a sale of certain of their assets pursuant to section 363 of the Bankruptcy Code (the "Sale Transaction") [*See* Main Case Dkt. No. 5], and Plaintiffs filed the Complaint [*See* Adv. P. Dkt. No. 1].

10. On August 10, 2023, the Court entered an Order approving the bidding procedures and granting other related relief. [*See* Main Case Dkt. No. 53].

11. In August 2023, Plaintiffs' counsel began corresponding with Defendants' counsel by email regarding discovery to be taken in connection with both the September 21, 2023 hearing on the Credit Bid Motion, and the Adversary Proceeding. On August 11, 2023, Plaintiffs served the Requests. *See* **Exhibit A** and **Exhibit B**. Importantly, the Requests pertain to, among other

4

things, the negotiation and interpretation of the loan agreements, valuation of the Collateral securing those loan agreements, Defendants' calculation of outstanding amounts owed under the loan agreements, Defendants' actual and planned disposition of the Collateral, and Defendants' conduct in connection with the disposition of the Collateral. On August 25, 2023, Defendants served their Responses and Objections to the Requests. *See* **Exhibit C** and **Exhibit D**.

12. In addition to four-and-a-half pages of "General Objections" and "Objections to Definitions," Defendants included sweeping objections to the majority of the Production Requests. Further, Defendants unilaterally narrowed the scope of 30 of the Production Requests to only specific categories Defendants deem relevant, and refused to "search for or produce documents in response" to any of the remaining 16 Production Requests.

13. For example, in response to Production Request No. 16 ("All documents and communications related to your decision to terminate the Bridge Agreements on or about May 26, 2022, including all analyses, reports, memoranda, and notes regarding same."), Defendants provided the following response (which was duplicated in substantially similar form for 15 other Production Requests):

> See General Objections and Objections to Definitions, which are incorporated herein by reference. The Secured Parties further object to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of this Action. The Secured Parties further object to this Request on the ground that it seeks information that is neither relevant to the parties' claims and defenses nor proportional to the needs of this Action. The Secured Parties further object to this Request to the extent that it seeks documents that are not in the Secured Parties' possession, custody, or control or can be obtained from some other source that is more convenient, less burdensome, or less expensive. The Secured Parties further object to this Request to the extent that it seeks information or documents that are protected from production under any applicable privilege, immunity, or protection, including the attorney-client privilege, the work product doctrine, the joint-defense privilege, the bank examination privilege, or any other applicable privilege or protection. The Secured Parties further object to this Request on the grounds that it is vague and ambiguous to the extent it relies on the undefined terms, "analyses, reports, memoranda, and notes" The Secured Parties further object to this Request to the extent that it purports to require production of "all" documents when a subset of documents would suffice. The Secured Parties further object to this Request to the extent that it purports to require the Secure Parties to draw subjective or legal conclusions or is predicated on subjective or legal conclusions or arguments.
>
> For these reasons, the Secured Parties will not search for or produce documents in response to this Request.

14. The parties met and conferred on August 27 and 28, 2023. During those discussions, Defendants consistently asserted that most of the Production Requests are not relevant to the September 21 hearing or the Adversary Proceeding. Defendants did concede that there may be relevant documents responsive to the Production Requests they refused to answer, but only

14153411

committed to produce such documents if they also happen to be responsive to other Production Requests. The parties also exchanged emails following those discussions, although those emails did not resolve the issues between the parties. *See* **Exhibit E**.

15. Even if Defendants produce documents in connection with the narrow categories they deem relevant, Defendants are still intentionally omitting documents from relevant time periods and subject matters in the Production Requests. For example, Production Requests No. 17–26 seek the production of documents and communication related to the value of the Tellurian Shares (the "Shares") and Defendants' decision to sell, or not sell, the Shares between May 5, 2020 and April 5, 2023. These Production Requests go directly to a key issue in the case regarding the unreasonableness of Defendants in not selling the Shares sooner. In response to Production Requests Nos. 17–18, 20–21, 23–24, and 25, Defendants refuse to search for or produce any documents regarding their decision to sell, or not sell, the Shares before February 8, 2023. Defendants also refuse to search for or produce any documents at all in response to Production Request Nos. 19, 22, and 26.

