# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **STRUDEL HOLDINGS LLC and** | § | **Case No. 23-90757 (CML)** |
| **AVR AH LLC,** | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

**ORDER (I) AUTHORIZING THE DEBTORS TO**
**OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND**
**SUPERPRIORITY CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, AND**
**(IV) GRANTING RELATED RELIEF**
**[Relates to Docket No. 111]——]**

Upon the motion (the "**Motion**")[2] of Strudel Holdings LLC and AVR AH LLC (together,

the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") seeking entry of this DIP

order (the "**DIP Order**"), among other things:

(i) authorizing the Debtors to obtain postpetition financing up to an aggregate principal
amount of $5.03.7 million (the "**DIP Financing**") pursuant to that certain Superpriority
Subordinated Secured Debtor-in-Possession Credit Agreement dated as of September
8, 2023 attached hereto as **Exhibit A** (the "**DIP Credit Agreement**"), and such other
agreements, documents, certificates and instruments delivered or executed from time
to time in connection therewith, including the agreements related to the Financing,
(the "**DIP Documents**"), among the Debtors, as borrowers and Ajax Holdings, LLC,
as lender (the "**DIP Lender**");

(ii) authorizing the Debtors to (a) execute and enter into the DIP Credit Documents, (b)
pay fees and reimburse expenses under the DIP Documents, as and in the amounts
described in the DIP Documents, and (c) perform such other and further acts as may be
required in connection with the DIP Documents;

(iii) granting (a) to the DIP Lender the DIP Liens on the DIP Collateral to secure all amounts
owed under the DIP Documents (the "**DIP Obligations**"), and (b) to the DIP Lender

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen,
CO 81612.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the DIP Credit
Agreement (as defined below), as applicable.

**Formatted:** Space Before: 0 pt

the DIP Superpriority Claims (as defined below) in respect of the DIP Obligations, subject to the Prior Liens and other terms and conditions hereof;

(iv) authorizing the Debtors to use proceeds of the DIP Facility solely in accordance with this DIP Order and the other DIP Documents; and

(v) modifying the automatic stay to the extent provided for herein.

The hearing on the Motion having been held by this Court (the "**Hearing**"), and this Court having considered the relief requested in the Motion, the exhibits attached thereto, the *Declaration of Douglas Brickley in Support of the DIP Motion* (the "**Brickley Declaration**"), the available DIP Documents, and the evidence submitted, and arguments made at the Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. *Petition Date.* On July 27, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"). The Chapter 11 Cases are being jointly administered.

B. *Debtors in Possession.* The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern*

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Formatted: Space Before: 0 pt

*District of Texas*, dated May 24, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. § 1408.  The predicates for the relief sought herein are sections 105~~,~~, 362, 363(b), 363(c), 363(m), 364(c), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**") and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**").

D.      *Committee Formation*.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

E.      *Notice*.  Proper, timely, adequate and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules, and no other or further notice is required to enter this DIP Order.

F.      *Findings Regarding the DIP Financing*.

(i)      Good and sufficient cause has been shown for the entry of this DIP Order and for authorization of the Debtors to obtain financing pursuant to the DIP Documents.

(ii)      The Debtors need to obtain the DIP Financing to, among other things, ~~to~~ continue the orderly operation of their business,~~businesses, to satisfy and~~ to fund expenses of these Chapter 11 Cases, and conduct an orderly sales process for the Debtors' assets.  The access of the

3

Debtors to sufficient ~~working capital and~~ liquidity through the incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents is necessary to preserve and maintain ~~vital to~~ the value ~~preservation and maintenance of the values~~ of the Debtors' assets and fund expenses of these Chapter 11 Cases.

(iii)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under section 364(c)(1) or 364(c)(2) of the Bankruptcy Code without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (each as defined herein), in each case subject to the Carve-Out to the extent set forth herein, under the terms and conditions set forth in the DIP Order and in the other DIP Documents.

