**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| STRUDEL HOLDINGS LLC and AVR AH LLC, | Case No. 23-90757 (CML) |
| Debtors. [1] | (Jointly Administered) |

**COMMENTS OF BEYOND THE BEACH, LLC TO**
**DEBTORS' PROPOSED SALE OF ASSETS**

Beyond The Beach, LLC (hereinafter, "BTB"), a creditor of the above-named Debtors, hereby files these Comments with respect to certain facts relevant to the Debtors' efforts to sell substantially all their assets in accordance with the Bid Procedures Order (as defined below). BTB provides these Comments because after reviewing the Debtors' proposed Form APA (as defined below), BTB believes certain facts regarding the assets being marketed should be disclosed to potential buyers of the Debtors' assets.

1.      On July 27, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

2.      Prior to the Petition Date, on or about November 20, 2021, BTB closed on a sale of two (2) parcels of real property in the development commonly referred to by the Debtors as the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The location of the Debtors' corporate headquarters and the Debtors' service address is: PO Box 4068, Aspen, CO 81612.

"Ranch" (the "<u>BTB Transaction</u>").  As an owner of property within the "Ranch", BTB is a member of the Aspen Valley Ranch Homeowners Association, Inc. (the "<u>HOA</u>"), and is thus entitled to all of the rights afforded thereby.[2]

3.      Also prior to the Petition Date, the Debtors, as part of the creation of the HOA, and pursuant to all relevant governing documents, and the relevant provisions of the governing and recorded documents of Pitkin County, Colorado, transferred to the HOA certain parcels of property within the Subdivisions (as defined below) (hereinafter, the "<u>HOA Properties</u>").  BTB would expect that any buyer of the Debtors' assets would want confirmation that no liens, claims or encumbrances remain against the HOA Properties as the HOA is an integral party to further development of the properties being marketed by the Debtors as discussed below.[3]

4.      Prior to and since the Petition Date, the Debtors have been marketing substantially all of their assets for sale, as more fully set forth in the *Debtors Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, (VI) Authorizing the Debtors to Enter into Definitive Purchase Agreements, and (VII) Granting Related Relief* [Docket No. 5] (the "<u>Bid Procedures Motion</u>).

5.      On August 10, 2023, the Court entered an Order approving the Bid Procedures Motion [Docket No. 53] (the "<u>Bid Procedures Order</u>").  Pursuant to the Bid Procedures Order, bids

---

[2] Nothing herein is intended to limit any rights of BTB, with respect to, *inter alia*, the Debtors and the HOA.  Rather, this filing and the descriptions herein are for notice and informational purposes only.

[3] There may be a dispute with respect to liens, claims and encumbrances against the HOA Property.  *See Lender Parties' Motion to Dismiss the Chapter 11 Cases Pursuant to Section 1112(b) of the Bankruptcy Code* [Docket No. 75], and in particular Exhibit 14 [Docket No. 75-15].

from qualified potential buyers were due on September 29, 2023, an auction, if necessary would occur thereafter, and a hearing to approve any sale or sales would be held on October 5, 2023.

6.      As part of their sale and marketing efforts under the Bid Procedures Order and as more fully described in the Bid Procedures Motion, the Debtors have colloquially used the undefined term "Ranch" when generally referring to the entire development created by the Debtors.  The usage of this term is inaccurate and confusing to potential buyers because, as set forth below, not all the properties that make up the "Ranch" are actually owned by the Debtors.

7.      The entire development spans essentially 3 areas within Pitkin County, Colorado, which are generally referred to as: (i) the Aspen Valley Ranch Subdivision (the "AVRS"); (ii) certain property within the Aspen Valley Downs Subdivision (the "AVDS"); and (iii) certain property commonly referred to as the Werk & Cook Parcels[4] ("W&C", and collectively, with the AVRS and the AVDS, the "Subdivisions").[5]  Thus, the use of the term "Ranch", in pleadings and otherwise before the Court and in these Cases when describing the assets currently owned and proposed to be sold by the Debtors, is not precise because various parcels within the Subdivisions were transferred prior to the Petition Date to BTB, the HOA, and others.  Instead, the Debtors should be specifically defining and identifying the real property they actually own and propose to sell pursuant to the Bid Procedures Order as limited and by and specifically identified in the Debtors' Schedules (as defined below).

