# EXHIBIT 2

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 10, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **STRUDEL HOLDINGS LLC and** | § | **Case No. 23-90757 (CML)** |
| **AVR AH LLC,** | § |  |
|  | § | **(Jointly Administered)** |
| **Debtors.**[1] | § |  |
|  | § |  |

**ORDER (I) APPROVING THE BIDDING PROCEDURES,
(II) SCHEDULING CERTAIN DATES WITH RESPECT THERETO,
(III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT
PROCEDURES,  AND (V) GRANTING RELATED RELIEF**
**[Relates to Docket No. 5]**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") (a) authorizing and approving Bidding Procedures, attached hereto as **Exhibit 1**, (b) scheduling certain related dates and deadlines, (c) approving the form and manner of notice of the Auction and potential Sale Transaction, attached hereto as **Exhibit 2**, (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with any sale and approving the form and manner of notice thereof, attached as **Exhibit 3** hereto, and (e) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426).  The Debtors' service address is:  PO Box 4068, Aspen, CO 81612.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion or the Bidding Procedures.

III of the United States Constitution; and this Court having found that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any, and this Court having determined that the legal and factual bases set forth in support of the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **FOUND AND DETERMINED THAT**:

1.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.      <u>Bases for Relief</u>.  The bases for the relief requested in the Motion are sections 105, 363, 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006(a), 9007, and 9014.  The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion.

4.      <u>Notice of the Bidding Procedures Motion</u>.  Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bidding Procedures.  The notice of the Motion and opportunity for hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

5.      <u>Bidding Procedures</u>.  The Bidding Procedures are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties in interest.  The Bidding Procedures are designed to build a robust marketing and sale process following entry of this Order.  The Bidding Procedures and all such steps and expenses incurred by the Debtors in connection with the implementation of the Bidding Procedures and this Order shall be deemed reasonable and appropriate and within the sound business judgment of the Debtors pursuant to section 363(b) of the Bankruptcy Code.

6.      <u>Sale Notice</u>.  The Sale Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the Auction and potential Sale Transaction, including, without limitation:  (a) the date, time, and place of the Auction (if any); (b) the Bidding Procedures; (c) specific identification of the property to be sold; and (d) a description of the Sale Transaction as being proposed, subject to this Court's entry of an order approving the Sale Transaction after notice and a hearing, free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable purchase agreement), with all such liens, claims, encumbrances, and other interests (if any) attaching with

3

the same validity and priority to the Sale Transaction proceeds, and no other or further notice of the Auction or the Sale Transaction shall be required.

7.  <u>Assumption and Assignment Procedures</u>.  The Potential Assumption Notice, substantially in the form attached hereto as **<u>Exhibit 3</u>**, is reasonably calculated to provide all non-Debtor counterparties to the Potential Transferred Contracts with proper notice of the potential assumption and assignment of their Potential Transferred Contract, the proposed Cure Costs relating thereto, and the related Assumption Procedures, and no other or further notice of such intention, the Cure Costs, or the Assumption and Assignment Procedures shall be required; *provided* that the mere listing of any Potential Transferred Contract on the Potential Assumption Notice does not require or guarantee that such Potential Transferred Contract will be assumed and assigned, and all rights of the Debtors with respect to such Potential Transferred Contracts are reserved.  The Assumption Procedures are reasonable and appropriate.

**IT IS HEREBY ORDERED THAT**:

**I.    Important Dates and Deadlines.**

8.  The following dates and deadlines are approved provided notice is given in accordance with the terms of this Order:

| Event or Deadline | Date and Time (all times in Central Time) |
| --- | --- |
| Cure Objection Deadline[3] | September 19, 2023, at 5:00 p.m. |
| General Bid Deadline | September 19, 2023, at 5:00 p.m. |
| Auction (If Required) | September 27, 2023, at 9:00 a.m. |
| Deadline for Objections to Approval of any Winning Bid (including Back-Up Bids) , including objections based on the manner in which the Auction was conducted and the identity | October 2, 2023, at 5:00 p.m. |

---

[3]   Within ten (10) business days after entry of the Bidding procedures Order, the Debtors shall serve Potential Assumption Notices on Contract Counterparties.

14122774

| of the Winning Bidder, whether submitted prior to, on, or after the Bid Deadline (the "Sale Objection Deadline") | |
| --- | --- |
| Sale Hearing | October 5, 2023, at 2:00 p.m. |
| Closing Date Deadline | The date that is 15 days after entry of an order approving any Sale |

9.       All objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court so as to be ***actually received*** no later than the Cure Objection Deadline or Sale Objection Deadline, as applicable, by Clerk of Court the following parties:

| **Proposed Counsel to the Debtors** |
| --- |
| Porter Hedges LLP<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Attn.: Joshua W. Wolfshohl |
| **Office of the United States Trustee (Region 7)** |
| Office of The United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002 |

10.       If any party fails to timely file a Cure Objection or Sale Objection by the Cure Objection Deadline or Sale Objection Deadline, as applicable, or otherwise abide by the procedures set forth in the Bidding Procedures, regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction, including the transfer of the Ranch to the Winning Bidder, free and clear of all liens, claims,

5

interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

11.     In accordance with the Bidding Procedures and subject to the consultation and reservation of  rights of the Lender Parties (as defined below) set forth therein or in this Order, the Debtors shall present the results of the Auction (if any) or otherwise present any Winning Bidders to the Court by filing a notice on the docket as soon as practicable after the Auction (if any) or at such point as the Winning Bidder has been selected, but in no event later than the commencement of the Sale Hearing.

## II.     Auction, Bidding Procedures, and Related Relief.

12.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are approved in their entirety and incorporated by reference as though fully set forth herein.  The Debtors are authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures and subject to the consultation and reservation of rights of the Lender Parties set forth therein or in this Order, and to take all actions as are necessary or appropriate to implement the Bidding Procedures.

13.     Subject to the consultation and reservation of rights of the Lender Parties set forth in the Bidding Procedures or in this Order, the Debtors may, in accordance with the Bidding Procedures (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject, at any time before entry of an Order of the Bankruptcy Court approving the Winning Bid, any bid that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, (iii) not on better terms than any other Qualified Bid, including, any stalking horse bid, if any, (iv) contrary to the best interests of the Debtors, their estates, their creditors, and

other stakeholders; and (c) at or before the conclusion of the Auction, may impose additional terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

14.     The Debtors shall not designate a stalking horse bidder without further motion to, and order from, the Court after notice and a hearing, and any stalking horse bidder shall only be designated after consultation with the Lender Parties in accordance with the Bid Procedures.

