

RECEPTION#: 679690, R: $298.00, D: $0.00
DOC CODE: AMEND COV
Pg 1 of 58, 08/20/2021 at 11:51:45 AM
Janice K. Vos Caudill, Pitkin County, CO

# AMENDED AND RESTATED
# DECLARATION OF PROTECTIVE COVENANTS
# FOR
# <u>ASPEN VALLEY RANCH</u>

# PITKIN COUNTY, COLORADO

## TABLE OF CONTENTS

Page

1.  **DECLARATION - PURPOSES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **1.01   General Purposes** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **1.02   Declaration** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **1.03   No Further Subdivision** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **1.04   Termination and Replacement of Initial Declaration & Supplement.**
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.  **DEFINITIONS AND AREA DESIGNATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **2.01   Act** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **2.02   Agricultural Easement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    **2.03   Agricultural Facilities Parcel** . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.04   Annual Assessments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.05   Approval Resolution** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.06   Articles** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.07   Aspen Valley Ranch** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.08   Assessment(s)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.09   Assessment Lien** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.10   Association** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.11   Association Property** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.12   Board of Directors,** or **Board** . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    **2.13   Building Envelope** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.14   Caretaker Dwelling Unit** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.15   Common Elements** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.16   Common Expenses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.17   County** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.18   Declarant** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.19   Declaration** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.20   Design Guidelines** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.21   Development Envelope** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **2.22   Domestic Exempt Well** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.23   Domestic Water System** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.24   Driveway Corridor** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.25   Eligible Mortgage Holder** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.26   Exemption Plat** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.27   First Mortgage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.28   First Mortgagee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **2.29   Hazard Review Site Plan** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

i

| | | |
|---|---|---|
| 2.30 | Homestead | 4 |
| 2.31 | Individual Purpose Assessments | 4 |
| 2.32 | Irrigation and Pond Guidelines | 5 |
| 2.33 | Land Use Code | 5 |
| 2.34 | Limited Common Elements | 5 |
| 2.35 | Member or Members | 5 |
| 2.36 | Mortgage | 5 |
| 2.37 | Mortgagee | 5 |
| 2.38 | Mortgagor | 5 |
| 2.39 | Owner(s) | 5 |
| 2.40 | Property Conveyed or Leased by Declarant | 5 |
| 2.41 | Review Committee | 5 |
| 2.42 | Roads | 6 |
| 2.43 | Special Assessments | 6 |

| | | | |
|---|---|---|---|
| 3. | ASSOCIATION | | 6 |
| | 3.01 | Formation of Association | 6 |
| | 3.02 | Board of Directors and Officers | 6 |
| | 3.03 | Association Rules | 6 |
| | 3.04 | Limited Liability | 6 |
| | 3.05 | Membership | 7 |
| | 3.06 | Voting | 7 |
| | 3.07 | Binding Effect | 7 |
| | 3.08 | Enforcement | 7 |
| | 3.09 | Power of the Association | 8 |
| | 3.10 | Other Association Functions | 8 |
| | 3.11 | Notice to Maintain | 8 |
| | 3.12 | Mechanics' Liens | 9 |
| | 3.13 | Special Provisions Regarding Association Property | 9 |

| | | | |
|---|---|---|---|
| 4. | ARCHITECTURAL CONTROLS | | 9 |
| | 4.01 | Review Committee | 9 |
| | 4.02 | Authority | 10 |
| | 4.03 | Conceptual Design Review | 10 |
| | 4.04 | Final Plan Review | 10 |
| | 4.05 | Building Permit | 11 |
| | 4.06 | Variances | 11 |
| | 4.07 | Standards for Approval | 12 |
| | 4.08 | Rules and Regulations | 12 |
| | 4.09 | Written Records | 12 |
| | 4.10 | Inspection and Compliance | 13 |
| | 4.11 | Review Committee Not Liable | 13 |
| | 4.12 | Aspen Valley Downs | 14 |

| 5. | ASSESSMENTS | | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 |
| | 5.01 | Purpose of Assessments/Assessment Lien | . . . . . . . . . . 14 |
| | 5.02 | Annual Assessments | . . . . . . . . . . . . . . . . . . . . . . . . 15 |
| | 5.03 | Special Assessments | . . . . . . . . . . . . . . . . . . . . . . . . 15 |
| | 5.04 | Individual Purpose Assessments | . . . . . . . . . . . . . . . 15 |
| | 5.05 | Rate of Assessment | . . . . . . . . . . . . . . . . . . . . . . . . . 16 |
| | 5.06 | Establishment of Annual Assessment Period | . . . . . . . . . 16 |
| | 5.07 | Effect of Nonpayment | . . . . . . . . . . . . . . . . . . . . . . . 16 |
| | 5.08 | Successor's Liability for Assessments | . . . . . . . . . . . . 16 |
| | 5.09 | Homestead Waiver | . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |
| | 5.10 | Statement from Association | . . . . . . . . . . . . . . . . . . . . 17 |
| | 5.11 | Assessments for Tort Liability | . . . . . . . . . . . . . . . . . 17 |
| 6. | INSURANCE | | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 |
| | 6.01 | Types of Insurance | . . . . . . . . . . . . . . . . . . . . . . . . . 17 |
| | 6.02 | Named Insured and Interests | . . . . . . . . . . . . . . . . . . . 18 |
| | 6.03 | Insurance Proceeds | . . . . . . . . . . . . . . . . . . . . . . . . . 18 |
| 7. | GENERAL RESTRICTIONS | | . . . . . . . . . . . . . . . . . . . . . . . 19 |
| | 7.01 | Residential Uses | . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 |
| | 7.02 | Compliance with Approval Resolution | . . . . . . . . . . . . 19 |
| | 7.03 | Development Envelope | . . . . . . . . . . . . . . . . . . . . . . . 22 |
| | 7.04 | Building Envelope | . . . . . . . . . . . . . . . . . . . . . . . . . . 23 |
| | 7.05 | Driveway Corridor | . . . . . . . . . . . . . . . . . . . . . . . . . . 23 |
| | 7.06 | Use of Common Elements | . . . . . . . . . . . . . . . . . . . . . 23 |
| | 7.07 | Limited Common Elements | . . . . . . . . . . . . . . . . . . . . 24 |
| | 7.08 | Domestic Animals | . . . . . . . . . . . . . . . . . . . . . . . . . . 24 |
| | 7.09 | No Horses or Livestock | . . . . . . . . . . . . . . . . . . . . . . 25 |
| | 7.10 | Boundary Line Adjustments by Owners | . . . . . . . . . . . . 25 |
| | 7.11 | Boundary Line Adjustments by Declarant | . . . . . . . . . . 25 |
| | 7.12 | Utilities | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26 |
| | 7.13 | Enclosure of Unsightly Facilities and Equipment | . . . . . . 26 |
| | 7.14 | Satellite Dishes | . . . . . . . . . . . . . . . . . . . . . . . . . . . 26 |
| | 7.15 | Hunting and Firearms | . . . . . . . . . . . . . . . . . . . . . . . 26 |
| | 7.16 | Drainage and Erosion Control | . . . . . . . . . . . . . . . . . 26 |
| | 7.17 | Pest Control | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27 |
| | 7.18 | Noxious or Offensive Activity | . . . . . . . . . . . . . . . . . 27 |
| | 7.19 | No Mining, Drilling or Quarrying | . . . . . . . . . . . . . . . 27 |
| | 7.20 | Completion of Construction | . . . . . . . . . . . . . . . . . . . . 27 |
| | 7.21 | Fireplaces | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27 |
| | 7.22 | Driveways | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28 |
| | 7.23 | Trees and Landscaping | . . . . . . . . . . . . . . . . . . . . . . . 28 |

7.24   Damage by Owners ................................ 28
7.25   Fences .......................................... 29
7.26   Sewage Disposal Systems ......................... 29
7.27   Limits on Certain Vehicles ...................... 29
7.28   Signs ........................................... 29
7.29   Declarant's Use ................................. 30
7.30   Exterior Lighting ............................... 30
7.31   Caretaker Dwelling Units ........................ 30
7.32   Wildfire Mitigation Standards ................... 30

8.   EASEMENTS AND RIGHTS RESERVED ...................... 32
8.01   Easements Described on Plat ..................... 32
8.02   Development of Aspen Valley Ranch ............... 32
8.03   Agricultural Easement ........................... 32
8.04   Utility Easements ............................... 33
8.05   Emergency Access Easements ...................... 33
8.06   Trail Easements ................................. 34
8.07   Shared Well and Septic System Easements ......... 34
8.08   Aspen Valley Downs Easements .................... 34
8.09   Fire Protection Pond ............................ 34
8.10   Relocation of Easements ......................... 34
8.11   Artwork Easement ................................ 34

9.   WATER RIGHTS AND USE ............................... 35
9.01   Individual Domestic Exempt Wells ................ 35
9.02   Irrigation Ditches .............................. 35
9.03   Irrigation System ............................... 35
9.04   Ponds ........................................... 35
9.05   Domestic Water System ........................... 36

10.   AGRICULTURAL FACILITIES PARCEL AND RANCH MANAGEMENT .... 36
10.01   Uses and Structures ............................ 36
10.02   Agricultural Facilities Parcel Housing ......... 36
10.03   Agricultural Easement .......................... 36
10.04   Management ..................................... 37
10.05   Water Rights ................................... 37
10.06   Ponds .......................................... 37

11.   TERM, AMENDMENT AND TERMINATION OF COVENANTS ....... 37
11.01   Term ........................................... 37
11.02   Amendments ..................................... 37
11.03   Rule Against Perpetuities ...................... 38
11.04   Termination .................................... 38

iv

12.    MISCELLANEOUS ......................................................... 38
       12.01  Interpretation of the Covenants .............................. 38
       12.02  Colorado Law ................................................. 38
       12.03  Disclaimer ................................................... 39
       12.04  Notices and Registration of Mailing Address .................. 39
       12.05  Distribution of Information .................................. 39
       12.06  Non-Waiver ................................................... 39
       12.07  Severability ................................................. 39
       12.08  Run with the Land ............................................ 39
       12.09  Enforcement of Covenants by County ........................... 40

## 1.    DECLARATION - PURPOSES

**1.01    General Purposes**. AVR AH LLC, a Colorado limited liability company, is the owner of certain real property located in Pitkin County, Colorado, known as Aspen Valley Ranch, as more particularly described in Section 2.07. As Declarant, AVR AH LLC intends to develop and market Aspen Valley Ranch as a high quality private community of Owners. Declarant intends that the Owners, trust deed beneficiaries, mortgagees and any other persons or entities now or hereafter acquiring any interest in Aspen Valley Ranch shall hold such interest subject and subordinate to all the rights, privileges, obligations and restrictions set forth in this instrument. In addition, an Association has been created to perform certain obligations described herein and to own, hold, operate, manage and maintain high quality Common Elements and easements and to provide high quality services for the benefit of all Owners of Aspen Valley Ranch.

**1.02    Declaration**. To further the purposes herein expressed, Declarant, for itself and its successors and assigns, with respect to Aspen Valley Ranch, hereby declares that all lands described in Section 2.07 shall at all times be owned, held, used and conveyed as a planned community to be known as Aspen Valley Ranch, subject to the terms, provisions, conditions and restrictions contained in this instrument, which terms, provisions, conditions and restrictions shall be binding upon and inure to the benefit of Declarant and to any person or legal entity acquiring an interest in Aspen Valley Ranch.

**1.03    No Further Subdivision**. The Declarant, for itself, its successors and assigns, covenants that there shall be no further subdivision, including partition, condominiumization or time sharing, of the land or structures within Aspen Valley Ranch, other than as contemplated in the Approval Resolution (as defined below) and no material development within Aspen Valley Ranch which is substantially different from that allowed by the Approval Resolution, unless and until approved by the County in accordance with the regulations then in effect which govern such activity.

**1.04    Termination and Replacement of Initial Declaration & Supplement.** The Declaration of Protective Covenants for Aspen Valley Ranch recorded October 14, 2005, at Reception No. 516273 and the Supplement thereto recorded November 17, 2005 at Reception No. 517592, both of the Pitkin County Records are hereby terminated, shall be of no further force or affect, and are replaced with this Declaration.

## 2.    DEFINITIONS AND AREA DESIGNATIONS

**2.01    Act** shall mean the Colorado Common Interest Ownership Act, C.R.S. § 38-33.3-101, *et seq.*, as it may be amended from time to time.

**2.02    Agricultural Easement** shall mean the easement affecting that portion of each Homestead as noted on the Exemption Plat which has been established for the benefit of the Association and is enforceable by the County as more particularly described in Section 8.03. The

1

Agricultural Easement is intended to facilitate the preservation of irrigated lands and agricultural purposes within Aspen Valley Ranch.

**2.03    Agricultural Facilities Parcel** shall mean the land area designated on the Exemption Plat as the Agricultural Facilities Parcel which will be owned and operated by either the Declarant for the benefit of the Association or by the Association, subject to the requirements of Section 10 of this Declaration.

**2.04    Annual Assessments** shall mean the charges levied and assessed each year against a Homestead pursuant to Section 5.02 below.

**2.05    Approval Resolution** shall mean Resolution No. 112-2005, adopted by the Board of County Commissioners of Pitkin County, Colorado, on the 10th day of August, 2005, which was recorded as Reception No. 516266, of the Pitkin County records, on the 14th day of October, 2005, as amended, and any other Resolutions subsequently adopted by the Board of County Commissioners of Pitkin County which affect any or all of the lands within Aspen Valley Ranch.

**2.06    Articles** shall mean Articles of Incorporation and any amendments thereto for Aspen Valley Ranch Homeowners Association, Inc., a Colorado nonprofit corporation.

**2.07    Aspen Valley Ranch** means the following real property located in Pitkin County, Colorado: "Homesteads  1-9, the Agricultural Facilities Parcel and Rural and Remote Parcels 1-7 according to the Exemption Plat; "Lots  6, 7, 8 and 9, Aspen Valley Downs, according to the First Amended Plat of Aspen Valley Downs Subdivision PUD recorded March 23, 1999 in Plat Book 49 at Page 2; together with the so-called "Werk Cook Parcel  described in the Deed recorded January 8, 2007 at Reception No. 533124, all in the Pitkin County Records.

**2.08    Assessment(s)** means Annual (or regular) Assessments, Special Assessments and Individual Purpose Assessments.

**2.09    Assessment Lien** means liens imposed by the Board against the Homestead of an Owner in order to secure the payment of an Assessment.

**2.10    Association** means Aspen Valley Ranch Homeowners Association, Inc., a Colorado nonprofit corporation formed and incorporated to be and constitute the Association to which reference is made in this instrument to further the common interests of Owners of all Homesteads within Aspen Valley Ranch.

**2.11    Association Property** means any and all real or personal property conveyed to the Association by the Declarant or otherwise acquired and owned by the Association.

**2.12    Board of Directors,** or **Board**,  means the governing board of the Association.

2

**2.13   Building Envelope** has meaning found in Section 7.04, below.

**2.14   Caretaker Dwelling Unit** means a dwelling unit which satisfies the requirements of the Land Use Code and Section 7.31 of this Declaration, and which is subject to the provisions of a specific restriction on its use and occupancy as required and enforceable by the Aspen/Pitkin County Housing Authority, or its successor.

**2.15   Common Elements** shall mean the Agricultural Facilities Parcel and all improvements constructed thereon, and shall include, without limitation, the following:

2.15.01   all aspects of Aspen Valley Ranch identified as a Common Element on the Exemption Plat; and,

2.15.02   In general, all other parts of Aspen Valley Ranch existing for the common uses of some or all of the Owners and all other parts of Aspen Valley Ranch necessary or convenient to its existence, maintenance or safety or normally in common use, including the farm, ranch and common facilities located on the Agricultural Facilities Parcel and Homestead 1, and the Domestic Water System and the artwork belonging to the Association located anywhere upon the Ranch, including but not limited to the Homesteads.

**2.16   Common Expenses** means estimated and actual expenditures made or to be made by or on behalf of the Association, together with any allocations to reserve or sinking funds.

