

January 4, 2024

*Via ECF*

The Honorable Christopher M. Lopez
United States Bankruptcy Court
Southern District of Texas
515 Rusk Street, Courtroom 401
Houston, TX 77002

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000
orrick.com

Laura Metzger

E lmetzger@orrick.com
D +1 212 506 5149
F +1 212 506 5151

Re: *Strudel Holdings, LLC, et al.,* Case No. 23-90757

Dear Judge Lopez:

On behalf of Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., and UBS O'Connor LLC (together with Wilmington Trust National Association, the "Secured Parties"), we write to supplement certain points that were raised at yesterday's status conference concerning the *Fleeger Family First LP's (the "Fleeger Family") Motion for Reconsideration of Order Granting Secured Parties' Emergency Motion to Modify the Sale Order to Extend the Closing Date and Other Relief* (the "Motion").

The only question before the Court is whether the Fleeger Family has met the Fifth Circuit's long-standing and familiar test for reconsideration under Rule 59(e). The unmistakable answer is no. Indeed, the Fleeger Family never even purported to comply with Rule 59(e), having never mentioned the Fifth Circuit's test in its briefing or at the hearing. The Court should deny the Motion because neither the law nor the equities support a costly evidentiary hearing, for several reasons.

### The Motion Does Not Comply with Rule 59(e)

Most notably, as discussed in the Secured Parties' Opposition to the Motion (the "Opposition") and during the January 3 status conference, the Fleeger Family cannot meet the applicable Rule 59(e) standard. It is hornbook Fifth Circuit law that reconsideration based on purported new evidence "should be granted *only if* . . . the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010) (emphasis added). The Fleeger Family does not argue that it exercised "proper diligence"—not in its Motion, not in its Reply to the Opposition, and not during the January 3 status conference. That is because the record is clear it did not. The Fleeger Family knew about the data breach and the delayed closing since at least November 23, when the Debtors filed their Notice of Postponement of Closing [ECF No. 260]. In its November 29 Statement [ECF No. 269], the Fleeger Family made the exact same factual claims about the closing delay that it only now asks to explore in discovery. The Court made clear at the December 4, 2023 hearing that it intended to issue a decision on the Secured Parties' Motion to

Case 23-90757   Document 323   Filed in TXSB on 01/04/24   Page 2 of 4



The Honorable Christopher M. Lopez
January 4, 2024
Page 2

Modify the Sale Order. Nearly a month then passed, after which the Court on December 27 granted that motion. Despite being deeply involved in these proceedings, not once did the Fleeger Family ever mention a need for discovery, much less seek any. That is the opposite of diligence. The Court's analysis of the Motion can and should end there.

### The Fleeger Family's "Due Process" Argument Has No Support in Law

The Fleeger Family's due process argument is misguided. If the Secured Parties' Motion to Modify the Sale Order implicated the Fleeger Family's property rights, it was the Fleeger Family's obligation to act promptly to protect those rights. But the Fleeger Family did the opposite. On full notice in real time of all of the relevant facts and proceedings, they did nothing. The Fleeger Family cites no cases in support of its argument because the law holds the opposite. The Fleeger Family's generic citations to the Fifth Amendment of the U.S. Constitution are misplaced because the Fleeger Family had ample opportunity to seek discovery in the four weeks after the Secured Parties filed their motion. It would turn the law, logic and equity on their heads if the Court were to punish the Secured Parties (and the Debtors) for the Fleeger Family's failure to act to protect its own purported property interests.

### Even If the Facts Were as Alleged, It Would Not Change the Modification Order

The discovery the Fleeger Family seeks would not change the outcome of the Court's decision on the Secured Parties' motion. The material fact that the Court relied upon is not in dispute: the Fidelity data breach and related operational shutdown made it impossible for the parties to close the sale on November 21, November 22, and every day thereafter until Fidelity resigned from the deal on November 28—irrespective of the Debtors' (disputed) defaults.

What might have happened in a hypothetical world where the data breach never occurred is irrelevant to the Court's ruling that modification was proper because the data breach made closing impossible. The data breach and its impact on closing is an undisputed fact. At the status conference, counsel for the Debtors and counsel for the Secured Parties both confirmed that: (i) the Secured Parties never told the Debtors that they would not close as a result of the HOA defaults, and (ii) it was only after closing became impossible as a result of the data breach that the Debtors and Secured Parties agreed to an extension via the First Amendment. But again, the Court need not resolve that question because it has no bearing on the reasoning supporting the Modification Order.

### The Equities Plainly Favor the Secured Parties and the Debtors

Aside from Rule 59(e), a balancing of the equities compels denial of the motion. The Secured Parties are owed $100 million and seek to preserve the value of their pledged collateral by closing on a credit bid purchase of the Ranch for which they were undisputedly the winning



The Honorable Christopher M. Lopez
January 4, 2024
Page 3

bidder at the auction. The Debtors' stated goal since the beginning of these cases has been to close on a sale of the Ranch as soon as possible and reduce their administrative burden. Every day that the sale is delayed costs the estate money that it does not have and creates transaction risk. The sale is already closing three months after the intended date in the bid procedures order, the date required by the DIP order, and the time contemplated by the size of the DIP loan. The Fleeger Family's requested discovery would extend the timeline even further, and Mr. Wolfshohl represented during the January 3 status conference the Debtors will run out of funding for the estate around the January 12 deadline. Balanced against those significant and compelling interests is a back-up bidder who does not have the same level of investment or property interest as the Debtors—who currently own the Ranch and are directing these chapter 11 proceedings—or the Secured Parties—who hold a lien on the Ranch *and* won as the successful bidder at the auction. The Fleeger Family has, at most, a contract right, and one it never sought discovery to protect during the four weeks before the Court decided the Secured Parties' motion. It is highly questionable whether the Fleeger Family's interest is even part of the estate. A balancing of the equities clearly favors allowing the Secured Parties and the Debtors to close on the sale without further delay and the attendant costs to the Debtors and risk to the Secured Parties' collateral.

### The Estate Would Be Materially Damaged

Finally, postponing the sale to allow for discovery would be damaging to the estate. The Debtors have no cash, limited if any access to their DIP financing, and there appears to be serious risk that they cannot fund the administrative costs of these cases, including, most importantly, the costs associated with maintaining the Ranch. If the Court grants the Fleeger Family's request for discovery and an evidentiary hearing, the Secured Parties would immediately and rightfully seek adequate protection on an emergency basis, which the Debtors could not satisfy. The Debtors might also determine that they are administratively insolvent and elect to convert the case to chapter 7. The Secured Parties do not believe that an abrupt conversion and the added expense of a chapter 7 trustee at this moment would be in the best interest of the estate.

Due process is important, and this Court has provided ample due process. The Fleeger Family had four weeks and plenty of opportunity to seek whatever process they believed they needed. Instead they did nothing. This Court had the authority to reach the conclusion it did in the December 27th Modification Order, and both the law and the equities favor denial of the Fleeger Family's belated and misguided attempt to undo that order. The Secured Parties respectfully request that the Court reject the Fleeger Family's motion for reconsideration and accompanying request for discovery and an evidentiary hearing. We thank the Court for its attention to this matter.



The Honorable Christopher M. Lopez
January 4, 2024
Page 4

Respectfully,

_/s/ Laura Metzger_

Laura Metzger