# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC AND AVR AH LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered) |

### SECURED PARTIES' OPPOSITION TO FLEEGER FAMILY FIRST LP'S EMERGENCY MOTION TO COMPEL DISCOVERY FROM THE SECURED PARITES

Nineteen77 Capital Solutions A LP and Bermudez Mutuari, Ltd. (together, the "Lenders"), UBS O'Connor LLC, and Chiron AVR LLC (the "Purchaser" and, together with the Lenders, and UBS O'Connor, the "Secured Parties"), by and through their undersigned counsel, respectfully submit this Opposition to Fleeger Family First LP's (the "Fleeger Family") Emergency Motion to Compel Documents from the Secured Parties (the "Motion to Compel").

### INTRODUCTION AND BACKGROUND

1. "[L]et's just focus on what caused the inability to close on the 22nd." (Jan. 5 Tr. at 49:5-6.) That was this Court's instruction to the parties in granting the Fleeger Family's Motion for Reconsideration ("Motion for Reconsideration," Dkt. No. 313) of the Court's December 27, 2023 Order Granting the Secured Parties' Emergency Motion to Modify the Sale Order to Extend the Closing Date (the "Order," Dkt. No. 309) and permitting discovery prior to the hearing scheduled for January 22, 2024. In response to the Court's instruction, counsel for the Fleeger

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

Family did not contest that this dispute is about what happened on and immediately before November 22, but affirmed that "we're prepared to go forward on that basis."  (Jan. 5 Tr. at 49:6-7.)

2.  As the Court explained, this dispute is "really simple"—if the Fidelity cyberattack "was a factor" in the Secured Parties and the Debtors not closing on November 22, 2023, then the Fleeger Family "lose."  (Jan. 5 Tr. at 48:23-25.)  If the cyberattack was a factor, or as the Court put it in the Order, if the cyberattack "made it impossible for the Purchaser (or any other purchaser) and the Seller to close on November 22," then the Secured Parties' Emergency Motion to Modify the Sale Order to Extend the Closing Date (the "Secured Parties' Motion," Dkt. No. 276) should be granted, just as the Court originally decided.  Discovery will demonstrate that the factual underpinnings of the Order with respect to the cyberattack were completely correct, which is sufficient for the Court to modify the Sale Order.  The Secured Parties also intend to put on evidence to support the argument in the Secured Parties' Motion that the Debtors' breaches of the Purchase Agreement were an independent basis for the Court to modify the Sale Order.

3.  The Secured Parties have produced more than 3,000 pages of documents in response to the Fleeger Family's broad discovery requests and are preparing a witness to testify on many of the topics noticed by the Fleeger Family.  But the Fleeger Family's discovery efforts should be limited to the actual dispute in front of the Court—whether the failure to close on November 22 was caused by factors outside of the Secured Parties' control, including the Fidelity cyberattack or the Debtors' breaches of the Purchase Agreement (as the Secured Parties contend), or whether the Secured Parties "never planned to meet the deadline to close in the Sale Order" (as the Fleeger Family contends) (*see* Motion for Reconsideration ¶ 5).

4. The Fleeger Family's discovery requests go far beyond the relevant issues. For example, the Fleeger Family seeks all documents "related to the Secured Parties' due diligence on the" Ranch and all documents "with any party or third-party related to or regarding the Secured Parties' or Fleeger's purchase, sale or closing on the Property, or otherwise related to the Property in any way." (Doc. Request Nos. 10, 11.) Such boundless discovery is completely inappropriate given the narrow dispute before the Court.

5. In the face of these plainly overbroad requests and consistent with the parties' stated position and the Court's guidance, the Secured Parties have agreed to provide discovery regarding:

- The Secured Parties' November 21 Notice of Default issued to the Debtors, including the Secured Parties' discovery of the Debtors' alleged default, discussions between the Debtors and Secured Parties regarding the alleged default, and the impact on the contemplated November 22, 2023 closing;

- The Fidelity cyberattack, including the Secured Parties' discovery of the cyberattack, discussions between the Debtors and Secured Parties regarding the cyberattack, and the impact on the contemplated November 22, 2023 closing; and

- The Secured Parties' efforts to close on the Ranch on November 22, 2023.

