IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC AND AVR AH LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered) |

### SECURED PARTIES' OBJECTION TO DIRECT FUNDING OF THE DEBTORS' PROFESSIONAL FEES BY CHARIF SOUKI

Nineteen77 Capital Solutions A LP and Bermudez Mutuari, Ltd. (together, the "Lenders"), Wilmington Trust National Association, in its capacity as Administrative Agent (the "Administrative Agent" and together with the Lenders, the "Secured Parties"), by and through their undersigned counsel, respectfully submit this objection to the direct funding of the Debtors' professional fees by Charif Souki, as set forth in the *Statement of Charif Souki in Connection with Funding of Professional Fees* [ECF No. 355] (the "Statement"), and respectfully state as follows:

**OBJECTION**

1. By filing the Statement, once again, Mr. Souki flouts the Bankruptcy Code, ignores this Court's clear directions, and attempts to exercise undue control over the Debtors.

2. On January 5, 2024, purported counsel for Mr. Souki and Ajax Holdings informed this Court that there are "disputes between the debtor and the DIP lender that exist over a funding draw request" and that they "have an agreement to resolve that dispute for the time being." Hearing

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

Transcript ("Jan. 5 Hrg. Tr."), 59:1-60:8 (January 5, 2024).  Counsel to the Secured Parties informed the Court that this was the first time the Secured Parties had learned of this dispute, but that the Secured Parties were willing to engage in discussions with the Debtors and the DIP Lender to work towards a consensual resolution.  Jan. 5 Hrg. Tr., 63:12-64:9.

3. The Court agreed.  At several instances, the Court could not have been clearer that it expected "transparency" and "keeping the secure[d] parties in the loop as much as possible." Jan. 5 Hrg. Tr., 73:24-25.  Multiple times the Court assured the parties that it could act quickly, but that at least 36 hours or possibly longer would be appropriate.  *See, e.g.*, Jan. 5 Hrg. Tr., 64:11.

4. The Debtors and the DIP Lender completely disregarded this direction.  Neither the DIP Lender nor the Debtors, nor any of their professionals, ever contacted the Secured Parties or their professionals to discuss the matter despite the open invitation and requests from the Secured Parties to discuss the DIP Financing.  Then, on January 17, 2024, Mr. Souki, not the Debtors, filed the Statement.[2]  The Statement purports to notify the Court that the Debtors, Mr. Souki and the DIP Lender have reached an agreement whereby Mr. Souki would personally pay the undisclosed "Incurred Professional Fees."  Statement ¶ 3.  The Statement further provides that "Mr. Souki agrees to waive any claims he might have against the Debtors in connection with his payment of the Incurred Professional Fees."  Statement ¶ 3.  The Statement attempts to justify this proposed

---

[2] The Secured Parties observe that Hunton Andrews Kurth LLP ("Hunton") filed the Statement on behalf of Mr. Souki.  Hunton has appeared in almost every hearing before this Court, purporting to represent either Mr. Souki, the DIP Lender or both.  Yet, Hunton has never filed a notice of appearance on behalf of either client.  Fed. R. Bankr. P. 9010(b). Further, as discussed herein, the Statement implies that there is a dispute among the Debtors, Mr. Souki and the DIP Lender.  Without information regarding that dispute, it is impossible to assess whether Hunton has a conflict in its purported representation of both parties.  Finally, the DIP Order allows the DIP Lender to use the DIP Financing to pay for Hunton's fees, in its capacity as DIP Lender, which become obligations that the Debtors are required to repay.  *See* ECF No. 163 (the "DIP Order") ¶ 12(b).  The Secured Parties suggest that this Court require the Debtors to demand an accounting of Hunton's fees to distinguish which fees are attributable to the DIP Lender and which fees are attributable to Hunton's representation of Mr. Souki in his individual capacity.  Only Hunton's representation of the DIP Lender should be permitted from the DIP Financing.

transaction by claiming that the DIP Lender, an entity under the control of Mr. Souki and the Other Plaintiffs, is unwilling to fund because of an event of default under the DIP Credit Agreement.

5. The Statement raises a multitude of issues. First, the Statement, at its core, is a settlement. The Statement was filed by Mr. Souki, not the Debtors. Yet it purports to resolve, in part, a dispute among the DIP Lender and the Debtors, who have failed to pay their professionals, yet provides the Court no insight as to the perspective of the Debtors or its independent Chief Restructuring Officer (the "CRO"). In addition to curing several procedural failures, the Court should require the Debtors to file a motion under Federal Rules of Bankruptcy Procedure 9019 and meet the burden to approve the compromise before consummating any settlement transaction. Such a motion should include the documentation and specific terms of this side deal between Mr. Souki and certain professionals and give this Court and the estate's constituents the information to which they are entitled.

