United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 29, 2024
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 23-90757 |
| STRUDEL HOLDINGS LLC, *et al.*, § | |
| Debtors. § | Jointly Administered |
| § | CHAPTER 11 |

**MEMORANDUM ORDER GRANTING EMERGENCY MOTION
TO MODIFY SALE ORDER TO EXTEND THE CLOSING DATE**
(RE: ECF No. 276)

The question before the Court is whether it should modify the closing date in a prior order approving the sale of a ranch. For the reasons below, the answer is yes.

## Background

On November 9, 2023, the Court entered a Sale Order[1] approving the sale of a ranch to Chiron AVR LLC and certain affiliates ("**Purchaser**") under a "Purchase Agreement" with Debtor AVR AH, LLC ("**Seller**"). It's not your average ranch. It's 800-acres located outside Aspen, Colorado. The purchase price is $30.5 million. Fleeger Family First LP was designated as the "**Back-Up Bidder**." The Sale Order says that if Purchaser fails to close the sale on or before November 22, 2023, Seller shall accept Back-Up Bidder's $30 million bid.[2]

Seller covenanted in the Purchase Agreement to satisfy amounts due to the Aspen Valley Ranch Homeowners Association, Inc., or otherwise attributable to the ranch.[3] A few days before the closing a dispute arose about alleged unpaid HOA fees and taxes. On the evening of November 21, Purchaser emailed Seller and attached a "Notice of Default."[4] Purchaser demanded that Seller immediately cure the defaults by 10:30 a.m. (ET) on November 22.[5] If not, Purchaser threatened to file the Notice with the Court, seek to compel Seller's performance under the Purchase Agreement, and enjoin any sale to Back-Up Bidder.[6] In the body of the email, Purchaser also

---

[1] ECF. No. 245.

[2] *Id*. ¶ 7.

[3] Purchase Agreement § 12(f), SP. Ex. 59, ECF No. 368-59.

[4] Tr. 45:22–46:1, ECF No. 401; Fleeger Ex. 16, ECF No. 372-29.

[5] Fleeger Ex. 16, ECF No. 372-29.

[6] Fleeger Ex. 16, ECF No. 372-29.

stated it remained open to amending the Purchase Agreement to provide for a one-week extension to permit Seller to cure its alleged defaults.[7]

Things became more complicated because on November 21, Fidelity National Title Insurance Company—the title company and escrow agent under the Purchase Agreement—publicly announced in an 8-K:

- a cyberattack affected certain of its systems,
- as part of containment measures, Fidelity blocked access to certain of its systems, which resulted in disruptions to its business, and
- the services provided "related to title insurance, escrow and other title-related services, mortgage transactions services, and technology to the real estate and mortgage industries . . ." were affected by the containment measures.[8]

Seller and Purchaser continued negotiating with an intent to close on the ranch the morning of November 22.[9] But by around 12:00 p.m., they knew closing was impossible because of the Fidelity cyberattack.[10] For example, Purchaser's counsel emailed Buyer on November 22: "putting the dispute regarding the HOA fees aside . . . the title company has suffered a data breach and . . . advised us that they will not be able to receive documents until Sunday evening at the earliest. This obviously makes closing an impossibility."[11]

So they shifted their focus to working on an extension to the closing date.[12] That afternoon, Seller and Purchaser executed an amendment to the Purchase Agreement to extend the closing date from November 22 to November 28.

Back-Up Bidder was also informed about the cyberattack the morning of November 22. Counsel for Seller emailed Back-Up Bidder's counsel saying that Fidelity "experienced a data breach that will prevent closing today (or any time before Monday)" and asked if Back-Up Bidder would agree to extend the dates under the Sale Order and Purchase Agreement by one week.[13] Back-Up Bidder never responded that day.

---

[7] Fleeger Ex. 16, ECF No. 372-29.

[8] Form 8-K, Fleeger Ex. 48, ECF No. 372-61; Form 8-K, SP. Ex. 21, 368-21.

[9] *See, e.g.*, Tr. 49:3–15, 51:14–17, 57:15–58:1, 93:1–16, 94:3–6, ECF No. 401.

[10] *See, e.g.*, SP. Ex. 32, ECF No. 369-24; Tr. 99:15–17, ECF No. 401.

[11] Tr. 53:14–25, ECF No. 401; *see also* SP. Ex. 32, ECF No. 369-24.

[12] *See, e.g.*, SP. Ex. 32, ECF No. 369-24; Tr. 54:9–13, 95:15–20, 99:13–17, 115:17–19, 135:20–24, 137:15–138:11, ECF No. 401.

[13] SP. Ex. 27, ECF No. 368-27.

