# EXHIBIT 1

7/25/2024

# SETTLEMENT TERM SHEET

| | |
|---|---|
| **Description:** | This term sheet (this "Term Sheet") sets forth the principal terms of a settlement (the "Settlement") between the Secured Parties and the Souki/Debtor Parties (each defined below) which shall constitute a global resolution of all claims, liabilities and causes of action arising from the Loan Documents and the Ajax Loans, including in relation to the chapter 11 cases captioned *In re Strudel Holdings, LLC et al.*, Case No. 23-90757 (the "Chapter 11 Cases") and the adversary proceeding captioned *AVR AH LLC et al. v. NineTeen77 Capital Solutions A LP*, et al.*,* Adv. Prop. No. 23-9003 (the "Adversary Proceeding"), each pending in the Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), *Souki, et al. v. Nineteen77 Capital Solutions A LP, et al.*, Case No. 23-cv-7982-JGLC, pending in the United States District Court for the Southern District of New York, *Souki, et al. v. Nineteen77 Capital Solutions A LP, et al.*, pending in the Supreme Court of the State of New York, County of New York (together, the "New York Proceeding"), all appeals related to the foregoing and all claims, obligations and liabilities arising under, in connection with or related to the Loan Documents and the Ajax Loans (each as defined below).<br><br>On and after the Term Sheet Effective Date, the Souki/Debtor Parties and Secured Parties agree to work in good faith to negotiate and execute prior to the Sale Closing Date (as defined below): (i) a definitive settlement agreement among the Souki/Debtor Parties and the Secured Parties consistent with this Term Sheet (the "Settlement Agreement"), (ii) a definitive settlement agreement among the Souki/Debtor Parties, the Secured Parties, the HOA Parties and Aspen Ranch (the "HOA Settlement Agreement"), (iii) the form of dismissal order for the Chapter 11 Cases, which shall provide for payment in full of the Debtors' allowed administrative expenses by the Souki/Debtor Parties (except for the HOA Settlement Payment) and waiver of the Ajax Holdings DIP Claim (the "Dismissal Order"), and (iv) all other ancillary documents to effectuate the terms of the Settlement.  The Settlement Agreement, the HOA Settlement Agreement, the Dismissal Order and all other documents shall be in form and substance satisfactory to the Souki/Debtor Parties, the Secured Parties and the other parties to such documents and shall be finalized prior to the Sale Closing Date. |
| **Secured Parties' Loans and Pledge Agreements** | Reference is made to (i) the Loan Agreement, dated as of March 30, 2018 (as amended, supplemented, restated or otherwise modified from time to time, the "2018 Loan Agreement"), among the Borrower, the Lenders party thereto, the Guarantors party thereto and the Administrative Agent; (ii) the Loan Agreement, dated as of April 27, 2017 (as amended, supplemented, restated or otherwise modified from time to time, the "2017 Loan Agreement," and together with the 2018 Loan Agreement, the "Loan Agreements") among the Borrower, the Lenders party thereto, the Guarantors party thereto and the Administrative Agent; (iii) the Pledge Agreement, dated as of March 30, 2018 (the "2018 Pledge Agreement") by Borrower, Charif Souki as Trustee of the Souki Family 2016 Trust effective March 11, 2016, as amended , AVR AH LLC, a Colorado limited liability company and Strudel Holdings LLC, a Texas limited liability company |

