United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 30, 2024

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** § | **Chapter 11** |
| § | |
| **STRUDEL HOLDINGS LLC and** § | **Case No. 23-90757 (CML)** |
| **AVR AH LLC,** § | |
| § | **(Jointly Administered)** |
| **Debtors.**[1] § | |
| § | |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION TO APPROVE**
**SETTLEMENT TERM SHEET AND DISMISSAL OF CHAPTER 11 CASES**
**[Relates to Docket No. 486]**

Upon the Debtors' Emergency Motion to Approve Settlement Term Sheet and Dismissal of Chapter 11 Cases (the "Motion")[2] and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and that no other or further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion and the hearing with

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  AVR AH LLC (0148) and Strudel Holdings LLC (5426).  The Debtors' service address is:  PO Box 4068, Aspen, CO 81612.

[2]     All terms not specifically defined herein shall have the meaning set forth in the Motion.

respect to the Motion establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Term Sheet attached as **Exhibit 1** (the "Term Sheet") is approved; provided, however, that the Outside Time, as defined in the Term Sheet, shall be August 6, 2024 instead of July 31, 2024.

2.      The Term Sheet shall be binding on and enforceable against all parties who are signatories to the Term Sheet in accordance with its terms.

3.      The HOA Settlement Agreement, substantially in the form of **Exhibit 2** hereto, is incorporated herein by reference, and upon the finding of the good and sufficient consideration therefor as set forth therein, is hereby approved in every respect and shall be binding on the parties thereto in accordance with its terms.

4.      As set forth in the Term Sheet, immediately upon the closing of the Sale (as defined in the Term Sheet and Motion), the Title Company of the Rockies (or any subsequent or replacement title company conducting the Sale) shall directly transfer:

        a.      the confidential Settlement Payment as set forth in the Term Sheet (the "Settlement Payment") to the Secured Parties; and

        b.      $600,000.00 (the "Administrative Expense Payment") to Porter Hedges LLP's IOLTA account in accordance with the Term Sheet.

5.      Upon (i) payment of both the Settlement Payment and the Administrative Expense Payment, (ii) execution of the final Settlement Agreement contemplated under the Term Sheet, (iii) execution of the final HOA Settlement Agreement contemplated under the Term Sheet and payment of the Settlement Payment (as defined in the HOA Settlement Agreement) and (iv) the occurrence of the Settlement Effective Date, Ajax Holdings, LLC shall be deemed to have waived

its claims against the Debtors' estates, including in connection with its provision of debtor in possession financing pursuant to the order at Docket No. 163.

6.      As set forth in the Term Sheet, Computershare is directed and ordered under this Order, to disburse and release the Escrow Property held by Computershare Trust Company, N.A. pursuant to the Escrow Agreement dated as of January 31, 2024 between Chiron AVR LLC and Computershare Trust Company, N.A. (the "AVR Escrow Agreement") to Chiron AVR LLC on July 31, 2024.  This order and direction to Computershare shall expressly survive the termination of the Term Sheet, the final settlement agreement and/or the failure of the Sale Closing Date to occur by the Outside Date.  For the purposes of the AVR Escrow Agreement, this Order shall be deemed a "Final Order" and shall satisfy the conditions to release of the Escrow Property to the Secured Parties.

7.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

8.      Within 5 days of satisfaction of the conditions set forth in paragraph 5 (including the Settlement Closing Date) and following Debtors' counsel's receipt of email confirmation from counsel to the HOA that counsel for the HOA has timely received and recorded with the Recorder of Pitkin County, Colorado the Lien Releases provided for in Paragraph 9 hereof and in Section 5.1 of the HOA Settlement Agreement, the Debtors shall file a notice with the Court attaching a dismissal order in substantially the same form as set forth in **Exhibit 3**, which the Court shall enter dismissing these chapter 11 cases.

15487503

9.      Notwithstanding anything to the contrary in the *Order (A) Authorizing and Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Purchase and Sale Agreement, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* entered at Docket No. 245 (the "Sale Order"), any and all claims, liens or interests of any kind and nature held by the Secured Parties with respect to the HOA Assets are hereby unconditionally released and extinguished and the Secured Parties are hereby directed to take any action and/or file any documents reasonably required to release the Secured Parties' lien on the HOA Assets.

10.     The Title Company of the Rockies (or any subsequent or replacement title company conducting the Sale) can rely on this Order in effectuating the transfers and/or making the disbursements of the Settlement Payment to the Secured Parties and the Administrative Expense Payment described in paragraph 4 and in the Title Company Instructions.  The Souki/Debtor Parties shall (i) irrevocably instruct the Title Company of the Rockies (or any subsequent title company conducting the Sale) to transfer the proceeds of the Sale as described in paragraph 4, (ii) not take any action or omit to take any action to directly or indirectly contravene, prevent, or interfere with the Title Company of the Rockies (or any subsequent title company conducting the Sale) making such disbursements or otherwise complying with the Title Company Instructions and (iii) use best efforts to cause the Title Company of the Rockies (or any subsequent title company conducting the Sale) to make such payments and comply with the Title Company Instructions. The Title Company shall hold the Retraction Notice in escrow and shall only release the Retraction Notice contemporaneously with the disbursement of the Settlement Payment and the Administrative Expense Payment on the Sale Closing Date.

15487503

11.    The Court shall retain jurisdiction to enforce, interpret and implement the terms of this Order as well as to decide any disputes that arise in connection with the Term Sheet, the final settlement agreement and the HOA Settlement Agreement.