16. Finally, Defendants completely refuse to answer Interrogatories Nos. 11 and 12, which ask for a description of the process by which Defendants foreclosed on the Collateral and Defendants' contentions regarding the commercial reasonableness of the foreclosure process.

## BASIS FOR RELIEF

17. Plaintiffs request that the Court order Defendants to produce all documents and answers responsive to the Requests by September 5, 2023. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). The parties plan to commence depositions the week of September 5, 2023 related to the Credit Bid Motion, and the requested documents and answers are needed for the deposition(s) being taken that week.

**ARGUMENT**

**I.      Legal Standard**

18.     The Federal Rules (as incorporated by the Bankruptcy Rules) permit broad discovery of any non-privileged materials relevant to any party's claim or defense.  *See U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 467 (5th Cir. 2015); *Davis v. United States Marshals Serv.*, 849 F. App'x 80, 86–87 (5th Cir. 2021).  Under Federal Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case."  Federal Rule 26(b) is "deliberately broad," and the rules of discovery "are to be accorded a broad and liberal treatment to affect their purpose of adequately informing the litigants in civil trials."  *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *1 (S.D. Tex. Jan. 29, 2015) (citation omitted); *see also In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009) (relevancy under Federal Rule 26 is "construed liberally").

19.     The Federal Rules reject the use of boilerplate objections, instead requiring specific objections "show[ing] specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive."  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quotation omitted).  Indeed, objecting parties bear not only the burden of stating their objections with specificity, but they must also supply evidence by way of affidavits or otherwise when objecting that discovery is overly broad, unduly burdensome, or oppressive.  *See, e.g.*, *Enron Corp. Sav. Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).

## II. The Court Should Compel Production of the Requested Documents, Which Directly Relate to Key Issues Such as the Commercial Reasonableness of Defendants' Actions

20. Whether a lender complied with its implied duty of good faith and its duty to sell collateral in a commercially reasonable manner is necessarily a fact-intensive inquiry that necessitates a correspondingly broad scope of discovery. *See, e.g.*, *Lincoln First Bank v. Rhoades*, 399 N.Y.S.2d 802, 803 (N.Y. App. Div. 1977) (stating that the debtor should be allowed to submit interrogatories as to method, time, place, and terms of sale, and also to information as to whether there had been any improper relationship between plaintiff and purchaser of home that might have affected the commercial reasonableness of the sale). Yet Defendants take the unsupported position that extrinsic evidence is simply not relevant as to whether Defendants complied with their obligations, and are refusing to provide discovery that goes to the heart of Plaintiffs' claims that Defendants breached their duty of good faith and acted in a commercially unreasonable manner. Moreover, even setting aside the flaws in the merits of their objections, Defendants have failed to provide sufficient detail, much less evidence, to properly state relevance or undue burden objections. *See Quarles,* 894 F.2d 1482, 1485; *see also Enron Corp.*, 258 F.R.D. at 159 ("[B]oilerplate objections are not acceptable"; "specific objections are required in responding to a Rule 34 request." (quotation omitted)).

21. In addition, the Production Requests directly relate to Plaintiffs' claims that Defendants failed to comply with their implied duty of good faith and their duty to sell the Collateral in a commercially reasonable manner. Courts applying New York law have held that good faith under the UCC has both a subjective and an objective prong. *See, e.g.*, *In re Dreier LLP*, 452 B.R. 391, 447–48 (Bankr. S.D.N.Y. 2011). On the one hand, the subjective prong "necessitates examination of a state of mind," or "honesty in fact." *See Credit Suisse First Boston v. Utrecht–America Finance Co.*, 80 A.D.3d 485, 487, 915 N.Y.S.2d 531 [1st Dept.2011)

9

14153411

(quotation omitted); *see also In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011).  On the other hand, the objective prong requires "observance of reasonable commercial standards." *In re Dreier LLP*, 452 B.R. at 448.

22. Defendants' assertion that extrinsic evidence generally, but especially internal communications, are irrelevant thus cannot withstand scrutiny.  After all, it is unclear how this Court is to evaluate the objective reasonableness of Defendants' actions without evidence of the same or of Defendants' subjective state of mind without their internal communications.