(iv)    The DIP Financing, has been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and ~~the~~ DIP Documents, including, without limitation, all loans made to the Debtors pursuant to ~~the~~ DIP Documents and any other DIP Obligations shall be deemed to be ~~have been~~ extended by the DIP Lenders ~~Lender~~ in good faith (, ~~as~~ that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code) and at arm's length among the Debtors and the DIP Lender.  The, ~~and the~~ DIP Lender (and any successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

**Formatted:** Space Before:  0 pt

4

(v)     The Debtors have prepared and delivered to the advisors to the DIP Lender an initial budget (the "**Initial DIP Budget**"), attached as <u>**Schedule 1**</u> to this DIP Order.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby, in form and substance acceptable to the DIP Lender.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Credit Agreement, and such modified, amended, extended and/or updated budget, once approved by the DIP Lender in accordance with the DIP Credit Agreement, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget shall constitute, without duplication, an "**Approved Budget**"); provided that any proposed modifications to the Approved Budget shall be provided to, and the Debtors shall consult with, the Prepetition Secured Parties[4] regarding such modifications.").  The Debtors believe that the Initial DIP Budget is reasonable under the circumstances.  The DIP Lender is relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to permitted variances), this DIP Order and the other DIP Documents in determining to enter into the postpetition financing arrangements provided for in this DIP Order.

G.     *Relief Essential; Best Interest*.  Consummation of the DIP Financing in accordance with this DIP Order and the other DIP Documents is therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this DIP Order comply with the requirements of Local Rule 4001-1(b).

---

[4]  "Prepetition Secured Parties" as used herein shall mean, collectively, Wilmington Trust National Association, as administrative agent (the "**Administrative Agent**"), Nineteen77 Capital Solution A LP, and Bermudez Mutuari, Ltd.

5

H.      *Prepetition Prior Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prior Lien (as defined herein) is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors or the DIP Lender, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prior Lien.  The right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Prior Lien, as used herein, and is expressly subject to the DIP Liens.  The DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

I.      The DIP Lender, the Debtors, and the Prepetition Secured Parties acknowledge the dispute between the Debtors and the Prepetition Secured Parties in the adversary proceeding captioned *AVR AH LLC, et al. v. Nineteen77 Capital Solutions A LP, et al.* pending in this court under Adv. Pro. No. 23-9003 (the "**Adversary Proceeding**"), whereby the Debtors are seeking to, among other things, disallow the Prepetition Secured Parties' secured claims (the "**Prepetition Secured Claims**") and liens (the "**Prepetition Liens**").   Nothing in this Order constitutes an admission of any defect in the Prepetition Secured Claims or the Prepetition Liens or impairs or otherwise impacts or affects the validity or extent of the Prepetition Secured Claims and Prepetition Liens, and all parties rights with respect to the validity or extent of the Prepetition Secured Claims and Prepetition Liens are expressly reserved and preserved.

J.      The Prepetition Secured Parties raised objections to the proposed DIP Loan and this Order memorializes a settlement of those objections, including the Prepetition Secured Parties' objection filed at Docket No. 155.

**Formatted:** Space Before:  0 pt

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*.  The relief sought in the Motion is granted, and the DIP Financing is authorized and approved, in each case as set forth herein, subject to the terms and conditions set forth in this DIP Order and the other DIP Documents.  All objections to the Motion and this DIP Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents*.  The Debtors are hereby authorized to execute, deliver, enter into, and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith.  The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Documents, and directed to repay amounts borrowed, together with interest and fees thereon, as well as any other outstanding DIP Obligations to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Documents and this DIP Order.

3.      *Authorization to Borrow*.  Upon entry of this DIP Order, and finalizing and executing the DIP Credit Agreement and the other DIP Documents, the Debtors are immediately authorized to borrow from the DIP Lender initial borrowings under the DIP Financing in the amount set forth in the Initial Budget and any other Approved Budget.  The Debtors are authorized to use the proceeds of the DIP Financing only in accordance with, and the for the purposes described in, this DIP Order and the Approved Budget (subject to any permitted variances).  The

Debtors may not borrow under the DIP Financing amounts in excess of those set forth in the Initial Budget or Approved Budget.

4.      *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable against each Debtor and their estates in accordance with the terms of this DIP Order and the DIP Documents, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing. Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by either of the Debtors to the DIP Lender under the DIP Documents (including this DIP Order).  The Debtors shall be jointly and severally liable for the DIP Obligations.  Except as permitted by this DIP Order, no obligation, payment, transfer, or grant of security hereunder or under the other DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under any of sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any similar applicable state statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      *Carve-Out*.

(a)      As used in this DIP Order, the term "**Carve-Out**" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of

Formatted: Space Before:  0 pt

8

title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) subject, in each case, to the amounts set forth in the Initial Budget or any Approved Budget and to application of any retainers that may be held, and to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses of persons or firms retained by the Debtors or the Creditors' Committee (if any) pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (collectively, the "**Estate Professionals**") (in each case, other than any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) (the "**Allowed Professional Fees**") incurred at any time before the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined herein), subject to the Approved Budget, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the amounts set forth in this clause (iii), the "**Pre-Carve-Out Trigger Notice Cap**"); and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $50,000 incurred on or after the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amount set forth in this clause (iv), the "**Post-Carve-Out Trigger Notice Cap**" and, together with the Pre-Carve-Out Trigger Notice Cap and the amounts set forth in clauses (i) through (ii), the "**Carve-Out Cap**"); *provided that*, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in this paragraph 5(a) on any grounds.

9

(b)      Notwithstanding anything to the contrary in this DIP Order or the other DIP Documents, following delivery of a Carve-Out Trigger Notice, the DIP Lender shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until such amounts owed pursuant to the Carve-Out are paid in full.

(c)      For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Lender to the Debtors, their counsel, the U.S. Trustee, the Prepetition Secured Parties, and counsel to the Creditors' Committee (if any), which notice may only be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement) stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(d)      The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or expenses of any Estate Professionals incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code, regardless of whether payment of such fees or disbursement has been allowed by the Court.  Nothing in this DIP Order or otherwise shall be construed to obligate the DIP Lender in any way to pay compensation to or reimburse expenses of any Estate Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or expense reimbursement.

6.      *Budget Maintenance*.  The Debtors shall be permitted to use the proceeds of the DIP Financing solely for the purposes set forth in the Approved Budget, and only up to the respective aggregate amount of disbursements set forth in the Approved Budget for any week during the term of this DIP Order, subject to the permitted Variance (as defined below).  The Debtors may not use, sell, or expend, directly or indirectly, the proceeds of the DIP Financing except pursuant to the Approved Budget, subject to the permitted Variance and upon the terms and

10

conditions set forth in this DIP Order.  The Approved Budget shall be updated, modified, or supplemented by the Debtors from time to time, but in any event, and upon written request to counsel for the Debtors, the Approved Budget shall be updated by the Debtors and delivered to the DIP Lender and the Prepetition Secured Parties on or before the Friday ending every consecutive four (4) week period.  Such amended budget will be deemed accepted unless the DIP Lender timely provides written notice setting forth a specific objection to the new budget within three (3) business days of service of the proposed amended budget by the Debtors.  In the event of a disagreement between the DIP Lender and the Debtors regarding any updated, modified, or supplemented budget, the most recent ~Approved Budget will continue to stay in place and the Debtors may continue to use proceeds of the DIP Financing in accordance with such Approved Budget and this DIP Order unless and until an updated, modified, or supplemented budget is approved by, and is in a form and substance satisfactory to both the Debtors and the DIP Lender.

7.      *Budget Compliance*.  The Debtors shall at all times comply with the Approved Budget, subject to an allowed cumulative variance of less than or equal to twentyten percent (2010%) in the aggregate of the expense line items set forth on the Approved Budget (the "**Variance**").  On or before 5:00 p.m. (prevailing Central Time) beginning with the first Friday following the entry of this DIP Order and each Friday thereafter, the Debtors shall prepare and deliver to the DIP Lender a Variance report setting forth in reasonable detail actual cash receipts and disbursements for the prior week.

8.      *Section 506(c) Waiver*.  Retroactive to the Petition Date, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of the Prepetition Secured Lenders' Collateral) shall be charged against

**Formatted:** Space Before:  0 pt

11

the Prepetition Secured Lenders or the Prepetition Secured Lenders' Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the Prepetition Secured Lenders, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors.

8.9.    *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the Debtors (except the DIP Superpriority Claims shall be junior to the Prepetition Secured Claims, with respect to rights against any collateral on which the Prepetition Liens are asserted, unless and until there is a final resolution of the Adversary Proceeding determining that the Prepetition Secured Parties liens and/or claims are invalid, disallowed, avoided, released or set to be set aside),. now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding claims and causes of action under section 502(d), 544, 545, 547, 548,

12

549, 550 or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code and(collectively, "**Avoidance Actions**") but including any proceeds or property recovered, unencumbered or otherwise, from such claims and causes of actionAvoidance Actions, whether by judgementjudgment, settlement, or otherwise, (collectively, "("**Avoidance Actions**")Proceeds")) in accordance with this DIP Order and the other DIP Documents.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this DIP Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

9.10.   *DIP Liens*.  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this DIP Order and without the necessity of the execution, recordation or filing by the Debtors or the DIP Lender of mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filing, or other similar documents, any notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Lender of, or over, any collateral, without any further action by the DIP Lender, the following valid, binding, continuing, enforceable, and non-avoidable security interests and liens (all security interests and liens granted to the DIP Lender pursuant to this DIP Order and the other DIP Documents, the "**DIP Liens**") are hereby granted to the DIP Lender:

(a)   *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first-priority senior security interest (subject only to the Carve-Out) in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors or their estates, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on

**Formatted:** Space Before:  0 pt

13

or as of the Petition Date is not subject to (i) a valid, perfected, and non-avoidable lien held by a creditor that has a valid claim against such Debtor's estate or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code held by a creditor that has a valid claim against such Debtor's estate (such liens described in clause (i) and (ii), collectively, "**Prior Liens**") including, without limitation, any and all unencumbered cash of the Debtors and any investment of cash, inventory, accounts receivable, accounts, investment property, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (the "**DIP Collateral**"). The DIP Collateral expressly excludes ") in each case other than the Avoidance Actions and(but, for the proceedsavoidance of doubt, DIP Collateral shall include Avoidance Actions. Proceeds).

    (b)    *Liens Subordinate to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully -perfected security interest in and lien upon the DIP Collateral, which lien shall be: (i) junior and subordinate to the Carve-Out and (ii) immediately junior and subordinate to any Prior Liens. Until and unless there is a final resolution of the Adversary Proceeding determining that the Prepetition Secured Parties do

> **Formatted:** Space Before:  0 pt

not hold Prior Liens or that such Prior Liens are otherwise disallowed, avoided, released or set aside, the liens of the Prepetition Secured Parties shall be deemed Prior Liens for the purposes of this Order, provided that all of the Debtors' and other parties' rights and claims in the Adversary Proceeding, and such parties' rights and claims to otherwise challenge such liens and claims, are fully reserved.

(c)     *Liens Senior to Certain Other Liens.*  The DIP Liens shall not be subject or subordinate to or made *pari passu* with (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (ii) unless otherwise provided for in this DIP Order or the other DIP Documents, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (iii) any other lien or security interest under section 361, 363 or 364 of the Bankruptcy Code.

(d)     For the avoidance of doubt, the DIP Liens granted pursuant to this Order shall not "prime," and shall be immediately junior and subordinate to, any Prior Liens on the DIP Collateral, including any Prior Liens that may be held by the ~~defendants in the adversary proceeding captioned *AVR AH LLC, et al. v. Nineteen77 Capital Solutions A LP, et al.* pending in this court under Adv. Pro. No.~~ Prepetition Secured Parties.~~23-9003 (the "**Adversary Proceeding**").~~  To the extent, however, that any such liens and/or claims of the Prepetition Secured Parties~~held by the defendants in the Adversary Proceeding~~ are determined not to be Prior Liens and/or are otherwise disallowed, avoided, released, or set aside, the DIP Liens and DIP Obligations shall be first priority liens and claims on all of the DIP Collateral including, without limitation, the Ranch.

**Formatted:** Space Before:  0 pt

10.11.  *Perfection of DIP Liens.*

**Formatted:** Outline numbered + Level: 6 + Numbering Style: 1, 2, 3, … + Aligned at:  0.5" + Indent at:  0"

(a)     Without in any way limiting the automatically valid and effective perfection of the DIP Liens granted pursuant to paragraph 109 of this DIP Order, the DIP Lender is hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of securities, or to amend or modify security documents, or enter into intercreditor agreements, or to subordinate existing liens and any other similar action in connection therewith in a manner not inconsistent herewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder the ("**Perfection Actions**").  Whether or not the DIP Lender takes such Perfection Actions, such liens and security interests granted are deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this DIP Order.  Upon the request of the DIP Lender, the Debtors, without any further consent of any party, and at the sole cost of the Debtors as set forth herein, are hereby authorized to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve, and enforce the DIP Liens in all jurisdictions required under the DIP Credit Agreement, including all local law documentation therefor determined to be reasonably necessary by the DIP Lender.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this DIP Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien

**Formatted:** Space Before:  0 pt

16

or similar instruments by the DIP Lender, and all filing offices are hereby authorized and directed to accept a certified copy of this DIP Order for filing and/or recording, as applicable.   The automatic stay shall be modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

11.12.  *Protection of DIP Lender's Rights*.

(a)     To the extent any entity has possession of any DIP Collateral or has control with respect to any DIP Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting DIP Collateral, then such entity shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Lender, and such entity, as applicable, shall comply with the instructions of the DIP Lender with respect to such notation or the exercise of such control or possession.

(b)     Upon the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement) that has not been waived by the DIP Lender and following delivery of written notice (a "**Termination Notice**") (including by e-mail), on not less than five (5) business days' notice (such five (5) business day period, the "**Remedies Notice Period**") to counsel for the Debtors, the Prepetition Secured Parties, the Creditors' Committee (if any), and the U.S. Trustee, (the "**Remedies Notice Parties**"), the DIP Lender may (and any stay otherwise applicable to the DIP Lender, whether arising under section 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this DIP Order (including this paragraph) is hereby modified for such purpose), without further notice to, hearing of, or order from this Court, to: (i) terminate the DIP Facility and any DIP Document as to any future liability or obligation of the DIP Lender

17

but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (ii) declare all DIP Obligations to be immediately due and payable; and (iii) invoke the right to charge interest at the default rate under the DIP Documents, which shall be an interest rate equal to the Contract Rate plus three percent (3%) per annum (the "**Default Rate**").. Upon delivery of such Termination Notice by the DIP Lender, without further notice or order of the Court, the Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the Remedies Notice Period and unless the Court orders otherwise, automatically terminate and the DIP Lender will have no obligation to provide any DIP Loans or other financial accommodations. As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.  During the Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed), or any party in interest shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing.  If a request for such hearing is made prior to the end of the Remedies Notice Period, then the Remedies Notice Period shall be continued until the Court hears and rules with respect thereto.

(c)       During the continuation of an Event of Default and following the delivery of a Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth in paragraph 12 11(b)), the DIP Lender shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on not less than five (5) business days' notice to the Remedies Notice Parties (which may run concurrently with the Remedies Notice Period) for a further order of the Court modifying the automatic stay in the Chapter 11 Cases to permit the DIP Lender to, subject to the Carve-Out and related provisions: (i) freeze or sweep monies or balances in the Debtors' accounts; (ii) enforce

**Formatted:** Space Before:  0 pt

any and all rights against the DIP Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral, occupying the Debtors' premises, or sale or disposition of the DIP Collateral; and (iii) take any other actions or exercise any other rights or remedies permitted under this DIP Order, the DIP Documents, or applicable law; *provided* that (i) the DIP Lender shall not seek to enforce remedies against the DIP Collateral until and unless there is a final resolution of the Adversary Proceeding determining that the Prepetition Secured Parties do not hold Prior Liens and/or that such Prior Liens are otherwise disallowed, avoided, released or set aside; and (ii) the Debtors' and the Prepetition Secured Parties' rights to contest any such relief are reserved.the Debtors' rights to contest any such relief are reserved.  The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender has under the DIP Documents or otherwise.  If the DIP Lender is permitted by the Court to take any enforcement action with respect to the DIP Collateral following the hearing on the Stay Relief Motion, the Debtors shall cooperate with the DIP Lender in its efforts to enforce its security interest in the DIP Collateral, and shall not take or direct any person or entity to take any action designed or intended to hinder or restrict in any respect the DIP Lender from enforcing its security interests in the DIP Collateral.  Until such time that the Stay Relief Motion has been adjudicated by the Court, the Debtors may use the proceeds of the DIP Facility to the extent drawn prior to the occurrence of Event of Default to fund operations in accordance with the Approved Budget and the terms of the DIP Documents.

(d)      As additional protection for the DIP Lender, the Debtors shall pursue a sale (the "**Sale Transaction**") of the Ranch pursuant to the following milestones (the "**Milestones**"). The Milestones may be extended upon the mutual agreement of the Debtors and the DIP Lender. Unless waived in writing by the DIP Lender (and subject to the requirements of the Court's order

**Formatted:** Space Before:  0 pt

19

approving bidding procedures relating to the Ranch, including, without limitation, the Prepetition Secured Parties consultation rights thereunder), a failure by the Debtors to comply with the Milestones shall constitute an Event of Default under the terms of the DIP Credit Agreement:

      i.     Not later than October 3September 27, 2023, an auction for the Ranch shall have occurred or been completed, unless such auction is canceled pursuant to the terms of the Bidding Procedures Order.

      ii.    Not later than October 6, 2023, the Court shall have entered the Sale Order.

      iii.   Not later than 15 days following after entry of the Sale Order, the Sale Transaction shall have closed.

    (e)     During the Chapter 11 cases, as additional protection of the DIP Lender's rights, all reasonable and documented fees, costs, expenses, and charges, including, without limitation, attorneys' fees and expenses, that are incurred by Hunton Andrews Kurth LLP as counsel to the DIP Lender incurred after the Petition Dateas a result of or in any way related to these Chapter 11 Cases, whether accrued pre-petition or post-petition (collectively, the "**DIP Lender Professional Fees and Expenses**") may be charged by the DIP Lender and shall be paid by the Debtors out of any DIP Facility advances.  The Debtors are hereby authorized to pay such DIP Lender Professional Fees and Expenses without notice, motion, or application to, order of, or hearing before the Court.  All DIP Lender Professional Fees and Expenses shall be paid within ten (10) calendar days of delivery of an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information) to counsel for the Debtors, the Creditors' Committee (if any), and the U.S. Trustee (collectively, the "**DIP Lender Fees and Expenses Remedies Notice Parties**").  If any of the DIP Lender Fees and Expenses Remedies Notice Parties object to the reasonableness of such fees and expenses and cannot resolve such objection within five (5) business days of service of such invoice(s), such DIP Lender Fees and Expenses Remedies Notice Party shall file and serve upon the DIP Lender an objection with

the Bankruptcy Court (a "**Fee Objection**") limited to the issue of the reasonableness of the disputed fees and expenses within ten (10) calendar days of the delivery of such invoice(s).  If the DIP Lender Fees and Expenses Remedies Notice Parties do not object to the reasonableness of such fees and expenses within ten (10) calendar days of service of an invoice, any objection of the DIP Lender Fees and Expenses Remedies Notice Parties with respect to such invoice shall be waived.  In the event the DIP Lender Fees and Expenses Remedies Notice Parties timely file a Fee Objection, the Debtors shall pay the undisputed portion of such invoice(s) subject to a Fee Objection within ten (10) calendar days of service of such invoice(s).  All DIP Lender Professional Fees and Expenses shall constitute obligations under the DIP Facility, shall be secured by the DIP Collateral, and afforded all priorities and protections afforded to the DIP Lender under this DIP Order and the DIP Documents.  Hunton Andrews Kurth LLP shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approvals of, the Court for the payment of any of its fees or out-of-pocket expenses (other than with respect to disputed amounts).

12.13.  *DIP Lender Proofs of Claim Not Required*.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, the DIP Lender shall not be required to file a proof of claim in the Chapter 11 Cases for any claim allowed herein in or otherwise in relation to the DIP Credit Agreement or the DIP Documents.

13.14.  *Prohibition on Additional Liens*.  Except as provided in the DIP Documents or this DIP Order, the Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations have been indefeasibly paid in full, granting liens on or security interests in the DIP Collateral or any portion thereof to any other entities, pursuant to

**Formatted:** Space Before:  0 pt

section 364(d) of the Bankruptcy Code or otherwise, which liens are junior to, senior to, or *pari passu* with the DIP Liens.

~~14.~~15.  *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this DIP Order, the other DIP Documents, or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

~~15.~~16.  *Reimbursement of Advances*.  The advances made to the Debtors by the DIP Lender after the Petition Date to fund the Debtors' operating expenses in the amount of $642,934.00 shall be treated as administrative expenses of the Debtors' estates, shall be part of the DIP Obligations, and shall be reimbursed pursuant to the DIP Documents and the Approved Budget.

~~16.~~17.  *Disposition of DIP Collateral*.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents.

~~17.~~18.  *Subsequent Reversal or Modification*.  This DIP Order is entered pursuant to, *inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the provisions of this DIP Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lender prior to the date of receipt by the DIP Lender of written notice of the effective date of such action, (ii) the payment of any fees required under this DIP Order or the DIP Documents, or

22

(iii) the validity and enforceability of any lien, claim, obligation, right, remedy or priority authorized or created under this DIP Order or pursuant to the DIP Documents as of such date.

18.19.  *Indemnification*.   Without~~The DIP Lender has acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Financing, including in respect of the granting of the DIP Liens, the DIP Documents, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without~~ limitation to any other right to indemnification, the DIP Lender shall be and hereby is indemnified as provided in the DIP Documents, as applicable. The Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this DIP Order to any obligation set forth, as the case may be, in this paragraph 19~~17~~ or otherwise in the DIP Documents to indemnify and/or hold harmless any DIP Secured Party or any Prepetition Secured Party, as the case may be, and any such defenses are hereby waived.

19.20.  *Order Governs*.  In the event of any inconsistency between the provisions of this DIP Order and the DIP Documents, the provisions of this DIP Order shall govern. Notwithstanding the relief granted in any other order by this Court, (a) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this DIP Order, including compliance with the Approved Budget (subject to permitted variances) and all other terms and conditions hereof, and (b) to the extent there is any inconsistency between the terms of such other order and this DIP Order, this DIP Order shall control, in each case, except to the extent expressly provided otherwise in such other order.

20.21.  *Modifications of the Approved Budget*.  Without further order of the Court, the Debtors and the DIP Lender are hereby authorized to implement, in accordance with the terms

**Formatted:** Space Before:  0 pt

hereof and upon the consent of the DIP Lender in its reasonable discretion and subject to the Prepetition Secured Parties' consultation rights, any modifications to the Approved Budget with such modification being in writing.

22.     *Chief Restructuring Officer Authority*.  The Debtors' Chief Restructuring Officer, Douglas J. Brickley (the "**CRO**"), shall have exclusive decision-making authority on behalf of the Debtors with respect to all matters related to the DIP Facility, including without limitation, the negotiation of this DIP Order and amendments thereto, request for borrowings thereunder and the use of proceeds thereof, compliance with the covenants (including reporting covenants), and any agreement of the Debtors to any amendments, waivers or modifications of the DIP Documents (including all budgets) shall be vested solely in the CRO.

23.     *Adequate Protection*.  Nothing herein shall limit or impair the Prepetition Secured Parties' right to seek adequate protection in these cases, pursuant to sections 361 and 363 of the Bankruptcy Code, or the Debtors' or any other parties' rights to contest such request and all rights of the Prepetition Secured Parties to seek adequate protection are without prejudice to this DIP Order and expressly reserved.

21.24. *Binding Effect; Successors and Assigns*.  The DIP Documents, including the provisions of this DIP Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to

**Formatted:** Space Before:  0 pt

the benefit of the DIP Lender and the Debtors and their respective successors and assigns; *provided* that the DIP Lender shall have no obligation to permit the use of the DIP Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

22.25.   *Release*.   Effective as of the date of entry of this DIP Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP Lender and each of its subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such, (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, in each case arising out of or related to (as applicable) the DIP Documents, the negotiation thereof, or of the transactions and agreements reflected thereby, or the financial or other obligations owing or made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date

**Formatted:** Space Before:  0 pt

of this DIP Order.  For the avoidance of doubt, (i) nothing in this release shall relieve the DIP

Lender or the Debtors of their obligations under the DIP Documents; (ii) nothing herein shall

release any claims held by the Prepetition Secured Parties; and (iii) nothing herein shall release

any claims against the DIP Lender for any claim, act or omission occurring after the entry of this

DIP Order.  .

23.26.  *Exculpation*.   Nothing in this DIP Order or, the DIP Documents, or any other

documents related to the transactions contemplated hereby shall in any way be construed or

interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims

arising from the prepetition or postpetition activities of the Debtors in the operation of their

businesses, or in connection with their restructuring efforts.  The DIP Lender shall not, in any way

or manner, be liable or responsible for (a) the safekeeping of the DIP Collateral, (b) any loss or

damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution

in the value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding

agency or other person, and all risk of loss, damage or destruction of the DIP shall be borne by the

Debtors.

24.27.  *Limitation of Liability*.  In determining to make any loan or other extension of credit

under the DIP Documents, to permit the use of the DIP Collateral or in exercising any rights or

remedies as and when permitted pursuant to this DIP Order, the DIP Documents, or any other

documents related to the transactions contemplated hereby, the DIP Lender shall not (a) have any

liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe

any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be

deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent"

with respect to the operation or management of any of the Debtors (as such terms or similar terms

**Formatted:** Space Before:  0 pt

are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).

28.     Notwithstanding anything to the contrary in the DIP Credit Agreement or the DIP Order (including without limitation paragraphs 25-27 above), the Prepetition Secured Parties shall not be deemed to have provided any releases to, or waived any claims against, any party (including the Released Parties or the Debtors), and all rights, remedies, claims and defenses of the Prepetition Secured Parties are expressly reserved.

29.     *Miscellaneous*.  The DIP Documents shall be modified prior to Closing to reflect the following:

> The upfront fee set forth in Article 2.4 of the DIP Credit Agreement is waived and shall not constitute a DIP Obligation.

> Pursuant to Article 2.8 of the DIP Credit Agreement, any proceeds from insurance claims shall be held by the Debtors pending the final disposition of the Adversary Proceeding or further order of the Court.

> Any advances made by the DIP Lender pursuant to Article 2.9 shall not exceed five percent (5%) of the total DIP Financing unless otherwise authorized by further Court order.

25.30.  *Effectiveness*.  Notwithstanding Bankruptcy Rule 4001(a)(3) and 6004(h), any Bankruptcy Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this DIP Order.

26.31.  *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this DIP Order.

27.32.  *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

**Formatted:** Space Before:  0 pt

28.33.  *No Third-Party Rights*.  Except as explicitly provided for herein, this DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

29.34.  *Necessary Action*.  The Debtors and the DIP Lender are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this DIP Order.  In addition, the automatic stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 Cases to take all actions as are necessary or appropriate to implement the terms of this DIP Order.

30.35.  *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this DIP Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

Dated: _____, 2023
        Houston, Texas

_____
HONORABLE CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**Formatted:** Space Before:  0 pt