---

[4] M/B WOODY CREEK Section: 4 Township: 9 Range: 85 TRACT B: TRACT COMMONLY KNOWN AS WERK COOK PROPERTY A TRACT OF LAND SITUATED IN LOT 1 SEC 4 & LOT 1 SEC 5-9-85 DESC M/B & CONT 20 AC M/L ABOVE DESC TRACT OF LAND RESERVED BY WERK AND RUTH M COOK FROM SALE OF RANCH TO ROPER AND KNAUER DESC BK 200 PG 412 BK 429 PG 297 BK 442 PG 543 & BK 448 PG 226 BK 648 PG 679.

[5] *See* Records of the Assessor, and the Clerk and Recorder of Pitkin County, Colorado.

8.      As provided in Part 9 of the Debtors' Schedules of Assets and Labilities [Docket No. 56] (the "Schedules"), the Debtors acknowledge and confirm that they **only** own the following eight parcels of real property in the Subdivisions, subject to various liens and encumbrances:[6]

| | COMMON ADDRESS | ASSESSORS' A/C # | ASSESSORS' PARCEL # | SUBDIVISION |
|---|---|---|---|---|
| 1 | 295 Aspen Valley Ranch Rd., Woody Creek, CO | R019795 | 264305202002 | AVRS |
| 2 | 425 Aspen Valley Ranch Rd., Woody Creek, CO | R019796 | 264305402001 | AVRS |
| 3 | 31 E. Bourg Trail, Woody Creek, CO | R019798 | 264308104001 | AVRS |
| 4 | 151 E. Bourg Trail, Woody Creek, CO | R019799 | 264304302001 | AVRS |
| 5 | 160 E. Bourg Trail, Woody Creek, CO | R019800 | 264304302002 | AVRS |
| 6 | 925 Aspen Valley Ranch Rd., Woody Creek, CO | R013749 | 264304301001 | AVDS |
| 7 | 1025 Aspen Valley Ranch Rd., Woody Creek, CO | R013750 | 264304301002 | AVDS |
| 8 | 1075 Aspen Valley Ranch Rd., Woody Creek, CO | R013751 | 264304301003 | AVDS |

The eight parcels owned by the Debtors as listed in the above chart and on the Debtors' Schedules are referred to herein as the "Eight Owned Parcels".  The Debtors have indicated they will insure that all proposed sale documentation conforms to the Eight Owned Parcels, and clearly delineates the Eight Owned Parcels from the HOA Properties.

9.      Additionally, potential buyers should be aware that additional documents executed by the Debtors impact the rights of parties and potential buyers.  As part and parcel to the BTB Transaction: (i) the Debtors, the HOA and BTB executed that certain *Agreement Regarding Design Guidelines and Association Rules and Regulations*, dated as of October 15, 2021 (a copy of which is attached hereto as **Exhibit 1**); and (ii) the Debtors and BTB executed that certain *Agreement Regarding Exercise of Declarant Control and Association Voting Rights*, dated October 15, 2021 (a copy of which is attached hereto as **Exhibit 2**).  These documents are provided for notice to any and all prospective buyers of the Debtors' assets.[7]

---

[6] Nothing herein is intended to address the Debtors' interest in assets other than real property, or to comment on the validity and priority of the alleged liens on these properties which, as this Court is aware, is subject to litigation.

[7] A determination of the scope and rights of the parties to these two agreement is not relevant to this pleading, and nothing herein shall constitute any determination as to the rights of the parties under these agreements or any waiver of any rights granted thereunder.

10.     BTB requested that the Debtors make potential buyers aware of the above title, lien and ownership issues that impact sale of the Eight Owned Property and their connection with the HOA Properties.

**WHEREFORE**, BTB requests that the Court insure that appropriate corrections are made to the Form APA and any order approving any potential sale.

PACHULSKI STANG ZIEHL & JONES, LLP

Dated: October 3, 2023

*/s/ Michael D. Warner*
Michael D. Warner (TX Bar No. 00792304)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email: mwarner@pszjlaw.com

*Counsel for Beyond the Beach, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2023, a true and correct copy of the foregoing document was caused to be served via the Court's CM/ECF system upon all parties registered to receive electronic notice in the above cases.

*/s/ Michael D. Warner*
Michael D. Warner

5

**<u>EXHIBIT 1</u>**

## AGREEMENT REGARDING DESIGN GUIDELINES
## AND ASSOCIATION RULES AND REGULATIONS

THIS AGREEMENT REGARDING DESIGN GUIDELINES AND ASSOCIATION RULES AND REGULATIONS (this "**Agreement**") is made and entered into as of October 15, 2021, by the Aspen Valley Ranch Home Owners Association, Inc., a Colorado nonprofit corporation (the "**Association**"), AVR AH LLC, a Colorado limited liability company ("**Seller**"), and Beyond the Beach LLC, a Colorado limited liability company ("**Buyer**").

## RECITALS

A.     The Association is the home owners' association established to operate and maintain the development known as Aspen Valley Ranch, according to the Second Amended Subdivision Exemption Plat, Aspen Valley Ranch, recorded October 28, 2011 in Plat Book 98 at Page 49 ("**AVR**").

B.     Seller is (i) the "**Declarant**" under that certain Amended and Restated Declaration of Protective Covenants for AVR recorded August 20, 2021 as Reception No. 679690 (the "**Covenants**"); (ii) owner of all Homestead parcels within AVR, except for Homestead 4; (iii) the holder of certain voting rights in the Association by virtue of Declarant's ownership of certain parcels within AVR; and (iv) entitled to appoint all members of the Board of Directors for the Association (the "**Board**").

C.     Pursuant to that certain Contract to Buy and Sell Real Estate dated September 3, 2021 made by and between Seller and Buyer (the "**Contract**"), Seller has agreed to sell, and Buyer has agreed to purchase, the parcels of property described as (i) Homestead 8, Aspen Valley Ranch, according to the Second Amended Subdivision Exemption Plat, Aspen Valley Ranch, recorded October 28, 2011 in Plat Book 98 at Page 49 and Third Amendment to Subdivision Exemption Plat of Homestead 8 and the Agricultural Facilities Parcel, Aspen Valley Ranch recorded August 22, 2014 in Plat Book 107 at Page 82 which includes a completed residence ("**Homestead 8**"); and (ii) Homestead 9, Aspen Valley Ranch, according to the Second Amended Subdivision Exemption Plat, Aspen Valley Ranch, recorded October 28, 2011 in Plat Book 98 at Page 49, which is currently vacant land ("**Homestead 9**") (Homestead 8 and Homestead 9 together referred to herein as the "**Homesteads**").

D.     The closing under the Contract is anticipated to be on October 15, 2021 (the "**Closing**").  Provided that the Buyer closes upon the purchase of the Homesteads, this document shall be executed at Closing.

E.     In connection with the Contract and Buyer's purchase of the Homesteads, Seller and the Association have agreed to certain changes or exceptions to (i) the current Design and Development Guidelines for AVR (the "**Design Guidelines**"), as applicable to the Homesteads; and (ii) to certain amendments to the Rules and Regulations of the Association (the "**Rules and Regulations**"), all as set forth herein.

**AGREEMENT**

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the purchase and sale of the Homesteads and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Association, Seller and Buyer agree as follows:

1.    Design Guidelines Applicable to Homesteads.

A.    *Guidelines Generally.* The Association and Seller recognize that the current Design Guidelines contain certain elements that have not been applied to some of the homes that currently exist within the AVR property. The purpose of the design review process is to ensure that new homes meet or exceed the level of quality currently existing within AVR, while striving to remain thematic uniformity of the homes within AVR. The preferred design aesthetic leans toward a theme commonly referred to as "Ranch Modern", which theme is often characterized by simple forms, additive forms and incorporation of rustic materials.

B.    *Buyer Homesteads.* With the understanding that interpretations of themes evolve over time, the Association (and Seller, to the extent in control of the Association and Board, and acting as Declarant under the Covenants) shall exercise flexibility in the approval for the designs of Homestead 8 and Homestead 9, should the Closing occur. The Association agrees that (i) any designs on the Homesteads that are reasonably close to the existing homes in the subdivision are appropriate; (ii) the examples of homes Rich Carr of CCY Architects previously provided to the Association/Declarant and attached hereto as Exhibit A are generally acceptable and consistent with the design intent for AVR; and (iii) the following specific amendments or clarifications to the Design Guidelines shall apply to any designs submitted for the Homesteads:

- Section C.2.a: This section does not apply to Homestead 8 or Homestead 9.
- Roofscape: Roof slope standards shall be relaxed for Homestead 8 and Homestead 9 to allow a range of 3/12 to 12/12.
- C.3.b: This shall not apply to Homestead 8 or Homestead 9.
- C.3.d: Roof overhang requirements shall not apply to Homestead 8 or Homestead 9.
- C.4.a: This standard shall be relaxed to allow for corner bay windows or cantilevered elements.
- C.4.b, C.4.c and C.9: Board formed or textured concrete, wood blackened / patina'd steel and metals shall be allowable.

C.    *Design Review Process.* While the Association has agreed to allow the above noted adjustments, the Association ultimately retain its design approval rights set forth under the Covenants and Buyer understands a process for approval of designs is set forth therein. Those approvals will be subject to the design intent addressed herein, including the images of the homes in the exhibit, and will be made in accordance with the Design Guidelines and this Agreement.

2.    <u>Association Rules and Regulations</u>.  With respect to any rules and regulations promulgated or amended by the Association (the "**Rules and Regulations**") and/or any other policies or regulations of the Association, Seller represents and warrants to Buyer as follows:

- Any occupancy rules and limitations described in Article II, Section M of the Rules and Regulations shall not apply to the Homesteads and there shall be no rule, policy or regulation, now or in the future, limiting the number of occupants, guests or invitees permitted on the Homesteads.  Buyer shall be able to host parties of any size on the Homesteads, provided that Buyer complies with general safety and nuisance regulations within AVR.

- The Rules and Regulations shall prohibit non-Owners or non-Occupants from renting or use of the Common Facilities, including the Ranch House and Historic Barn, unless such non-Owners or non-Occupants rent all portions of AVR, including, with the consent and approval of Owners (which approval may be withheld at the Owners' discretion) all of the Homestead parcels within AVR.  The Association and Seller agree that none of the Common Facilities shall be rented or used by non-Owners or non-Occupants for weddings or other events without the consent of all owners of Homestead parcels with AVR.

- There is not, and shall not, be any parking restrictions governing the number of vehicles permitted to park within the Building Envelope on Homestead 8 and the House Activity Envelope on Homestead 9; provided, such parking does not create a dangerous and unsafe condition.  In the event that the number of cars temporarily exceeds the parking capacity on the either the Building Envelope on Homestead 8 or the House Activity Envelope on Homestead 9, as the case may be, the Association will assist the owners of the Homesteads to accommodate parking elsewhere on AVR.  In no event will any parking interfere with the agricultural operations of AVR, nor shall any parking of an excessive number of vehicles be permanent or outside of the Building Envelope on Homestead 8 or the House Activity Envelope on Homestead 9, as the case may be.

- The Association shall transfer and provide to, upon the initial sale of any homestead parcel within AVR, a golf cart in good and proper working condition for the use and ownership of such homestead owner.  In the event Buyer elects to purchase an upgraded golf cart in connection with the purchase of Homestead 9, Buyer shall notify the Association prior to Closing and pay the difference in cost for such upgraded model.

- With respect to Assessments levied by the Association, the Association shall not, without the approval, which approval shall not be unreasonably withheld if necessary for continued operations of AVR, of a majority of owners within AVR other than Seller and/or Declarant (i) unless it is on account of regulatory rulings, property taxes or insurance premiums increase Annual Assessments by more than ten percent (10%) per annum; or (ii) levy any Special Assessment in excess of $100,000.00 (except in the event of an emergency).

- Included in the Annual Assessments, until the Declarant no longer owns a majority of the Homesteads in AVR, the Association shall be responsible for mowing the lawns and general yard maintenance and cleanup for Homestead 8 as it presently exists and, upon completion of a residence, for Homestead 9 contained within the House Activity Envelope within Homestead 9.  Such obligation shall not be eliminated or modified without the written approval of Buyer.

- While the Declarant owns the majority of the Homesteads in AVR, the rental (and rental marketing) of any Homestead within AVR shall be accomplished through a licensed brokerage company and the Association shall enforce a rule , that at no time, shall any home on any Homestead be rented, advertised or booked through AIRBnB, VRBO or similar direct internet platforms.

To the extent the above representations and warranties are not included in the Rules and Regulations, the Association shall amend the Rules and Regulations to include such items within thirty (30) days following Closing.  In addition, the Association and Seller agrees to reasonably cooperate with Buyer (and other Owners) on further reasonable amendments to the Rules and Regulations as necessary and desirable for operations of the Association and AVR.  Specifically, the Association and Seller agree to (i) detail and further clarify rotation schedules for priority use of the Ranch House and Barn by the Owners, with input from Buyer and other owners within AVR; (ii) elaborate, if necessary, on the property management and maintenance obligations of the Association for each Homestead as specified in Exhibit A attached hereto,; and (iii) if necessary, clarify the rental policy and the understanding that the fees paid to the Association shall not exceed five percent (5%) of the gross rental revenue received by the Owners in connection with any rental.

3.      _Assignment of Development Documents_.  At Closing, Seller shall transfer and assign to Buyer, for no additional consideration, all right, title and interest of Seller in and to any plans, specifications, reports, tests, studies, investigations, inspections, permits, approvals, entitlements, applications, accounts and deposits associated in any manner with Homestead 8 and/or Homestead 9 or the development of either such parcel (collectively, the "**Development Documents**").  Prior to Closing, Seller and Buyer shall reasonably agree on the form of assignment of the Development Documents.

4.      _Successors and Assigns_.  The terms, covenants and provisions contained in this Agreement shall bind Seller and any successor or assign of Buyer or Seller, and Seller shall make any such transfer or assignment subject to the terms of this Agreement.

5.      _Counterparts_.  This Agreement may be signed in counterparts and all of which, when taken together, shall constitute one instrument.

6.      _Attorneys' Fees_. In the event of any dispute arising under this Agreement, the substantially prevailing party in such dispute shall be entitled to collect its reasonable attorneys' fees and costs from the substantially non-prevailing party in such dispute.

7.      _No Recording_.  This Agreement shall not be publicly recorded, unless such recording is necessary to preserve or protect the rights of any party hereto.

8.     Amendment.  The terms of this Agreement shall bind the Association, even if Seller ceases to control, or be members of, the Association.  This Agreement shall not be revoked or amended without the express written consent of Buyer.

IN WITNESS WHEREOF, this Agreement is executed as of the day and year first above written.

THE ASSOCIATION:                              SELLER:

*ASPEN VALLEY RANCH HOME OWNERS ASSOCIATION, INC.*

AVR AH LLC, a Colorado ~~limited liability~~          AVR AH LLC, ~~a Colorado limited liability~~
~~company~~                                    company

By: _____                   By: _____
Name: _BROOKE A. PETERSON_                     Name: _BROOKE A. PETERSON_
Title: _MANAGER PRESIDENT_                      Title: _MANAGER_


BUYER:

Beyond the Beach LLC, a Colorado limited
liability company

By: _____
Name:  Seth J. Brufsky
Title:  Manager

EXHBIT A

Examples of Acceptable Home Designs



**<u>EXHIBIT 2</u>**

## <u>AGREEMENT REGARDING EXERCISE OF DECLARANT CONTROL<br>AND ASSOCIATION VOTING RIGHTS</u>

THIS AGREEMENT REGARDING EXERCISE OF DECLARANT CONTROL AND ASSOCIATION VOTING RIGHTS (this "**Agreement**") is made and entered into as of October 15 , 2021, by AVR AH LLC, a Colorado limited liability company ("**Declarant**"), and BEYOND THE BEACH LLC, a Colorado limited liability company ("**Owner**").

### RECITALS

A.      Declarant (i) is the "Declarant" under that certain Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch ("**AVR**") recorded August 20, 2021 as Reception No. 679690 (the "**Covenants**"); (ii) is the owner of all Homestead parcels within AVR, except for Homesteads 4, 8 and 9 (the "**Declarant-Owned Homestead Parcels**"); (iii) is the holder of certain voting rights in the Aspen Valley Ranch Home Owners Association, Inc. (the "**Association**") by virtue of Declarant's ownership of the Declarant-Owned Homestead Parcels the "**Declarant Voting Rights**"); and (iv) has the right to appoint all seats on the Board of Directors for the Association (the "**Board**").

B.      Owner has purchased from Declarant and is the titled owner of (i) Homestead 8, Aspen Valley Ranch, according to the Second Amended Subdivision Exemption Plat, Aspen Valley Ranch, recorded October 28, 2011 in Plat Book 98 at Page 49 and Third Amendment to Subdivision Exemption Plat of Homestead 8 and the Agricultural Facilities Parcel, Aspen Valley Ranch recorded August 22, 2014 in Plat Book 107 at Page 82 ("**Homestead 8**"); and (ii) Homestead 9, Aspen Valley Ranch, according to the Second Amended Subdivision Exemption Plat, Aspen Valley Ranch, recorded October 28, 2011 in Plat Book 98 at Page 49 ("**Homestead 9**") (Homestead 8 and Homestead 9 together referred to herein as the "**Owner Homesteads**").

C.      In connection with the purchase and sale of the Owner Homesteads, Declarant has agreed to certain conditions and limitations on the exercise of Declarant's rights under the Covenants, Declarant's Voting Rights and Declarant's authority to appoint members of the Board, all as set forth herein.

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, the purchase and sale of the Owner Homesteads and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Declarant and Owner agree as follows:

**1.      Declarant Exercise of Rights Generally.**  Notwithstanding anything to the contrary contained in (i) the Covenants (including, without limitation, Sections 11.02 and 12.01 thereof); (ii) the Rules and Regulations for Aspen Valley Ranch Home Owners Association, as amended from time to time (the "**Rules and Regulations**"); (iii) the Design and Development Guidelines,

incorporated as Exhibit A to the Covenants, as amended from time to time (the "**Design Guidelines**"); (iv) the Irrigation and Pond Construction Guidelines for Aspen Valley Ranch, incorporated as Exhibit B to the Covenants, as amended from time to time (the "**Irrigation and Pond Guidelines**"); and (v) any other document or agreement imposing covenants, rules, regulations, guidelines or policies upon Aspen Valley Ranch (collectively, the "**AVR Governing Documents**"), Declarant agrees that it, while acting as Declarant under the Covenants, in the exercise of the Declarant Voting Rights or in its authority to appoint members of the Board, shall not, without the express written consent of Owner amend the AVR Governing Documents or create, establish, pass impose any further covenant, rules, regulation, policy, guideline that materially and adversely effects the ownership, use, enjoyment or development by Owner, or any affiliate of Owner, of any Protected Area (defined below).  Without limiting the foregoing, Declarant further agrees that it shall not, without the prior written consent of Owner, which consent shall not be unreasonably withheld, exercise rights of Declarant with respect to the Owner Homesteads pursuant to Sections 8.01, 8.02, 8.04, 8.06, 8.10 and 8.11 of the Covenants, to the extent such exercise of rights is within any Protected Area.  Declarant also agrees that it shall not, without the prior written consent of Owner, which consent may be withheld at the Owner's sole discretion, exercise rights of Declarant with respect to the Owner Homesteads pursuant to Sections 11.02 and/or 12.01 of the Covenants.

For purposes of this Agreement, the term "Protected Area" means (A) any activity, building, development and/or landscape envelope within the Owner Homesteads; (B) areas in-between any envelopes on Homestead 8 and Homestead 9, including areas along the shared property boundary of Homestead 8 and Homestead 9 and the envelopes; and/or (C) area within 200 feet of any activity, building, development and/or landscape envelopes, on the Owner Homesteads.

**2.     Appointment of Board Member and Review Committee Member**.  During any period in which Declarant controls the appointment of members to the Board, Declarant shall cause a representative selected by Buyer to serve on the Board and on the Design Review Committee.

**3.     Successors and Assigns**.   The terms, covenants and provisions contained in this Agreement shall bind Declarant, and any successor Declarant (other than Wilmington Trust), and Declarant shall make any future transfer or assignment of Declarant's rights subject to the terms of this Agreement.

**4.     Counterparts**.  This Agreement may be signed in counterparts and all of which, when taken together, shall constitute one instrument.

**5.     Attorneys' Fees**. In the event of any dispute arising under this Agreement, the substantially prevailing party in such dispute shall be entitled to collect its reasonable attorneys' fees and costs from the substantially non-prevailing party in such dispute.

**[signature page follows]**

IN WITNESS WHEREOF, this Agreement is executed as of the day and year first above written.

DECLARANT:

AVR AH LLC, a Colorado limited liability company

By: _____

Name: BROOKE A. PETERSON

Title: MANAGER

STATE OF COLORADO          )
                           ) ss.
COUNTY OF PITKIN           )

The foregoing instrument was acknowledged before me this 15th day of October, 2021, by Brooke A. Peterson as ~~President~~ Manager of AVR AH LLC, a Colorado limited liability company.

_____
Notary Public

My commission expires: 1·2·2022

MELISSA JONES
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144000126
My Commission Expires January 2, 2022

OWNER:

Beyond the Beach LLC, a Colorado limited liability company

By: Seth J Brufsky
Name: Seth J. Brufsky
Title: Manager

STATE OF ___Texas___        )
                            ) ss.
COUNTY OF ___Harris___      )

The foregoing instrument was acknowledged before me this 13th day of October, 2021, by Seth J. Brufsky as Manager of Beyond the Beach LLC, a Colorado limited liability company.

_____
Notary Public

My commission expires: ___04/12/2025___

Monique R Major
Notary Public, State of Texas
ID NUMBER
13302885-5
COMMISSION EXPIRES
April 12, 2025

Notarized online using audio-video communication