15.     The Debtors may determine, in their business discretion and after consultation with the Lender Parties in accordance with the Bid Procedures, not to conduct an Auction. If the Debtors determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within two business days of such determination.

16.     If the Debtors do not receive more than one Qualified Bid and either (i) the Lender Parties have delivered a binding and non-revocable written notice to the Debtors committing that they will not attempt to credit bid at the Auction or (ii) the Court has issued a ruling precluding the Lender Parties from credit bidding their claims, then the Debtors may elect, in consultation with the Lender Parties, not to hold the Auction.

17.     If the Debtors receive more than one Qualified Bid, then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

18.     Subject to the consultation and reservation of rights of the Lender Parties set forth in the Bidding Procedures or this Order, if one or more Qualified Bid(s) exist for acquiring a subset of the parcels comprising the Ranch, then the Debtors may, in the exercise of their reasonable business judgment and in accordance with the Bidding Procedures, first conduct a sub-Auction for such subset of the parcels comprising the Ranch that has at least one Qualified Bid pursuant to the Bid Procedures.

19.     Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or otherwise recorded.

20.     Absent further order of the Court, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

21.     Except as otherwise provided in this Order, the Debtors, in their business judgment, further reserve the right, as they may reasonably determine to be in the best interests of their estates, subject to the terms and conditions under the Bidding Procedures including the consultation and reservation of rights of the Lender Parties set forth in the Bidding Procedures or this Order: (i) determine which Potential Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) waive terms and conditions set forth herein with respect to all Qualified Bidders to the extent permissible under this Order or the Bid Procedures; (vi) modify the Bid Procedures or withdraw the request to sell the Ranch, as applicable, to the Winning Bidder or Backup Bidder, as applicable, at any time with or without prejudice.  The Debtors shall not be entitled to amend the Bidding Procedures in a manner that adversely affects the Lender Parties' consultation and/or reservation of rights unless either (i) the Lender Parties agree or (ii) it is authorized by an order from this Court after notice and a hearing.

## III. Sale Notice.

22. The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved and the manner of service and publication of the Sale Notice set forth in the Motion is approved.

## IV. Assumption and Assignment Procedures.

23. The Assumption and Assignment Procedures set forth in the Motion are approved.

    a. **Potential Assumption Notice**. Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Potential Assumption Notice, attached hereto as **Exhibit 3**, on certain non-Debtor Contract counterparties (collectively, the "**Contract Counterparties**," and each, a "**Contract Counterparty**")

    b. **Content of Potential Assumption Notice**. The Potential Assumption Notice shall notify the applicable Contract Counterparties that the Potential Transferred Contracts may be subject to assumption and assignment in connection with the Sale Transaction, and contain the following information: (i) a list of the applicable Potential Transferred Contracts that may be assumed and assigned in connection with the Sale Transaction; (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Contract (the "**Cure Costs**"); and (iv) the deadline by which any Contract Counterparty to a Potential Transferred Contract on the Potential Assumption Notice must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "**Cure Objection**"); *provided* that service of a Potential Assumption Notice does not constitute an admission that such Potential Transferred Contract is an executory contract or unexpired lease or that such Potential Transferred Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

    c. **Cure Objections**. Cure Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to **September 19, 2023, at 5:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**"); *provided* that the Debtors may extend the Cure Objection Deadline by filing a notice of such extension on the Court's docket.

9

d. **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Potential Transferred Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e. **Dispute Resolution**.  Any Cure Objection to the proposed assumption and assignment of a Potential Transferred Contract or Cure Costs that remains unresolved after the Sale Hearing, shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Potential Transferred Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the applicable Winning Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Potential Transferred Contract may be conditionally assumed and assigned, subject to the consent of the applicable Winning Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the applicable Winning Bidder may determine that such Contract should be rejected and not assigned, in which case the Winning Bidder will not be responsible for any Cure Costs in respect of such contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "**Cure Dispute**"), the applicable Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f. **No Cure, or other, Objections**.  If there are no Cure Objections or if a Contract Counterparty does not file a Cure Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (i) the Cure Costs, if any, set forth in the Potential Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Potential Transferred Contract or any other document, (ii) the Contract Counterparty will be deemed to have consented to the Cure Costs, if any, and will be forever barred from objecting to the Cure Costs, if any, and from asserting any other claims related to such Potential Transferred Contract against the Debtors or the Winning Bidder, or the property of any of them; (iii) the assumption will be effective notwithstanding anything to the contrary in any Potential Transferred Contract or any other document; and (iv) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Potential Transferred Contract and will be forever barred

10

from asserting any other claims related to such Potential Transferred Contract against the Debtors or the Winning Bidder, or the property of either of them.

24. The inclusion of a Potential Transferred Contract in a Potential Assumption Notice will not: (a) obligate any Debtor to assume such Potential Transferred Contract or a Winning Bidder to take assignment of such Potential Transferred Contract or (b) constitute any admission or agreement of the Debtors that such contract is an Executory Contract. Only those Potential Transferred Contracts that are included on a schedule of assumed and assigned contracts attached to the executed definitive asset purchase agreement with a Winning Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Winning Bidder.

**V. Miscellaneous.**

25. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance the Bidding Procedures, subject in each case to the consultation and reservation of rights of the Lender Parties set forth in the Bidding Procedures or this Order.

26. Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Debtors may determine in their reasonable business judgment, after consultation with the Lender Parties, to suspend or cancel the Sale Process with respect to all or any portion of the Ranch.

27. The requirements set forth in Bankruptcy Local Rules and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas are satisfied by the contents of the Motion.

28. Except as expressly set forth in the Bidding Procedures with respect to the Lender Parties, all persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final

order by this Court in connection with the Motion and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

29.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

30.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

31.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies, or defenses that the Debtors or the Lender Parties have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or any rights, remedies or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items.

32.     Nothing in this Order or the Bidding Procedures shall prejudice the rights, defenses, and arguments of Nineteen77 Capital Solutions A LP; Bermudez Mutuari, Ltd; Wilmington Trust National Association, and UBS O'Connor LLC (collectively, the "Lender Parties") in connection with any other aspect of the Debtors' chapter 11 cases, including, without limitation, the Adversary Proceeding, the Preclusion Motion (as defined in the Bidding Procedures), or any relief not specifically granted in this Order, including the right to move to dismiss the Debtors' chapter 11 cases, to commence any other motion practice in these chapter 11 cases or in the Adversary Proceeding, to object to the retention of any broker, approval of the Stalking Horse Bid, approval of a sale to the Winning Bidder, or the right to be heard on whether assets related to the Ranch are owned by the Debtors and capable of being included in any Sale (including, without limitation, the ownership of any common areas that any entity, including AVR HOA, may claim ownership).

12

Entry of this Order does not grant the Debtors authority to close any sale. The Debtors shall file a motion seeking approval of any sale, and the Lender Parties shall have the right to object to such motion and be heard at a hearing on such motion. The Lender Parties may file a motion seeking relief in this Court relating to any matter over which they have consultation rights under the Bidding Procedures or this Order.

33. Nothing in this Order or the Bid Procedures constitutes a waiver or shall prejudice in any way the Debtors' claims against the Lender Parties, including claims and rights asserted, or that could be asserted, in connection with the Preclusion Motion, the pending Adversary Proceeding or rights and claims that may arise after entry of this Order.

34. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: August 08, 2023

_____
Christopher Lopez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Bidding Procedures**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **STRUDEL HOLDINGS LLC and** | § | **Case No. 23-90757 (CML)** |
| **AVR AH LLC,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

## BIDDING PROCEDURES

On July 27, 2023 (the "**Petition Date**"), the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

On August 8, 2023, the Court entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. [●]] (the "**Bidding Procedures Order**")[2], granting the Bidding Procedures Motion[3] which, among other things, resulted in the approval of these Bidding Procedures. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing and auction process (the "**Sale Process**") for the sale of substantially all of Debtor AVR's assets (the "**Ranch**") in furtherance of an asset sale transaction (the "**Sale Transaction**").

For the avoidance of doubt, the Debtors, in the exercise of their business judgment and in consultation with the Lender Parties (defined below), may elect to exclude any portion of the Ranch from the Bidding Procedures and seek authority to sell such portion(s) of the Ranch at either a private or public sale, subject to Court approval of any alternative sale method. Further, the Debtors may determine in their discretion and in consultation with the Lender Parties, whether to proceed with the Sale Transaction pursuant to the Bidding Procedures.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed in the Bidding Procedures Motion or the Bidding Procedures Order, as applicable.

[3] *Debtors' Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving Bid Protections, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption And Assignment Procedures, (VI) Authorizing the Debtors to Enter into Definitive Purchase Agreements, And (VII) Granting Related Relief* [Docket No. ●]

14122777

> Copies of the Bidding Procedures Order and other related documents are available at the Court's website at https://www.txs.uscourts.gov/ or free of charge by contacting proposed counsel to the Debtors.

| DEBTOR REPRESENTATIVES AND CONTACT INFORMATION | |
|---|---|
| **Proposed Counsel to the Debtors** | |
| Porter Hedges LLP | Attn: Joshua W. Wolfshohl (jwolfshohl@porterhedges.com) and Aaron J. Power (apower@porterhedges.com) Tel: 713-226-6000 |

## I.    KEY DATES AND DEADLINES.

| Event or Deadline | Date and Time (all times in Central Time) |
|---|---|
| Cure Objection Deadline[4] | September 19, 2023, at 5:00 p.m. |
| General Bid Deadline | September 19, 2023, at 5:00 p.m. |
| Auction (If Required) | September 27, 2023, at 9:00 a.m. |
| Deadline for Objections to Approval of any Winning Bid (including Back-Up Bids), including objections based on the manner in which the Auction was conducted and the identity of the Winning Bidder, whether submitted prior to, on, or after the Bid Deadline. | October 2, 2023, at 5:00 p.m. |
| Sale Hearing | October [●], 2023, at __:__ a.m./p.m. |
| Closing Date Deadline | The date that is 15 days after entry of an order approving any Sale |

Within five (5) business days after entry of the Bidding Procedures Order, or as soon thereafter as is reasonably practicable, the Debtors will serve a notice of the Sale Transaction and potential Auction (the "**Sale Notice**") on every known Potential Bidder.

All dates set forth above, other than the sale hearing, may be extended by the Debtors in their discretion and in consultation with the Lender Parties.  The Auction shall not take place unless (i) the Court has entered a ruling on the Preclusion Motion (as defined below), subject to the Lender

---

[4]    Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall serve Potential Assumption Notices on Contract Counterparties.

Parties rights, if any, to seek and obtain a stay pending such appeal prior to the Auction, (ii) the Lender Parties provide a binding and non-revocable written notice to the Debtors committing that they will not attempt to credit bid at the Auction, or (iii) the Debtors determine to proceed with the Auction notwithstanding the Lender Parties intent to exercise their credit bid rights. In the event that the Auction is postponed due to the fact that the Court has not yet entered a ruling on the Preclusion Motion, the sale hearing shall be rescheduled to the extent required to enable the Court to enter such ruling.

## II. RESERVATION OF RIGHTS AND CONSULTATION RIGHTS OF THE LENDER PARTIES

The Debtors have (i) commenced an adversary proceeding (the "**Adversary Proceeding**") styled *AVR AH LLC; Strudel Holdings LLC; Charif Souki; and Karim Souki, Christopher Souki, and Lina Rizzuto, as Trustees of the Souki Family 2016 Trust v. Nineteen77 Capital Solutions A LP; Bermudez Mutuari, Ltd.; Wilmington Trust National Association, and UBS O'Connor LLC*, Adv. Proc. 23-09003 (CML), and (ii) filed the *Debtors' Motion Seeking Entry of an Order Precluding Certain Alleged Secured Parties from Submitting Credit Bids Pursuant to Sections 105(a) and 363(k) of the Bankruptcy Code* [ECF No. 6], No. 23-90757 (CML) (the "**Preclusion Motion**").

Neither these Bidding Procedures nor the Bidding Procedures Order shall prejudice the rights, defenses, and arguments of Nineteen77 Capital Solutions A LP; Bermudez Mutuari, Ltd; Wilmington Trust National Association, and UBS O'Connor LLC (collectively, the "**Lender Parties**") in connection with any other aspect of the Debtors' chapter 11 cases, including, without limitation, the Adversary Proceeding, the Preclusion Motion, or any relief not specifically granted in the Bidding Procedures Order, including the right to move to dismiss the Debtors' chapter 11 cases, to commence any other motion practice in these chapter 11 cases or in the Adversary Proceeding, to object to the retention of any broker, approval of the Stalking Horse Bid, approval of a sale to the Winning Bidder, or the right to be heard on whether assets related to the Ranch are owned by the Debtors and capable of being included in any Sale (including, without limitation, the ownership of any common areas that any entity, including AVR HOA, may claim ownership). Entry of the Bidding Procedures Order does not grant the Debtors authority to close any sale. The Debtors shall file a motion seeking approval of any sale, and the Lender Parties shall have the right to object to such motion and be heard at a hearing on such motion. The Lender Parties reserve the right to file a motion in this Court relating to any matter over which they have consultation rights under these Bidding Procedures.

The consultation rights of the Lender Parties set forth herein shall immediately and automatically terminate 2 days prior to the Auction unless, prior to the that date, the Lender Parties provide binding and non-revocable written notice to the Debtors committing that they will not attempt to credit bid at the Auction.

## III.    RETENTION OF BROKERS

Any decision by the Debtors' Chief Restructuring Officer to retain broker(s) to assist the Debtors with the Sale Process shall be made after consulting with the Lender Parties and shall be subject to Court approval on separate application.

## IV.    SUBMISSIONS TO THE DEBTORS

All submissions to the Debtors required or permitted to be made under the Bidding Procedures (including bids) must be directed to each of the following persons or entities unless otherwise provided (collectively, the "**Notice Parties**").  Unless specifically provided otherwise herein, e-mail shall be sufficient.

A.    <u>Debtors</u>:  Douglas Brickley, CRO, Stout, 1000 Main Street, Suite 3200, Houston, Texas 77002 (dbrickley@stout.com).

B.    <u>Debtors' Proposed Counsel</u>:  Porter Hedges, LLP, 1000 Main Street, 36th Floor, Houston, Texas, 77002, Attn: Joshua W. Wolfshohl (jwolfshohl@porterhedges.com) and Aaron J. Power (apower@porterhedges.com).

## V.    MARKETING PROCESS.

The Debtors have a list of buyers whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, the Sale Transaction.  The list of potential buyers includes parties the Debtors, the Lender Parties, or their advisors previously contacted regarding a possible transaction, regardless of whether these parties expressed any interest in pursuing a transaction (collectively, the "**Contact Parties**").  The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors, acting solely through their Chief Restructuring Officer (or, if applicable, the Debtors' Court-approved broker) and not through any other party, may distribute (if not already distributed) to each Contact Party and any other Potential Bidder an "Information Package" consisting of:

(i)    a copy of the Bidding Procedures and Bidding Procedures Order;

(ii)    a form confidentiality agreement; and

(iii)    any other materials appropriate under the circumstances.

## VI.    STALKING HORSE BID

The Debtors may determine that, in an exercise of their business judgment and in consultation with the Lender Parties, it is appropriate to: (a) select one or more Potential Bidders to act as stalking horse bidders in connection with a Sale (each, a "**Stalking Horse Bidder**") and

4

enter into a purchase agreement, after consultation with the Lender Parties, with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "**Stalking Horse Agreement**").

For the avoidance of doubt, neither these Bidding Procedures nor the Bidding Procedures Order are an approval of a Stalking Horse Bidder or Stalking Horse Agreement. The Debtors shall file a separate motion seeking approval of any Stalking Horse Bidder and Stalking Horse Agreement, and the Lender Parties shall have the right to object to such motion and be heard at a hearing on such motion.

## VII. PARTICIPATION REQUIREMENTS.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in consummating a Sale Transaction must deliver or have previously delivered to the Notice Parties an executed confidentiality agreement on terms acceptable to the Debtors (a "**Confidentiality Agreement**").  Such person or entity that has delivered an executed Confidentiality Agreement shall be considered a potential bidder (a "**Potential Bidder**").  The Lender Parties shall be considered Potential Bidders.

## VIII. DUE DILIGENCE.

### A.    Bidder Diligence.

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "**Data Room"**) and to additional nonpublic information regarding the Debtors.  The Debtors will make reasonable efforts to address all reasonable requests for additional information and due diligence access, and the Debtors will endeavor to post substantially all written due diligence provided to any Potential Bidder to the Data Room.

The Debtors may refuse any party access to due diligence information, including access to the Data Room, in whole or in part and at any time, if the Debtors determine in their reasonable business judgment, in consultation with counsel, that (i) access by such party may be harmful to the Debtors or their estates (including due to commercial sensitivity) or (ii) such party has not established, or has raised doubt, that it intends or has the capacity to consummate the proposed Sale Transaction in good faith.

The due diligence period and the Data Room shall be open until the Bid Deadline.  After the Bid Deadline, the Debtors shall have no obligation to furnish due diligence information.  The Debtors may, in their discretion, extend a party's time to conduct due diligence.

The Debtors make no representation or warranty as to the information provided through this due diligence process or otherwise, including the documents in the Data Room, except as set forth in any Definitive Sale Documents (as defined below).  Nothing herein shall obligate the Debtors or their representatives to furnish information of any kind whatsoever to any person.

Potential Bidders shall not, directly or indirectly, contact any customer, supplier, or contractual counterparty of the Debtors in respect of matters relating to the Debtors or a potential transaction with the Debtors (or otherwise initiate, participate in, or engage in such discussions

5

with such parties) without the prior written consent of the Debtors, which consent shall not be unreasonably withheld.

**B.      Debtor Information Requests.**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the proposed Sale Transaction.  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Lender Parties, that such bidder may no longer participate in diligence (including access to the Data Room) or that a bid made by such bidder is not a Qualified Bid.

**IX.      RESTRICTIONS ON COMMUNICATIONS.**

Except as otherwise provided in this section IX, all communications by and between the Lender Parties, in exercise of any consultation rights, and the Debtors shall only be conducted through the Debtors' Chief Restructuring Officer. There shall be no communications between or among Potential Bidders, expressly including the Lender Parties, unless the Debtors' advisors have authorized such communication in writing; *provided*, *however*, that the Lender Parties may continue to have communications with certain Potential Bidders identified in a list previously provided to the Debtors; *provided, further,* that  (i) the Lender Parties shall provide to the Chief Restructuring Officer written notice and copies of all written materials they intend to provide to Potential Bidders prior to providing such written materials and the Chief Restructuring Officer may, in his discretion, make such written materials available to other Potential Bidders, (ii) keep the Chief Restructuring Officer reasonably informed as to the substance of any oral or written communications between the Lender Parties and any Potential Bidder(s), and (iii) the Chief Restructuring Officer shall be entitled to communicate with such Potential Bidders separately or jointly with the Lender Parties.

The Debtors reserve the right, in their reasonable business judgment to disqualify any Potential Bidders that have communications between or amongst themselves.

For the avoidance of doubt, to the extent any Potential Bidders are interested in joining bids, the Debtors' advisors will facilitate, in consultation with the Lender Parties, the communications between such parties and the potential joining of bids.

For the further avoidance of doubt, Potential Bidders shall be authorized to communicate with financing sources backing their bid.

**X.      BID DEADLINES.**

All bids must be transmitted via e-mail (in .pdf or similar format) to the Debtors and their advisors specified herein so as to be **actually received** on or before **September 19, 2023, at 5:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**").

## XI.     BID REQUIREMENTS.

Only bids and bidders that satisfy the following requirements as determined by the Debtors in their business judgment and in consultation with the Lender Parties (collectively, the "**Bid Requirements**") will be permitted to participate in the bidding (and Auction, if applicable) and be considered for one or more Sale Transaction(s):

A.  **Written, Binding Bid**.  Each bid must be timely and properly submitted in accordance with the bid submission process set forth herein, including successful and timely delivery of the Good Faith Deposit (as defined below).  All bids must be binding and irrevocable unless and until the Debtors accept a higher bid and such bidder is not selected as the Back-Up Bidder (as defined below).

B.  **Identity**.  Each bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the Ranch or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the bidder is legally empowered to complete the transactions on the terms contemplated by the parties.  "Participation" in a bid includes persons or entities that are equity holders in an entity specially formed for the purpose of effectuating the Sale Transaction.  Each bid must also include contact information for the specific person(s) whom the Debtors (and their advisors) should contact regarding such bid.  Each such person or entity shall have delivered an executed Confidentiality Agreement to the Debtors in accordance with the instructions set forth above.

C.  **Proposed Sale Transaction**.  Each bid must clearly state whether the bidder seeks to acquire the entirety of the Ranch or a subset thereof and which liabilities the bidder agrees to assume.  Each bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any, including any assumption of liabilities (collectively, the "**Proposed Purchase Price**").  The Proposed Purchase Price should be a single point value in U.S. Dollars for the total value of the Ranch, or subset thereof, the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

D.  **Deposit**.  Each bid must be accompanied by a cash deposit equal to ten percent (10%) of the Proposed Purchase Price of such bid, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors (the "**Good Faith Deposit**").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the Proposed Purchase Price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased Proposed Purchase Price; *provided, however*, that the Debtors may, on a case-by-case basis and in each case in consultation with the Lender Parties, elect to waive the requirement that a Qualified Bidder deliver the initial Good Faith Deposit if such Qualified Bidder otherwise

7

provides the Debtors with sufficient evidence satisfactory to the Debtors, in their business judgment, that such Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale Transaction and to fully satisfy the Qualified Bidder's obligations under its bid.  In the event that the Lender Parties submit a bid, they shall not be required to make a Good Faith Deposit.

E.    **Minimum Bid**.  In the event the Debtors have obtained Court approval of one or more Stalking Horse Bidders, each bid submitted must, either: (a) (i) provide for the payment of aggregate consideration for the same assets that is in excess of at least the sum of (x) the Purchase Price (as defined in the Stalking Horse Purchase Agreement), (y) any bid protections approved by the Court upon the Debtors motion to approve a Stalking Horse Bid, and (z) the Initial Bid Increment (as defined below) ((x)-(z), collectively, the "**Minimum Overbid**") or (b) propose an alternative transaction that, in the Debtors' business judgment and in consultation with the Lender Parties, provides higher value or better terms than the Stalking Horse Bid, if any, including by exceeding the Minimum Overbid, and after taking into account, in light of all the Bids submitted for the Ranch or any subset of the parcels comprising the Ranch, is determined by the Debtors to be in the best interests of the Debtors' estates.  For the avoidance of doubt, as to clause (b) in this Section VIII.E, the Debtors may evaluate each Bid in light of each of the factors set forth therein, but a Bid is not required to meet each factor in order to be determined a Qualified Bid.

The Debtors may, in consultation with the Lender Parties, consider a Bid for a portion of the Ranch (each such bid, a "**Partial Bid**").

If the value of a competing Qualified Bid (whether such Qualified Bid is for all of the Ranch or is a Partial Bid) relative to the Stalking Horse Bid, if any, includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Purchase Agreement, if any), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors in better evaluating the competing Qualified Bid.

"**Initial Bid Increment**" shall mean $500,000.

F.    **Transaction Documents**.  Each bid must be accompanied by an executed purchase agreement with respect to the proposed Sale Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such bid.  In addition, the executed purchase agreement accompanying such bidder's bid must be further accompanied by a redline copy marked to reflect any amendments or modifications to such form purchase agreement or Stalking Horse Purchase Agreement.  .

G.  **Back-Up Bidder Commitment**.  Each bid must include a written commitment by the bidder to serve as a Back-Up Bidder in the event that such bidder's bid is not selected as the Winning Bid but is the next highest or otherwise best bid.

H.  **Proof of Financial Ability to Perform**.  Each bid must include written evidence sufficient for the Debtors to reasonably conclude that the bidder has the necessary financial ability to close the proposed Sale Transaction(s).  Such information must include the following:

1.  contact names and telephone numbers for verification of financing sources;

2.  evidence of the bidder's internal resources and, if applicable, proof of unconditional, fully executed, and effective financing commitments from one or more reputable sources in an aggregate amount equal to the Cash portion of such bid (including, if applicable, the payment of cure amounts), in each case, as are needed to close the Sale Transaction;

3.  a description of the bidder's pro forma capital structure; and

4.  any other financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors to demonstrate that such bidder has the ability to close the proposed Sale Transaction(s).

I.  **Contingencies; No Financing or Diligence Outs**.  Each bid shall not be conditioned on the obtaining of, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence.  Each bid must identify with particularity each and every condition to closing.

J.  **Authorization**.  Each bid must contain evidence acceptable to the Debtors that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its bid and the consummation of the Sale Transaction.

K.  **Contracts and Leases**.  Each bid must identify each and every executory contract and unexpired lease to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "**Potential Transferred Contracts**").  Each bid must be accompanied by adequate assurance of future performance under all Potential Transferred Contracts, which shall include audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, and such other documentation as the Debtors may request (the "**Adequate Assurance Package**").  The Adequate Assurance Package should be submitted in its own compiled PDF document.

L.  **As-Is, Where-Is**.  Each bid must include a written acknowledgement and representation that the bidder:  (1) has had an opportunity to conduct any and all due diligence regarding the Sale Transaction prior to making its offer; (2) has relied

9

solely upon its own independent review, investigation, or inspection of any documents, other diligence materials, and/or the Ranch in making its bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives regarding the Sale Transaction or the completeness of any information provided in connection therewith or the Auction (if any).

M.    **No Fees**.  Each bidder will bear its own costs and expenses (including legal fees) in connection with the proposed Sale Transaction.  Each bid shall indicate that such bidder will not seek any transaction break-up fee, termination fee, expense reimbursement, working fee, broker's fee or similar type of payment.

N.    **Commitment to Close**.  Each bid must provide a commitment to close as soon as practicable, but in no event later than the date that is 15 days after entry of an order approving the Sale.

O.    **Joint Bids**.  The Debtors will be authorized to approve joint bids in their reasonable discretion on a case-by-case basis; *provided* that the foregoing is subject to the restrictions on communications between Potential Bidders set forth herein.

P.    **Compliance with Bidding Procedures, Bankruptcy Code, and Non-Bankruptcy Law; Acknowledgment**.  Each bid must comply in all respects with these Bidding Procedures, the Bankruptcy Code, and any applicable non-bankruptcy law.  Each bid must also include a written acknowledgment that the bidder agrees to all of the terms of the Sale Transaction set forth in these Bidding Procedures and that it has not engaged in any collusion, coordination, or unfair competitive practices with respect to its bid.  By submitting its bid, each bidder agrees not to submit a bid or seek to reopen the Sale Process or the Auction (if held) after conclusion of the selection of the Winning Bidder (as defined below).

Q.    **Consent to Jurisdiction**.  Each bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, any Definitive Sale Documents, and consummation of the Sale Transaction, as applicable.  A submission of a bid by the Lender Parties shall not be construed as a consent to the jurisdiction of the Court or a waiver of the right to a jury trial in the Adversary Proceeding.

> **The submission of a bid shall constitute a binding and irrevocable offer (a) for the Winning Bidder(s) and Back-Up Bidder(s), until consummation of the Sale Transaction and (b) for any bidder other than the Winning Bidder(s) and Back-Up Bidder(s), until two business days after entry of the order approving the Winning Bid(s) and (if applicable) the Back-Up Bid(s) for the Ranch, and each bid must include a written acknowledgement and representation to such effect.**

10

**XII.   QUALIFIED BIDS, QUALIFIED BIDDERS, AND BID PAIRING.**

A bid is a "**Qualified Bid**" if the Debtors, in the Debtors' business judgment, determine that such bid (A) satisfies the Bid Requirements set forth above; and (B) is reasonably likely to be consummated if selected as the Winning Bid (or Back-Up Bid, as applicable) (as defined below) for the Ranch, no later than the Applicable Outside Date.  The "**Applicable Outside Date**" is the date that is 15 days following entry of an order approving the Sale.  A Potential Bidder that submits a Qualified Bid is a "**Qualified Bidder**" with respect to the Ranch or the subset of the parcels comprising the Ranch to which such Qualified Bid relates.

Prior to the Auction (if held), the Debtors shall determine, in consultation with the Lender Parties, which bidders are Qualified Bidders and will notify the bidders whether bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held).  Any bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a bid that does not satisfy the requirements of a Qualified Bid, the Debtors may, in their discretion and in consultation with the Lender Parties, provide the applicable bidder with the opportunity to remedy any deficiencies prior to the Auction.

As soon as reasonably practicable after the Bid Deadline, the Debtors will notify each Potential Bidder whether such party is a Qualified Bidder.

Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the date set for the Auction, the Debtors may, in consultation with the Lender Parties, discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors, in consultation with the Lender Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Proposed Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction (if any) as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right to work, in consultation with the Lender Parties, with (A) Potential Bidders to aggregate two or more bids into a single consolidated bid prior to the Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any). The Debtors reserve the right to cooperate, in consultation with the Lender Parties, with any Potential Bidder to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid.

For the avoidance of doubt, a Stalking Horse Bidder, if any, shall be deemed to be a Qualified Bidder, a Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder may participate in the Auction. Unless an order has been entered granting the relief sought in the Preclusion Motion, subject to the Lender Parties rights, if any, to seek and obtain a stay pending such appeal prior to the Auction, the Lender Parties shall be deemed a Qualified Bidder.

11

## XIII.  NO QUALIFIED BIDS.

If no Qualified Bids other than a Stalking Horse Bid are received by the Bid Deadline, then the Debtors may, in consultation with the Lender Parties, cancel the Auction, and may decide, in the Debtors' reasonable business judgment and in consultation with the Lender Parties, to designate the Stalking Horse Bid as the Winning Bid, and pursue approval of the Sale Transaction to the Stalking Horse Bidder, if any, pursuant to the Stalking Horse Purchase Agreement.  The Debtors shall promptly file notice of any cancellation of the Auction and designation of the Stalking Horse Bid as the Winning Bid with the Court.

## XIV.  AUCTION.

If the Debtors receive two or more Qualified Bids with respect to the Ranch, or a subset thereof, the Debtors may conduct an auction to determine, in consultation with the Lender Parties, the Winning Bidder (or Back-Up Bidder, as applicable) with respect to the Ranch or applicable subset thereof (any such auction, an "**Auction**").  In such event, the Debtors will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the Ranch or subset thereof, as determined by the Debtors in their business judgment (each such Qualified Bid, a "**Baseline Bid**") and (B) provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and their respective advisors (if any), in each case, as soon as reasonably practicable after the Bid Deadline but in no case later than the date that is three business days prior to the Auction.  The Debtors' determination of which Qualified Bid(s) constitute the Baseline Bid(s) shall take into account any factors the Debtors, in their business judgment, deem relevant, in consultation with the Lender Parties, to the value of the Qualified Bid to the Debtors' estates.

The Auction (if any) shall take place on **September 27, 2023, at 9:00 a.m. (prevailing Central Time)**, via remote video or in person at the Debtors' election and at a location to be determined by the Debtors, and shall be conducted in a timely fashion according to the following procedures (the "**Auction Procedures**"):

### AUCTION PROCEDURES

A.  **The Debtors Shall Conduct the Auction; General Provisions**.  The Debtors, with the assistance of their advisors and in consultation with the Lender Parties, shall direct and preside over any Auction.  At the commencement of the Auction, in consultation with the Lender Parties, the Debtors (1) may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit any successive bid(s); and (2) shall describe the terms of the Baseline Bid(s).  Only incremental bids that comply with the terms set forth in section XI.B of the Bidding Procedures shall be considered "**Overbids**."  All material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.  The Debtors shall determine in their reasonable business judgment, and in consultation with the Lender Parties, whether an incremental bid is an "Overbid." The Debtors shall maintain a written transcript of all bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid(s) (or Back-Up Bid(s), as applicable) (as defined below).

12

Only Qualified Bidders, the Debtors, the respective legal and financial advisors of the foregoing, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction remotely or in person in accordance with the Debtors' directions and may speak or bid themselves or through duly authorized representatives. Except as otherwise permitted by the Debtors, in consultation with the Lender Parties, only Qualified Bidders shall be entitled to bid at the Auction. The Lender Parties shall be entitled to attend the Auction whether or not they are Qualified Bidders.

The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any bid made by a Qualified Bidder during the Auction.

B. **Terms of Overbids**.  Each Overbid must comply with the following terms:

1. <u>Minimum Overbid Increment</u>.  At the commencement of the initial solicitation of Overbids, the Debtors shall announce the minimum increment by which any Overbid must exceed the applicable Baseline Bid (the "**Bidding Increment**").  At the commencement of each subsequent round of solicitation of Overbids, the Debtors shall announce the Bidding Increment by which any Overbid must exceed the Prevailing Highest Bid (as defined below) at such time.  The Debtors may, in their reasonable business judgment and in consultation with the Lender Parties, announce increases or reductions to the Bidding Increment at any time during the Auction.

2. <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may, in consultation with the Lender Parties, announce a deadline by which time any Overbids must be submitted to the Debtors (an "**Overbid Round Deadline**"); *provided* that the Debtors, in their reasonable business judgment and in consultation with the Lender Parties, may extend any Overbid Round Deadline.

3. <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment and in consultation with the Lender Parties, but shall otherwise comply with the terms of the Bidding Procedures.

4. <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, in consultation

13

with the Lender Parties, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best bid (the "**Prevailing Highest Bid**"). The Debtors shall describe to all applicable Qualified Bidders the material terms of any new Overbid designated by the Debtors, in consultation with the Lender Parties as the Prevailing Highest Bid, as well as the value the Debtors attribute, in consultation with the Lender Parties to such Prevailing Highest Bid.

C.  **Consideration of Overbids**. The Debtors reserve the right, in their business judgment and in consultation with the Lender Parties, to adjourn the Auction one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment and in consultation with the Lender Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent financing commitments to consummate the proposed Sale Transaction at the prevailing Overbid amount.

D.  **No Round-Skipping**. To remain eligible to participate in the Auction, in each round of bidding, each Qualified Bidder, other than the Qualified Bidder that submitted the Prevailing Highest Bid, must submit an Overbid with respect to such round of bidding and to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction; *provided* that the Debtors may, waive such requirement in their business judgment and in consultation with the Lender Parties.

E.  **Closing the Auction**. The Auction shall continue until the Debtors, in their business judgment and in consultation with the Lender Parties, designate a Qualified Bid to be the highest or otherwise best Qualified Bid for the Ranch or applicable subset of parcels comprising the Ranch. Such Qualified Bid or Bids shall be designated the winning bid (the "**Winning Bid**" and such bidder, the "**Winning Bidder**") for the Ranch (or subset thereof), at which time the Auction with respect to the Ranch shall be closed; *provided* that (1) such Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid to the then Prevailing Highest Bid; and (2) the Debtors' designation of a Qualified Bid as a Winning Bid (or Back-Up Bid, as applicable) shall be subject to and conditioned on the Court's approval of such Winning Bid (or Back-Up Bid, as applicable) and the Sale Transaction contemplated thereby (but, for the avoidance of doubt, any Winning Bid(s) and Back-Up Bid(s) shall be binding and irrevocable pending Court approval). Notwithstanding the foregoing, the Debtors may require last and final "blind" bids in their discretion and in consultation with the Lender Parties.

14

F. **No Collusion; Good Faith Offer**. Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (1) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding process and (2) its Qualified Bid is a good faith, irrevocable, bona fide offer and it intends to consummate the Sale Transaction contemplated by its Qualified Bid if such Qualified Bid is the Winning Bid (or Back-Up Bid, as applicable) for the Ranch (or subset thereof); *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined bid if the Debtors, in consultation with the Lender Parties, approve such coordination in their reasonable discretion.

G. **Rejection of Bids**. The Debtors, in their business judgment and in consultation with the Lender Parties, may reject, at any time before entry of an order of the Court approving a Winning Bid (or Back-Up Bid, as applicable), any bid that the Debtors determine is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or the Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

*****

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) shall prevent the Debtors from exercising their respective fiduciary duties under applicable law (as determined in good faith by the Debtors). Further, if the Debtors determine that that it is not in the best interest of their estates to pursue an Auction, then, in consultation with the Lender Parties, the Debtors may cancel the Auction. If the Auction is cancelled, the Debtors shall file a notice of cancellation of the Auction with the Court.

## XV. DESIGNATION OF A BACK-UP BIDDER.

The Qualified Bidder(s) with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "**Back-Up Bid**," and such bidder, a "**Back-Up Bidder**") to purchase any or all of the Ranch will be determined by the Debtors, in consultation with the Lender Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Back-Up Bidder shall be required to keep its Back-Up Bid open and irrevocable until the closing of the transaction with the applicable Winning Bidder. The Back-Up Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Winning Bidder. If for any reason a Winning Bidder fails to timely consummate the purchase of the Ranch (or subset thereof), then the Back-Up Bidder will automatically be deemed to have submitted the Winning Bid for the Ranch (or subset thereof), and the Back-Up Bidder shall be deemed a Winning Bidder for the Ranch (or subset thereof). The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid. If the Back-Up Bid has already been approved by the Court, then the Debtors shall be authorized to close without further order of the Court upon at least twenty-four hours' advance notice, which notice will be filed with the Court.

15

## XVI. APPROVAL OF SALE.

The Debtors will present the results of the Auction to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (A) the Auction was conducted, and the Winning Bidder or Winning Bidders were selected, in accordance with the Bidding Procedures; (B) the Auction was fair in substance and procedure; (C) the Winning Bid or Winning Bids were Qualified Bids as defined in the Bidding Procedures; and (D) consummation of any Sale(s) as contemplated by the Winning Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtors and the Ranch and is in the best interests of the Debtors and their estates.

The Sale Hearing is presently scheduled to commence on October [●], 2023, at __:__ a.m/p.m. (prevailing Central Time), or as soon thereafter as counsel may be heard, before Judge Christopher Lopez, United States Bankruptcy Court for the Southern District of Texas.

## XVII. FIDUCIARY OUT.

Notwithstanding anything to the contrary in the Bidding Procedures or any document filed with or entered by the Court, nothing in the Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to the Sale Transaction or the Bidding Procedures to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in the Bidding Procedures or any document filed with or entered by the Court, until the closing of the Auction (if any), the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to, in consultation with the Lender Parties: (A) consider, respond to, and facilitate alternate proposals for sales or other transactions involving the Ranch (or subset thereof) (each, an "**Alternate Proposal**"); (B) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to Alternate Proposals; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposals.

## XVIII. "AS IS, WHERE IS," FREE-AND-CLEAR SALE.

Consummation of the Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors in the executed definitive documentation for the Sale Transaction ("**Definitive Sale Documents**"), the form and substance of which Definitive Sale Documentation shall be negotiated in consultation with the Lender Parties. Consummation of the Sale Transaction will be without any representations or warranties

16

whatsoever by the Debtors' representatives or advisors.  Unless otherwise specifically accepted or agreed to by the Debtors in Definitive Sale Documents, all of the Debtors' right, title, and interest in and to the Ranch disposed of in the Sale Transaction will be transferred to the Winning Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.  All bidders who submit a bid shall be deemed to be bound by this paragraph, regardless of whether the bid submitted satisfies the Bid Requirement to include an express statement to that effect.

## XIX.   RESERVATION OF RIGHTS.

The Debtors shall be entitled to modify the Bidding Procedures in their business judgment in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction (if any), additional customary terms and conditions on the Sale Transaction, including: (A) extending the deadlines set forth in the Bidding Procedures; (B) adjourning the Auction at the Auction; (C) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if any); (D) canceling the Auction; and (E) rejecting any or all bids or Qualified Bids.

## XX.   CONSENT TO JURISDICTION.

All bidders who submit a bid shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of the Bidding Procedures, regardless of whether the bid submitted satisfies the Bid Requirement to include an express statement to that effect.  The Lender Parties shall not be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of the Bidding Procedures.

## XXI.   RETURN OF DEPOSIT.

Any Good Faith Deposits provided by Qualified Bidders shall be held in one or more escrow accounts on terms acceptable to the Debtors.  Any such Good Faith Deposits will be returned to Qualified Bidders that are not Winning Bidders (or Back-Up Bidders, as applicable) on the date that is three business days after the Auction (if any).  Any Good Faith Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the purchase price for the applicable Sale Transaction(s) at closing.

If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid(s) (or Back-Up Bid(s), as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Good Faith Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

17

18

## <u>Exhibit 2</u>

**Sale Notice**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | § Chapter 11 |
| | § |
| **STRUDEL HOLDINGS LLC and** | § Case No. 23-90757 (CML) |
| **AVR AH LLC,** | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |
| | § |

## NOTICE OF AUCTION FOR THE
## SALE OF THE DEBTORS' ASSETS FREE AND CLEAR
## OF ANY AND ALL CLAIMS, INTERESTS, AND ENCUMBRANCES

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2023, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered the *Order (I) Approving the Bidding Procedures (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, (and (V) Granting Related Relief* [Docket No. [●]] (the "**Order**"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") to conduct a marketing and sale process, potentially including an auction (the "**Auction**"), to sell the Ranch. The Sale Process and Auction, if any, will be governed by the bidding procedures approved pursuant to the Order and attached to the Order as Exhibit 1 (the "**Bidding Procedures**"). **All interested bidders should carefully read the Bidding Procedures and the Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Order, the Bidding Procedures or the Order, as applicable, shall govern in all respects.

> Copies of the Order, the Bidding Procedures, or other documents related thereto are available on the Court's website at https://www.txs.uscourts.gov/ or free of charge by contacting the undersigned counsel.

Any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. The Bid Deadline is [●]**, 2023 at 4:00 p.m. (prevailing Central Time)**. The Auction, if required, will be [●], 2023 at 9:00 a.m. (prevailing Central Time).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

The Debtors expect to seek approval of any Sale Transaction(s) at the Sale Hearing, which is presently scheduled to commence on [●], **2023 at [9:00 a.m.] (prevailing Central Time)**, before the Judge [●] in the United States Courthouse, 515 Rusk Street, 4th Floor Courtroom [400/401] Houston, Texas 77002.

The Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures, subject to the consultation rights of the Lender Parties set forth in the Bidding Procedures or the Order.

Except as otherwise set forth in the Order with respect to objections to proposed cure amounts, objections, if any, to a proposed Sale Transaction **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court so as to be ***actually received*** no later than [●], **2023 at 4:00 p.m. (prevailing Central Time)**.

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING, TO THE EXTENT PROVIDED IN AN ORDER OF THE COURT APPROVING SUCH SALE, WITH RESPECT TO THE TRANSFER OF THE SELLING DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

[*Remainder of Page Intentionally Blank*]

Dated: [●], 2023

Respectfully submitted,

_/s/ Draft_____
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Michael B. Dearman (TX Bar No. 24116270)
1000 Main St., 36th Floor
Houston, TX 77002
Tel: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
apower@porterhedges.com
mdearman@porterhedges.com

_Proposed Counsel for the Debtors and Debtors in Possession_

**<u>Exhibit 3</u>**

**Potential Assumption Notice**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **STRUDEL HOLDINGS LLC and** | § | **Case No. 23-90757 (CML)** |
| **AVR AH LLC,** | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

### NOTICE TO CONTRACT PARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN
EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

---

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2023, the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving Contract Assumption and Assignment Procedures, , and (V) Granting Related Relief* [Docket No. [●]] (the "**Order**"),[2] by which the Court approved procedures for the assumption and assignment of executory contracts and unexpired leases (such executory contracts and unexpired leases to be potentially assumed or assumed and assigned, collectively, the "**Potential Transferred Contracts**" and each a "**Potential Transferred Contract**") and granted related relief, as set forth in the Order.

Pursuant to the Bidding Procedures and the terms of any Winning Bid, the Debtors **may** assume and assign to the Winning Bidder certain of the Potential Transferred Contracts listed on **<u>Exhibit A</u>** hereto (the "**Potential Assumption List**"), which include Potential Transferred Contracts to which you are a counterparty, upon approval of a sale or other transaction. The Debtors have conducted a review of their books and records and have included in the Potential Assumption List the amount of unpaid monetary obligations under each Potential Transferred Contract set forth therein (the "**Cure Costs**").

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, as applicable.

If you disagree with the proposed Cure Costs for the Potential Transferred Contract(s) to which you are a counterparty, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and **actually received** by the following parties **no later than** [●]**, 2023** at **4:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**") by the following parties: (a) proposed counsel for the Debtors, (i) Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002, Attn.: Joshua W. Wolfshohl (jwolfshohl@porterhedges.com); (b) counsel to the Stalking Horse Bidder, if any [●], and (c) the United States Trustee for the Southern District of Texas, Attn.: [●].

Absent a timely objection, the assumption of each executory contract or unexpired lease may become effective on the date set forth in **Exhibit A**, or such other date as the Debtors and the counterparty or counterparties to such Potential Transferred Contract may agree. If an objection is timely filed and not withdrawn or resolved, such objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such objection is overruled or withdrawn, the applicable Potential Transferred Contract shall be assumed as of the date set forth in **Exhibit A** or such other date as the Debtors and the counterparty or counterparties to such Potential Transferred Contract may agree.

2

Houston, Texas
Dated: [●], 2023

Respectfully submitted,

*/s/ Draft*_____
**PORTER HEDGES LLP**
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Michael B. Dearman (TX Bar No. 24116270)
1000 Main St., 36th Floor
Houston, TX 77002
Tel: (713) 226-6000
Fax: (713) 226-6248
jwolfshohl@porterhedges.com
apower@porterhedges.com
mdearman@porterhedges.com

*Proposed Counsel for the Debtors and Debtors in Possession*