**2.17   County** shall mean Pitkin County, Colorado.

**2.18   Declarant** means AVR AH LLC, a Colorado limited liability company, and any party designated as a successor or assign of the Declarant by a written instrument duly recorded in the real property records of Pitkin County, Colorado, which instrument, to be effective, need only be signed by Declarant. Such instrument may specify the extent and portion of the rights or interests being assigned by Declarant, in which case Declarant shall retain all other rights of Declarant not so assigned.

**2.19   Declaration** means this Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch as recorded in the real property records of Pitkin County, Colorado, and as amended from time to time.

**2.20   Design Guidelines** means the Design and Development Guidelines for Aspen Valley Ranch which is attached to this Declaration as **Exhibit A**.

**2.21   Development Envelope** means one or more areas shown on the Hazard Review Site Plan or any other site plan approved by Pitkin County for each Homestead within which certain limited development or other activity may occur, as more particularly set forth in Section 7.03. If

3

so designated on any Site Plan or Map approved by Pitkin County, "Activity Envelopes shall be considered as Development Envelopes for the purpose of compliance with this Declaration.

**2.22    Domestic Exempt Well** means a water well permitted, drilled and operated in conformity with the provisions of C.R.S. 37-92-602 (b)1, as hereafter amended, modified or replaced, and permitted in compliance with this Declaration.

**2.23    Domestic Water System** means the water system and the components thereof installed by the Declarant for the benefit of any of the parcel in Aspen Valley Ranch, including but not limited to Homesteads, Lots or the Agricultural Facilities Parcel within Aspen Valley Ranch and, if so determined by the Declarant, for the benefit of any other property owned by Declarant.

**2.24    Driveway Corridor** has the meaning found in Section 7.05.

**2.25    Eligible Mortgage Holder** shall mean the holder of any First Mortgage encumbering a Homestead that has given written notice to the Association of said Mortgage. Such notice shall include a true copy of the First Mortgage as recorded.

**2.26    Exemption Plat** shall mean the Subdivision Exemption Plat for Aspen Valley Ranch recorded as Reception No. 316274, in Plat Book 76 at Pages 4-18 of the real property records of Pitkin County, Colorado, and any amendments thereto as may be duly approved by the County, including the Second Amended Subdivision Exemption Plat recorded in Plat Book 98 at Page 49.

**2.27    First Mortgage** shall mean a Mortgage on a Homestead which has priority over all other Security Interests on the Homestead.

**2.28    First Mortgagee** shall mean and refer to any person named as a mortgagee or beneficiary under any First Mortgage, or any successor to the interest of any such person under such First Mortgage.

**2.29    Hazard Review Site Plan** means the 1041 Hazard Review Site Plan for Aspen Valley Ranch recorded as Reception Nos. 516276-516285 in Plat Book 76 at Pages 19-28 of the real property records of Pitkin County, Colorado, and any amendments thereto as may be duly approved by the County.

**2.30    Homestead** means the subdivided land areas designated by the term Homestead and a number on the Exemption Plat, and for the purpose of the application of the provisions and terms of this Declaration, Lots 6, 7, 8 and 9 of Aspen Valley Downs on the Aspen Valley Downs Plat and the Werk Cook Parcel. A Homestead is a Unit, as that term is defined by the Act.

**2.31    Individual Purpose Assessments** means any Assessment levied and assessed against fewer than all of Homesteads, as allowed by Section 5.04 below.

**2.32    Irrigation and Pond Guidelines** means the Irrigation and Pond Construction and Operational Guidelines for Aspen Valley Ranch which is attached to this Declaration as **Exhibit B**.

**2.33    Land Use Code** means the Pitkin County Land Use Code, as it existed on the date that the Approval Resolution was enacted by the Board of County Commissioners of the County, and including all subsequent modifications thereof unless Aspen Valley Ranch is exempted from such modifications by the Approval Resolution or any subsequent Resolution adopted by the County, but only to the extent such modifications apply generally to all property within Pitkin County.

**2.34    Limited Common Elements** shall mean and refer to those parts of the Common Elements, if any, which are either limited to and reserved for the exclusive use of the Owner or Owners of a particular Homestead or are limited to and reserved for the common use of the Owners of more than one, but fewer than all, of the Homesteads. Without limiting the foregoing, the Limited Common Elements shall include all Limited Common Elements described as such on the Exemption Plat or designated as such by the Declarant in a Supplement to this Declaration. All Limited Common Elements shall be used in connection with the applicable Homestead(s) to the exclusion of the use thereof by the other Owners, except by invitation.

**2.35    Member or Members** means Owners who are Members of the Association.

**2.36    Mortgage** means any mortgage, deed of trust or other security instrument creating a real property security interest in any Homestead, excluding any statutory, tax or judicial liens.

**2.37    Mortgagee** means any grantee or beneficiary of a Mortgage.

**2.38    Mortgagor** means any grantor or trustor of a Mortgage.

**2.39    Owner(s)** means the person or persons or legal entity holding record fee simple title to a Homestead.

**2.40    Property Conveyed or Leased by Declarant** means any real or personal property, tangible or intangible, which Declarant sells, grants, assigns, conveys or leases to the Association including, but not limited to, buildings, other improvements, roads, trails, utilities, the domestic water system installed by Declarant, water rights, which water rights may include but not be limited to, wells, ditches, reservoirs or shares of stock in any ditch or reservoir company, signage, security gates, equipment, inventory, furniture, fixtures, fences, lighting, trucks or other vehicles. The Association shall be obligated to and shall accept title to, interests in, or rights to use or lease property which may be sold, assigned, granted, conveyed or leased to the Association by Declarant, subject to such reservations, restrictions and conditions as Declarant may reasonably provide.

**2.41    Review Committee** sometimes referred to as the Site and Design Review Committee, shall mean either the Board or a committee appointed by the Board for the purpose of reviewing and approving improvements or changes to lands within Aspen Valley Ranch.

5

**2.42**   **Roads** means those roads shown on the Exemption Plat including the Main Access Road and Secondary Access Roads or any other roads as may be established by the Declarant or the Association in accordance with this Declaration.

**2.43**   **Special Assessments** means any special or extraordinary Assessment levied and assessed pursuant to Section 5.03 below.

3.   **ASSOCIATION**

**3.01**   **Formation of Association**.  The Association shall be a nonprofit Colorado corporation charged with the duties and invested with the powers prescribed by law and as set forth in its Articles, Bylaws and this Declaration. Neither the Articles nor Bylaws of the Association shall, for any reason, be amended or otherwise changed or interpreted so as to be inconsistent with this Declaration.

**3.02**   **Board of Directors and Officers**.  The affairs of the Association shall be conducted by the Board and such officers as the Board may elect or appoint in accordance with its Articles and Bylaws as the same may be amended from time to time.  The Association by and through the Board shall govern and manage all Property conveyed to the Association or Leased by Declarant for the benefit of the Association and any other Association Property and shall enforce the provisions of this Declaration. The initial Board shall be comprised of three (3) members.  The Board may also appoint various committees and hire employees.  The Board shall determine the compensation to be paid to any employee of the Association.  Declarant shall have the right to appoint and remove members of the Board until the earliest to occur of (a) sixty (60) days after sale (recording deed) of the sixth (6th) Homestead by Declarant, or (b) two (2) years after the last conveyance of a Homestead by Declarant in the ordinary course of business.  By instrument signed by Declarant and duly recorded in the real property records of Pitkin County, Colorado, Declarant may sooner relinquish this right to appoint and remove members of the Board.  After the period in which Declarant has the exclusive right to appoint and remove members of the Board, the Board shall be controlled as provided in Section 3.06, hereof.

**3.03**   **Association Rules**. The Association may from time to time adopt, amend and repeal rules and regulations to be known as the "Aspen Valley Ranch Association Rules" by a majority vote of the Board.  The purpose of the Association Rules shall be to implement, supplement or otherwise carry out the purposes and intentions of this Declaration.

**3.04**   **Limited Liability**.  Neither the Association nor its past, present or future officers, directors, nor any employee, agent or committee member of the Association, nor the Declarant shall be liable to any Owner or to any other person for any damage, act, omission to act, simple negligence or other matter of any kind or nature, except gross negligence.  Without limit to the foregoing, the Association, the Board and the Declarant shall not be liable to any party for any action or for any

failure to act if it was in good faith and without malice. Acts taken upon the advice of legal counsel, certified public accountants, registered or licensed engineers, architects or surveyors shall conclusively be deemed to be in good faith and without malice. To the extent insurance carried by the Association for such purposes shall not be adequate, the Owners severally agree to indemnify the Association, the Board and the Declarant against loss resulting from such action or failure to act in good faith and without malice. The foregoing limitations of liability shall extend to the officers, agents, legal representatives and trustees of Declarant.

**3.05    Membership**.   This Association shall be a membership association without certificates or shares of stock.  The members of the Association shall be those persons or entities, including Declarant, who are the Owners, from time to time, of Homesteads in Aspen Valley Ranch. Membership in the Association of an Owner shall automatically terminate when such Owner ceases to be the Owner of such Homestead.

**3.06    Voting**.  Each Member shall have one (1) vote for each Homestead such Member may own.  The affirmative vote of a majority of the total of all Members entitled to vote on any matter shall constitute approval of such matter.  Where there is more than one record Owner of a Homestead, the several record Owners of such Homestead shall be required to designate, by prior written notice to the Association, the particular Owner who shall cast the one vote appurtenant to that Homestead. If the several Owners of any Homestead are unable or unwilling to designate a particular Owner to vote, then the membership appurtenant to that Homestead shall not be entitled to vote on any Association affairs until such a designation is made.  Subject to the right reserved by Declarant, as set forth in Section 3.02 above, to appoint and remove members of the Board, in any election of the Board, every Owner entitled to vote (multiple Owners of one Homestead being entitled collectively to one vote) shall have a number of votes for each Homestead owned times the number of Board members to be elected.  The candidates receiving the highest number of votes, up to the number of Board members to be elected, shall be deemed elected.

**3.07    Binding Effect**.  Each Owner, each lessee of any Owner, and each of the aforementioned parties' respective  families and guests, the heirs, successors or assigns of each Owner,  any Mortgagee, and any other persons using or occupying a Homestead, shall be bound by and shall strictly comply with the provisions of this Declaration, the By-laws, the Articles, any deed restrictions and covenants, and all rules, regulations and agreements lawfully made by the Association.

**3.08    Enforcement**.  The Association and Declarant shall each have the right and power to bring suit in their respective names for legal or equitable relief, including temporary and permanent injunctions, for any lack of compliance with any provisions of this Declaration or rules promulgated by the Board or Review Committee.  In addition, the Association shall have the right to impose on any Owner monetary fines as Individual Purpose Assessments for any lack of compliance with provisions of this Declaration or rules promulgated by the Board or Review Committee. In addition, the Association shall have the right to impose on any Owner monetary fines as Individual Purpose Assessments for any lack of compliance with provisions of this Declaration

or rules promulgated by the Board or Review Committee and where such fines are not paid within the time provided, such fines may be collected and secured as an Assessment Lien as more fully described in Section 5.01 below. The failure of the Association or Declarant to insist upon the strict performance of any such provisions or to exercise any right or option available to it, or to serve any notice or to institute any action, shall not be a waiver or a relinquishment of any such provision or the enforcement thereof. Any Owner aggrieved by a lack of compliance with the dictates of this Declaration by another Owner may also bring suit for legal and equitable remedies. If any court proceedings are instituted in connection with the rights of enforcement and remedies provided in this Declaration, the prevailing party shall be entitled to reimbursement of its costs and expenses, including reasonable attorneys' fees in connection therewith.

**3.09    Power of the Association**.  Each Owner agrees that the Association has all the powers granted it under the Act and the Colorado Nonprofit Corporation Act and any amendments thereto or replacements thereof. Such powers shall include, without limitation, levying Assessments against Owners, imposing a lien on Homesteads for any unpaid or uncollected Assessments or penalties and foreclosing any such liens, enforcing any deed restrictions and covenants, acquiring, holding, owning, leasing, mortgaging and disposing of property (excepting as such disposing of property may be limited in accordance with Section 3.13 below), the adoption of rules and regulations, the defending, prosecuting or intervention in litigation on behalf of all Members, the borrowing of moneys for Association purposes and the right to pledge future income in order to secure such indebtedness. The term "pledge of future income shall include the right to impose a Special Assessment for repayment of such borrowing and to assign such Special Assessment (and all lien and collection rights appurtenant thereto) to the lender as security for repayment thereof. The Association may exercise any other right, power or privilege given to it expressly by this Declaration, the Articles and By-laws, or by law, and every other right, power or privilege reasonably implied from the existence of any right, power or privilege given to it herein or reasonably necessary to effectuate any such right, power or privilege.

**3.10    Other Association Functions**.  The Association may undertake, to the extent the Board, in its sole discretion, so elects, to provide any function(s) or service(s) for the benefit of all, or some Members, on such basis as the Board may reasonably determine. Such functions may be provided by the Association's employees or an independent contractor retained by the Association. With respect to any Aspen Valley Ranch function or service, the Board may establish "cost centers for the operation thereof. A cost center shall mean the identification and aggregation of all costs reasonably estimated by the Board to be related to a particular function or service. Where cost centers are established, the Board shall have the discretion, based on benefits conferred, to determine which Members shall be charged for such benefits and what amounts shall be paid by each such Member.

**3.11    Notice to Maintain**.  An Owner shall immediately report to the Association, in writing, the need for any maintenance, repair or replacement which is the Association's responsibility to provide. In the event of any disagreement as to the responsibility of the Association to provide,

or the need for, said maintenance, repair or replacement, the good faith decision of the Board shall be final.

**3.12    Mechanics' Liens**. Declarant shall be responsible for the release of all mechanics' liens filed with respect to the Association Property, or any part thereof, if any such liens arise or are alleged to arise from labor performed or materials furnished at the instance of Declarant, or its agents, contractors or subcontractors. Except for work carried out on behalf of the Board, no labor performed or materials furnished with respect to Association property or Homesteads shall be the basis for filing a lien against any Association property. No labor performed or materials furnished at the instance of the Board shall be the basis for filing a lien against any Homestead. Each Owner shall indemnify and hold harmless each of the other Owners and the Association from and against any liability or loss arising from the claim of any mechanics' lien against the Homestead of any other Owner, the Common Elements or any part thereof, for labor performed and/or materials furnished in work on the Owner's Homestead. Nothing in this Section shall be construed to restrict the right of any Owner to substitute a bond for any mechanic's lien as provided by C.R.S. § 38-22-131.

**3.13    Special Provisions Regarding Association Property**. The Property conveyed or leased by Declarant to the Association and any other Association Property, including but not limited to, the Common Elements, roads, trails and utility easements and water rights shall, at all times, be owned, operated, and maintained by the Association consistent with the provisions of this Declaration and in trust for the use, benefit and enjoyment of Owners of all Homesteads of Aspen Valley Ranch and their family members, guests and invitees. The Common Elements and services in connection therewith shall be maintained in good working order and a high quality condition. Except as to sales or leases in the ordinary course of operations, dispositions of worn, obsolete or damaged property or dispositions upon threat of condemnation, no sales, leases or other dispositions of Association Property may occur, except upon the prior written consent of sixty-seven percent (67%) of Owners.

**4.    ARCHITECTURAL CONTROLS**

**4.01    Review Committee**. The Review Committee shall be composed of at least three (3) persons appointed by the Board. The Board may remove a member of the Review Committee and appoint a new member at any time, provided there shall at all times be at least three (3) persons serving on the Review Committee. The members of the Review Committee may or may not be Board members or Owners and may include one or more professionals such as an architect or other design professional paid by the Association to perform such services. The Review Committee shall have and exercise all the powers, duties and responsibilities set out in this Declaration. The Review Committee may at the expense of the Association hire any professionals or a secretary or other personnel to perform administrative, clerical and other functions. So long as Declarant elects a majority of the Board of the Association, then Declarant may act as the Review Committee. The Review Committee may establish and charge a fee for all matters requiring its review and approval, and shall require applicants for approval to reimburse the Review Committee for all out-of-pocket expenses incurred in connection with its activities hereunder.

9

**4.02   Authority**. Except as otherwise provided in this Declaration, no improvements of any kind or changes in the natural condition of any Property within Aspen Valley Ranch, including, but not limited to, the construction or renovation of dwellings or other structures, outbuildings, well enclosures and pipelines, fences, grading, planting, ponds, parking areas, walls, garages, roads, driveways, antennae, satellite dishes, flag poles, swimming pools or the like, shall be erected, altered or permitted to remain on any Homestead, or within any Development Envelope, or elsewhere on Aspen Valley Ranch, nor shall any excavating, clearing or landscaping be done thereon unless complete architectural plans and specifications and a site plan showing the location and orientation for such construction or alteration or landscaping are approved by the Review Committee prior to the commencement of such work. Any work performed by or on behalf of Declarant, to any of Aspen Valley Ranch including, but not limited to, construction of amenities, subdivision infrastructure and the like, shall not require approval of the Review Committee. If Declarant ceases to act as the Review Committee as allowed in Section 4.01, above, the approval of Declarant shall still be required for the initial construction of any residence on Aspen Valley Ranch. The foregoing requirement to obtain the approval of Declarant shall be limited to the initial construction of any residence in Aspen Valley Ranch and shall continue so long as Declarant remains the Owner of any Homestead in Aspen Valley Ranch. In addition to obtaining the foregoing approval of Declarant, Owners shall also be required to obtain all requisite approvals from the Review Committee.

**4.03   Conceptual Design Review**. Owners or other entities who anticipate constructing improvements on lands within Aspen Valley Ranch shall submit preliminary sketches with a site plan of such improvements to the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) for informal and preliminary approval (with or without conditions) or disapproval. The contents of any proposed preliminary sketches and site plan shall conform with the requirements set forth in the Design Guidelines as approved by the County. All preliminary site and architectural sketches shall be submitted in at least five (5) sets (three (3) of which shall be reduced to 11" by 17"), and shall contain sufficient general information on those matters required to be in the complete architectural and site development plans and specifications to allow the Review Committee to act intelligently in giving an informed preliminary approval or disapproval. Persons contemplating the purchase of any Homestead may submit preliminary sketches with site plans for purposes of obtaining an informal approval hereunder. The Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) shall not be committed or bound by any preliminary or informal approval or disapproval. Within two weeks following the conceptual review meeting, the Review Committee shall issue a written response to the applicant that describes the Committee's concerns and outstanding issues, and which summarizes the comments made by Committee members at, or as a result of, the meeting and the documents submitted by the applicant.

**4.04   Final Plan Review**. At least five (5) complete sets of the architectural and site development plans and specifications shall be submitted to the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) along with a complete list of all materials and colors to be used. Three (3) of these sets shall be reduced to 11" by 17". All copies

10

of the complete plans and specifications shall be signed for identification by the Owner or his architect. The Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) shall have the right to request whatever additional specific information, plans, specifications, reports and the like it deems necessary to evaluate the development proposal throughout the approval and construction process. The Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) shall certify to the Owner, in writing, when the submission is complete. The majority vote of the members of the Review Committee (and the approval of Declarant for the initial construction of any residence in Aspen Valley Ranch) shall be required for approval of plans; provided, however, that in the event the Review Committee (and Declarant, in the event of the initial construction of any residence in Aspen Valley Ranch) fails to take any action within four weeks after all required copies of the complete architectural and site development plans, specifications, materials and colors have been submitted to it and the submission has been certified in writing by the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) as complete, all of such submitted architectural plans shall be deemed to be approved. The Review Committee shall not unreasonably disapprove architectural plans. The Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) shall disapprove any architectural and site development plans submitted to it which do not contain sufficient information for it to exercise the judgment required of it by these covenants. Within four weeks of the meeting, the Review Committee, in its sole discretion, shall either approve, approve with conditions, or disapprove the final plan in writing, provided, however, that approval of any and all Owner ponds shall be in strict conformity with the Irrigation and Pond Guidelines. If an application is denied, the applicant may resubmit a revised plan at any time, subject to the fees established by the Review Committee from time to time.

4.05   **Building Permit**. An Owner may apply for a building permit from the County at any time; provided, however, the plans submitted to the County shall not differ in any way from the plans approved by the Review Committee. If the plans submitted to the County differ in any way from the plans approved by the Review Committee, all approvals of the Review Committee shall be deemed automatically revoked. Any Owner applying for a building permit must first provide to the Review Committee structural drawings approved by a Colorado registered professional engineer, and apply for and obtain approval for an individual sewage disposal system permit from all governmental entities having jurisdiction.

4.06   **Variances**. The Review Committee may, by an affirmative vote of a majority of the members of the Review Committee, allow variances as to any of the architectural controls contained in this Declaration and/or policies or rules promulgated by the Review Committee or contained in the Design Guidelines, on such terms and conditions as it shall require. Further, any matter requiring a variance from County land use, building or zoning regulations shall also require an approval from Review Committee. No variances to area and bulk requirements of Pitkin County Land Use Code for the RS-20 Zone District have been approved as part of the subdivision and Exemption Plat approved for Aspen Valley Ranch.

**4.07    Standards for Approval**.  All development within Aspen Valley Ranch shall conform in all material respects with the Design Guidelines and the Approval Resolution.  All water features, including, but not limited to, all Owner owned ponds, irrigation improvements and irrigation facilities shall conform with the Irrigation and Pond Construction Guidelines.  In addition to ensuring that all proposed construction conforms to the Design Guidelines, the Review Committee shall evaluate, among other things:  (i) the materials to be used on the outside of buildings or structures, (ii) exterior colors, (iii) harmony or architectural design with other structures within Aspen Valley Ranch, (iv) height and other design features, (v) location with respect to topography and finished grade elevations, (vi) harmony of landscaping with the natural setting and native vegetation, and (vii) consistency with the Design Guidelines.  The Design Guidelines may be amended or supplemented from time to time by majority approval of the Owners at a regular or special meeting called for that purpose.

**4.08    Rules and Regulations**.  The Association and/or Review Committee may promulgate and adopt rules and regulations necessary to implement these covenants.  These rules and regulations may include submission requirements concerning the type of information, reports, plans and specifications and the like which need to be submitted with any application, site-specific limitations or restrictions for each Development Envelope, and may also include guidelines governing the development of each Development Envelope.  By way of illustration only and without requirement to do so, the Review Committee rules and regulations may address and the Review Committee shall have the power and authority to regulate any or all of the following: application procedures and processing fees; charges by any outside professionals or other costs incidental to evaluating any application; bonds in the form of cash deposit; letter of credit or otherwise regarding damage to Roads or other subdivision infrastructure and for revegetation and restoration of lands; color and materials including, but not limited to, roofs, chimneys, siding, masonry and glazing; setbacks, height limitations, building profiles and driveway locations; construction staging, construction hours which may be limited according to time of year, storage for construction materials, location of temporary construction facilities such as trailers, dumpsters and portable toilets; and routing of utility extensions; drainage, grading and erosion control; landscape and vegetation, fencing, lighting, signage, and trails; concerns or objectives regarding maintenance of agricultural lands and preservation of wildlife; and, privacy and visual characteristics.  Such rules and regulations shall be adopted, amended or replaced by affirmative vote of a majority of the Review Committee and the approval of Declarant; however, Declarant's approval shall no longer be required at such time as Declarant ceases to be the Owner of any Homesteads in Aspen Valley Ranch and Declarant may, upon written notice to the Review Committee, waive and release the requirement to obtain such approval as to any rules or regulations to be adopted, amended or replaced at any time.

**4.09    Written Records**.  The Review Committee shall keep and safeguard, for the period of time required by law, complete and written records of all approved applications including one (1) set of the final approved architectural and site development plans, and of all actions of approval or disapproval and all other formal actions taken by it under the provisions of this instrument.

**4.10    Inspection and Compliance**. Neither Declarant, the Association nor the Review Committee shall have a duty or obligation to make inspections of any construction; however, nothing herein shall prevent Declarant and/or the Review Committee from making inspections prior to or after completion of any work.  Upon the completion of any work for which approved plans and specifications are required, the Owner shall give written notice of completion to the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch). Within thirty (30) days after receipt of such notice, the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) may inspect the work to determine its compliance with the approved plans.  If the Review Committee (or Declarant for the initial construction of any residence in Aspen Valley Ranch) finds that the work was not done in substantial compliance with the approved plans or any construction or change in natural conditions on any Homestead was undertaken without first obtaining approval from Review Committee (or Declarant for the initial construction of any residence in Aspen Valley Ranch), written notice shall be sent by requiring the Owner to cure such noncompliance within thirty (30) days or any extension thereof granted.  If the Owner fails to cure the noncompliance or to enter into an agreement to cure on a basis satisfactory to the Review Committee (and Declarant for the initial construction of any residence in Aspen Valley Ranch) within said thirty-day (30) period or any extension thereof as may be granted, the Board (or Declarant for the initial construction of any residence) may, at its option, cause the noncomplying improvement to be removed or the noncompliance to be cured.  Upon demand, the Owner shall reimburse the Association and Declarant for all costs and expenses incurred by the Review Committee and Declarant in taking corrective action, plus all costs incurred in collecting amounts due including reasonable attorneys' fees and costs, and any amounts not paid may, without waiver of any other right or remedy, be collected as an Individual Purpose Assessment secured by an Assessment Lien.  The Owner shall be personally liable for all such costs and expenses, and the Association and Declarant shall also have a lien against the noncomplying Homestead for the amount of all such costs and expenses.  Such lien shall be (i)  evidenced by a statement executed by the Association (or Declarant if the lien arose during the initial construction of a residence in Aspen Valley Ranch), and recorded in the real property records of Pitkin County, Colorado,  (ii) subordinate only to the first Mortgage, and (iii) subject to foreclosure in the manner provided by Colorado law for mortgages upon real property.  Notwithstanding any other provision hereof, neither Declarant, its officers, agents, legal representatives and trustees, nor the Review Committee shall be responsible for:  (a)  determining that any construction or construction documents conform to applicable building codes, zoning or other land use regulations;  (b)  the accuracy or content of any construction documents or specifications prepared by any architect, engineer, or any other person; (c)  construction means, methods, techniques, sequences or procedures, safety precautions or subsequent loss, damage or failures due to soil or any other natural or man-made conditions that may exist; or,  (d)  any failure to carry out any construction in accordance with plans or specifications.

**4.11    Review Committee Not Liable**. Neither Declarant, the Review Committee, the Board, the Association or any of its Members shall be liable for damages to any person submitting any plans for approval or to any Owner or Owners of lands within Aspen Valley Ranch, or as a consequence of inspection and compliance activities conducted pursuant to this Section 4, by reason of any action, failure to act, approval, disapproval or failure to approve or disapprove with regard to

13

such plans or activities.  Neither Declarant nor the Review Committee shall have liability or responsibility for any representations made to any Owner or prospective Owner by any third parties. The decisions of Declarant and the Review Committee shall be governed by these covenants and any rules or regulations duly adopted by the Review Committee pursuant to this Declaration.

**4.12   Aspen Valley Downs.**  All owners of any Lot in Aspen Valley Downs are hereby advised that, in addition to all of the approvals required herein, the owner of a Lot in Aspen Valley Downs shall be subject to all of the Rules and Regulations, and requirements contained in any land use approvals issued by Pitkin County involving Aspen Valley Downs as well as any protective covenants for Aspen Valley Downs and any amendments thereto.

## 5.   ASSESSMENTS

**5.01   Purpose of Assessments/Assessment Lien.**  All Members of the Association hereby covenant and agree, and each Owner by acceptance of a deed to a Homestead including a public trustee or sheriff's deed, is deemed to covenant and agree, to pay the Association the Annual Assessments, Special Assessments, Individual Purpose Assessments, the Real Estate Transfer Assessment, all such Assessments and charges to be established and collected as hereinafter provided. Annual Assessments, Special Assessments and Individual Purpose Assessments, together with interest, costs, and reasonable attorneys' fees, shall be secured by an Assessment Lien on the Homestead to which they relate in favor of the Association, which shall be a continuing servitude and lien and upon the Homestead against which each such Assessment or charge is made.  Where there is more than one Owner, each shall be jointly and severally liable for all Assessments.

> 5.01.01  Under the Act, the Association has a statutory lien on a Homestead for Assessments and for fines imposed against its Owner from the time each Assessment or fine becomes due. In addition, fees, charges, late charges, attorneys' fees, fines and interest charged pursuant to this Declaration or the Act are enforceable as Assessments.  If an Assessment is payable in installments, the full amount of the Assessment is a lien from the time the first installment thereof becomes due.

> 5.01.02  The statutory lien for Assessments is prior to all other liens and encumbrances on a Homestead except: (i) liens and encumbrances recorded before the recordation of this Declaration; (ii) a lien of a First Mortgage which was recorded before the date on which the Assessment sought to be enforced became delinquent; and (iii) liens for real estate taxes and other governmental assessments or charges against the Homestead.  Notwithstanding the foregoing, the statutory lien for Assessments is also prior to the lien of a First Mortgage to the extent of an amount equal to the Common Expense Assessments based on a periodic budget adopted by the Association which would have become due, in the absence of any acceleration, during the six (6) months immediately preceding institution of an action to enforce the statutory lien.

5.01.03   The recording of this Declaration constitutes record notice and perfection of the statutory lien.   No further recordation of any claim of lien or Assessment is required; however, a claim may be recorded at the Association's option, in which event costs and attorneys' fees incurred in connection with the preparation and filing of such claim shall be assessed against the Owner and his Homestead as a default Assessment.

**5.02   Annual Assessments**.   Commencing with the year in which this Declaration is recorded, an Annual Assessment shall be made against each Homestead based upon an annual budget approved by the Board for the purpose of paying Common Expenses, cost center functions or services allocated to certain or all Homesteads including, but not limited to, water service, reserves for operating deficiencies, a sinking fund for capital improvements or any other matters reasonably determined by the Board to be the subject of an Annual Assessment.

**5.03   Special Assessments**.   In addition to the Annual Assessment authorized above, the Association may levy, in any Assessment period, a Special Assessment for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement, or for other extraordinary expenses, provided that any Special Assessment in excess of Thirty-five Thousand and 00/100 Dollars ($35,000.00) shall (except in the event of an emergency where there shall be no such limit) first be approved pursuant to the provisions of Section 3.06 herein.   Further and for so long as Declarant owns any Homestead, the Association shall have no right (except in the event of an emergency) to levy a Special Assessment without having first obtained the written consent of Declarant. For purposes of this Section, the term "emergency  shall mean an imminent threat of loss or damage to persons or property.

**5.04   Individual Purpose Assessments**.

5.04.01   In addition to the Annual Assessments and Special Assessments hereinabove provided, the Board may, at any time, and from time to time, determine, levy and collect Assessments against any one or more, but fewer than all, of the Homesteads, for any matters of maintenance or repair, replacement or improvement reasonably applicable only to such Homesteads or to any Limited Common Element appurtenant to that Homestead or those Homesteads.   Such Individual Purpose Assessments may be levied against individual Homesteads to pay or reimburse the Association for any costs, expenses, fees, and other charges, incurred or reasonably anticipated to be incurred by the Association, for maintenance, repair, replacement and improvement, or any other purpose, of or with respect to the Homestead against which such Individual Purpose Assessment is levied which are not applicable to all the Homesteads.   Where special cost centers are established as described in Section 3.10 above, Individual Purpose Assessments will be charged to Homesteads participating in or receiving benefits on such basis as the Board may determine.

5.04.02   The amounts determined, levied and assessed pursuant to Section 5.05, shall be due and payable as determined by the Board provided that written notice setting forth the amount of such individual purpose Assessment for each Homestead and the due date(s) for payment

thereof shall be given to the Owners of the affected Homesteads not less than thirty (30) days prior to the due date.

**5.05     Rate of Assessment**. Except as otherwise provided herein, Annual Assessments, Special Assessments and Individual Purpose Assessments shall each be fixed based on the amount of the Assessment divided by the number of Homesteads that are obligated to pay Assessments, and may be collected on a yearly basis or more often as the Board so determines.

**5.06     Establishment of Annual Assessment Period**. The period for which the Annual Assessment is to be levied (the "Assessment Period") shall be the calendar year, except that the first Assessment Period shall commence upon the recording of this Declaration and terminate on December 31 of such year. The Board in its sole discretion from time to time may change the Assessment Period. The Board shall fix the amount of the Annual Assessment against each Homestead at least thirty (30) days in advance of the beginning of each Assessment Period. Written notice of the Annual Assessment shall be sent to each Member. Failure of the Association to timely fix the Annual Assessment or to send a bill to any Member shall not relieve the Member of liability for payment of any Assessments or charges. The due dates for payment of any Assessments shall be established by the Board.

**5.07     Effect of Nonpayment**. Any Assessment or charge or installment thereof not paid when due shall be deemed delinquent and, in the discretion of the Board, may bear interest from and after the due date until paid at a rate set by the Association, but in no event greater than applicable law. The delinquent Member shall also be liable for all costs, including attorneys' fees, which may be incurred by the Association in collecting a delinquent Assessment. The Board may also record a Notice of Delinquent Assessment or charge against any Homestead as to which an Assessment or charge is delinquent. The Notice of Delinquent Assessment shall be executed by an officer of the Board, set forth the amount of the unpaid Assessment, set forth the name of the delinquent Owner and contain a description of the Homestead and shall, upon recording, constitute an Assessment Lien. The Board may establish a fixed fee to reimburse the Association for the Association's cost in preparing and recording such notice, processing the delinquency and recording a release of said lien, which fixed fee shall be treated as part of the delinquent Assessment secured be the Assessment Lien. The Association may bring an action at law against the Owner personally obligated to pay the delinquent Assessment and/or foreclose the lien against said Owner's Homestead. No Owner may waive or otherwise avoid liability for the Assessments provided for herein by non-use of the benefits derived from Assessments or abandonment of his Homestead. No delinquent Member shall be entitled to vote on any Association matters until the Assessment due, with interest and all other costs, shall be paid in full. Where Assessments due from any Member are more than six (6) months delinquent, the Association may temporarily cut off any or all Association services or benefits including water service to such Homestead, until all delinquent Assessments are fully paid.

**5.08     Successor's Liability for Assessments**. Notwithstanding any terms and provisions of this Declaration to the contrary, the sale or transfer of any Homestead shall not affect the personal obligation of the Owner for the payment of Assessments, charges, costs or fees levied hereunder, or

16

the lien for Assessments, charges, costs or fees levied hereunder, except that sale or transfer of a Homestead pursuant to foreclosure of a First Mortgage or any proceeding in lieu thereof, shall extinguish the lien of Association Assessments, charges, fees and costs which become due after the recording of the First Mortgage and prior to any such sale or transfer or foreclosure, or any proceeding in lieu thereof, except to the extent the lien of the Association has priority over the First Mortgagee under Section 5.01 above; provided, however, that any such Assessments, charges, costs or fees which are extinguished as provided herein may be reallocated and assessed to all Homesteads as a Common Expense. Further, no First Mortgagee shall be personally liable for any unpaid Assessments, charges, costs or fees, or portion thereof, accruing against a Homestead prior to the time such First Mortgagee takes title to such Homestead pursuant to any remedy provided in its First Mortgage or by law. The sale, transfer, foreclosure or any proceeding in lieu of a foreclosure of a Homestead shall not relieve the person or entity who becomes an Owner by reason of such sale, transfer, foreclosure or any proceeding in lieu thereof from liability for any Assessments, charges, costs or fees or any portion thereof becoming due after such sale, transfer, foreclosure, or any proceeding in lieu thereof, and such Homestead shall be subject to the lien for such subsequent Assessments, charges, costs and fees.

**5.09    Homestead Waiver**.  The Association's lien on a Homestead for Assessments, charges, costs and fees provided for herein, shall be superior to any Homestead exemption as is now or may hereafter be provided by state or federal law. The acceptance of a deed to a Homestead shall constitute a waiver of the Homestead exemption against all such Assessments, charges, costs and fees.

**5.10    Statement from Association**.  Upon written request and payment of such reasonable fee as may be set by the Association, the Association shall issue a written statement to any grantee or Mortgagee verifying the status of all Assessments or charges affecting the Homestead. Any statement as to the existence or amount of any delinquencies shall, absent manifest error, conclusively bind the Association.

**5.11    Assessments for Tort Liability**.  In the event of any tort liability against the Association which is not covered completely by insurance, each Owner shall contribute for the payment of such liability as a Special Assessment. The Association may, however, require a larger contribution from fewer than all Owners under any legal or equitable principles regarding liability for negligent or willful acts or omissions.

**6.    INSURANCE**

**6.01    Types of Insurance**.  The Association shall obtain and keep in full force and effect the following insurance coverage, if appropriate:

6.01.01    Property and fire insurance with extended coverage and standard all-risk endorsements, including vandalism and malicious mischief, on Property conveyed or leased by Declarant or any other Association Property. The total amount of insurance, after

17

application of deductibles, shall be 100% of the replacement value of the insured Property exclusive of land, foundations and other items normally excluded from property policies.

6.01.02   Public liability and property damage insurance, including medical payments insurance, in an amount to be determined by the Board, covering all occurrences commonly insured against for death, bodily injury and property damage arising out of or in connection with the ownership, operation, maintenance or other use of Association Property. This policy shall also cover operation of automobiles or other vehicles or equipment on behalf of the Association.

6.01.03   Workmen's compensation and employer's liability insurance in the amounts and in the forms required by law.

6.01.04   Fidelity coverage against the dishonesty of employees, destruction or disappearance of money or securities, and forgery.  This policy shall also cover persons who serve the Association without compensation.

6.01.05   Coverage of members of the Board and officers of the Association against libel, slander, false arrest, invasion of privacy, and errors and omissions and other forms of liability generally covered in officers' and directors' liability policies.

6.01.06   Coverage against such other risk of a similar or dissimilar nature as the Board deems appropriate.

6.01.07   Notwithstanding the preceding, the Association shall be permitted, if allowed by the Act, to omit any of the coverage described in 6.01.04, 6.01.05 or 6.01.06 above, where premiums are unreasonably expensive or the coverage is not available in the geographic area where Aspen Valley Ranch is located or the coverage is not offered by a carrier of sufficient credit rating.

**6.02   Named Insured and Interests**.  The Association shall be the named insured under each of said policies.  Where appropriate, the named insured may be any ditch or reservoir company owned or controlled by the Association or the officers and directors of the Association, or the officers and directors of any ditch or reservoir company owned or controlled by the Association.  Policies of insurance shall also name Declarant as an insured so long as it shall retain any interest in Aspen Valley Ranch.  Where appropriate, separate Owners may also be named insureds.  The certificate or memoranda of insurance, duplicate originals of all policies and renewals, and proof of payment of premiums shall be issued to the Association, and upon request, to Declarant and to any Owner who is a named insured or to any Eligible Mortgage Holder.

**6.03   Insurance Proceeds**.  The Association shall receive the proceeds of any insurance purchased by the Association.  In the event of damage or destruction due to fire or other disaster, if the insurance proceeds are sufficient to reconstruct the improvements, the Association shall promptly

18

cause such reconstruction to occur. If the insurance proceeds are not sufficient for such purpose, the Association may levy a Special Assessment against the Owners for such deficiency.

## 7.   GENERAL RESTRICTIONS

**7.01   Residential Uses.**  Each Homestead shall be used only for residential purposes and such accessory or incidental uses thereto as may be permitted by any approvals issued by Pitkin County or under the Land Use Code, consistent with this Declaration. No commercial activities may be conducted on any Homestead (Rental of homes within Aspen Valley Ranch shall not be considered a commercial activity). On each Homestead there shall be constructed only one single-family residence and such accessory or incidental structures as may be permitted by the County in accordance with its land use regulations, any approvals issued by Pitkin County, and as approved by the Review Committee. No barns as defined by the Land Use Code shall be allowed on any Homestead except as permitted by the provisions of Section 7.02, below. All accessory structures shall be contained within each Building Envelope. Notwithstanding anything in this Section to the contrary, where a Homestead is burdened by an Agricultural Easement or the Easements described in Section 8, the portions of the Homestead so encumbered may be used solely for the purposes designated in the easement. The foregoing provisions do not apply to the Agricultural Facilities Parcel, the use of which shall be governed by the provisions of Section 10.

**7.02   Compliance with Approval Resolution.**  All development within Aspen Valley Ranch, including improvements constructed on any Homestead and the use thereof, as well as the use, operation and maintenance of all roads and land areas within Aspen Valley Ranch, shall be in accordance with the terms, provisions and conditions of the Approval Resolution, the Exemption Plat, the Hazard Review Site Plan, any other approvals issued by Pitkin County and any amendments thereto, including, but not limited to the following:

7.02.01   Prior to the issuance of a building permit, the Owner of each Homestead shall:

(a)   Obtain approval of an Individual Sewage Disposal System permit from the Pitkin County Environmental Health Department. Septic systems shall be located within the approved building or development envelopes and must comply with the setback requirements from surface and groundwater sources. A qualified professional engineer must design the system.

(b)   Obtain a fireplace/woodstove permit from the Aspen/Pitkin County Community Development Department.

(c)   Obtain an access permit for each individual driveway, which shall be approved by the Pitkin County Engineer. Driveways shall be located within the driveway corridor designated on the Exemption Plat or on the Plat of Aspen Valley Down, and any approved amendments to any of said Plats. If the driveway exceeds

19

30 inches above or below natural grade within the setbacks, the owner shall submit and the Board of Adjustment shall consider a variance application prior to issuance of the access permit.

(d)    Submit a site specific drainage plan for review and approval by the County Engineer.  Said plan shall address positive grading away from the residence, diversion of up-slope water from the building site, and on-site detention of flows from roofs and other impervious surfaces.

(e)    Submit a fugitive dust control plan for review and approval by the Pitkin County Environmental Health Department.

(f)    If applicable, submit to the Aspen/Pitkin County Housing Authority for recording a caretaker dwelling unit deed restriction. The caretaker dwelling units shall be limited to a maximum of 1,000 net livable square feet.  Floor plans of the units shall be provided to the Housing Authority prior to issuance of building permits.

7.02.02  Prior to issuance of any building permits, the Owner of each Homestead  shall:

(a)   Pay the applicable Road Impact Fee.

(b)   Pay the applicable Affordable Housing Impact Fee.

(c)   If the filing is on a Homestead other than those in Aspen Valley Downs, pay a Capital Replacement Fee in the amount of $5,222.22 for the benefit of the Roaring Fork Transit Agency. This fee shall be adjusted upward to reflect the value at the time of payment based on the annualized rate of inflation as published in the Consumer Price Index (Denver/Boulder/Greeley CPI/W not seasonally adjusted, which index stood at 189.2 on July 1, 2005) as established by the U. S. Bureau of Labor Statistics.

7.02.03    Prior to or concurrent with issuance of the Certificate of Occupancy for the unrestricted residence on each Homestead, the Certificate of Occupancy for any caretaker dwelling unit on the Homestead shall also be issued.

7.02.04  Owners shall comply with the following provisions regarding irrigation ditches:

(a)   Grant access to irrigation ditches to ditch owners and the Association.

(b)   Construct buildings uphill of irrigation ditches unless a ditch is culverted.

(c)   Design land uses to avoid flooding problems from flood irrigation.

20

(d)   Place basements and soil absorption sewage disposal systems in locations where they will not be impacted by flood irrigation or seepage from irrigation ditches.

7.02.05   For all Homesteads that are receiver sites for transferable development rights ("TDRs ) and prior to submission of any building permits, each Owner shall submit an executed irrevocable certificate of TDRs and a recorded deed or other assignment evidencing the sale or transfer of the certificate to the Owner. The number of certificates required for each designated receiver site shall be based on the floor area of the residential structure to be constructed thereon, including additions following initial construction. The first certificate shall allow 5,750 sq. ft. and each additional certificate shall allow 2,500 sq. ft. The foregoing square footage "value" of certificates shall be effective until such value is revised by amendment to the Pitkin County Code, unless it is determined that such value has been vested by virtue of common law vesting principles in Colorado.

7.02.06   The total floor area of all residences to be constructed on the nine (9) Homesteads in Aspen Valley Ranch as shown on the Exemption Plat shall not exceed 96,750 square feet. No more than three (3) residences may contain floor area in excess of 10,750 square feet and no residence may contain floor area in excess of 13,250 square feet, provided that the residences on Homesteads 6 and 7 shall not, under any circumstance, exceed 10,750 square feet. Subject to the foregoing, the Declarant shall allocate the allowable square footage of floor area for each Homestead either at the time of the initial sale of such Homestead or upon application for a building permit for a residence on such Homestead, whichever first occurs. The floor area to be allocated shall be set forth in a document entitled "Allocation of Floor Area  which shall identify the Homestead for which the allocation is made, shall be signed by the Declarant and shall be recorded in the office of the Clerk and Recorder of Pitkin County, Colorado. Thereafter, the allocation of floor area as set forth in the recorded document may only be amended by and through an amendment to the Final Approval Resolution processed pursuant to the regulations of the County then in effect.

7.02.07   Waste storage shall comply with the provisions of the Land Use Code relating to bear-proof containers.

7.02.08   The following fugitive dust control measures shall be applied to any and all fugitive dust emission sources as required:

(a)   Unpaved roads and all other disturbed areas on site shall be watered as necessary to prevent fugitive dust from being visibly transported off property. Typical watering frequency shall be three times per day; or maintaining a 3%-4% soil moisture content during construction activity.

21

(b)    Vehicle speeds on all unpaved roads and other disturbed surface areas shall not exceed 25 miles-per-hour.  Speed limit signs (temporary) shall be posted during construction of all common infrastructure.

(c)    Disturbed soil shall be compacted on a daily basis during construction to within 90% of maximum compaction.

(d)    Disturbed areas shall be revegetated according to information submitted by the developer within one growing season of completion of construction activity.

(e)    Mud and dirt that carry out onto paved surfaces shall be minimized.  Any mud and dirt that carry out onto paved surfaces must be cleaned up daily.  Provisions for washing vehicle wheels and covering exported materials shall be utilized.

(f)    No earthwork activities shall be performed when the wind speed, as measured within the project, exceeds 30 miles-per-hour.

(g)    Entry roads, common roads and individual driveways shall be provided with a minimum of six (6) inches of road base per Colorado Department of Transportation Standards.

(h)    Prevent the pollution, or sedimentation, of existing drainage ways and water courses by sediment, debris and other substances resulting from pre-wetting and fugitive dust control measures.

(i)    Furnish and apply an improved liquid dust palliative on portions of all roadways during and after construction.  Dust palliative shall consist of water, or dilution of water and emulsified asphalt, magnesium chloride, or other approved substances.  Spreading and application shall be performed in accordance with Colorado Department of Transportation standards.

7.02.09  Areas disturbed by construction of access drives and installation of utilities shall be revegetated no later than one growing season after completion of work.

**7.03    Development Envelope**.  Areas of a Development Envelope as identified on the Exemption Plat, any Hazard Review Site Plan or any other Site Plan approved by Pitkin County outside of any Building Envelope or Driveway Corridor may be used only for low-impact site improvements, including domestic exempt water wells, ponds, septic tanks, leach fields, landscape planting, irrigation and hay or other crop production, grading, drainage improvements, underground utilities, as well as ranching, other agricultural uses, equestrian uses and facilities, and recreation trails for hiking, cross-county skiing, bicycling and equestrian activities which satisfy the criteria of the Design Guidelines.  Fencing may be allowed outside Development Envelopes upon approval of the Review Committee for ranching or agricultural purposes only.  Such fencing must be in

22

accordance with the Design Guidelines and, where required, shall satisfy the Department of Wildlife's standards and the conditions of the Approval Resolution. The Declarant hereby establishes an easement for any or all of the purposes set forth in this Declaration for the benefit of the Association and the Owners on all of the Homesteads which are located outside of any Building Envelopes as shown on any County approved Plat or Site Plan.

7.04   **Building Envelope**. The Building Envelope is that portion of each Homestead in which all structures and site improvements other than those allowed within Development Envelopes may be constructed, as identified on the Hazard Review Site Plan or amendment thereto, or any Site Plan approved by Pitkin County. As used in this Section, structures and site improvements include, without limitation, the primary residential structure, a caretaker dwelling unit and other accessory buildings or uses such as fences, dog runs, gardens, lawns, paved areas, pools, and other recreational facilities. No development, including grading, excavation, fill placement, landscaping, vegetation removal or disturbance, septic system and well, shall occur outside of the approved Building and Development Envelopes, except agricultural and ranching uses and activities (including replacement as provided in Section 8.03, below) the use of equestrian, mountain biking and hiking trails, recreational activities, improvements to the existing Ranch roads, utility and driveway extensions, maintenance and construction of the new entry off of River Road. Construction and development activity within the Development Envelopes shall be limited to landscape planting, irrigation and hay or other crop production, irrigation ponds, grading, drainage improvements and underground utilities, including septic tanks and leach fields.

7.05   **Driveway Corridor**. Driveway Corridors are those areas within driveway easements designated as such on the Exemption Plat and/or driveway alignments approved by the Review Committee which shall contain the driveway providing physical access to the Building Envelope of each Homestead. The location and point of access to a Driveway Corridor from a Road shall be established and may be modified only by the Review Committee, provided no change in a Driveway Corridor may have a material negative impact. Permitted activities within the Driveway Corridor include vegetation removal and revegetation with native plants, road bed grading and gravel or chipseal surfacing, drainage improvements and erosion control measures, retaining walls and other slope stabilization measures, utility service extensions, address signage monument and low-level lighting for illumination. Construction of driveways within a Driveway Corridor shall be subject to the provisions of the Approval Resolution or any amendments thereto.

7.06   **Use of Common Elements**. Subject to the rights of Declarant as provided in this Declaration, there shall be no obstruction of the Common Elements nor shall anything be kept or stored on any part of the Common Elements without the prior written approval of the Association. Except for those improvements erected or installed by Declarant in its completion of Aspen Valley Ranch, nothing shall be altered on, constructed in or removed from the Common Elements without the prior written approval of the Board. Such approval will not be unreasonably withheld and may be conditioned upon the Owner who requests the approval being required to submit plans for the alteration to the Association for approval, to obtain insurance as required by the Association and to

post adequate surety. In reviewing any plans, the Association may engage the services of architects, attorneys and engineers and the cost of such services will be paid by the requesting party.

**7.07    Limited Common Elements**. Subject to the terms and provisions of this Declaration, every Owner shall have the exclusive right to use and enjoy the Limited Common Elements appurtenant to that Owner's Homestead.

**7.08    Domestic Animals**. Owners of Homesteads within Aspen Valley Ranch shall be allowed to have domestic animals and pets, subject to the limitations set forth below and such other limitations as may be established from time to time by the Board:

7.08.01   The Owner of each Homestead will be permitted to have up to three dogs and its offspring up to three months old. Owners will be prohibited from harboring dogs on a Homestead unless they have adequate facilities (i.e., dogs are kept within residences, a fenced yard, dog run or kennel) to contain the dogs. Enclosed runs must be located immediately adjacent to the principal structure on a Homestead, within the building envelope, and shall not exceed 1000 square feet. Owners are encouraged to completely enclose runs (including roofs) to protect dogs from possible mountain lion predation. If facilities are inadequate to contain dogs, they may be removed from Aspen Valley Ranch until adequate structures can be built.

7.08.02   At no time shall dogs or cats be allowed to run freely within Aspen Valley Ranch. When dogs move beyond their Owner's Homestead, the dog must be controlled by a leash of no more than twelve feet in length, under the direct control of its owner or authorized representative, unless the dog is legally hunting with its owner or authorized representative, or is being trained for such a purpose. No dogs shall be allowed within the buildings located on the Agricultural Facilities Parcel or Homestead 1. Visitors and guests of Owners shall comply with all dog control measures.

7.08.03   The Association shall be responsible for enforcing these covenants. Stray dogs may also be controlled by the County and the Colorado Department of Wildlife ("CDOW"). Owners not in compliance with these restrictions will be responsible for any and all costs incurred by the Association, the County and/or CDOW for enforcement. Should the Association knowingly fail to enforce these restrictions, the County and/or CDOW may enforce them and recover all costs incurred. Penalties for first, second, and subsequent violations will be a warning, $200 fine and a $500 fine, respectively or such other fines as may be set from time to time. At any time after the first offense and warning, the Association, County, or CDOW may request removal of the offending animal from Aspen Valley Ranch. Nonpayment of a fine or failure to remove an animal from Aspen Valley Ranch shall be considered a separate violation for each day that the violation continues after notice, and shall be enforced accordingly.

7.08.04   Contractors, subcontractors, delivery personnel and guests of Owners shall be prohibited from bringing dogs onto any Homestead, even if such dogs are kept inside vehicles.  Violation of this dog policy shall result in the immediate eviction of the dog and the dog's owner from Aspen Valley Ranch.

7.08.05   Owners shall not feed dogs or other pets outside their residences, including decks, to avoid attracting nuisance wildlife or predators.

7.08.06   CDOW and County representatives are entitled to access Aspen Valley Ranch to enforce any of the domestic animal or other wildlife restrictions set forth in this Declaration. CDOW enforcement may include the capture or destruction of any dogs running at large within Aspen Valley Ranch, regardless of where the dogs have originated.  The Association will provide the County with the name and phone number of the Ranch Manager who shall be authorized to act as the Association's representative regarding domestic animal and wildlife restrictions.  CDOW and/or the County are required to provide notice to the Ranch Manager at least 24 hours in advance of their entering Aspen Valley Ranch provided, however, that this notice requirement shall not diminish or restrict any rights that CDOW or the County have pursuant to law to enter Aspen Valley Ranch.

**7.09    No Horses or Livestock**.  Neither horses nor domestic livestock shall be kept on any Homestead or Lot within Aspen Valley Ranch.

**7.10    Boundary Line Adjustments by Owners**.  Notwithstanding the provisions of Section 7.11 below, a boundary line adjustment by Owners between adjacent Homesteads shall be permitted provided that:

7.10.01   The approval of the Association, the County and the adjacent affected Homestead is first obtained;

7.10.02   No Building or Development Envelope is affected;

7.10.03   No Common Element is affected; and,

7.10.04   The Owners desiring such adjustment shall pay all reasonable costs incident thereto including preparation, approval and recording of an amended plat as may be required by the County and Declarant.

**7.11    Boundary Line Adjustments by Declarant**.  Notwithstanding the provisions of Sections 1.03 and 7.10 above, boundary line adjustments by Declarant shall be permitted as between the boundary of any Homesteads owned by Declarant and as between the boundary of any Homesteads owned by Declarant and property adjacent to Aspen Valley Ranch lands abutting such Homesteads.  As to any boundary line adjustment under this Section, Declarant shall obtain any

requisite approvals required by the County and shall pay all reasonable costs incident thereto including preparation, approval and recording of an amended plat.

**7.12  Utilities**.  With respect to the development by Owners on any Homestead, all domestic water, electrical, telephone and other utility pipes or lines shall be buried underground within roads or driveways or within building or development envelopes and shall not be carried on overhead poles or above the surface of the ground.  Any areas of natural vegetation or terrain disturbed by the burying of utility lines shall be revegetated to Review Committee standards, by and at the expense of the Owner so that said revegetation is completed no later than the start of the growing season which immediately follows installation of the utility lines.  Notwithstanding any other provision hereof, there is reserved to Declarant the right to temporarily install, for a period of not more than six (6) months, overhead poles, towers or above-ground pipes for utilities.

**7.13  Enclosure of Unsightly Facilities and Equipment**.  All unsightly facilities, equipment and other items including, but not limited to those specified below, shall be enclosed within a covered structure.  Any motor home, trailer, boat, truck, tractor, garden equipment and any similar items shall be kept at all times, except when in actual use, in an enclosed garage.  Any refuse or trash containers, utility meters or other facilities, service areas, or storage piles shall be enclosed within a structure or appropriately screened from view by planting or fencing approved by the Review Committee and adequate to conceal the same.  No lumber, metals, boat materials, scrap, refuse or trash shall be kept, stored or allowed to accumulate on any Homestead, except building materials during the course of construction and only for such reasonable periods of time as is necessary prior to their collection or disposal.  Prior to receipt of a Certificate of Occupancy from the County, Owners shall remove all construction debris from their Homestead.

**7.14  Satellite Dishes**.  Satellite dishes shall be permitted on Homesteads subject to obtaining any requisite County land-use approvals. Owners desiring to install satellite, relay, up-link or other communication dishes or facilities shall first obtain approval from the Review Committee. Any proposal for a dish or other facilities by an Owner shall also include a plan for berming, screening, fencing and planting so as to conceal the dish or other facilities.  Plans for any dish or other facilities shall include details as to location, size, color, installation, maintenance and other specifications as the Review Committee may reasonably require.

**7.15  Hunting and Firearms**. Hunting and the discharge or shooting of firearms anywhere within Aspen Valley Ranch is prohibited.  The transportation of firearms anywhere within Aspen Valley Ranch, except in a motor vehicle or on horseback or in connection with authorized hunting trips, is prohibited.

**7.16  Drainage and Erosion Control**.  All excavation and earth-moving work within Aspen Valley Ranch shall comply with and further the goals of the engineering studies completed on behalf of the Declarant and approved by the County which deal with proper drainage and erosion control within Aspen Valley Ranch. No Owner shall do anything which impairs or adversely affects the natural drainage on any Homestead, divert drainage or irrigation water onto another Homestead,

26

deprive any other Homestead of its natural drainage course, or otherwise deprive any Homestead of its irrigation water. No Homestead improvements may cause new erosion or exacerbate existing erosion or draining patterns where such changes are, in the opinion of the Association, detrimental to Aspen Valley Ranch lands. Each Owner shall install culverts where driveways cross road ditches, irrigation channels and other drainage ways as required by the Review Committee. The minimum size of any culvert and the construction methods utilized in installing any culvert shall also be approved by the Review Committee. The Association retains the right over and across all Homesteads, other than within any Building Envelope, to engage in any drainage, irrigation, soil or erosion control activities.

**7.17   Pest Control**. No Owners may engage in any pest control activities without having first obtained the written approval of the Association. The Association, consistent with this Declaration, may grant or withhold any such approvals. In the granting of any approval, the Association may impose conditions on any pest control including the techniques, devices of chemicals that may be employed. All pest control shall be implemented at the expense of such Owner.

**7.18   Noxious or Offensive Activity**. No noxious or offensive activity or sound, as determined by the Board, shall be conducted on any portion of Aspen Valley Ranch at any time, nor shall anything be done or permitted which may become a nuisance to or unreasonably disturb Owners of other Homesteads, or be injurious to the reputation of Aspen Valley Ranch.

**7.19   No Mining, Drilling or Quarrying**.

7.19.01   Mining, quarrying, tunneling, excavating or drilling for any substances within the earth including oil, gas, minerals, gravel, sand, rock and earth, shall not be permitted within the limits of Aspen Valley Ranch except as allowed by this Section 7.19.

7.19.02   Drilling of individual water wells shall be permitted by Owners of Homesteads in accordance with the provisions of Section 9.01 below. All pond construction shall be in strict conformity with the Irrigation and Pond Construction Guidelines to ensure that no pond excavation is construed as an excavated well exposing ground water.

**7.20   Completion of Construction**. Any construction activity on any Homestead in Aspen Valley Ranch shall be completed and fully cleaned up within twenty-four (24) months from its commencement unless a variance shall be obtained from the Review Committee to allow for a longer period of construction. All disturbed areas shall be revegetated within one growing season of disturbance.

**7.21   Fireplaces**. All structures to be constructed in Aspen Valley Ranch shall comply with the fireplace regulations of the County. Prior to the construction of any fireplace, a fireplace permit shall be obtained from the County's Environmental Health Department or its successor.

**7.22   Driveways**.

7.22.01  The driveway for each Homestead shall be located within the established Building and/or Development Envelopes for such Homestead.

7.22.02  Driveway design, location, surfacing material and construction methods, including, without limitation, application of an approved dust suppressant, shall be approved by the Review Committee and shall be in compliance with applicable provisions of the Approval Resolution which require, among other things, securing an access permit from the County. The design and construction of driveways shall comply with the County standards and specifications governing driveways. In particular, if a driveway exceeds six feet (6') above or below the natural grade and is located within a setback area, the Owner shall submit and the Board of Adjustment shall consider a variance application prior to the issuance of the access permit.

7.22.03  The Owner whose Homestead is being served by a particular driveway shall be responsible for ongoing dust control of that driveway, and shall treat the driveway with dust suppressants approved by the County.

7.22.04  All access driveways which connect a Homestead to a Road shall be constructed at the expense of the Owner whose Homestead is being served by that particular driveway. Provided that the access driveway is constructed to Review Committee approved standards, the Association shall be responsible for snow removal. Costs of snow removal shall be charged as a special cost center to Owners based on the length of, and other conditions peculiar to, each such driveway. Except as to snow removal, Owners shall remain responsible for the maintenance and repair of access driveways to their Homestead.

7.22.05  Driveways shared by two or more Homesteads shall be constructed by the Owner of the first Homestead developed, and the construction cost of the driveway shall be shared. The Owners of Homesteads subsequently developed shall pay their share of the construction cost at the time they apply for a building permit or any other approval issued by Pitkin County.

**7.23   Trees and Landscaping**. Owners may not cut or alter trees, bushes or natural vegetation except with the approval of the Review Committee and then only within Building Envelopes. Cutting or alteration of trees, bushes or natural vegetation by the Association or Declarant may also occur outside Development Envelopes consistent with the Approval Resolution.

**7.24   Damage by Owners**. Each Owner is responsible for any damage caused to Roads, ditches, fences, trails, natural drainage courses, irrigation ditches, utilities, Association Property, or to other Homesteads or Property thereon during the construction of improvements upon his Homestead, by any vehicle belonging either to him or anyone using the Roads while engaged in any activity relating to the construction of improvements on the Owner's Homestead. Each Owner shall

28

also be responsible for any damage caused by utility cuts in roads, washouts and runoff damage caused by failure to properly install culverts, and to repair any such damage in a timely manner.

**7.25    Fences**. All fences to be erected by Owners must be in accordance with the Design Guidelines, must be approved by the Review Committee, shall be in harmony with the nature, setting and surroundings of Aspen Valley Ranch and, if outside of the Building Envelope and not necessary for livestock retention, shall comply with the wildlife fencing standards required in the Land Use Code. Fences may not be erected by Owners outside Building Envelopes, except as may be approved by the Review Committee for ranching or agricultural purposes only and consistent with the Agricultural Easement provided for in Section 8.03. All fencing must be in accordance with the Design Guidelines and shall, where required, comply with Colorado Department of Wildlife standards and the conditions of the Approval Resolution. Fencing on real property owned by the Association shall be subject to these limitations unless necessary for livestock retention and must be approved by the Review Committee prior to erection.

**7.26    Sewage Disposal Systems**. An Individual Sewage Disposal System ("ISDS") permit for each Homestead shall be obtained from Pitkin County Environmental Health Department, prior to submission of a building permit for any Homestead. Final locations, configurations and sizes of the ISDS for each Homestead shall be determined at ISDS permit review and approved by the Pitkin County Environmental Health and Community Development Departments. The ISDS must comply with the setback requirements from surface and groundwater sources and with any term or condition of a domestic exempt water well permitted for location on any Homestead on which the ISDS systems is proposed and shall be located within the Building and/or Development Envelope for each Homestead.

**7.27    Limits on Certain Vehicles**. Except for agricultural, safety or maintenance purposes, the use within Aspen Valley Ranch of snowmobiles, "all-terrain" type vehicles, motorcycles, other motor-driven vehicles and pedal bicycles shall be allowed only on the Roads and driveways shown on the Exemption Plat. Subject to the foregoing, the Association shall have the authority: (a) to prohibit entirely from Aspen Valley Ranch certain motor vehicles that may be considered to emit noise or other pollution in excess of levels or standards promulgated by the Association, and (b) to promulgate such other rules and regulations as shall be necessary with respect to the operation of motor vehicles on Aspen Valley Ranch lands.

**7.28    Signs**. The Association shall have the right to post signs on any Homestead prohibiting trespassing or hunting, to protect boundary lines, or for any other purposes consistent with Aspen Valley Ranch operations. Owners may not post, maintain or permit on any Homestead "For Sale" or "For Rent" signs or signs advertising names of contractors, landscapers, brokers, architects, lenders or similar designations without written approval of the Board. Except as provided herein, all other signs including specifically permanent or temporary identification signs, shall be approved in writing by the Review Committee prior to such signs being erected. Notwithstanding the foregoing, Declarant shall be permitted to maintain signs and conduct all other activities permitted in Section 7.29 of this Declaration.

**7.29    Declarant's Use**.  Notwithstanding anything to the contrary contained in this Declaration, it is permissible and proper for Declarant, its employees, agents, and contractors to perform such reasonable activities as Declarant deems necessary or incidental to the completion and sale of Homesteads, specifically including, without limiting the generality of the foregoing, maintaining business offices, storage areas, signs, model units, sales offices, parking areas and lighting facilities.  Declarant reserves the right to locate any sales office, management office or models on any Homestead owned by Declarant or on the Agricultural Facilities Parcel.  The rights retained by Declarant in this Section 7.29 shall terminate upon the earlier to occur of (a) the sale of the last Homestead by Declarant to the first Owner thereof, or (b) ten (10) years from the date this Declaration is filed in the land records of the County.

**7.30    Exterior Lighting**.  All exterior lighting in Aspen Valley Ranch shall comply with Pitkin County's Landscape Guidelines and Lighting Regulations and the Design Guidelines.

**7.31    Caretaker Dwelling Units**.  An Owner may construct a caretaker dwelling unit on a Homestead and, if constructed, shall utilize and operate such caretaker dwelling unit in accordance with the terms, conditions and provisions of the Caretaker Dwelling Unit Deed Restriction required and enforceable by the Aspen/Pitkin County Housing Authority, or its successor.

**7.32    Wildfire Mitigation Standards**.  In addition to the wildfire mitigation requirements of the Approval Resolution, the following wildfire mitigation standards shall apply to all Homesteads:

7.32.01   Trees shall be planted at least 10 feet (10') from any structures.

7.32.02   Roofs shall be constructed with a Class A roof covering or Class A assembly. Wood shake/shingle roof coverings are prohibited.  Roofs with less than a 3:12 pitch are not permitted unless they comply with the following:

(a)    All roof coverings shall be non-combustible materials and installed on a Class A roof assembly.

(b)    All roof coverings shall have a surface that shall facilitate the natural process of clearing the roof.

(c)    All roof designs shall facilitate the nature process of clearing roof debris. Protrusions above the roof line, such as parapets, shall be prohibited.

(d)    Roofs shall be installed as required by the adopted building code and shall have a minimum of 1:48.

30

(e)    All roof designs, coverings or equivalent assemblies shall be specifically approved by the Fire Marshall prior to submittal of a building permit application.

7.32.03  Vents shall be screened with corrosive, resistant wire mesh with mesh ¼-inch (1/4") maximum.

7.32.04  Roofs and gutters shall be kept clear of debris.

7.32.05  Yards shall be kept clear of all litter, slash, and flammable debris.

7.32.06  All flammable materials shall be stored on a parallel contour a minimum of 15 feet (15') away from any structure.

7.32.07    Weeds and grasses within a 10-foot (10') perimeter of all structures shall be maintained to a height of not more than six (6") inches.

7.32.08  Firewood/wood piles shall be stacked on a parallel contour a minimum of 15 feet (15') away from the structure.

7.32.09  Swimming pools or ponds shall be accessible to Fire Department vehicles.

7.32.10  Fences shall be kept clear of brush and debris.

7.32.11  Wood fences shall not connect to the structure.

7.32.12  Fuel tanks shall be installed underground with an approved container.

7.32.13  If allowed by the Declarant, propane tanks shall be installed according to NFPA 48 standards and on a contour away from the structure with standard defensible space vegetation mitigation around any above-ground tank.  Any wood enclosure around the tank shall be constructed with materials approved for 2-hour, fire-resistive construction on the exterior side of the walls.

7.32.14  Each structure shall have a minimum of one, 10-pound (10#) approved ABC fire extinguisher placed in a visible and accessible location.

7.32.15  Addresses shall be clearly marked with 2-inch (2"), non-combustible letters and shall be visible and installed on a non-combustible post.

7.32.16  New utility lines shall be buried within or along roadways.

7.32.17  Vegetation within 15 feet around all structures shall be established and maintained at 6" or less, which may include mowed grass, low growing perennials or some type of hard

31

scape (i.e., sidewalk, pavers or rock mulch). Beyond the 15-foot perimeter and up to 30 feet from the structure, grass shall be kept mowed to a height of 6" or less.

7.32.18  Landscaping within 100 feet of any structure shall be spaced no closer than 10 feet from the outermost branches. The lower limbs of conifers should be removed up to 10 feet or half the total height of the plant to eliminate ladder fuels.

## 8.     EASEMENTS AND RIGHTS RESERVED

**8.01    Easements Described on Plat**.  All of Aspen Valley Ranch is subject to the easements shown, created, reserved or granted on the Exemption Plat, or any other document duly executed by the Declarant.

**8.02    Development of Aspen Valley Ranch**.  Declarant reserves for itself (and to the extent necessary, such right is hereby extended to the Association) and their agents, employees and contractors, as Special Declarant Rights (as defined by the Act), the rights to enter upon Aspen Valley Ranch and to do whatever Declarant deems necessary or advisable in connection with construction or other work to be performed by Declarant for the development of subdivision improvements including, but without limitation, the construction and installation of a domestic water system, fire protection, drainage, irrigation and water storage facilities, the installation of all utilities, the construction of all roads, grading and landscaping, the construction of all buildings and other improvements to be constructed by Declarant, including amenities, the erection or placement of such temporary structures as may be reasonably necessary to facilitate such development, placement of such sign or signs as Declarant may deem advisable in connection with the sale of the Homesteads and to effectuate the exercise of the rights of Declarant hereunder. The foregoing rights shall remain in Declarant and may also be exercised by Declarant as to any Property conveyed and leased by Declarant notwithstanding such conveyance to the Association.  No rights reserved in this Section 8.02 shall extend into any Building Envelopes on any Homestead after the closing on the sale to an Owner other than Declarant.

**8.03    Agricultural Easement**.  There is hereby granted and established by Declarant on each Homestead, an easement for agricultural uses upon and across that portion of each Homestead which has been designated and described generally on the Exemption Plat as being subject to this Agricultural Easement.  This Agricultural Easement shall be perpetual, shall run with the land burdened thereby, and shall be for the exclusive benefit of the Association, except that, pursuant to Section 12.09, the County shall be entitled to enforce its provisions.  As used herein, agricultural purposes shall include the irrigation, cultivation and harvesting of growing crops, including hay, and all uses incidental or necessary thereto, including the construction and maintenance of ponds which serve an irrigation purpose.  Pursuant to the Approval Resolution, the Association is required to regularly irrigate certain portions of the land area subject to the Agricultural Easement which has been historically irrigated.  The designation of land subject to the Agricultural Easement may be revised from time to time by the Association by adding or deleting land areas subject thereto, provided, however, that the total acreage subject to Agricultural Easement which the Association is

32

required to irrigate shall not be less than 220 acres.  In calculating the land area which shall be irrigated, any land area devoted to irrigation ponds shall be included as irrigated lands and, similarly, land areas which contain underground utilities, including septic tanks and leach fields, shall be included as irrigated lands provided that the surface above such utilities is subject to the Agricultural Easement and is, in fact, irrigated.  In the course of developing Aspen Valley Ranch, irrigation and crop production may be temporarily discontinued within the Agricultural Easement area in order to accommodate the construction of roadways, driveways, the installation of utilities, including septic tanks and leach fields, the installation or construction of drainage structures, the construction of irrigation ponds, the reshaping of land areas within Development Envelopes and the construction of residential structures, provided that the land areas which are irrigated for hay production, or otherwise, are reclaimed for such purposes within a reasonable time after their disturbance.  The foregoing notwithstanding, the Association, with the consent of affected Owners may remove portions of hayfields from hay production for the sole purpose of planting and maintaining stands of native trees or meadows containing native wildflowers, shrubs and grasses.

**8.04   Utility Easements**.  The Declarant hereby grants non-exclusive easements to the Association, Owners or utility providers for utilities, including shared septic and water systems, ditches, irrigation and drainage purposes including, without limitation, for the installation, relocation, operation, maintenance, repair and replacement of lines, pumps, pipes, transformers, towers, tanks, wires, conduits, culverts, flood control berms, ditches, ponds and other facilities of systems and for ingress and egress to and from the same, over and across the real property described herein, and, without extinguishing the aforementioned general easement from time to time to substitute one or more specific easements for the use by utility companies, Owners or others by recording of an instrument in the real property records of the County.  To the extent reasonably practical, such easements shall not be located within Development Envelopes.  Unless the written consent of Declarant is first obtained, utility companies shall have no right to use easements over Aspen Valley Ranch lands to serve properties adjacent to Aspen Valley Ranch.  Declarant shall be entitled to receive any consideration paid by such adjacent Property or the utility company for such easement. Where necessary, Declarant shall have the right, without obtaining the consent of any Owner, Mortgagee or the Association to amend the Exemption Plat to reflect any relocations of existing easements shown on the Exemption Plat, or the granting of new easements for any of the purposes permitted hereunder.  Declarant shall make all necessary arrangements with utility companies to provide electric and telephone service to Aspen Valley Ranch in phases.  Accordingly, utilities may not be available to all Homesteads at the same time and any Owner, prior to the purchase of a Homestead, shall be responsible for obtaining from Declarant a schedule for the phasing of utilities.

**8.05   Emergency Access Easements**.  A non-exclusive easement for ingress and egress is hereby granted to the Association, Declarant, and to police, sheriff, fire protection, ambulance and other similar emergency agencies of persons, now or hereafter servicing Aspen Valley Ranch and its residents to enter upon all Roads, trails and driveways located in Aspen Valley Ranch in the lawful performance of their duties. Private security contracts or other security arrangements made by Owners must first be approved by the Association.   Secondary routes may be used solely for

ingress and egress of emergency vehicles and personnel, and for such access as delineated in existing easement agreements.

**8.06    Trail Easements**. Those areas of land within Aspen Valley Ranch designated on the Exemption Plat, or as may be established by Declarant after the recording of the Exemption Plat, which are referred to as Trail Easements, including the Public Trail Easement, are hereby established by Declarant as easements for the benefit of Owners for the purpose of horseback riding, hiking, cross-country skiing and bicycling. No such easements shall be located within any County approved Building Envelope. The use of motorized vehicles upon any trail easement shall be prohibited except in connection with the agricultural operations of Aspen Valley Ranch or for the maintenance of ponds and cross country ski trail grooming. Sections of trails may be subject to seasonal closure pursuant to the regulations of the County.

**8.07    Shared Well and Septic System Easements**. Declarant reserves the right, prior to the initial sale of any Homestead, to establish an easement on such Homestead for the purpose of installing and maintaining a shared water well and/or Individual Sewage Disposal System, or any components thereof, for the benefit of an adjacent Homestead or the Agricultural Facilities Parcel by recording an easement in the Pitkin County records.

**8.08    Aspen Valley Downs Easements**. The Exemption Plat describes the Agricultural Easement Areas and Non-Development Easement Tracts which were designated and established in connection with the subdivision of the Aspen Valley Downs Subdivision and which are subject to the applicable provisions of the Protective Covenants for Aspen Valley Downs Subdivision, recorded May 14, 1992, as Reception No. 344799, in the Pitkin County records.

**8.09    Fire Protection Pond**. The Declarant and the Association shall have an easement for the maintenance, repair or replacement of the fire protection pond located on Homestead 5 and as identified on the Exemption Plat in order to maintain such pond for the purpose of providing a supply of water for fire protection purposes for the benefit of all Homesteads within Aspen Valley Ranch and all lots within the adjacent Aspen Valley Downs Subdivision.

**8.10    Relocation of Easements**. Declarant reserves the right, without the necessity of obtaining the consent of Owners, Eligible Mortgage Holders or the County to record an amendment to the Exemption Plat which adjusts the location of any easements for Roads or trails to reflect the actual location of such Roads or trails following the construction thereof.

**8.11    Artwork Easement.**. Declarant and the Association shall have a blanket easement for any artwork or sculptures that are located on individual Homesteads which shall be allowed to remain in place in perpetuity. Employees and/or agents of the Declarant or Association shall be permitted access to the artwork or sculptures for the maintenance and repair of the same.

## 9.   WATER RIGHTS AND USE

**9.01   Individual Domestic Exempt Wells**. Owners of Homesteads shall be permitted to drill and operate within approved Development Envelopes, and as otherwise  permitted by law, domestic exempt individual wells for domestic use, irrigation and fire protection purposes only with the approval of the Declarant and the Association, which consent may be withheld in the sole and absolute discretion of the Declarant and Association.  If approved by the Declarant and the Association, Owners desiring to drill an individual well shall be responsible for obtaining all state and local permits and approvals for such wells and shall also be responsible for the payment of all costs associated with the drilling, development, operation, repair, maintenance and replacement of such wells.  Use of such wells shall be limited to irrigation of not more than one (1) acre, or the amount of land allowable to be irrigated in accordance with the permit, whichever is less. Declarant makes no representation or warranty that water for such wells is available on any particular Homestead or, if available, the depth, quality or quantity of water that may be available.

**9.02   Irrigation Ditches**.  Owners acknowledge that they may not realign or modify any of the existing and historic irrigation ditches which traverse their Homestead without the Association's consent and, if required under Colorado law, the consent of all down-gradient owners or users of water rights conveyed by such ditches.

**9.03   Irrigation System**.  The Owner of any Homestead that is to be provided with water for irrigation by the Association shall be required to connect to the Association's distribution system, as that term is defined and described in the Irrigation and Pond Construction Guidelines attached hereto as **Exhibit B** and a Water Use and Ditch Operating Agreement which sets forth the terms, conditions and restrictions on which irrigation water will be provided to the Homestead.  All such connections shall be undertaken and completed by the Association at the expense of the Owner required to connect. Thereafter, the Association shall be responsible for the operation, maintenance and repair of the system of ditches, headgates, ponds, pipelines, sprinklers and other elements of Aspen Valley Ranch's irrigation system, and for the regular irrigation, in accordance with normal and customary practices, of the land areas subject to the Agricultural Easement, to the extent permitted by the terms and conditions of Court Decrees, other Court Orders  and permits establishing or relating to the water rights owned by the Association and in conformity with the Irrigation and Pond Construction Guidelines.

**9.04   Ponds**.  Subject to the provisions of this Declaration, the Irrigation and Pond Construction Guidelines, any applicable County land use approvals, and such decrees as may be entered by the District Court, Water Division No. 5, Owners of Homesteads, may, at their expense, construct, operate and maintain ponds within Development Envelopes if such ponds are approved by the Declarant and the Review Committee in their sole and absolute discretion.  Such ponds may be used for fire protection, aesthetic, piscatorial (and if allowed by Colorado law, temporary irrigation control storage) purposes.  Prior to any development, the location, size, construction specifications and operational plans for such ponds must be approved by the Review Committee in strict conformity with the Irrigation and Pond Construction Guidelines.  Owners shall be solely

responsible for obtaining any permits, state engineer or other approvals for any domestic exempt water well, ponds, dams or any on-site water features allowed herein and for all drilling, construction and operating costs associated therewith. This Section shall not abridge or otherwise impact the right of the Association to own and maintain a pond, or ponds, on the Agricultural Facilities Parcel or within any other part of Aspen Valley Ranch, including but not limited to the Agricultural Easement, in a manner consistent with the terms of such easement.

**9.05   Domestic Water System**. The Domestic Water System installed by Declarant, including the water storage tank, pumps and pipelines, shall be owned and maintained by the Association for the benefit of Owners who connect to such System and for the benefit of the Common Elements, and the Association shall have an easement on all of the land within Aspen Valley Ranch for the installation, maintenance and repair of the Domestic Water System and its components.

**10.   AGRICULTURAL FACILITIES PARCEL AND RANCH MANAGEMENT**. The Agricultural Facilities Parcel, Agricultural Easement and Association Property shall be owned and administered by the Association pursuant to the terms of this Section.

**10.01   Uses and Structures**. Within the Agricultural Facilities Parcel, the Association may construct, maintain, repair or replace barns, storage sheds, garages, stables, corrals, outdoor riding arenas and customary farm, ranch and equestrian facilities, or any other facilities for use by Owners including, but not limited to, a ranch house, swimming pool and gym, provided that the total square footage of all buildings shall not exceed 30,000 square feet and that no single building may contain more than 5,000 square feet. All such facilities shall be contained within the building envelope designated on the Exemption Plat for the Agricultural Facilities Parcel. The farm, ranch and equestrian facilities may be utilized for any farming, ranching, equestrian or agricultural use authorized in the RS-20 Zone District.

**10.02   Agricultural Facilities Parcel Housing**. Within the Agricultural Facilities Parcel, there exists a residential dwelling unit designated as the Bourg Cabin. The Bourg Cabin shall be utilized in accordance with County Resolution No. 103-2020, and the Restrictive Covenant recorded at Reception No. 672284 on January 6, 2021.

**10.03   Agricultural Easement**. The Association shall actively utilize those lands within Aspen Valley Ranch which are subject to the Agricultural Easement in agricultural production. The Association shall employ personnel who are knowledgeable and experienced in agricultural for the purpose of producing hay and other products necessary for the continued viability of the use of such lands in agricultural production. In addition, employees of the Association shall be responsible for the care and maintenance of horses boarded on the Agricultural Facilities Parcel by Owners, the maintenance of roads and other Association Property, the care and maintenance of all facilities on the Agricultural Facilities Parcel and other facilities for agricultural, water, irrigation and maintenance functions located on any portion of Aspen Valley Ranch, and such other duties as the

Board may, from time to time, assign. All employees of the Association serve at the pleasure of the Board, subject to the policies and procedures it shall establish from time to time.

**10.04  Management**. Any facilities constructed on the Agricultural Facilities Parcel will be managed for the exclusive use of Owners and their guests. The Owner(s) of each Homestead may board one or more horses on the Agricultural Facilities Parcel, subject to the policies and fee schedules of the Association and the availability of space. Other services such as stabling, shoeing, grooming, veterinary services, exercising, training and teaching may be available at additional cost through the ranch manager at rates established by the Board from time to time. No horses other than those belonging to Owners and Association staff may be boarded on Aspen Valley Ranch. No commercial horse operations such as breeding, raising or training will be permitted at Aspen Valley Ranch. All other aspects of the keeping, maintaining and use of horses at Aspen Valley Ranch shall be determined by the Board, with the advice of the ranch manager if requested by the Board.

**10.05  Water Rights**. All water rights transferred to the Association as Property conveyed or leased by Declarant shall be used by the Association in the operation and maintenance of Aspen Valley Ranch, unless the Owners elect to make a different use of said water rights, in which case the water rights, or a portion of them, may be used for another purpose or conveyed (by deed, lease or other agreement) to an Owner or a third party. Nothing in this Section shall authorize the use of any water right which would violate the Approval Resolution or a decree of any court having jurisdiction.

**10.06  Ponds**. The Association shall be responsible for the maintenance, repair and replacement of ponds constructed by the Association for irrigation or fire protection purposes and any and all berms and drainage control structures or facilities. The Association shall have an easement for all purposes relating to the foregoing maintenance obligation upon and across each Homestead.

## 11.  TERM, AMENDMENT AND TERMINATION OF COVENANTS

**11.01  Term**. The term of this Declaration shall be perpetual.

**11.02  Amendments**. Commencing on the date of recording hereof and continuing until the closing (i.e., recording of the deed) on the sale of the first six (6) Homesteads by Declarant, Declarant shall have the absolute right to amend any provision of this Declaration and the Irrigation and Pond Construction Guidelines, except as limited by Sections 11.04 and 12.09, provided that such amendment shall not materially adversely affect marketability of title to any Homestead. After the expiration of the period described in the preceding sentence or earlier written relinquishment by Declarant, if any, this Declaration and the Irrigation and Pond Construction Guidelines may, except as limited by Sections 11.04 and 12.09, be amended by a vote of sixty-seven percent (67%) of the votes entitled to be cast by the Members; provided that such amendment shall not adversely affect marketability of title to any Homestead or be contrary to any applicable Water Court Decree. Consent of Mortgagees shall not be required in order to amend this Declaration. By instrument signed by Declarant and duly recorded in the real property records of the County, Declarant may

sooner relinquish its right to amend this Declaration or make interpretations thereto as permitted in Section 12.01 below. The Declaration shall only be amended at a meeting called for that purpose and within six (6) months after the date of such meeting there shall be recorded in the real property records of the County an instrument evidencing such amendment. Any instrument amending this Declaration shall be duly executed by Declarant, or both the President and Secretary of the Association, as the case may be. Notwithstanding the preceding, no amendment shall be permitted that is inconsistent with any of the rights granted, retained or reserved to Declarant, hereunder or which attempts to enlarge or expand any obligation of Declarant hereunder, unless such amendment is consented to in writing by Declarant, or which is in violation of the rights reserved to the County pursuant to Section 12.09, below. Furthermore, where any amendment is not considered by Declarant in its reasonable judgment to be a material change to any provision of this Declaration, such as (without limitation) the correction of a technical, drafting or typographical error, correction of some obvious omission, resolution of any conflict with applicable laws, clarification of any ambiguous statement or the like, such amendment may be made at any time by Declarant, without requirement to obtain the consent of any Owner or Eligible Mortgage Holder.

**11.03 Rule Against Perpetuities**. If any of the terms, covenants, conditions, easements, restrictions, uses, limitations or obligations created by this Declaration shall be unlawful or void for violation of (i) the rule against perpetuities or some analogous statutory provision, (ii) the rule restricting restraints on alienation, or (iii) any other statutory or common law rules imposing like or similar time limits, such provision shall continue only for the period of the life of Spencer Angel, his now living descendants, and the survivor of them, plus twenty-one (21) years.

**11.04 Termination**. This Declaration may be terminated only if all the Owners, Eligible Mortgage Holders and the County agree to such termination by an executed acknowledged instrument duly recorded in the real property records of the County. This Declaration shall also terminate in the event of the taking of all of Aspen Valley Ranch by condemnation, eminent domain, abandonment or termination as provided by law.

## 12. MISCELLANEOUS

**12.01 Interpretation of the Covenants**. Except for judicial construction, Declarant shall, until the closing (i.e., recording of the deed) on the sale of the first six (6) Homesteads, have the exclusive right to construe and interpret the provisions of this Declaration. Thereafter, the exclusive right to construe and interpret this Declaration shall rest with the Association acting by and through its Board. In the absence of any adjudication to the contrary by a court of competent jurisdiction, the construction or interpretation of the provisions hereof by Declarant and thereafter the Association shall be final, conclusive and binding as to all persons and Property benefitted or bound by this Declaration and provisions hereof. The provisions of this Declaration shall be liberally construed to effectuate its purpose to create a uniform plan for the development, operation and maintenance of Aspen Valley Ranch.

**12.02   Colorado Law**.  The interpretation, enforcement or any other matters relative to this Declaration shall be construed and determined in accordance with the laws of the State of Colorado.

**12.03   Disclaimer**.  No representations or warranties of any kind, express or implied, have been given or made by Declarant, or its agents or employees, in connection with Aspen Valley Ranch, or any portion thereof, or any improvement thereon, its physical condition, zoning, compliance with applicable laws, fitness or intended use or operation, cost of maintenance or taxes except as expressly set forth in this Declaration or except as set forth in any Disclosure Statement required to be given under applicable rules of the Colorado Real Estate Commission.

**12.04   Notices and Registration of Mailing Address**.  Each Owner and each First Mortgagee, insurer or guarantor of a First Mortgage, shall register their mailing address with the Association and any notices or demands intended to be served upon the Association, or any such Owner, First Mortgagee, insurer or guarantor, shall be hand-delivered or sent by first-class mail (postage prepaid), addressed to the Association at its address set forth below (or such other address of which it gives notice) or to other such person, or entity, addressed in the name of such person or entity, at such registered address.  However, if any Owner fails to so notify the Association of a registered address, then any notice or demand may be delivered or sent, as aforesaid, to such Owner at the address of such Owner's Homestead.  Until the same has been changed, the address for the Association shall be: c/o Ajax Holdings, LLC, PO Box 4068, Aspen Colorado 81612.  Any notice required or permitted to be provided to the County shall be sent to Pitkin County Attorney, 530 East Main, Third Floor, Aspen, Colorado 81611.

**12.05   Distribution of Information**.  In the event that the Association or any Owner wishes to notify the Owners of any matter affecting Aspen Valley Ranch or the community, the Association shall distribute said notice on behalf of itself or any such Owner.  The right of an Owner to compel the distribution of such notices by the Association shall be subject to the reasonable rules and regulations promulgated by the Association.

**12.06   Non-Waiver**.  Failure by Declarant, the Association, any Owner, any First Mortgagee, the County or any other person or entity to enforce any covenant, condition, restriction, easement, reservation, right-of-way or other provision contained in this Declaration shall in no way or event be deemed to be a waiver of the right to do so thereafter.

**12.07   Severability**.  Any determination by any court of competent jurisdiction that any provision of this Declaration is invalid or unenforceable shall not affect the validity or enforceability of any of the other provisions hereof. Where any provision of this Declaration is alleged to be or declared by a court of competent jurisdiction to be unconscionable or unreasonably vague, Declarant shall have the right by amendment to this Declaration to replace such provision with a new provision, as similar thereto as practicable, but which in Declarant's reasonable opinion would be considered not to be unconscionable, or which clarifies the meaning of original provision.

**12.08  Run with the Land**.  Declarant, for itself and its successors and assigns, hereby declares that all of Aspen Valley Ranch shall be held, used and occupied subject to the provisions of this Declaration, and to the covenants and restrictions contained herein, and that the provisions hereof shall run with the land and be binding upon all persons who hereafter become the Owner of any interest in Aspen Valley Ranch.

**12.09  Enforcement of Covenants by County**.  The provisions of this Declaration specifically required by the Approval Resolution shall be enforceable by the County without involvement by the Association or any Owner.  None of the provisions listed in such Sections may be amended or deleted without first receiving the written approval of the County, which approval shall not be unreasonably withheld.  If any court proceedings are instituted in connection with the County's right of enforcement, the prevailing party shall be entitled to reimbursement of its costs and expenses, including reasonable attorneys' fees in connection therewith.

**IN WITNESS WHEREOF**, Declarant has executed this Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch this 20 day of August , 2021.

AVR AH LLC,
a Colorado limited liability company

By: _____
        Brooke Peterson, Manager


## ACKNOWLEDGMENT OF
## AMENDED AND RESTATED DECLARATION OF PROTECTIVE COVENANTS
## FOR ASPEN VALLEY RANCH

STATE OF   COLORADO            )
                               )
COUNTY OF   PITKIN             )

JOANN LEDINGHAM
Notary Public
State of Colorado
Notary ID # 20064022471
My Commission Expires 06-09-2022

The foregoing Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch was acknowledged before me this 20 day of August , 2021, by Brooke Peterson as Manager of AVR AH LLC, a Colorado limited liability company.

WITNESS my hand and official seal.

My commission expires: 6-9-2022

_____
Notary Public


Table of Exhibits

Exhibit A - Design Guidelines
Exhibit B - Irrigation and Pond Construction Guidelines (to be supplied)

C:\Users\Cher\Desktop\Myler Client Files\Client\SGS-AVR\Amended and Restated Declaration 072921 2.wpd

41

**EXHIBIT A**
**Aspen Valley Ranch**
**Design and Development Guidelines**

I.      <u>General Requirements:</u> All improvements, construction, landscaping and alterations on any Homesteads within Aspen Valley Ranch shall conform and harmonize with the surroundings and with other structures as to design, materials, color, siding, height and all other design features. The seclusion and view of and from each Homestead shall be protected insofar as is reasonably possible and practicable. All development in Aspen Valley Ranch shall endeavor to protect and preserve the visual character of the property and the wildlife using the property and shall preserve and maintain the irrigated lands in Aspen Valley Ranch. The building form, as well as materials and colors used on the outside of buildings or structures, shall be in harmony with the architectural design of other structures within Aspen Valley Ranch. Buildings and structures shall be located within the defined building envelopes specified for each Homestead to blend with topography and finished grade elevations. Landscaping shall be consistent with and harmonize with the natural setting and native trees, and other vegetation within or adjacent to Homesteads in Aspen Valley Ranch.

In general, the intent and purpose of these rules and regulations is to insure that the highest level of quality in land use and development pervades all aspects of Aspen Valley Ranch. This is absolutely essential to the success of the area and will result in a truly first-class rural residential community.

II.     Building Design Guidelines
        A. Site Evaluation:
            1. The initial step in any building design is an evaluation of the site. The objective of site evaluation is, within each defined building envelope (as set forth on the Exemption Plat), to identify the site's problems and opportunities, which include, but are not limited to:
                a. Land mass features (e.g. ridges, buttes, slopes, streams, etc.)
                b. Existing vegetation
                c. Prevailing storm winds
                d. Sunlight patterns
                e. Existing access and circulation
            2. The site evaluation should make use of such professional consultants including architects, civil engineers, soils engineers, landscape architects, solar consultants, geologists and other specialists, as required. It should draw on topographic surveys, site photos, soils reports and any other documentation helpful to forming an accurate picture of what the site's real condition consists of. All site evaluation materials should be submitted to the Site and Design Review Committee ("Review Committee").
        B. Site Development Major Issues:
            1. Preservation of Significant Land Features
               Each site at Aspen Valley Ranch has its own unique land form features. Whenever possible, these existing features should be preserved and reinforced by any construction. The objective is to fit the buildings to their sites in a way that: (i) leaves

the natural massing and features of Aspen Valley Ranch and (ii) treats the buildings as an integral part of the site, rather than isolated objects at odds with their surroundings.

2. Preservation of Existing Site Vegetation

Existing concentrations of vegetation are one of Aspen Valley Ranch's amenities and an important part of its ecosystem. Whenever possible, these concentrations should be preserved and reinforced by new construction. The objective is to build on what exists, adding new vegetation that is compatible with indigent plant life. It is required that all alterations of the natural landscape be revegetated whether or not construction ultimately occurs at the site.

3. Preservation of Significant Views

Two kinds of views are important at Aspen Valley Ranch: (i) those that owners have from their sites, and (ii) those that owners have through other owner's sites to features beyond. Both kinds of views should be preserved. The objective is to create as many opportunities for views as possible within the constraints posed by the (i) site itself, and (ii) these rules and regulations.

4. Location of Construction

   a. New buildings and other construction should be placed on their designated sites in a way that creates a carefully scaled relationship between buildings and site features.

   b. The objective is to give each building a sense of unity with its site and surroundings, and to scale each building so that it does not dominate the site. Where possible, buildings should be fitted into existing tree masses and land forms. Where this is impossible, buildings should be placed at the periphery of tree or land masses, overlooking open spaces. Buildings should be grouped whenever possible to minimize their disruption of this edge. Where neither of these alternatives is possible, buildings may be placed out in the open. Where open meadow construction occurs, it is important to use building massing and landscaping as tools for relating the development to the natural features of the area. In particular, clustering is recommended as a means of reducing the buildings' impact on an open site.

C. Major Architectural Design Guidelines:

   1. Building massing, envelope, roofscape and site relationship should emphasize:

      a. human scale;

      b. the avoidance of allusions to "alpine" and all other building forms foreign to the area;

      c. the avoidance of allusions to "mineshaft" architecture and other industrial building forms even if indigenous to the area;

      d. proximity to the ground, rather than dominate the site; and

      e. adaption to the site in every possible way, responding to its severe climate, terrain, pattern of shade and sunlight, trees and vegetation, etc.

   2. Scale of Buildings

   Each owner shall have the right to construct one residential dwelling along with accessory buildings, including a caretaker's unit upon a platted Homestead.

   It is important that the massing of buildings at Aspen Valley Ranch be scaled in such a way that they relate to the people living there and harmonize with the area and its natural features – particularly when buildings are located at tree or land mass edges or

in the open. The objective of this requirement is to ensure that the buildings do not become overpowering. Changing the plane of walls, changing direction and some variety in the roof form gives variety and visual interest.

    a. No unbroken expanse of building mass can exceed 60 feet. When the 60 foot limit is reached, one of the following must occur:

        i. The building mass must bend at least 30 degrees;

        ii. The wall line must be offset a minimum of 10 feet;

        iii. The roof line should shift up or down at least 10 feet, or take on a different ridge alignment.

    b. Height Regulations

    Building and structures shall comply with the Pitkin County regulations relating to height.

3. Roofscape

    a. Roof Slopes

    Roof shape is a major element of building form, and one of the most important contributors to a human scale. The slope of the roof is one determinate of this scale. Roof Slopes should be between 5 ½ and 9 1/2. Roofs with greater or lesser slope will generally be prohibited, unless there are compelling reasons for their consideration.

    b. Roof Shape

    The following roof types are permitted at Aspen Valley Ranch:

        i. Partial hip roofs;

        ii. Gable roofs;

        iii. Full hip roofs; and

        iv. Conical roofs.

    Under certain conditions, the following roof types will be permitted:

        v. Shed roofs (allowed if attached to buildings whose predominant roof shapes are one of the types permitted without restriction. They may also be used for minor, freestanding outbuildings. However, a shed roof is not permitted on any outbuilding over 10 feet in height or 150 sq. ft. in area).

        vi. Flat roofs (allowed in moderation as a secondary roof shape on buildings with an acceptable predominant roof shape).

    c. Roof Descent

    Roofs should not descend closer than seven feet to the ground. It should be clear, when looking at the buildings, that the function of the roof is to provide a covering of the building, and not to become a major element in the building's horizontal massing (i.e., the roof is not to be a substitute for a wall). Roofs descending from the ridge of the predominant main roof must have the same slope, however they need not be the same length.

    d. Roof Overhangs

    Roof overhands protect walls and wall openings from rain and snow and contribute to a building's character. Roofs should overhang walls a minimum of 24".

    e. Roof Assembly

    It should be kept in mind that building in snow country requires special engineering and considerations that should be incorporated into the home design.

    f.  Roof Surfacing Materials

        i.    Roof surfacing materials are important as a means of blending the new construction to the existing character of the area. Careful selection of these materials can help to relate the buildings to its surroundings, the wrong color and texture can make the building garish and distracting. From a functional standpoint, the choice of materials depends on the slope and assembly of the roof. The objective is to choose roof surfacing materials that blend the building with its side and its climatic conditions and which are also functionally appropriate.

        ii.    The following materials can be sued without coating or other finish as roof surfacing materials:

- Copper
- Zinc
- Terne
- Kor-ten Steel
- Slate
- Treated wood shakes / shingles

        iii.    The following metals can be used for roof surfacing if color coated with an approved color:

- Aluminum
- Steel

        iv.    The following masonry tiles may be used as roof surfacing materials if of an approved color:

- Ceramic tiles
- Concrete tiles
- Slate

        v.    Sod roofs may be used under certain conditions. Note, sod roofs require continuing maintenance.

        vi.    The following materials may not be used in surface roofs:

- Asphalt-composition shingles
- Reflective metal

        vii.    Roof murals are not permitted.

        viii.    All roof flashing must be of a color harmonious with roof and upper wall surfacing.

    g.  Dormers can be placed at the roof eave or within field of the roof.

    h.  Snow diverters and retainers may be a necessary installation on roofs. They should be handled as an integral part of the roofscape.

    i.  Skylights can be placed flush against the roof or up to one foot above the roof's surface. Skylights higher than one foot above the roof place, or placed at an angle with the roof plane, should be avoided. Skylights should not extend to the eave line.

    j.  Chimneys made of wood, stucco, concrete and masonry-finished flues are permitted. A flat top is preferred, and side venting of the flue (with a flat cap and spark arrestor) is recommended.

    k. Solar collectors shall lie flat on pitched roofs.  This slope may exceed the recommended slope under the guidelines b. <u>Roof Shape</u> with Review Committee approval.

    l. Sunshade devices like awnings, screens, trellises, etc. may be used if in conformance with wall material and color guidelines.

4. Walls

    a. Continuing the lower wall to the ground - The sense or impression of a building should be that its walls continue down to the ground to give a feeling of solidity and repose, and that undue "chewing out" or eroding of the building form should be avoided.

    b. Protected Lower Wall --The lower portions of exterior walls should be protected from extreme weathering and staining as a result of snow accumulation. Snow accumulation varies throughout Aspen Valley Ranch. Generally, the lower two to four feet (though at some locations the lower 8+ feet) of exterior walls should be surfaced in materials such as:

        i. Concrete block with stucco finish

        ii. Concrete with an exposed aggregate, bush hammered or sandblasted finish, or with a stucco dash coat

        iii. Stone

    c. Upper Wall Materials -- The upper wall materials should convey a sense of human scale and warmth, and the character they convey should be rural rather than urban or industrial.  The upper wall material can differ from that of the lower portion of the wall, or be of the same material.  Upper walls can be surfaced in the following materials:

        i. Stone

        ii. Concrete block finished with stucco dash coat

        iii. Concrete or slate tiles

        iv. Wood shingles, wood siding, logs

        v. Stucco or wood framing

    The upper wall may not be made of the following materials:

        i. Brick

        ii. Plastic siding

        iii. Aluminum siding

        iv. Steel siding

        v. Simulated stone or brick

        vi. Asphalt or hardboard siding

        vii. Cedar or redwood plywood, stained or painted

    d. Number of Exterior Wall Materials – Changes in wall material can lend visual interest to a building; too many changes can make the wall visually-discordant. The objective should be to create walls that are interesting, but not in competition with their surrounding.  Walls can be surfaced with one to three different materials.

    e. Color Palette – Exterior wall colors should harmonize with the site and surrounding buildings.  Accent colors on wall surfaces can enliven buildings, however their location should be confined to entries and gathering points. Accents should not jar the overall harmony of the area.

On exterior walls, the predominant tone should tend toward warm, earthly hues – whether for the natural patina or weathered color of the wall surface itself or the color paint, stain or other coating. Bright and dramatic colors can be used for accent on exterior wall areas hidden from general view.

f.  Wall appurtenances can help enhance the functioning of windows and doors, and lend visual interest to the building façade. They can also strengthen the relationship between a building's interior and its exterior surroundings.

g.  Balconies, like other wall appurtenances, should be simply designed. Importantly, they must respect the guidelines for wall openings – long vertical or horizontal bands of balcony space are discouraged. Balconies must be designed to prevent snow accumulation, interior leaks, or the build-up of icicles. They should be located so neither snow nor ice falling from them can endanger passersby.

h.  Bay windows and flower boxes should be designed in a simple and direct manner.

i.  Window and door shutters are useful in protecting building entries and openings. They should be operable, and made of wood. Their design should be simple and straightforward, without undue decoration.

j.  Wall openings – Window, door, and porch openings are an important element of a building's form and appearance. It is important that the walls of buildings give the impression of thickness and substance. Door openings separate two completely different climate conditions. Door openings should be protected from the wind and from overhanging or drifting snow. Vegetation, fences, extended walls, roofs, and other features of the site or building can help shelter people in the vicinity of building entries. Where possible, doors should open onto exterior areas that receive sunlight.

k.  Windows may be constructed of wood or of wood covered with color-fast vinyl or aluminum. Metal or metal covered windows must be coated with an approved finish.

5.  Screening Service Areas

a.  New construction often includes: service areas; garages and other parking areas; storage sheds; mailbox areas; places for garbage; snow equipment sheds; outbuildings for mechanical or electrical equipment; solar collectors; etc. These things often detract from an otherwise well-designed site, and need to be dealt with in a way that keeps this from happening. They also need to be placed so that they can be easily accessible to the people who need to use them. Garage, open parking and mechanical sheds should be kept away from main buildings and shielded from view by vegetation, fences and building forms.

b.  The objective is to design and locate these service areas so they function well and do not become an eyesore to fellow owners. They should be adequately screened, placed whenever possible away from other site uses. Screening can be accomplished using vegetation, fencing or building placement.

6.  Sunlit Exterior Spaces

In Aspen Valley Ranch, it is critical that attention be paid to patterns of sunlight in planning exterior spaces in relation to buildings. Places that are mostly in shadow will be relatively cold and unusable, while places that enjoy winter sunlight will get used. The objective is to create exterior spaces around buildings that will be used, so it is

important that these be placed to get as much sunlight as possible over the course of the day.

Architects and owners should remember that:

   a. buildings, vegetation and land forms can cast shadows and block sunlight;

   b. the surfaces of buildings play a big role in reflecting sunlight into adjoining exterior spaces (color and choice of materials are important in this regard);

   c. building faces reflect sunlight into open space; and

   d. careful consideration given to shadows cast by buildings, fences, and trees.

7. Night Lighting

   a. Good night lighting is essential for safe movement — however good lighting, which can detract from site quality by obliterating night views and interfering with people's rest.

   b. The objective is to provide night lighting discretely, illuminating only what needs to be lit. In general, light sources should be shielded and directional. Bright lighting of large areas should only occur where absolutely required by safety considerations. In this regard, the Pitkin County Lighting Standards, Land Use Code Section 3-110-110 is included herein by reference.

   c. Every submittal for review by the Review Committee should include an indication of how night lighting is to be provided. This should be shown in plan, with accompanying specifications and any other materials necessary to make an evaluation by the committee possible.

8. Fences and Walls

Fences and walls may be used where they make sense architecturally and functionally. Materials used for walls and fences should be limited to stone and wood. If stone is used it should be of the type found in the region and set in a random pattern, preferably in conjunction with wood. In no event should the impression be that of a brick wall with precise levels and angles. Use of barbed wire and other steel materials (excluding gates and cattle guards) is by Review Committee approval only.

9. Retaining Structures

Retaining structures should make use of natural material such as boulders, rocks, logs, wood timbers and/or concrete with rock facing.

**EXHIBIT B**
**OF**
**DECLARATION OF PROTECTIVE COVENANTS**

Irrigation and Pond Construction Guidelines
for Aspen Valley Ranch

These Guidelines, together with the Declaration of Protective Covenants for Aspen Valley Ranch, shall control all pond construction, water features and, pond operational features within Aspen Valley Ranch.

**Irrigation water supplies:**

With the exception of any individual domestic exempt wells on a Homestead or Lot approved by Declarant, all irrigation shall be provided by the Aspen Valley Ranch Homeowners' Association, Inc. ("Association ) from raw water sources owned or controlled by it. It is the intent of these Guidelines and the Declaration that, with the exception of the limited amount of historically irrigated land removed from irrigation under Court Decrees, all the quantity of historically irrigated land within Aspen Valley Ranch shall not be materially reduced. All irrigation within Aspen Valley Ranch will be by sprinkler (roller bar, gun or fixed head), drip irrigation or flood irrigation means.

The Association raw water supply system shall be installed by the Association at its expense as and when deemed necessary by the Association (hereinafter "Supply System"). Once the Supply System is completed , the Association shall have the responsibility to operate, maintain and care for such system. In addition, the Association will be solely responsible for constructing, at the Association's expense, the raw water distribution system to be connected to the Supply System (hereinafter "Distribution System"). With the exception of any augmentation pond required of the Association by Court Decree, any pond construction shall be performed at the Owner's sole expense. All such Pond design and construction shall be performed in strict compliance with these Guidelines and only after approval of the Declarant for so long as the Declarant owns any Homestead or Lot within Aspen Valley Ranch, and by the Association thereafter.

Whenever an Owner seeks design approval for the construction of any improvements, the Owner shall be responsible for designing and reconnecting any realignment or modification of the Distribution System required by the construction of the improvements requested.

The Association shall appoint a Ranch Manager, who shall retain such irrigators or other assistants or employees as the Association and he deem are necessary. The Ranch Manager shall have exclusive authority to establish irrigation schedules, practices and operational guidelines to accomplish the irrigation and pond goals set forth in the Declaration, these Guidelines and the relevant land use approvals. Owners shall have no right to irrigate or control the irrigation or fill or release water from their respective ponds from the Distribution System; all such activities shall be performed by the Ranch Manager or his designates unless such activities are undertaken to prevent an imminent loss of property or life by virtue of a hazardous condition.

All Owners acknowledge that disturbed areas within the Development and Building Envelopes on each Homestead should be revegetated with plantings that are resistant to drought since raw water supplies from the Distribution System may be subject to legal and physical curtailment, drought and related causes. Irrigation from any approved domestic exempt well should be used for more intensive and sensitive landscaping needs.

All sprinkler heads supplied from the Distribution System shall be painted orange; all sprinkler heads and emitters connected to an exempt well shall be green or black in color. The purpose of such is to easily determine what areas are irrigated by each source of water.

To the extent feasible the Distribution System and the Supply System shall be installed below plow depth of 18". The Association shall be responsible for coordinating with all Owners to ensure that the Distribution System and Supply System are drained each fall to avoid freeze damage to the systems.

**Pond Design and Operation:**

Any ponds constructed by an Owner on any Homestead or Lot after the approval thereof by the Declarant as long as the Declarant owns any Homestead or Lot within Aspen Valley Ranch, and by the Association thereafter, shall be operated in conformity with the respective water court Decrees awarding rights for their use. Such ponds shall only be used for fire protection, aesthetic and piscatorial uses. The design and operating characteristics of all ponds constructed by Owners shall require the approval of the Review Committee pursuant to this Declaration and the issuance of a permit by the County.

## LENDER'S CONSENT AND SUBORDINATION

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, the undersigned **WILMINGTON TRUST, NATIONAL ASSOCIATION** ("Wilmington") as Beneficiary under those certain Deeds of Trust recorded on April 28, 2007, at Reception No. 637935 and on March 30, 2018 at Reception No 646225 of the records of the Clerk and Recorder of Pitkin County, Colorado (the "Deeds of Trust"), hereby consents to the execution and recording of the Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch recorded August 20 , 2021 at Reception No. 679690 (the "Amended and Restated Covenants"), subordinates the lien of the Deeds of Trust to the Amended and Restated Covenants, and agrees that any foreclosure of the Deed of Trust shall not adversely affect the existence or continuing validity of the Amended and Restated Covenants, which shall run with the land and remain in full force and effect as if such Amended and Restated Covenants were delivered and recorded prior to the delivery and recording of the Deeds of Trust. In the event that WILMINGTON acquires title to any Homestead or other parcel of land within Aspen Valley Ranch, as that term is defined in the Amended and Restated Covenants, through foreclosure of the Deeds of Trust or otherwise, WILMINGTON shall be subject to and bound by the terms and conditions of the Amended and Restated Covenants to the same extent as any Owner of a Homestead or parcel of land within Aspen Valley Ranch.

**IN WITNESS WHEREOF**, the undersigned has executed this Lender's Consent and Subordination this 20th day of August, 2021.

*[Signatures on following page.]*

4850-8019-7622

**WILMINGTON TRUST, NATIONAL ASSOCIATION, as Administrative Agent**

By: _____

Name: Jessica Jankiewicz

Its:   Assistant Vice President

STATE OF ~~COLORADO~~ Minnesota  )
                                )  ss.
COUNTY OF Hennepin              )

The foregoing instrument was acknowledged before me this 17 day of August, 2021 by Jessica Jankiewicz as Assistant Vice President of Wilmington Trust, National Association, as Administrative Agent.

Witness my hand and official seal.

My commission expires: _____1/31/2026_____

_____

Notary Public

NICOLE KATHRYN HILL KROLL
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2026

2

4850-8019-7622