To be clear, to the extent that documents post-date November 22, but related to events that occurred on or before November 22, the Secured Parties have produced those documents. (*See* Ex. A.) In fact, the Secured Parties have produced approximately 150 documents that post-date November 22. Nothing more is necessary or appropriate given the contours of the dispute between the Secured Parties and the Fleeger Family. Everything else is simply an improper fishing expedition.

## **ARGUMENT**

6. The Motion to Compel should be denied because the Fleeger Family's requests are neither "relevant to any party's claim or defense" nor "proportional to the needs of the case," as required under Rule 26(b)(1). Indeed, the Motion to Compel does not explain with specificity why

any one of the broad document requests or deposition topics is relevant to the issues the parties and the Court have agreed are relevant to next week's hearing.

> **A.  The Secured Parties' Equitable Arguments Do Not Justify the Expansive Discovery Sought by the Fleeger Family.**

7. The Secured Parties' Motion requests that the Court exercise its equitable powers to modify the Sale Order. But nothing about that request or the legal standards underpinning the Secured Parties' Motion requires the boundless discovery sought by the Fleeger Family. The Secured Parties' Motion requested modification of the Sale Order under section 105(a) of the Bankruptcy Code and Rule 60(b) of the Federal Rules of the Civil Procedure, which is made applicable to this proceeding pursuant to Bankruptcy Rule 9024. Under section 105(a), "[t]he Court has the power under section 105(a) of the Code to modify an order if equity so requires." *In re Argose, Inc.*, 377 B.R. 148, 150 (Bankr. D. Del. 2007); *see also In re Renaissance Stone Works, L.L.C.*, 373 B.R. 817, 822 (Bankr. E.D. Mich. 2007) ("bankruptcy courts have inherent power, and authority under 11 U.S.C. § 105(a), independent of any authority under Fed. R. Civ. P. 60(b), *sua sponte* to reconsider, modify or vacate orders it previously entered.").

8. Rule 60(b)(1) permits modification of orders to address "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6) permits modification under a showing of other "extraordinary circumstances," *Hess v. Cockrell*, 281 F.3d 212, 215-16 (5th Cir. 2002). The Fifth Circuit has set forth the following factors for courts to consider under Rule 60(b)(6): (1) that final judgments should not lightly be disturbed; (2) that a Rule 60(b) motion should not be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether, if the case was not decided on its merits due to a default or dismissal, the interest in deciding the case on its merits outweighs the interest in the finality of the judgment and there is merit in the claim or defense; (5) whether, if the judgment was rendered on the merits, the

movant had a fair opportunity to present his claims; (6) whether there are intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.  *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

9.      These legal standards are well settled and had been presented to the Court when the Court stated on the record that the dispute was "simple" and should "focus on what caused the inability to close on November 22," and the Fleeger Family appeared to agree.  The Fleeger Family does not cite any case or principle of law holding that the invocation of equity expands discovery into any issue that one party deems relevant.  Indeed, the categories of relevant discovery the Secured Parties have agreed to provide are fully consistent with the "equitable factors" cited in the Motion to Compel.  According to the Fleeger Family, the Secured Parties must demonstrate "that (1) they were ready, willing and able to close on November 22, 2023; (2) their actions in declaring the default were in good faith and not a delay tactic; (3) they were not delaying to avoid carrying costs in flipping the Property or for any other reason; and (4) their inability or failure to seek a timely extension or modification of the Sale Order's strict November 22, 2023 deadline was indeed excusable."  The Secured Parties have provided ample discovery to prove those points, which themselves assume that the Order was wrongly decided because the Secured Parties were required to show more than that the cyberattack made closing impossible.  Nothing in the Motion to Compel describes what more is required.

10.     The Fleeger Family's pointing to a selective quotation of the Secured Parties' counsel also does not demonstrate that discovery from the Secured Parties should be boundless.  Counsel was clearly arguing about the appropriate scope of discovery from the Debtors and Fleeger Family and not from the Secured Parties: "If Your Honor does order discovery . . . the [Secured Parties'] position is that it has to be much broader than just a day or two before the closing

5

deadline . . . Because it's an equitable determination. That's 105(a). Under 60(b), it's just cause. **And so the question here isn't just what did the secured parties do or not do. The question also has to include what did the debtors do or not do. . . .** The full equities have to be considered." (Jan. 5 Tr. at 24-25 (emphasis on portion excluded from Fleeger Family's Motion to Compel).) And in any event, the Secured Parties made clear at the January 5 hearing that they agreed with the Court that discovery should be narrow rather than broad.

      **B.**      **The Secured Parties Have Agreed to Produce Discovery Regarding Why the Purchase Did Not Close on November 22.**

    11.     The Fleeger family contends that the Secured Parties are somehow preventing it from "presenting its opposition" to the Secured Parties' Motion, which is predicated on the notion that the "Secured Parties are responsible for the missed closing date, not a cyberattack." (Motion for Reconsideration ¶ 16.) As shown by the categories of documents above and the parties' correspondence (*see* Ex. A), the Secured Parties are agreeing to provide discovery on the key issues here. The Fleeger Family's argument to the contrary is based on several misapprehensions. *First*, the Secured Parties are not ignoring the Court's discovery period and instead are producing approximately 150 documents that post-date November 22, but are nevertheless relevant to what occurred prior to November 22 or earlier, as the Secured Parties have explained to the Fleeger Family. Thus, the Secured Parties are fully compliant with the Court's order as they understand it.

    12.     *Second*, the Secured Parties' efforts to close on November 28 or any date after November 22 are simply beside the point. The Secured Parties' statement that it continued to work toward closing after the cyberattack was not a "centerpiece" of the Secured Parties' Motion (Motion to Compel ¶ 20). To the contrary, the Secured Parties' argument was that "it is **equitable** to utilize section 105(a) to extend the Closing Date **because neither the Secured Parties nor the**

6

**Purchaser caused the closing delay**." (Secured Parties' Motion ¶ 27.) Indeed, the notion that the Secured Parties would endeavor to close by November 22, but thereafter delay closing for some unknown reason simply makes no sense and seeking documents to support such a theory is entirely speculative. Discovery that has been produced already fully shows the reasons for the delay in closing.

13. *Third*, the Fleeger Family's suggestions that the Secured Parties did not want to close by November 22 in order to "avoid carrying and transaction costs," is a thinly-veiled excuse to get discovery about any discussions with other parties that are potentially interested in the Ranch, which is potentially sensitive information that the Secured Parties should not need to produce.

## **CONCLUSION**

14. For the forgoing reasons, the Secured Parties respectfully request that the Court deny the Motion to Compel.

Dated: January 17, 2024

        Respectfully Submitted,

        ORRICK HERRINGTON &
        SUTCLIFFE LLP

        */s/ Darrell S. Cafasso*
        Richard A. Jacobsen*
        Darrell S. Cafasso*
        Laura Metzger*
        David Litterine-Kaufman*
        Nicholas A. Poli*
        Harry F. Murphy*
        51 West 52nd Street
        New York, NY 10019
        Telephone: (212) 506-5000
        Email: rjacobsen@orrick.com
        dcafasso@orrick.com
        lmetzger@orrick.com
        dlitterinekaufman@orrick.com

8

npoli@orrick.com
hmurphy@orrick.com

Ryan Wooten
Texas Bar No. 24075308
S.D. Tex. Bar No. 1259974
609 Main Street, 40th Floor
Houston, TX 77002
Telephone: (713) 658-6617
Email: rwooten@orrick.com

James W. Burke*
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Email: jburke@orrick.com

*Attorneys for Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., UBS O'Connor LLC, and Chiron AVR LLC*