6. Second, the Statement raises many unanswered questions regarding the Debtors' DIP Financing. On September 27, 2023, after the Secured Parties swallowed hard to reach a consensual debtor-in-possession financing arrangement with the Debtors and Ajax Holdings, the Court authorized the Debtors to borrow up to $5 million from Ajax Holdings[3], an entity controlled by Mr. Souki and the Other Plaintiffs. As stated in the CRO's declaration, the primary purpose of the DIP Financing was to fund the administrative costs of the Chapter 11 cases and the expense of marketing, selling, and maintaining the Ranch. ECF No. 112 ¶¶ 12-13. But recent events leave the Secured Parties questioning whether the Debtors, the DIP Lender, and the Other Plaintiffs purposefully misled the Secured Parties and this Court and whether they ever intended to lend

---

[3] As this Court is aware, Debtor Strudel pledged its 50% interest in Ajax Holdings to secure the prepetition obligations to the Secured Parties. The Secured Parties hold a pledge to the remaining 50% through the Other Plaintiff, the 2016 Souki Family Trust.

under the DIP Financing at all.[4]  For example, on November 20, 2023, the Secured Parties discovered that the Debtors had not borrowed under the DIP Financing to fund costs due to the HOA.  The Debtors' CRO later informed the Secured Parties that Mr. Souki had directly funded a portion of the amounts due by the Debtors to the HOA.  Now, the Secured Parties have learned that the estate's professionals were not paid for several months, and the proposed solution is that Mr. Souki will pay such amounts himself.  The Debtors' most recent monthly report shows borrowings under the DIP Financing of only $1,115,000.  ECF Nos. 307-1 at 5, 307-8 at 5.  The only thing that is clear – the Debtors, the Other Plaintiffs, Mr. Souki and the HOA that they control have continued with their bad habits to ignore corporate separateness and engage in what can be classified as at best, poor accounting.

7. Third, the opaque Statement makes it impossible to assess whether the transaction proposed requires a motion to obtain financing under section 364 of the Bankruptcy Code.  Section 364 of the Bankruptcy Code allows a debtor, after notice and a hearing, to obtain credit.  11 U.S.C. § 364.  The Statement says that "Mr. Souki has agreed to personally pay the Incurred Professionals" and that he "agrees to waive any claims he might have against the Debtors in connection with his payment of the Incurred Professional Fees."  Statement ¶ 3.  It provides no detail on whether the funds will be advanced to the Debtors as a loan or a capital contribution and then used by the Debtors to pay the Incurred Professional Fees, or whether they will be paid directly.  It also provides no information on how the payment will be accounted for, as debt or

---

[4] The unavailability of the DIP Financing also raises many other concerns, including whether this case is administratively insolvent.  The Secured Parties reserve all of its rights with respect to the Debtors, the DIP Lender and the Other Plaintiffs, including, without limitation, the right to object to any motion to extend exclusivity, the right to seek appointment of a chapter 11 trustee, the right to seek to lift the automatic stay, the right to bring a new motion to dismiss the chapter 11 case, the right to seek modification of the DIP Order under Rule 60, and any other appropriate relief.

equity, which could have tax consequences for the Debtors.  Depending on how the transaction is structured, notwithstanding the waiver of claims, it could require a motion under section 364 of the Bankruptcy Code and to satisfy the appropriate burden in seeking such relief.  This Court should not allow Mr. Souki and the Debtors to ignore this requirement.

8. Fourth, the Statement provides that "Mr. Souki agrees to waive any claims he might have against the Debtors in connection with his payment of the Incurred Professional Fees[,]" but then continues to say that "Mr. Souki does not waive any other rights or claims he may have against the Debtors or any other parties and expressly reserves all such rights and claims."  Statement ¶¶ 3 and 4.  The Secured Parties are highly suspicious that this is an attempt by Mr. Souki, the Debtors, Ajax Holdings and the Other Plaintiffs to circumvent the terms of the negotiated DIP Order, in particular, the express subordination of the DIP Obligations and the DIP Liens to the Secured Parties' liens and claims and the section 506(c) waiver.  DIP Order ¶¶ 8-10.  Mr. Souki should not be entitled to any of the protections afforded the DIP Lender under the DIP Order, and the Secured Parties' rights under the DIP Order must be respected and preserved.  To the extent permitted by this Court, any payment of the Incurred Professional Fees should not be treated as an obligation of the Debtors or their estates or the Secured Parties and, at a minimum, all of the rights and protections granted to the Secured Parties under the DIP Order with respect to the DIP Lender should apply to Mr. Souki.

9. Fifth, as noted by Beyond The Beach, LLC ("BTB") in its objection and request for a hearing [ECF No. 359], the Statement proposes to make an impermissible work around of sections 327(a) and 328 of the Bankruptcy Code.  The Secured Parties support the Debtors' retention of professionals and payment of such professions *in accordance with the Bankruptcy Code*.  The applicable standards require that the Debtors' professionals are disinterested and make

the requisite disclosures, including who will pay their fees, in their retention applications. 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014(a). But once again, notwithstanding that Mr. Souki decided to file his wholly owned entities[5] (and not himself) for bankruptcy protection and receive the benefits of the automatic stay and the bankruptcy process, he is ignoring the standards the Bankruptcy Code requires. Before Mr. Souki is permitted to pay the Incurred Professional Fees, this Court should require the Debtors' professionals to appropriately update their retention applications and related disclosures and give the Court the opportunity to consider whether under such circumstances such professionals remain disinterested.

10. The Secured Parties respectfully request that the Court prohibit the transactions proposed in the Statement from occurring without approval and require that the Debtors and Mr. Souki provide additional information regarding the transaction proposed by the Statement and thereafter, file (i) the appropriate motions under Bankruptcy Rule 9019 and Bankruptcy Code § 364 and (ii) supplemental disclosures to the Debtors' professionals' retention applications. The Secured Parties reserve all rights to object to any such motions and seek further relief as appropriate.

*[Remainder of page intentionally left blank]*

---

[5] Trial Transcript of Charif Souki, 76:3-6 (Adv. Pro. 23-09003, Dec. 12, 2023).

Dated: January 19, 2024

Respectfully Submitted,

| | |
|---|---|
| ORRICK HERRINGTON & SUTCLIFFE LLP | ALSTON & BIRD LLP |
| | |
| /s/ *Laura Metzger* | /s/ *Sam Bragg* |
| Darrell S. Cafasso* | Sam Bragg |
| Laura Metzger* | Texas Bar No. 24097413 |
| David Litterine-Kaufman* | S.D. Tex. Bar. No. 3395594 |
| Nicholas A. Poli* | 2200 Ross Avenue |
| Mark Franke* | Dallas, Texas 75201 |
| Harry F. Murphy* | Telephone: (214) 922-3400 |
| 51 West 52nd Street | Facsimile: (214) 922-3899 |
| New York, NY 10019 | Email: Sam.Bragg@alston.com |
| Telephone: (212) 506-5000 | |
| Email: dcafasso@orrick.com | William Hao* |
| lmetzger@orrick.com | 90 Park Avenue |
| dlitterinekaufman@orrick.com | New York, New York 10016 |
| npoli@orrick.com | Telephone: (212) 210-9400 |
| mfranke@orrick.com | Facsimile: (212) 210-9444 |
| hmurphy@orrick.com | Email: William.Hao@alston.com |
| | |
| Ryan Wooten | Chris Riley* |
| Texas Bar No. 24075308 | 1201 West Peachtree Street |
| S.D. Tex. Bar No. 1259974 | Atlanta, GA 30309 |
| 609 Main Street, 40th Floor | Telephone: (404) 881-7000 |
| Houston, TX 77002 | Facsimile: (404) 881-7777 |
| Telephone: (713) 658-6617 | Email: Chris.Riley@alston.com |
| Email: rwooten@orrick.com | |
| | *Attorneys for Wilmington Trust National Association* |
| James W. Burke* | |
| 1152 15th Street, N.W. | |
| Washington, D.C. 20005 | |
| Telephone: (202) 339-8400 | |
| Email: jburke@orrick.com | |
| | *Admitted pro hac vice |
| Nick Sabatino* | |
| 400 Capital Mall, Suite 3000 | |
| Sacramento, CA 95814 | |
| Telephone: (916) 447-9200 | |
| Email: nsabatino@orrick.com | |

*Attorneys for Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., and UBS O'Connor LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 19th day of January 2024, a true and correct copy of the foregoing pleading was filed and served via the Court's ECF and notification system to all parties registered to receive electronic notices in this matter.

                                                  /s/ *Laura Metzger*
                                                  Laura Metzger