On November 23 (Thanksgiving Day), the Debtors filed a Notice of Postponement of Closing on the Court's docket stating:

> Pursuant to the Court's Sale Order at Docket No. 245, the Debtor was to file a notice with the Court of its intent to close with the Back-Up Bidder if there was no closing under the terms of the Purchase and Sale Agreement by November 22, 2023. Due to an unforeseen nationwide data breach with Fidelity Title, the title company handling the sale, the parties were informed that no sale could occur on November 22, 2023 and that the earliest possible sale date would be November 28, 2023. Accordingly, the parties have executed an amendment to extend the sale date to November 28, 2023. The Debtor has notified the Back-Up Bidder of the extended sale date and requested a similar extension of the deadline to close under the Back-Up Bid.[14]

On November 24, counsel for Back-Up Bidder responded to the November 22 email from Seller's counsel. He said that Seller had to close with Back-Up Bidder under the Sale Order because of the November 22 deadline and that any amendment between Seller and Purchaser was void.[15]

In the days following November 22, Purchaser and Seller revisited the HOA fee dispute to resolve their disputes.[16]

On November 27, the Debtors filed an Emergency Motion for Status Conference.[17] It said that Purchaser sent Seller the Notice of Default on the evening of November 21 and the parties "continued to negotiate over a resolution of the Notice of Default in order to meet the November 22, 2023 closing deadline."[18] But, on November 22, Seller informed Purchaser that Fidelity "had experienced a nation-wide data breach and was blocking access to all title and escrow services until at least November 28, 2023."[19]

---

[14] ECF No. 260.

[15] SP. Ex. 37, ECF No. 368-37. Back-Up Bidder's counsel also emailed Back-Up Bidder that day saying that "Alarm bells will soon be ringing with the Debtors, Lenders, and their Attorneys!" *Id.*

[16] *See, e.g.,* Fleeger Ex. 23, ECF No. 372-36; Fleeger Ex. 31, ECF No. 372-44.

[17] Status Conference Mot., ECF No. 265.

[18] *Id.* ¶ 3.

[19] *Id.* ¶ 4.

This story took another twist when, on November 29, Seller filed a Notice of Intent to Close Sale to Back-Up Bidder because of the November 22 deadline in the Sale Order.[20]

On November 30, the Court conducted a status conference about the sale issues. Before the conference, Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., and Wilmington Trust National Association, in its capacity as Administrative Agent, and Purchaser filed an emergency motion to modify the Sale Order under Section 105(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 60(b).[21] The Court later held a status conference at which Back-Up Bidder objected to the motion to modify the Sale Order.

On December 27, the Court issued an order under Section 105(a) and Rule 60(b) modifying the closing date and permitting Seller to close with Purchaser ("**Modification Order**"). The Court found that the unforeseen cyberattack "made it impossible for the Purchaser (or any other purchaser) and Seller to close on November 22 (or even a few days after)" and that it would be inequitable to allow Back-Up Bidder to step in as the purchaser because of an unforeseen event that was not within Purchaser's or Seller's control.[22]

A few days later, Back-Up Bidder sought reconsideration of the Modification Order arguing, among other things, that Purchaser "had already declared the [Sellers] in default and did not intend to close regardless of the cyberattack."[23] The Court granted reconsideration to conduct a robust evidentiary hearing.[24]

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(N), and (O). The Court has jurisdiction under 28 U.S.C. § 1334. The parties' express and implied consent also provides this Court constitutional authority to enter a final judgment under *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015) and *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

---

[20] ECF No. 272.

[21] ECF No. 276.

[22] Modification Or. at 3, ECF No. 309.

[23] Mot. Recons. ¶ 12, ECF No. 313.

[24] ECF No. 326.

## Legal Standard

Federal Rule of Civil Procedure 60 applies to bankruptcy cases through Federal Rule of Bankruptcy Procedure 9024. Fed. R. Bankr. P. 9024. Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; [or] . . . (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b)(6) is a general catch-all phrase and is reserved for "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017) (citation omitted); *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013) (same). The United States Supreme Court has held that "it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' . . . while also cautioning that it should only be applied in 'extraordinary circumstances' . . . ." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (citations omitted). The Fifth Circuit has also held that:

> "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case." However, "we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief 'will only be granted only if extraordinary circumstances are present.'" . . . Accordingly, Rule 60(b)(6) requires a showing of "manifest injustice" and will not be used to relieve a party from the "free, calculated, and deliberate choices he has made."

*Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013) (citations omitted). Purchaser bears the burden here of proving the extraordinary circumstance and manifest injustice.

Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Fifth Circuit interprets Section 105(a) liberally. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) (citing *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir.1994)). Bankruptcy courts, as

courts of equity, may modify or vacate an order when appropriate. But the equitable power is not unlimited. Section 105(a) can't be used to override another section of the Bankruptcy Code. *See Yaquinto v. Ward (In re Ward)*, 978 F.3d 298, 303 (5th Cir. 2020).

Section 105(a) is important. Congress gave bankruptcy courts the power to issue orders preventing injustice and facilitating necessary relief in a case. But it should not be a work-around to evade other sections of the Bankruptcy Code or the Bankruptcy Rules. It is also not salt that lawyers should sprinkle on every motion.

The Sale Order is a final order of the Court. So any relief granted under Section 105(a) must be consistent with the requirements under Rule 60(b)(6).

## Analysis

Whether the Court should modify the Sale Order to extend the closing date requires analyzing what happened on November 22 and why the parties did not close. Back-Up Bidder believes that the cyberattack is a red herring. It argues that Purchaser never intended to close on November 22 because of the HOA dispute and a lack of diligence. Back-Up Bidder believes that it acquired a legal right to purchase the ranch on November 23, and that should be the end of the story. The Court disagrees. The evidentiary record provides clear and convincing evidence of a different story—a truly extraordinary circumstance not caused by either Purchaser or Seller. Extending the closing date is warranted. Failure to do it would be a manifest injustice and inequitable to Purchaser.

Randal Johnson, a lead representative for Purchaser involved in the ranch closing efforts, and Douglas Brickley, Seller's Chief Restructuring Officer, testified at the hearing. Both had personal knowledge about the events leading up to and including November 22. Both were very credible witnesses. Both testified that they fully intended on working through their disputes and closing on November 22. But the cyberattack made that impossible.

Johnson testified that by November 20, Purchaser was very close to completing its closing checklists and having all its deliverables in place.[25] This is confirmed by emails between the parties.[26] The night he learned there were outstanding HOA fees he contacted Brickley to try to resolve the issue so they could close by November 22.[27]

---

[25] Tr. 41:8–11, ECF No. 401.

[26] *See, e.g.*, SP. Ex. 9, ECF No. 369-5.

[27] Tr. 44:2–7, ECF No. 401; SP. Ex. 22, ECF No. 369-17.

Johnson acknowledged that Purchaser believed Seller was in default under the Purchase Agreement and threatened to seek Court intervention on November 22 about the sale process.[28] And while the email with the Notice of Default from Purchaser's counsel proposed an extension, Purchaser stood ready to close on November 22.[29] He testified that the Notice of Default was a tactic to pressure the Seller to cure the alleged defaults.[30] He believed the issues could have been resolved by November 22.[31] Johnson testified that the parties were considering solutions like a purchase price adjustment or using debtor-in-possession financing to pay the HOA fees post-closing.[32] He never conveyed that Purchaser didn't want to close on November 22.[33] They couldn't close because of the cyberattack.[34]

Johnson became aware that there was an issue with Fidelity's systems on November 21.[35] He learned that there was a cyberattack the morning of November 22.[36] Purchaser's counsel independently confirmed it with Fidelity.[37] Johnson testified that Fidelity was integral to the closing. Fidelity was the title company and the escrow agent, so it held Purchaser's funds and documents.[38] It was the cyberattack that made closing impossible. After realizing that closing was impossible, the parties focused on an agreed extension.[39]

Brickley also expected the parties to close on November 22, but the cyberattack made it impossible.[40] He, like Johnson, viewed the Notice of Default as a negotiation tactic.[41] He learned about the cyberattack the morning of November

---

[28] Tr. 47:16–48:5, ECF No. 401.

[29] Tr. 50:5–9, ECF No. 401.

[30] Tr. 47:9–12, ECF No. 401.

[31] Tr. 50:5–9, 56:10–13, ECF No. 401.

[32] Tr. 48:25–49:11, ECF No. 401.

[33] Tr. 49:12–15, ECF No. 401.

[34] Tr. 54:1–8, 58:2–3, ECF No. 401.

[35] Tr. 51:9–13, ECF No. 401.

[36] Tr. 51:23–52:8, ECF No. 401.

[37] Tr. 52:4–8, ECF No. 401.

[38] Tr. 54:1–8, ECF No. 401.

[39] *See* SP. Ex. 32, ECF No. 369-24; Tr. 54:9–13, ECF No. 401.

[40] Tr. 93:12–16, 94:3–6, 99:13–17, ECF No. 401.

[41] Tr. 98:19–24, 130:10–18, ECF No. 401.

22 and had Seller's counsel independently verify it with Fidelity.[42] Johnson also sent him an article about it on the morning of November 22.[43]

Brickley acknowledged that the parties did not reach agreement about the HOA issues on November 22, and that they continued to work on those issues well after November 22.[44] But he also believed the parties could have worked through them and closed on November 22.[45] He confirmed that Seller did not agree to an extension until after learning about the cyberattack.[46] And that the parties expected to use the extra days—since Fidelity said it systems would not be up until late November—to carefully work on the HOA issues.[47]

Back-Up Bidder argues that the Sale Order set a firm November 22 deadline to close with Purchaser and that it obtained a legal right to purchase the ranch on November 23. It also notes that Purchaser did not expressly say to Seller, in the Notice of Default or otherwise, that it would close despite the HOA fees remaining due.[48] Back-Up Bidder also focuses on the fact that Seller and Purchaser had not resolved the HOA dispute as of November 22, and they continued to work on it for about a week after.

Back-Up Bidder has a point. Words matter in bankruptcy court orders, and parties rely on their finality. So, for example, if the evidence showed that Purchaser had made up its mind that a closing was not going to occur on November 22 because of the HOA issues, or that the parties agreed to extend the closing date before learning about the cyberattack, or if the cyberattack had occurred after hours on November 22 (thus making it a red herring), the outcome may be different. These examples are not extraordinary circumstances that would result in manifest injustice.

But what makes this case truly extraordinary is that Fidelity—the escrow agent and title company—publicly disclosed a cyberattack that impaired its systems the day before November 22. On the morning of November 22, Seller and Purchaser independently confirmed with Fidelity that closing could not occur on that day. It is true that the parties had not settled their disagreements before learning about the cyberattack. But one cannot consider that in isolation. They knew they could not

---

[42] Tr. 132:4–18, ECF No. 401.

[43] SP. Ex. 34, ECF No. 369-26.

[44] Tr. 113:9–19, Tr. 123:12–21, ECF No. 401.

[45] Tr. 97:1–4, 99:3–12, ECF No. 401.

[46] Tr. 95:15–17, 125:7–13, ECF No. 401.

[47] Tr. 139:14–140:8, ECF No. 401; *see also* Fleeger Ex. 20, ECF 372-33.

[48] Tr. 66:21–67:3, ECF No. 401.

close by 12:00 p.m. Witness testimony and contemporaneous communications between the parties provides clear and convincing evidence that the cyberattack changed their focus from closing to solely negotiating an extension.[49] Seller's November 23 Notice of Postponement of Closing also says the cyberattack made it impossible to close.[50] This type of extraordinary circumstance warrants relief from the Sale Order.

This Court has authority to amend its Sale Order. And, based on the record, it exercises it to give Purchaser appropriate and limited relief. Back-Up Bidder is a sophisticated investor who wants to buy the ranch. And that is understandable. But it would be manifest injustice against Purchaser to allow Back-Up Bidder to step in as the purchaser because of an unforeseeable attack on Fidelity—an essential closing party—that was not within Purchaser's or Seller's control. This is exactly the type of extraordinary circumstance that merits use of Rule 60(b)(6). No party's rights are materially prejudiced. Back-Up Bidder may remain as Back-Up Bidder if it chooses to do so.

Relief under Section 105(a) is also warranted and appropriate. Purchaser was the winning bidder for the ranch at a Court approved auction and was allowed to purchase it under the Sale Order. It was impossible to close on November 22 because of an extraordinary circumstance. It will now have that opportunity.[51]

---

[49] *See, e.g.*, SP. Ex. 32, ECF No. 369-24; Tr. 54:9–12, 115:17–19, 135:20–24, 137:15–138:11, ECF No. 401.

[50] ECF No. 260. An emergency hearing with the Court on November 22 on a few hours' notice was also no guaranty.

[51] Any other arguments raised by Back-Up Bidder were considered but rejected for the reasons stated in this Order.

For the reasons stated above:

IT IS HEREBY ORDERED THAT:

1. The Emergency Motion at Docket No. 276 is GRANTED as set forth below.

2. The Closing Date, as defined in the Sale Order, is extended through February 9, 2024.

3. Purchaser and Seller shall perform all obligations under the Purchase Agreement, as may be amended by the parties consistent with the Sale Order.

4. Absent a Court order stating otherwise, if the closing does not occur by February 9, 2024, the Debtors shall retain Purchaser's Deposit (as defined in the Purchase Agreement and on the terms set forth in paragraph 2(d) of the Purchase Agreement), and shall accept the Back-Up Bidder's bid, and proceed to close a sale based on the terms of the Purchase and Sale Agreement with Back-Up Bidder dated October 24, 2023.

5. The Court retains exclusive jurisdiction over all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: January 29, 2024

Christopher Lopez
United States Bankruptcy Judge