| | |
|---|---|
| | (together with Trust and AVR and the Borrower, the "Pledgors"), and the Administrative Agent; (iv) the Pledge Agreement dated as of April 27, 2017 (the "2017 Pledge Agreement," and together with the 2018 Pledge Agreement, the "Pledge Agreements") by the Pledgors and the Administrative Agent; and (v) those certain Bridge Agreements dated as of May 5, 2020 among the Borrower, the Guarantors, the Lenders, and the Administrative Agent (together, the "Bridge Agreements" and, collectively with the Loan Agreements, Pledge Agreements and related ancillary documents as may be amended from time to time, the "Loan Documents"). <br><br> The Secured Parties represent that the Secured Obligations due under the Loan Agreements equal to an amount no less than $94,233,949.58 as of July 18, 2024, with interest and costs continuing to accrue (the "Loan Balance"). |
| **Secured Parties** | Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd. (together with Nineteen77 Capital Solutions A LP, "Lenders"), Wilmington Trust National Association (the "Administrative Agent"), and UBS Asset Management (Americas) LLC ("UBS"), Chiron AVR LLC ("Chiron AVR"), Chiron Ajax LLC ("Chiron Ajax", together with the Lenders and the Administrative Agent, the "Secured Parties") along with their respective past, present and/or future: principals, employees, officers, managers, directors, members, investors, partners, limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "Released Secured Parties"). The Released Secured Parties shall include, but not be limited to, the following: Baxter Wasson, Rodrigo Trelles, Jaeho Choi, Randal Johnson, Lilly Kaufmann, Theodore Drury, Dan McNicholas, Michael Staheli, Jeff Rose, Barry Lynch, Alvarez & Marsal, Cordes & Company, CBRE, Inc., Orrick, Herrington & Sutcliffe LLP, Snell & Wilmer, Garfield & Hecht, P.C. and Alston & Bird. |
| **Souki/Debtor Parties** | AVR AH LLC ("AVR"), Strudel Holdings LLC ("Strudel" and together with AVR, the "Debtors"), Karim Souki (Charif's son), Christopher Souki, and Lina Rizzuto, as Trustees of the Souki Family 2016 Trust (the "Trust"), Karim Souki (Charif's brother) in his individual capacity ("Karim Souki"), and Charif Souki in his individual capacity and as equity holder, manager and member of the Debtors and as former Trustee to the Trust ("Charif Souki"), Ajax Holdings LLC ("Ajax Holdings"), the subsidiaries of Ajax Holdings (the "Ajax Subsidiaries", and, together with Ajax Holdings, "Ajax"), Will Herndon individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("Herndon"), Brooke A. Peterson, individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("Peterson") and Karim Souki (Charif's son) ("K. Souki", together with Herndon, the Debtors, the Trust, Charif Souki, Karim Souki, Peterson and Ajax, the "Souki/Debtor Parties"), along with their respective past, present and/or: principals, employees, officers, managers, directors, members, investors, partners, limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment |

| | |
|---|---|
| | bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "Released Souki/Debtor Parties"). The Released Souki/Debtor Parties shall include, but not be limited to, Oates, Knezevich, Gardenswartz, Kelly & Ticsay, P.C., Yetter Coleman LLP, Hunton Andrews Kurth LLP, Porter Hedges LLP and Stout Risius Ross, LLC. |
| **HOA Parties** | Aspen Valley Ranch Homeowners Association, Inc. (the "HOA"), Three Dolphins, LLC ("TD"), Beyond the Beach, LLC ("BTB"), Aspen Ranch Acquisition LLC ("Aspen Ranch") along with their respective past, present and/or future: principals, employees, officers, managers, directors, members, investors, partners, limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "Released HOA Parties"). For the avoidance of doubt, nothing in this Term Sheet is intended to bind the HOA, TD, BTB or Aspen Ranch and the settlement with such parties will be set forth in the HOA Settlement Agreement. |
| **Ajax Loans** | Reference is made to (i) Promissory Note dated October 12, 2022 between Ajax Holdings LLC, as borrower, and Souki Family 2016 Trust, as lender, along with all ancillary and related documents (the "Trust Loan") and (ii) Promissory Noted dated September 10, 2020 between Ajax Holdings LLC, as borrower, and Karim Souki, as lender ("Karim Loan", together with the Trust Loan and the Karim Loan (as amended, supplemented, restated or otherwise modified from time to time) (the "Ajax Loans"). |
| **Ajax Holdings DIP Claim** | Ajax Holding will expressly waive and release its DIP Claim against the Debtors. |
| **Ajax Property Sale** | [redacted] |

| | |
|---|---|
| | ███████████████████████████████████████████████████████████████████████████████████████████. |
| **Settlement Payment** | ██████, due to the Secured Parties on the Sale Closing Date pursuant to the Title Company Instruction.<br><br>The Settlement Amount shall be confidential and the parties shall move the Bankruptcy Court to maintain the Settlement Amount under seal. The Settlement Agreement shall contain standard confidentiality provisions with standard carve-outs. |
| **HOA Claim and HOA Settlement Payment** | $458,054<br>The Secured Parties shall pay the HOA's administrative expense claim pursuant to the terms of the HOA Settlement Agreement. |
| **Released Claims** | The releases in the Settlement Agreement will provide that each of the Souki/Debtor Parties and Secured Parties, releases, acquits, and forever discharges the Released Secured Parties and the Released Souki/Debtor Parties, respectively, from any and all obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, claims, counterclaims, cross-claims, rights of setoff, debts, demands, covenants, contracts, premises, agreements, variances, trespasses, damages (including direct, actual, special, indirect, consequential or punitive damages), judgments, extents, executions, liabilities, controversies, costs, expenses, attorneys' fees, losses, suits, actions or causes of action with respect to any matters, causes or things whatsoever, whether known or unknown, whether accrued or not accrued, in law or equity, arising from, related to, and in connection with the Loan Documents, the Loan Balance, the Chapter 11 Cases, the Ajax Loans, the DIP Claim, the Adversary Proceedings, the New York Proceeding and the Sale (the "<u>Released Claims</u>").<br><br>It is the intention of the Released Secured Parties and the Released Souki/Debtor Parties the releases be the broadest form of release of liability permitted by law and is meant to encompass, inter alia, any past, present or future claim, whether known or unknown and accrued or not accrued, condition or injury, related to the Released Claims, except any claims that may arise out of the breach of the Settlement Agreement. |

| | |
|---|---|
| | The Settlement Agreement will provide that each of the Souki/Debtor Parties and Secured Parties covenants that it shall not encourage, solicit, initiate, institute, commence, file, maintain or otherwise prosecute, or participate in, (including by providing financial support), whether directly or indirectly, or through a third party, any action, lawsuit, cause of action, claim, demand, or legal proceeding any kind to arising out of relating to any of the Released Claims; provided that any of the Released Souki/Debtor Parties or Released Secured Parties may commence an action to enforce the terms of this Settlement Agreement, and that the Settlement Agreement may be pleaded as a defense, counterclaim or crossclaim, and shall be admissible into evidence without any foundation or testimony whatsoever.<br><br>The release among the Released Souki/Debtor Parties, Released Secured Parties and Released HOA Parties in the HOA Settlement Agreement will be substantially similar. |
| **Term Sheet Effective Date** | This Term Sheet shall become binding on the Souki/Debtor Parties and the Secured Parties upon the time when each of the following has occurred (the "Term Sheet Effective Date"):<br>1) Bankruptcy Court approval of Strudel and AVR's entry into this Term Sheet;<br>2) The Title Company's receipt of the Title Company Instruction and the Title Company acknowledging receipt to the Secured Parties, which shall be satisfactory to the Secured Parties in all regards;<br>3) The Secured Parties' and Debtors' receipt of the purchase and sale agreement for the Sale of the Ajax Property on an attorneys' eyes-only basis as provided in the Protective Order on record in the Adversary Proceeding and the Chapter 11 Cases;<br>4) The Bankruptcy Court's order approving the Debtors' entry into the Term Sheet shall include a final order, Computershare is directed under a "Final Order", to release the Escrow Property held by Computershare Trust Company, N.A. pursuant to the Escrow Agreement dated as of January 31, 2024 between Chiron AVR and Computershare Trust Company, N.A. (the "AVR Escrow Agreement") to Chiron AVR on July 31, 2024, which condition and order is not contingent on the Settlement Closing Date and shall expressly survive the termination of this Term Sheet, the Settlement Agreement and/or the failure of the Sale Closing Date to occur by the Outside Date; and<br>5) Delivery of the Retraction Notice to the Title Company to hold in escrow pursuant to the Title Company Instruction. |
| **Condition to Effectiveness of Releases and the Settlement Closing Date and Post-Settlement Closing Date Condition** | The closing of the settlement contemplated by this Term Sheet and the Releases contemplated hereby shall occur upon the date upon which each of the following has occurred (the "Settlement Closing Date"):<br>1) Due execution and delivery of the Settlement Agreement by each of the parties thereto;<br>2) Due execution and delivery of the HOA Settlement Agreement by each of the parties thereto;<br>3) Receipt by the Secured Parties of the Settlement Payment;<br>4) Receipt by the HOA of the HOA Settlement Payment; |

| | |
|---|---|
| | 5) Release of the Retraction Notice by the Title Company pursuant to the terms of the Title Company Instruction;<br>6) The Sale Closing Date shall have occurred;<br>7) The Debtors or their designees shall have received the Administrative Expense Payment;<br>8) Chiron AVR or its designee shall have received the Escrow Property (as defined in the AVR Escrow Agreement);<br>9) The Bankruptcy Court shall have entered an order approving this Term Sheet.<br>If any of the above conditions are not met, the Settlement Closing Date shall be deemed not to have occurred, except with respect to the HOA and the HOA Settlement Payment, all payments shall be returned to the party that made such payment, and all parties shall be reinstated as if the settlement had never occurred.<br><br>Within five (5) business days of the Settlement Closing Date and satisfaction of each of the conditions thereto, the Debtors shall file the Dismissal Order with the Court. |
| **Agreements Between the Term Sheet Effective Date and the Settlement Closing Date** | The Souki/Debtor Parties and the Secured Parties agree to the following:<br>1) the Secured Parties shall (i) support the sale to the buyer and (ii) for the purposes of the Sale, to become effective contemporaneously with closing, confirm that Will Herndon is duly authorized to execute and deliver the applicable transaction documents, in each case subject to the Title Company Instruction, this Term Sheet and the Settlement Agreement;<br>2) the Souki/Debtor Parties will include Doug Brickley, the Debtors' Chief Restructuring Officer, and counsel to the Debtors in all material written and oral communications relating to the Sale, including, without limitation, any closing calls;<br>3) the Debtors shall have the right to review and consent to all documents related to the Sale, including any amendments to the purchase agreement, which consent shall not be unreasonably withheld;<br>4) Ajax shall keep the Secured Parties and the Debtors informed of the status of Sale and the anticipated Sale Closing Date and promptly notify the Secured Parties and the Debtors of any material developments with respect to the Sale;<br>5) so long as the Title Company Instruction remains irrevocable and in full force and effect and Doug Brickley is included in all material written and oral communications regarding the Sale and the Souki/Debtor Parties are in compliance with all of their obligations in this Term Sheet, the Secured Parties will not contact the proposed purchaser of the Ajax Properties or the lender of the proposed purchaser without the participation of a representative of the Souki/Debtor Parties with respect to the Sale or the Ajax Properties, provided, that, if the proposed purchaser contacts the Secured Parties with respect to the Sale or the Ajax Properties, the Secured Parties may communicate with the proposed purchaser or lender for the limited purpose of informing the proposed purchaser or lender that the Souki/Debtor Parties must be included in any |

| | |
|---|---|
| | communications; provided, further, that nothing contained herein shall limit the Secured Parties from communications with the proposed purchaser, the Title Company and/or the lender of the proposed purchaser if requested and expressly authorized by the Ajax Subsidiaries or their counsel and the Secured Parties shall have no liability to any of the Souki/Debtor Parties in connection with such communications made at request of the Souki/Debtor Parties;<br>6) the Secured Parties and Souki/Debtor Parties will each use commercially reasonable efforts to negotiate and agree to the HOA Settlement Agreement with the Released HOA Parties;<br>7) the Secured Parties will cooperate with the Souki/Debtor Parties in good faith to consummate the Sale |
| **Failure of Settlement Closing Date to Occur** | If the Settlement Closing Date fails to occur before the Outside Time, then:<br>1) the Bankruptcy Court will hold a hearing on the Secured Parties Motion for Entry of a Judgment on August 6, 2024;<br>2) for the avoidance of doubt, the notices delivered to Souki/Debtor Parties on July 10, 2024, with respect to Ajax Holdings shall remain in full force and effect and the Retraction Notice shall be deemed automatically rescinded and of no force and effect and the notices delivered to the Souki/Debtors Parties on July 10, 2024 shall be automatically reinstated, provided, that all rights of the Souki/Debtor Parties to object to such notices is expressly reserved; and<br>3) this Term Sheet, the Settlement Agreement and any other document executed in connection herewith shall terminate and be deemed null and void and of no force and each party shall be relieved of any further obligations to perform thereunder effect except for agreements that expressly survive this Term Sheet and/or the Settlement Agreement. |
| **Amendments** | This Term Sheet may be amended or waived with the written consent of each Souki/Debtor Party and Secured Party, provided, that the Souki/Debtor Parties and the Secured Parties shall not amend or waive any provision relating to the settlement with the HOA without the prior consent of the HOA Parties. |
| **Expenses:** | Each party shall be responsible for its own expenses in connection with the Settlement. |
| **Governing Law:** | New York. |