Signed:  July 30, 2024

Christopher Lopez
United States Bankruptcy Judge

15487503

# EXHIBIT 1

**SETTLEMENT TERM SHEET**

| | |
|---|---|
| **Description:** | This term sheet (this "Term Sheet") sets forth the principal terms of a settlement (the "Settlement") between the Secured Parties and the Souki/Debtor Parties (each defined below) which shall constitute a global resolution of all claims, liabilities and causes of action arising from the Loan Documents and the Ajax Loans, including in relation to the chapter 11 cases captioned *In re Strudel Holdings, LLC et al.*, Case No. 23-90757 (the "Chapter 11 Cases") and the adversary proceeding captioned *AVR AH LLC et al. v. NineTeen77 Capital Solutions A LP*, et al., Adv. Prop. No. 23-9003 (the "Adversary Proceeding"), each pending in the Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), *Souki, et al. v. Nineteen77 Capital Solutions A LP, et al.*, Case No. 23-cv-7982-JGLC, pending in the United States District Court for the Southern District of New York, *Souki, et al. v. Nineteen77 Capital Solutions A LP, et al.*, pending in the Supreme Court of the State of New York, County of New York (together, the "New York Proceeding"), all appeals related to the foregoing and all claims, obligations and liabilities arising under, in connection with or related to the Loan Documents and the Ajax Loans (each as defined below).<br><br>On and after the Term Sheet Effective Date, the Souki/Debtor Parties and Secured Parties agree to work in good faith to negotiate and execute prior to the Sale Closing Date (as defined below): (i) a definitive settlement agreement among the Souki/Debtor Parties and the Secured Parties consistent with this Term Sheet (the "Settlement Agreement"), (ii) a definitive settlement agreement among the Souki/Debtor Parties, the Secured Parties, the HOA Parties and Aspen Ranch (such agreement substantially in the form of Exhibit A attached hereto, the "HOA Settlement Agreement"), (iii) the form of dismissal order for the Chapter 11 Cases, which shall provide for payment in full of the Debtors' allowed administrative expenses by the Souki/Debtor Parties (except for the HOA Settlement Payment) and waiver of the Ajax Holdings DIP Claim (the "Dismissal Order"), and (iv) all other ancillary documents to effectuate the terms of the Settlement.  The Settlement Agreement, the HOA Settlement Agreement, the Dismissal Order and all other documents shall be in form and substance satisfactory to the Souki/Debtor Parties, the Secured Parties and the other parties to such documents and shall be finalized prior to the Sale Closing Date. |
| **Secured Parties' Loans and Pledge Agreements** | Reference is made to (i) the Loan Agreement, dated as of March 30, 2018 (as amended, supplemented, restated or otherwise modified from time to time, the "2018 Loan Agreement"), among the Borrower, the Lenders party thereto, the Guarantors party thereto and the Administrative Agent; (ii) the Loan Agreement, dated as of April 27, 2017 (as amended, supplemented, restated or otherwise modified from time to time, the "2017 Loan Agreement," and together with the 2018 Loan Agreement, the "Loan Agreements") among the Borrower, the Lenders party thereto, the Guarantors party thereto and the Administrative Agent; (iii) the Pledge Agreement, dated as of March 30, 2018 (the "2018 Pledge Agreement") by Borrower, Charif Souki as Trustee of the Souki Family 2016 Trust effective March 11, 2016, as amended , AVR AH LLC, a Colorado limited liability |

| | |
|---|---|
| | company and Strudel Holdings LLC, a Texas limited liability company (together with Trust and AVR and the Borrower, the "Pledgors"), and the Administrative Agent; (iv) the Pledge Agreement dated as of April 27, 2017 (the "2017 Pledge Agreement," and together with the 2018 Pledge Agreement, the "Pledge Agreements") by the Pledgors and the Administrative Agent; and (v) those certain Bridge Agreements dated as of May 5, 2020 among the Borrower, the Guarantors, the Lenders, and the Administrative Agent (together, the "Bridge Agreements" and, collectively with the Loan Agreements, Pledge Agreements and related ancillary documents as may be amended from time to time, the "Loan Documents").<br><br>The Secured Parties represent that the Secured Obligations due under the Loan Agreements equal to an amount no less than $94,233,949.58 as of July 18, 2024, with interest and costs continuing to accrue (the "Loan Balance"). |
| **Secured Parties** | Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd. (together with Nineteen77 Capital Solutions A LP, "Lenders"), Wilmington Trust National Association (the "Administrative Agent"), and UBS Asset Management (Americas) LLC ("UBS"), Chiron AVR LLC ("Chiron AVR"), Chiron Ajax LLC ("Chiron Ajax", together with the Lenders and the Administrative Agent, the "Secured Parties") along with their respective past, present and/or future: principals, employees, officers, managers, directors, members, investors, partners, limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "Released Secured Parties"). The Released Secured Parties shall include, but not be limited to, the following: Baxter Wasson, Rodrigo Trelles, Jaeho Choi, Randal Johnson, Lilly Kaufmann, Theodore Drury, Dan McNicholas, Michael Staheli, Jeff Rose, Barry Lynch, Alvarez & Marsal, Cordes & Company, CBRE, Inc., Orrick, Herrington & Sutcliffe LLP, Snell & Wilmer, Garfield & Hecht, P.C. and Alston & Bird. |
| **Souki/Debtor Parties** | AVR AH LLC ("AVR"), Strudel Holdings LLC ("Strudel" and together with AVR, the "Debtors"), Karim Souki (Charif's son), Christopher Souki, and Lina Rizzuto, as Trustees (collectively, the "Trustees") of the Souki Family 2016 Trust (the "Trust"), Karim Souki (Charif's brother) in his individual capacity ("Karim Souki"), and Charif Souki in his individual capacity and as equity holder, manager and member of the Debtors and as former Trustee to the Trust ("Charif Souki"), Ajax Holdings LLC ("Ajax Holdings"), the subsidiaries of Ajax Holdings (the "Ajax Subsidiaries", and, together with Ajax Holdings, "Ajax"), Will Herndon individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("Herndon"), Brooke A. Peterson, individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("Peterson") and Karim Souki (Charif's son), individually, ("K. Souki", together with Herndon, the Debtors, the Trust, the Trustees, Charif Souki, Karim Souki, Peterson and Ajax, the "Souki/Debtor Parties"), along with their respective past, present and/or: principals, employees, officers, managers, directors, members, investors, partners, |

| | limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "<u>Released Souki/Debtor Parties</u>").  The Released Souki/Debtor Parties shall include, but not be limited to, Oates, Knezevich, Gardenswartz, Kelly & Ticsay, P.C., Yetter Coleman LLP, Hunton Andrews Kurth LLP, Porter Hedges LLP and Stout Risius Ross, LLC. |
|---|---|
| **HOA Parties** | Aspen Valley Ranch Homeowners Association, Inc. (the "<u>HOA</u>"), Three Dolphins, LLC ("<u>TD</u>"), Beyond the Beach, LLC ("<u>BTB</u>"), Aspen Ranch Acquisition LLC ("<u>Aspen Ranch</u>") along with their respective past, present and/or future: principals, employees, officers, managers, directors, members, investors, partners, limited partners, general partners, representatives, affiliates, subsidiaries, parents, attorneys, agents, advisors, investment bankers, administrators, predecessors, estates, predecessors, successors, agents, heirs, trustees, executors, transferees, members, investors, assigns, insurers, reinsurers and any Person in which they have or had a controlling interest (collectively, the "<u>Released HOA Parties</u>").  For the avoidance of doubt, nothing in this Term Sheet is intended to bind the HOA, TD, BTB or Aspen Ranch and the settlement with such parties will be set forth in the HOA Settlement Agreement. |
| **Ajax Loans** | Reference is made to (i) Promissory Note dated October 12, 2022 between Ajax Holdings LLC, as borrower, and Souki Family 2016 Trust, as lender, along with all ancillary and related documents (the "<u>Trust Loan</u>") and (ii) Promissory Noted dated September 10, 2020 between Ajax Holdings LLC, as borrower, and Karim Souki, as lender ("<u>Karim Loan</u>", together with the Trust Loan and the Karim Loan (as amended, supplemented, restated or otherwise modified from time to time) (the "<u>Ajax Loans</u>"). |
| **Ajax Holdings DIP Claim** | Ajax Holding will expressly waive and release its DIP Claim against the Debtors. |
| **Ajax Property Sale** | |

7/29/2024



| | |
|---|---|
| **Settlement Payment** | ████████, due to the Secured Parties on the Sale Closing Date pursuant to the Title Company Instruction.<br><br>The Settlement Amount shall be confidential and the parties shall move the Bankruptcy Court to maintain the Settlement Amount under seal.  The Settlement Agreement shall contain standard confidentiality provisions with standard carve-outs. |
| **HOA Claim and HOA Settlement Payment** | $458,054<br>The Secured Parties shall pay the HOA's administrative expense claim pursuant to the terms of the HOA Settlement Agreement. |
| **Released Claims** | The releases in the Settlement Agreement will provide that each of the Souki/Debtor Parties and Secured Parties, releases, acquits, and forever discharges the Released Secured Parties and the Released Souki/Debtor Parties, respectively, from any and all obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, claims, counterclaims, cross-claims, rights of setoff, debts, demands, covenants, contracts, premises, agreements, variances, trespasses, damages (including direct, actual, special, indirect, consequential or punitive damages), judgments, extents, executions, liabilities, controversies, costs, expenses, attorneys' fees, losses, suits, actions or causes of action with respect to any matters, causes or things whatsoever, whether known or unknown, whether accrued or not accrued, in law or equity, arising from, related to, and in connection with the Loan Documents, the Loan Balance, the Chapter 11 Cases, the Ajax Loans, the DIP Claim, the Adversary Proceedings, the New York Proceeding and the Sale (the "Released Claims").<br><br>It is the intention of the Released Secured Parties and the Released Souki/Debtor Parties the releases be the broadest form of release of liability permitted by law and is meant to encompass, inter alia, any past, present or future claim, whether known or unknown and accrued or not accrued, |

4141-3803-7841.9

| | |
|---|---|
| | condition or injury, related to the Released Claims, except any claims that may arise out of the breach of the Settlement Agreement.<br><br>The Settlement Agreement will provide that each of the Souki/Debtor Parties and Secured Parties covenants that it shall not encourage, solicit, initiate, institute, commence, file, maintain or otherwise prosecute, or participate in, (including by providing financial support), whether directly or indirectly, or through a third party, any action, lawsuit, cause of action, claim, demand, or legal proceeding any kind to arising out of relating to any of the Released Claims; provided that any of the Released Souki/Debtor Parties or Released Secured Parties may commence an action to enforce the terms of this Settlement Agreement, and that the Settlement Agreement may be pleaded as a defense, counterclaim or crossclaim, and shall be admissible into evidence without any foundation or testimony whatsoever.<br><br>The releases in the HOA Settlement Agreement will be substantially similar. |
| **Term Sheet Effective Date** | This Term Sheet shall become binding on the Souki/Debtor Parties and the Secured Parties upon the time when each of the following has occurred (the "<u>Term Sheet Effective Date</u>"):<br>1) Bankruptcy Court approval of Strudel and AVR's entry into this Term Sheet;<br>2) The Title Company's receipt of the Title Company Instruction and the Title Company acknowledging receipt to the Secured Parties, which shall be satisfactory to the Secured Parties in all regards;<br>3) The Secured Parties' and Debtors' receipt of the purchase and sale agreement for the Sale of the Ajax Property on an attorneys' eyes-only basis as provided in the Protective Order on record in the Adversary Proceeding and the Chapter 11 Cases;<br>4) The Bankruptcy Court's order approving the Debtors' entry into the Term Sheet shall include a final order, Computershare is directed under a "Final Order", to release the Escrow Property held by Computershare Trust Company, N.A. pursuant to the Escrow Agreement dated as of January 31, 2024 between Chiron AVR and Computershare Trust Company, N.A. (the "<u>AVR Escrow Agreement</u>") to Chiron AVR on July 31, 2024, which condition and order is not contingent on the Settlement Closing Date and shall expressly survive the termination of this Term Sheet, the Settlement Agreement and/or the failure of the Sale Closing Date to occur by the Outside Date; and<br>5) Delivery of the Retraction Notice to the Title Company to hold in escrow pursuant to the Bankruptcy Court's order approving this Term Sheet. |
| **Condition to Effectiveness of Releases and the Settlement Closing Date and Post-Settlement Closing Date Condition** | The closing of the settlement contemplated by this Term Sheet and the Releases contemplated hereby shall occur upon the date upon which each of the following has occurred (the "<u>Settlement Closing Date</u>"):<br>1) Due execution and delivery of the Settlement Agreement by each of the parties thereto;<br>2) Due execution and delivery of the HOA Settlement Agreement by each of the parties thereto; |

7/29/2024

| | |
|---|---|
| | 3) Receipt by the Secured Parties of the Settlement Payment; |
| | 4) Receipt by the HOA of the HOA Settlement Payment; |
| | 5) Release of the Retraction Notice by the Title Company; |
| | 6) The Sale Closing Date shall have occurred; |
| | 7) The Debtors or their designees shall have received the Administrative Expense Payment; |
| | 8) Chiron AVR or its designee shall have received the Escrow Property (as defined in the AVR Escrow Agreement); |
| | 9) The Bankruptcy Court shall have entered an order approving this Term Sheet. |
| | If any of the above conditions are not met, the Settlement Closing Date shall be deemed not to have occurred, except with respect to the HOA and the HOA Settlement Payment, all payments shall be returned to the party that made such payment, and all parties shall be reinstated as if the settlement had never occurred. |
| | Within five (5) business days of the Settlement Closing Date and satisfaction of each of the conditions thereto, the Debtors shall file the Dismissal Order with the Court. |
| **Agreements Between the Term Sheet Effective Date and the Settlement Closing Date** | The Souki/Debtor Parties and the Secured Parties agree to the following: |
| | 1) the Secured Parties shall (i) support the sale to the buyer and (ii) for the purposes of the Sale, to become effective contemporaneously with closing, confirm that Will Herndon is duly authorized to execute and deliver the applicable transaction documents, in each case subject to the Title Company Instruction, this Term Sheet, the Bankruptcy Court's order approving this Term Sheet and the Settlement Agreement; |
| | 2) the Souki/Debtor Parties will include Doug Brickley, the Debtors' Chief Restructuring Officer, and counsel to the Debtors in all material written and oral communications relating to the Sale, including, without limitation, any closing calls; |
| | 3) the Debtors shall have the right to review and consent to all documents related to the Sale, including any amendments to the purchase agreement, which consent shall not be unreasonably withheld; |
| | 4) Ajax shall keep the Secured Parties and the Debtors informed of the status of Sale and the anticipated Sale Closing Date and promptly notify the Secured Parties and the Debtors of any material developments with respect to the Sale; |
| | 5) so long as the Title Company Instruction remains irrevocable and in full force and effect and Doug Brickley is included in all material written and oral communications regarding the Sale and the Souki/Debtor Parties are in compliance with all of their obligations in this Term Sheet, the Secured Parties will not contact the proposed purchaser of the Ajax Properties or the lender of the proposed purchaser without the participation of a representative of the Souki/Debtor Parties with respect to the Sale or the Ajax Properties, provided, that, if the proposed purchaser contacts the Secured Parties with respect to the Sale or the Ajax Properties, the Secured Parties may communicate with the proposed purchaser or lender for |

| | |
|---|---|
| | the limited purpose of informing the proposed purchaser or lender that the Souki/Debtor Parties must be included in any communications; provided, further, that nothing contained herein shall limit the Secured Parties from communications with the proposed purchaser, the Title Company and/or the lender of the proposed purchaser if requested and expressly authorized by the Ajax Subsidiaries or their counsel and the Secured Parties shall have no liability to any of the Souki/Debtor Parties in connection with such communications made at request of the Souki/Debtor Parties; <br><br> 6) the Secured Parties and Souki/Debtor Parties will each use commercially reasonable efforts to negotiate and agree to the HOA Settlement Agreement with the Released HOA Parties; <br><br> 7) the Secured Parties will cooperate with the Souki/Debtor Parties in good faith to consummate the Sale |
| **Failure of Settlement Closing Date to Occur** | If the Settlement Closing Date fails to occur before the Outside Time, then: <br><br> 1) the Bankruptcy Court will hold a hearing on the Secured Parties Motion for Entry of a Judgment on August 6, 2024; <br><br> 2) for the avoidance of doubt, the notices delivered to Souki/Debtor Parties on July 10, 2024, with respect to Ajax Holdings shall remain in full force and effect and the Retraction Notice shall be deemed automatically rescinded and of no force and effect and the notices delivered to the Souki/Debtors Parties on July 10, 2024 shall be automatically reinstated, provided, that all rights of the Souki/Debtor Parties to object to such notices is expressly reserved; and <br><br> 3) this Term Sheet, the Settlement Agreement and any other document executed in connection herewith shall terminate and be deemed null and void and of no force and  each party shall be relieved of any further obligations to perform thereunder effect except for agreements that expressly survive this Term Sheet and/or the Settlement Agreement. |
| **Amendments** | This Term Sheet may be amended or waived with the written consent of each Souki/Debtor Party and Secured Party, provided, that the Souki/Debtor Parties and the Secured Parties shall not amend or waive any provision relating to the settlement with the HOA without the prior consent of the HOA Parties. |
| **Expenses:** | Each party shall be responsible for its own expenses in connection with the Settlement. |
| **Governing Law:** | New York. |

# EXHIBIT 2

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "**Settlement Agreement**") is made and entered into this [●] day of [●], 2024 by and among:

1) Aspen Valley Ranch Homeowners Association, Inc. (the "**HOA**");

2) Beyond the Beach, LLC ("**BTB**");

3) Chiron AVR LLC ("**Buyer**"), UBS O'Connor LLC and UBS Asset Management (Americas) LLC (collectively, "**UBS**"), Wilmington Trust National Association ("**WT**"), Nineteen77 Capital Solutions A LP ("**NCS**"), and Bermudez Mutuari, Ltd. ("**BML**" together with the Buyer, UBS, WT, and NCS, the "**Secured Parties**");

4) Aspen Ranch Acquisition LLC ("**Aspen Ranch**");

5) AVR AH LLC ("**AVR**") and Strudel Holdings LLC ("**Strudel**," together with AVR, the "**Debtors**"; and

6) Karim Souki, Christopher Souki, and Lina Rizzuto, as Trustees (the "**Trustees**") of the Souki Family 2016 Trust (the "**Trust**"), Charif Souki in his individual capacity or otherwise ("**Charif Souki**"), Chistopher Souki in his individual capacity or otherwise ("**Christopher Souki**"), Ajax Holdings LLC ("**Ajax Holdings**"), any and all of the subsidiaries of Ajax Holdings (the "**Ajax Subsidiaries**", and, together with Ajax Holdings, "**Ajax**"), Will Herndon individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("**Herndon**"), Brooke A. Peterson, individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("**Peterson**") and Karim Souki, individually ("**Karim Souki**", and together with Herndon, Peterson, the Trust, the Trustees, Charif Souki, Christopher Souki, and Ajax, the "**Souki Affiliates**"). As used herein "**Souki/Debtor Parties**" shall mean and refer collectively to the Souki Affiliates and the Debtors.

Each of the HOA, BTB, Aspen Ranch, the Secured Parties, the Souki Affiliates and the Souki/Debtor Parties, may be referred to as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.     **WHEREAS**, on July 27, 2023 (the "**Petition Date**"), the Debtors, commenced cases under Chapter 11 of title 11 U.S. Code §§ 101, *et. seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") under the caption *In re Strudel Holdings LLC*, Chapter 11 Case No. 23-90757 (Jointly Administered) (the "**Bankruptcy Cases**").

B.     **WHEREAS**, prior to the Petition Date, AVR owned and developed 813 acres of certain real property and other related property located in Pitkin County, Colorado commonly

referred to as the Aspen Valley Ranch (the "**Ranch**"); the Ranch initially consisted of 22 parcels of land (consisting of the HOA Parcels and the Homesteads, as such terms are defined below). In connection with the development of the Ranch, the Souki/Debtor Parties created the HOA and caused to be contributed certain assets thereto, and: (a) on August 20, 2021, AVR caused the *Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch* (the "**CC&Rs**") and other related documents to be recorded with the Pitkin County Colorado Recorder (the "**Recorder**"); and (b) on August 20, 2021, AVR executed a *Bill of Sale* and a *Bargain & Sale Deed*, in favor of the HOA, each of which was subsequently recorded with the Recorder, and addressed an aggregate of 11 parcels of developed and undeveloped land within the Ranch (collectively, referred to as the "**HOA Parcels**"). The CC&Rs and all other documents related to the Ranch are collectively referred to as the "**HOA Documents**." The remaining 11 parcels (the "**Homesteads**") were intended to be sold by the Souki/Debtor Parties.

C.  **WHEREAS**, prior and subsequent to the Petition Date, the Souki/Debtor Parties transferred certain real and personal property and monetary payments to the HOA (collectively with any other transfers to or for the benefit of the HOA by the Souki/Debtor Parties, the "**HOA Transfers**"), including the HOA Assets (as such term is defined in the Sale Order, as defined below).

D.  **WHEREAS**, the HOA alleges that, prior to the Petition Date, the Souki/Debtor Parties failed to satisfy certain amounts due to the HOA with respect to the 8 Homesteads (the "**Debtor Parcels**") owned by AVR totaling approximately $789,199.98 (all such outstanding amounts, the "**Unpaid Prepetition HOA Obligations**").

E.  **WHEREAS**, after the Petition Date, the HOA alleges that the Souki/Debtor Parties failed to pay approximately $458,054 of such postpetition obligations due to the HOA (all such outstanding amounts, the "**Unpaid Postpetition HOA Obligations**," together with the Unpaid Prepetition HOA Obligations, the "**Unpaid HOA Obligations**").

F.  **WHEREAS**, during the Bankruptcy Case, Buyer and AVR entered into a purchase agreement (the "**Purchase Agreement**") for the Debtor Parcels pursuant to section 363 of the Bankruptcy Code, which was approved by the Bankruptcy Court's *Order (A) Authorizing and Approving the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, etc.* [Docket No. 245] (the "**Sale Order**"). AVR closed the purchase and sale of the Debtor Parcels to Buyer pursuant to the Purchase Agreement on January 31, 2024 (the "**Closing**").

G.  **WHEREAS,** on June 21, 2024, Buyer, as seller, sold the Debtor Parcels to Aspen Ranch, as buyer.

H.  **WHEREAS**, there are disputes and Claims (as defined below) among the Parties, including, but not limited to, Claims (i) for avoidance actions and breach of contract, (ii) related to the Bankruptcy Cases, the Sale Order, the Ranch, the HOA, the HOA Parcels, the HOA Documents, the HOA Transfers, the Unpaid HOA Obligations, the Souki Affiliates, and Debtors Parties' other obligations during the Bankruptcy Cases, (iii) the Buyer Parties' purchase of the Debtor Parcels, and (iv) the Secured Parties' lien on the

HOA Assets (as such term is defined in the Sale Order) (collectively, "**Ranch Related Claims**").

I.      **WHEREAS**, on July [●], 2024, the Bankruptcy Court entered an Order [Docket No. [●]] (the "**Settlement Order**"), approving the *Debtors' Emergency Motion to Approve Settlement Term Sheet and Dismissal of Chapter 11 Cases* [Docket No. 486].

J.      **WHEREAS**, as provided in the Settlement Order and the Term Sheet (as defined in the Settlement Order), the Parties to the Term Sheet agreed to settle the Ranch Related Claims, exchange mutual releases with respect to the Ranch Related Claims and enter into the HOA Settlement Agreement (as defined in the Term Sheet). This Settlement Agreement shall constitute the HOA Settlement Agreement under the Term Sheet.

K.      **WHEREAS**, without conceding the merit or lack of merit of the Ranch Related Claims or any other claim or defense or the existence of any liability whatsoever, the Parties wish to settle, compromise, and finally resolve all matters, disputes and Claims, including those which might have been the subject matter of potential litigation, among each of (i) the HOA Parties (as defined below) and the BTB Parties (as defined below), (ii) the Buyer Parties (as defined below), (iii) the Debtor Parties (as defined below), and (iv) the Souki Parties (as defined below), as set forth herein.

L.      **NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Settlement Agreement, and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1.0    DEFINITIONS

1.1    "**BTB Parties**" means Beyond the Beach, LLC along with its past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.2    "**Buyer Parties**" means each of the Secured Parties and Aspen Ranch, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.3    "**Claims**" means each Ranch Related Claims and any and all past, present and future claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, interests, debts, expenses, charges, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and

controversies of any kind, nature and description whatsoever, (i) whether disclosed or undisclosed, known or unknown, accrued or unaccrued, matured or not matured, perfected or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened; and (ii) whether at law or equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory (including, but not limited to, claims sounding in tort or contract or arising under federal or state securities laws), no matter how asserted.

1.4 "**Debtor Parties**" means each of the Debtors, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.5 "**HOA Parties**" means Aspen Valley Ranch Homeowners Association, Inc. along with their past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.6 "**Person**" means an individual, corporate entity, partnership, association, joint stock company, limited liability company, estate, trust, government entity (or any political subdivision or agency thereof) and any other type of business or legal entity.

1.7 "**Released Claims**" means any and all Claims released pursuant to Section 4, Section 5, Section 6 or Section 7 of this Settlement Agreement.

1.8 "**Souki Parties**" means the Souki Affiliates along with each of their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.9 **Terms defined in the Recitals.** All terms defined in the foregoing Recitals shall apply throughout this Settlement Agreement.

2.0 **PAYMENTS AND CONSIDERATION**

2.1    In consideration of the promises and releases set forth herein, Buyer shall pay to the HOA, *via* wire transfer, within one (1) Business Day of the events in (1) and (4) of the definition of "Settlement Date" (provided in Section 8 below) occurring, the sum of $458,054, in indefeasible funds (the "**Settlement Payment**").

2.2    The Parties hereby acknowledge the sufficiency of promises, mutual covenants and the consideration paid, given and referenced herein.

**3.0    TRANSACTION APPROVAL PROCESS AND USE OF PROCEEDS**

3.1    Each Party acknowledges and agrees that each other Party has an interest in this Settlement Agreement and each Party's interest has been disclosed to each other Party. Notwithstanding each Party's interest, each Party acknowledges and agrees that this Settlement Agreement, the releases granted herein are, when taken as a whole, in the best interests of each Party. Each Party hereby waives, to the maximum extent permitted by law governing the HOA, any claim against any other Party arising from its interest or any claim that this Settlement Agreement is invalid as a result thereof.

3.2    Aspen Ranch, the HOA, and BTB agree that: (1) the Settlement Payment shall be deposited into the HOA's Capital Improvement Reserve Account (the "**Capital Improvement Account**"); (2) the funds in the Capital Improvement Account, inclusive of the funds currently therein and the Settlement Payment, will be used, to the extent necessary, for the following capital improvements (together, the "**Current Capital Improvements**") to the HOA's property: (a) repair and capping of the stone work within the portion of the Ranch maintained by the HOA; (b) repair of the pool water supply line leak and associated stone/cement work; and (c) to the extent funds in the Capital Improvement Account are not needed for the Current Capital Improvements, such remaining funds will remain in the Capital Improvement Account, will be augmented by funds deposited into the Capital Improvement Account, from time to time pursuant to the HOA Documents, and will be utilized solely for future capital improvements to, repair of, and maintenance of the HOA's property. The approval of this Settlement Agreement pursuant to the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association, Inc. constitutes the approval of the agreements set forth in this Section 3.2, and no further approval is required, and the HOA, including its operating manager(s), are authorized and directed to undertake the Current Capital Improvements following receipt of the Settlement Payment.

**4.0    RELEASE BY THE DEBTORS, HOA, AND BTB IN FAVOR OF THE BUYER PARTIES**

In exchange for the Settlement Payment, the Lien Releases (defined below) on the HOA Assets (as defined in the Sale Order) and the other agreements set forth herein, each and every one of the Debtor Parties, HOA Parties, and BTB Parties shall, upon the Settlement Date have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the Buyer Parties from any and all Claims that the Debtor Parties, HOA Parties, and BTB Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of

any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any release by any HOA Parties and/or BTB Parties on matters related to Aspen Ranch's ownership of the Debtor Parcels, Aspen Ranch's obligations under the HOA Documents, Aspen Ranch's obligations as an HOA Member (as defined in the HOA Documents), Aspen Ranch's management, control and/or involvement in the HOA, as, *inter alia*, a member(s), or their designation or appointment of member(s) of the Board of Directors of the HOA, or any Claims or actions to enforce this Settlement Agreement, arising on or after June 21, 2024 (the date on which Aspen Ranch purchased the Debtor Parcels from the Buyer).

**5.0    RELEASE BY THE BUYER PARTIES OF THEIR CLAIMS AGAINST THE HOA ASSETS, THE HOA PARTIES AND THE BTB PARTIES**

**5.1**     Notwithstanding the Sale Order, and without limiting the release of the lien on the HOA Assets as set forth in the Settlement Order, in exchange for the release granted to the Buyer Parties, no later than the fifth business day after the entry of the Settlement Order on the Bankruptcy Court's Docket, the Secured Parties shall deliver, in recordable form, to counsel for the HOA, the documents reasonably necessary in the sole reasonable discretion of counsel for the HOA, to release any and all liens, deeds of trust, claims, security interests, encumbrances and interests of any kind and nature against the HOA Assets (as defined in Sale Order) (the "**Lien Releases**").  The Secured Parties and/or the Buyer, as applicable, agree to take all actions reasonably requested by the HOA to cause the Lien Releases on the HOA Assets.  For the avoidance of doubt, nothing contained herein shall be deemed a release by Buyer Parties of any other Claims held by Buyer Parties against the Souki Parties or any affiliates or insiders of the Souki Parties.  Further, for avoidance of doubt, for all purposes herein, the HOA Parties and the BTB Parties are not, and shall not be asserted or deemed to be, an affiliate or insider of the Debtor Parties or the Souki Parties.

**5.2**     In exchange for the release in Section 4.0 and the other agreements set forth herein, each and every one of the Buyer Parties shall, upon the Settlement Date, have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the HOA Parties and BTB Parties from any and all Claims that the Buyer Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any release by Aspen Ranch of the HOA, arising on or after  June 21, 2024, on matters related to the management and control of the HOA or any Claims or actions to enforce this Settlement Agreement.

**6.0    RELEASE AMONG THE SOUKI PARTIES, THE DEBTOR PARTIES, THE HOA PARTIES, AND THE BTB PARTIES.**

In exchange for the mutual releases provided herein, each of (x) the HOA Parties and BTB Parties, on the one hand, and (y) the Souki Parties and the Debtor Parties, on the other, shall be effective upon the Settlement Date have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each other from any and all Claims that the HOA Parties, BTB Parties, Debtor Parties and/or Souki Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, including, without limitation, Claims that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any Claims or actions to enforce this Settlement Agreement.

**7.0    RELEASE OF UNKNOWN CLAIMS**

Each Party acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that inclusion of the provisions of this Section 7.0 in this Settlement Agreement was a material and separately bargained for element of this Agreement.  The Parties agree that California law is not applicable to this Settlement Agreement, and do not consent to the jurisdiction of a California court nor the application of California law to adjudicate any disputes under this Settlement Agreement.  Rather, and as reflected in Section 12.0 below, the Parties have agreed that this Settlement Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to conflicts of law principles.

**8.0    SETTLEMENT DATE**

The releases and agreements set forth in Sections 4, 5, 6 and 7 of this Settlement Agreement shall become binding and effective the first business day following the satisfaction of all of the following conditions: (1) execution of this Settlement Agreement by each of the Parties hereto; (2) the receipt of the Settlement Payment by the HOA; (3) the Bankruptcy Court's entry of the Settlement Order and (4) execution of the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association (the occurrence of each of (1), (2), (3) and  (4) shall be the "**Settlement Date**").

**9.0    REPRESENTATIONS AND WARRANTIES**

Each Party represents and warrants, to the best of their knowledge and belief, as of the Execution Date and the Settlement Date that:

(i)    It has the full legal authority, right, and capacity to enter into this Settlement Agreement on its behalf and to bind the Party to perform its obligations hereunder, including any third-party authorization necessary to release the claims being released hereunder. This Settlement Agreement has been duly and validly executed and delivered by such Party and, assuming due authorization, execution and delivery by the other Party, constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies.

(ii)    The execution and delivery of this Settlement Agreement, the performance by such Party of its obligations hereunder and the consummation of the transactions contemplated hereby, will not: (a) result in the violation by such Party of any statute, law, rule, regulation or ordinance or any judgment, decree, order, writ, permit or license of any governmental or regulatory authority applicable to such Party; or (b) require such Party to obtain any consent, approval or action of, make any filing with or give any notice to any person, which action has not already been undertaken and accomplished by such Party;

(iii)    It has not assigned, subrogated, pledged, loaned, hypothecated, conveyed or otherwise transferred, voluntarily or involuntarily, to any other person or entity, its respective Released Claims, or any interest in or part or portion thereof, specifically including any rights arising out of its respective Released Claims; and

(iv)    It has read and understands this Settlement Agreement and it has consulted with its attorneys before signing it.

**10.0    COVENANTS**

In further consideration of the promises set forth herein, as of the Settlement Date:

**10.1**    Each of the Parties covenants that it shall not encourage, solicit, initiate, institute, commence, file, maintain or otherwise prosecute, whether directly or indirectly, or through a third party, any action, lawsuit, cause of action, claim, demand, or legal proceeding any kind to arising out of relating to any of the Released Claims. Notwithstanding anything herein to the contrary, each of the Parties may commence an action to enforce the terms of this Settlement Agreement, and each of the Parties covenants and agrees that this Settlement Agreement may be pleaded as a defense, counterclaim or crossclaim, and shall be admissible into evidence without any foundation or testimony whatsoever.

**10.2**    Each of the Parties agree that they and each of them will not: (a) object to, or otherwise oppose in any way, or encourage, induce, direct, endorse or otherwise support or aid in any way whatsoever any person or entity to object to, oppose, impede, modify, or otherwise

challenge or contest the Settlement Order, including as it relates to this Settlement Agreement; and (b) will not seek, aid, encourage, endorse, direct, suggest to, or otherwise support any person or entity to seek to set aside, avoid or otherwise challenge in any way the Settlement Order and this Settlement Agreement (including the enforceability thereof) or otherwise allege that the Settlement Order, and this Settlement Agreement are in, in whole or in part, any way invalid, entered into without fair and reasonable consideration, a fraudulent transfer, or otherwise seek to void or challenge the terms or recitals of the Settlement Order and this Settlement Agreement.

## 11.0   ATTORNEYS' FEES AND LIENS

Each Party hereto shall bear all attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement and the matters and documents referred to herein.

## 12.0   GOVERNING LAW

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of New York without regard to choice of law or conflicts of law principles.

## 13.0   CONSENT TO JURISDICTION

Any disputes relating to this Settlement Agreement shall be brought exclusively in the Bankruptcy Court. All Parties submit to the personal jurisdiction of the Bankruptcy Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.  The Parties otherwise expressly reserve their jurisdictional rights as to any action, suit or proceeding not involving a dispute relating to this Settlement Agreement.

## 14.0   ADDITIONAL DOCUMENTS

The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.  Upon execution of the Settlement Agreement, the Parties agree to support any request by the Debtors to dismiss the Bankruptcy Case.

## 15.0   ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Settlement Agreement constitutes the entire agreement to settle and resolve the Released Claims released by this Settlement Agreement among the Parties and overrides and replaces all prior negotiations and terms proposed, discussed, or agreed to, whether in writing or orally, about the subject matter. No modification of this Settlement Agreement

shall be valid unless it is in writing, identified as an amendment to the Settlement Agreement, and signed by all Parties.

**16.0   NON-ADMISSION OF LIABILITY**

The Parties hereto recognize and agree that this Settlement Agreement is a compromise of a disputed claim. Nothing in this Settlement Agreement or the compromise reached shall be construed as an admission of liability or wrongdoing by any persons or Party as to any claims made.

**17.0   RELEASE CONFIDENTIAL AND INADMISSIBLE**

Other than the permissible disclosures described in Section 16.1 above, the Parties will not voluntarily issue or make any statement to any person or entity including, but not limited to, statements to news media, concerning the terms of this Settlement Agreement, including all facts, circumstances, statements, and documents relating thereto.  Furthermore, the terms of this Settlement Agreement shall not be admissible or submitted as evidence in any proceeding in any forum for any purpose other than in a proceeding to secure enforcement of the terms and conditions of this Settlement Agreement, the Settlement Order, or except as otherwise provided herein.  In any proceeding to enforce the terms of this Settlement Agreement, the Settlement Agreement may be introduced only under seal so as to maintain the confidentiality contemplated herein.

**18.0   COUNTERPARTS**

This Settlement Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute one agreement.

**19.0   HEADINGS**

The headings to the various clauses of this Settlement Agreement have been inserted for convenience only and shall not be used to interpret or construe the meaning of the terms and provisions hereof.

**20.0   NOTIFICATION REQUIRED BY THIS AGREEMENT**

Nothing herein shall prevent the Parties from producing information, documents, or testimony as requested or required by any court or other governmental body, including but not limited to responding to a court order, subpoena, discovery, or other legal process requesting information.  If any Party receives a court order, subpoena, discovery, or other legal process requiring disclosure of this Settlement Agreement or any drafts hereof; matters relating to the events precipitating this Settlement Agreement; the content of the Settlement Agreement (other than as may be permitted by Section 15.1 hereof), including the amount of the settlement and the terms of the Settlement Agreement; any of the discussions pertaining to the Settlement Agreement; and/or any matter covered by this Settlement Agreement, that Party shall immediately provide the other Party with a copy of the court order, subpoena, or other legal process to allow the other Party time to formally

object prior to the provision of testimony, production of documents or information, or participation in any other manner in any such proceeding (the "Notification Requirement"). The Notification Requirement does not apply to the extent that it would violate any applicable law and also does not apply to any subpoena, discovery, legal process, or other demands made by any regulatory, governmental, or law enforcement agency.

## 21.0   WAIVER OF TERMS

No waiver of any provision of this Settlement Agreement shall be valid unless in writing and signed by the Party against whom it is sought to be enforced.  The failure of any Party at any time to insist upon strict performance of any condition, promise, agreement or understanding set forth herein, shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

## 22.0   SEVERABILITY

If any provision, term or clause of this Settlement Agreement is declared illegal, unenforceable, or ineffective in any legal forum, said provision, term or clause shall be deemed severable, such that all other provisions, terms and clauses of this Settlement Agreement shall remain valid and binding upon all Parties.  Should a new agreement without the unenforceable provision be required, the Parties will execute such new agreement without any additional consideration.

## 23.0   SURVIVAL OF TERMS OF AGREEMENT

The Parties understand and agree that the terms set out in this Settlement Agreement, shall survive the signing of this Settlement Agreement and the payment of the Settlement Payment.

## 24.0   REPRESENTATION AND VOLUNTARY EXECUTION

Each Party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement.  Each Party has been fully advised with respect to all rights which are affected by this Settlement Agreement. Each Party represents and warrants that it read, knows, and understands the contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily and free from coercion, and has not been influenced by any statements, promises, actions, or representations made by any other party or its agents, representatives, or attorneys, except as specifically memorialized in this Settlement Agreement.

## 25.0   NOTICES

Notices required by this Settlement Agreement shall be communicated by email and any form of overnight mail or in person to:

(i)        On behalf of Aspen Valley Ranch Homeowners Association, Inc.:

Aspen Valley Ranch Homeowners Association, Inc.
Charles Andros, President
c/o Bay Point Advisors
3050 Peachtree Road NW
Suite 740
Atlanta, GA 30305

Ben Johnston, Esq.
Johnston Van Arsdale Martin PLLC
901 Grand Avenue, Suite 201
Glenwood Springs, CO 81601
 E-mail: ben@jvamlaw.com

(iii)    On behalf of Beyond the Beach, LLC:

Pachulski Stang Ziehl & Jones, LLP
700 Louisiana Street, Suite 4500
Houston, TX 77002
Attn: Michael D. Warner
E-mail: mwarner@pszjlaw.com

(iv)    On behalf of Buyer Parties:

UBS Asset Management (Americas) LLC
One North Wacker Dr., Floor 31
Chicago, IL 60606
Attn: Randal Johnson, Lilly Kaufmann, and Connor Burke
E-mail: randal.johnson@ubs.com; lilly.kaufmann@ubs.com;
connor.burke@ubs.com

Alston & Bird LLP
2200 Ross Avenue
Dallas, TX 75201
Attn: Sam Bragg, William Hao, and Chris Riley
E-mail: Sam.Bragg@alston.com; William.Hao@alston.com;
Chris.Riley@alston.com

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Attn: Laura Metzger
E-mail: lmetzger@orrick.com

(v)    On behalf of the Souki Affiliates

Hunton Andrews Kurth LLP
600 Travis, Suite 4200

Houston, Texas 77018
Attn:  Tad Davidson
E-mail: taddavidson@huntonak.com

## *[SIGNATURE PAGE FOLLOWS]*

## 27.0   SIGNATURES

**IN WITNESS WHEREOF** the Parties or their duly authorized representatives have caused this Settlement Agreement to be executed.

|                      | **Aspen Valley Ranch Homeowners Association, Inc.** |
|----------------------|-----------------------------------------------------|

DATED:

By: _____
Name: [ ]
Title: [ ]


**Beyond the Beach, LLC**

DATED:

By: _____
Name: Seth Brufsky
Title: Manager

**Chiron AVR LLC**

**By: UBS Asset Management (Americas) LLC, as investment manager**

DATED: _____    By: _____
Name:
Title:

DATED: _____    By: _____
Name:
Title:

**Nineteen77 Capital Solutions A LP**
DATED: _____    **By: UBS Asset Management (Americas) LLC**

By: _____
Name:
Title:

By: _____
DATED: _____    Name:
Title:

**Bermudez Mutuari, Ltd.**

**By: UBS Asset Management (Americas) LLC, as investment manager**
DATED: _____    By: _____
Name:
Title:

DATED: _____    By: _____
Name:
Title:

**Wilmington Trust National Association**

DATED: _____    By: _____
Name:
Title:

**AVR AH LLC**

DATED:                        By: _____
                                      Name:
                                      Title:

**Strudel Holdings LLC**

DATED:                        By: _____
                                        Name:
                                      Title:

DATED: _____, 2024          **Souki Family 2016 Trust**

By: _____
Name: Karim Souki
Title: Trustee


By: _____
Name: Christopher Souki
Title: Trustee


By: _____
Name: Lina Rizzuto
Title: Trustee


DATED: _____, 2024          _____
                                        Karim Souki


DATED: _____. 2024          _____
                                        Christopher Souki

DATED: _____, 2024          **Ajax Holdings LLC and the subsidiaries thereof**

                                          By: _____
                                          Name: Will Herndon
                                          Title: Trustee


DATED: _____, 2024          _____

                                          Will Herndon


DATED: _____, 2024          _____

                                          Brooke A. Peterson


4133-7208-9424.15

DATED: _____, 2024

_____
Charif Souki

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **STRUDEL HOLDINGS LLC and** | § | Case No. 23-90757 (CML) |
| **AVR AH LLC,** | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

<u>**ORDER DISMISSING CHAPTER 11 CASES**</u>
[Relates to Docket No. \_\_\_\_]

Based upon the certification by the Debtors that the Settlement Effective Date has occurred in accordance with this Court's Order at Docket No. _____, it is hereby ORDERED that:

1.    Case No. 23-90757 and Case No. 23-90758 are hereby DISMISSED.

2.    Porter Hedges LLP and Stout Risius Ross, LLC ("Stout") are immediately authorized to (i) satisfy outstanding United States Trustee fees (if any) from the Administrative Expense Payment (as defined in the Order at Docket No. \_\_\_\_) and (ii) apply all funds currently held in their respective trust accounts, retainers and the remaining proceeds of the Administrative Expense Payment to satisfy their accrued and outstanding fees and expenses that have been previously approved for payment pursuant to interim fee applications and/or fee statements that have been previously filed in these cases. All prior interim fee applications and fee statements finally approved and the Debtors' professionals shall not be required to file final fee applications. For fees and expenses incurred after June 30, 2024, the Debtors' professionals shall file fee statements in accordance with the Interim Compensation Order at Docket No. 142 and such

---

1    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  AVR AH LLC (0148) and Strudel Holdings LLC (5426).  The Debtors' service address is:  PO Box 4068, Aspen, CO 81612.

15487503v1

amounts may be paid, from the Administrative Expense Payment, after applicable objection deadlines have run and shall be deemed allowed on a final basis with no need to file any further fee applications.  Porter Hedges LLP and Stout are discharged from their retention with the Debtors.

3.    Notwithstanding anything to the contrary, including, without limitation, section 349 of the Bankruptcy Code, all prior orders, releases, stipulations, settlements, rulings, orders and judgments of this Court made during the course of the Bankruptcy Cases shall remain in full force and effect, shall be unaffected by the dismissal of the Bankruptcy Cases, and are specifically preserved for purposes of finality of judgment and res judicata unless expressly amended or overruled by a subsequent stipulation, settlement, order or judgment of this Court, as applicable.

4.    These chapter 11 cases may be re-opened for purposes of enforcing the terms of the Order at Docket No. ____, the Term Sheet, the final settlement agreement contemplated in the Term Sheet and the settlement with the AVR HOA and the Court shall retain jurisdiction to enforce such agreements.  Notwithstanding the dismissal of the Chapter 11 Cases, this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation, interpretation, or enforcement of this or any other Order of this Court entered in the Chapter 11 Cases, including this Order.

**Signed: _____, 2024.**

**HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

2

15487503v1