23. Defendants' opinions regarding the relative probative value of the discovery sought by Plaintiffs is no basis for refusing to produce documents relating to the foreclosure of a loan. *See, e.g.*, *Wells Fargo Bank, N.A. v. RLJ Lodging Tr.*, No. 13 C 758, 2015 WL 156778, at *2 (N.D. Ill. Jan. 12, 2015) ("Deciding whether RLJ can succeed on its good faith and fair dealing argument is different than deciding whether RLJ is entitled to discovery that it arguably could use to make its argument.").

24. Defendants must be compelled to respond fully to the Production Requests. Plaintiffs are entitled to the discovery necessary to prove their claims.  Among other things, these Production Requests seek documents that will reveal Defendants' motives, Defendants' own beliefs regarding the value of the Collateral, and the care and effort (or lack thereof) with which Defendants disposed of the Collateral, all of which directly relate to whether Defendants exercised good faith and met their obligation to dispose of the Collateral in a commercially reasonable manner.

### III. The Court Should Compel Answers to Interrogatory Nos. 11 and 12

25. There can be no serious contention that the information sought in Interrogatories Nos. 11 and 12 regarding Defendants' disposition of the Collateral—the very basis of the Credit

10

14153411

Bid Motion and the Adversary Proceeding—is well within the bounds of discovery in this dispute. Nonetheless, even though Defendants urged this Court to hear this dispute on an extremely expedited timeline, Defendants object to Interrogatory No. 11 as premature and being impermissible as a "contention interrogatory." *But see* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."). As to Interrogatory No. 12 ("Describe in detail the process by which you sold Souki's Tellurian Shares, including all analyses and marketing efforts undertaken in connection therewith."), Defendants claim such information will be produced through document and expert discovery, but are refusing to agree to produce most of the documents Plaintiffs have requested.

26. Plaintiffs have made narrow Requests that go to the heart of their claims that Defendants did not comply with their duty of good faith and did not act to dispose of the Collateral in a reasonable manner, but Defendants are refusing to provide any discovery related to these issues because they do not agree with Plaintiffs claims. This Court should not allow Defendants to unilaterally narrow the scope of discovery to suit their own view of events.

## EMERGENCY CONSIDERATION

27. Emergency consideration of this Motion is warranted. Hearing on the Credit Bid Motion is set for September 21, 2023, and depositions related to that Motion will take place the week of September 5, 2023. Plaintiffs need timely access to documents responsive to the Production Requests and answers to the Interrogatories in order to prepare for depositions and hearings in connection with both the Credit Bid Motion and the Adversary Proceeding. Plaintiffs have attempted to negotiate with Defendants to no avail. This issue is ripe for adjudication. For these reasons, emergency consideration is warranted.

## **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Court grant their Motion and Order Defendants to produce all documents responsive to the Production Requests and answers to the Interrogatories no later than September 5, 2023, and for such other and further relief as is appropriate under the circumstances.

14153411

Dated:  August 30, 2023

Respectfully submitted,

*/s/ Jamie A. Aycock*
R. Paul Yetter
State Bar No. 22154200
Timothy S. McConn
State Bar No. 24032713
Jamie A. Aycock
State Bar No. 24050241
Amy C. Farish
State Bar No. 24097818
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com
tmcconn@yettercoleman.com
jamieaycock@yettercoleman.com
afarish@yettercoleman.com

*Counsel to Charif Souki and Karim Souki, Christopher Souki, and Lina Souki Rizzuto, in their capacities as trustees of the Souki Family 2016 Trust and Proposed Special Counsel for the Debtors and Debtors in Possession*

and

*/s/ Joshua W. Wolfshohl*
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Heather K. Hatfield (TX Bar No. 24050730)
Aaron J. Power (TX Bar No. 24058058)
1000 Main St., 36th Floor
Houston, TX 77002
Tel: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
hhatfield@porterhedges.com
apower@porterhedges.com

*Proposed Bankruptcy Counsel for the Debtors and Debtors in Possession*

13

14153411

**CERTIFICATE OF CONFERENCE**

I certify that counsel for the Plaintiffs met and conferred and corresponded with counsel for the Defendants on August 27, 2023, August 28, 2023, and August 29, 2023, in an effort to resolve the matters set forth in this Motion, but we have been unable to resolve those matters.

*/s/ Heather K. Hatfield*
Heather K. Hatfield

**CERTIFICATE OF ACCURACY**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl