**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRUDEL HOLDINGS LLC and AVR AH LLC, | ) Case No. 23-90757 (CML) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

**NOTICE OF FILING OF EXECUTED HOA SETTLEMENT AGREEMENT AND**
**PAYMENT OF THE SETTLEMENT PAYMENT**

**PLEASE TAKE NOTICE** that on July 30, 2024, the Court entered the *Order Granting Debtors' Emergency Motion to Approve Settlement Term Sheet and Dismissal of Chapter 11 Cases* [Docket No. 492] (the "Settlement Order").[2] Among other things, the Settlement Order approved the settlement set forth in the HOA Settlement Agreement attached to the Settlement Order as Exhibit 2 thereto.

**PLEASE TAKE FURTHER NOTICE** that on July 31, 2024, the HOA Settlement Agreement was executed by the parties thereto. A fully executed copy of the HOA Settlement Agreement is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that on August 1, 2024, the Settlement Payment required under the HOA Settlement Agreement was received by the HOA.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The location of the Debtors' corporate headquarters and the Debtors' service address is: PO Box 4068, Aspen, CO 81612.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Settlement Order or the HOA Settlement Agreement, as applicable.

**PLEASE TAKE FURTHER NOTICE** attached hereto as **Exhibit 2** is a redline from the executed version of the HOA Settlement Agreement against the version attached to the Settlement Order.

**PLEASE TAKE FURTHER NOTICE** all parties rights are expressly preserved with respect to the Settlement Order and the HOA Settlement Agreement, as more set forth therein.

Dated: August 5, 2024            Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl (TX Bar No. 24038592)
Aaron J. Power (TX Bar No. 24058058)
Michael B. Dearman (TX Bar No. 24116270)
Jordan T. Stevens (TX Bar No. 24106467)
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6248
Email:  jwolfshohl@porterhedges.com
      apower@porterhedges.com
      mdearman@porterhedges.com
      jstevens@porterhedges.com

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2024, a true and correct copy of the above and foregoing was caused to be served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

# EXHIBIT 1

*Execution Version*

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "**Settlement Agreement**") is made and entered into this 31st day of July, 2024 by and among:

1) Aspen Valley Ranch Homeowners Association, Inc. (the "**HOA**");

2) Beyond the Beach, LLC ("**BTB**");

3) Chiron AVR LLC ("**Buyer**"), UBS O'Connor LLC and UBS Asset Management (Americas) LLC (collectively, "**UBS**"), Wilmington Trust National Association, as administrative agent (in such capacity, "**WT**"), Nineteen77 Capital Solutions A LP ("**NCS**"), and Bermudez Mutuari, Ltd. ("**BML**" together with the Buyer, UBS, WT, and NCS, the "**Secured Parties**");

4) Aspen Ranch Acquisition LLC ("**Aspen Ranch**");

5) AVR AH LLC ("**AVR**") and Strudel Holdings LLC ("**Strudel**," together with AVR, the "**Debtors**"; and

6) Karim Souki, Christopher Souki, and Lina Rizzuto, as Trustees (the "**Trustees**") of the Souki Family 2016 Trust (the "**Trust**"), Charif Souki in his individual capacity or otherwise ("**Charif Souki**"), Chistopher Souki in his individual capacity or otherwise ("**Christopher Souki**"), Ajax Holdings LLC ("**Ajax Holdings**"), any and all of the subsidiaries of Ajax Holdings (the "**Ajax Subsidiaries**", and, together with Ajax Holdings, "**Ajax**"), Will Herndon individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("**Herndon**"), and Karim Souki, individually ("**Karim Souki**", and together with Herndon, the Trust, the Trustees, Charif Souki, Christopher Souki, and Ajax, the "**Souki Affiliates**"). As used herein "**Souki/Debtor Parties**" shall mean and refer collectively to the Souki Affiliates and the Debtors.

Each of the HOA, BTB, Aspen Ranch, the Secured Parties, the Souki Affiliates and the Souki/Debtor Parties, may be referred to as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.   **WHEREAS**, on July 27, 2023 (the "**Petition Date**"), the Debtors, commenced cases under Chapter 11 of title 11 U.S. Code §§ 101, *et. seq*. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") under the caption *In re Strudel Holdings LLC*, Chapter 11 Case No. 23-90757 (Jointly Administered) (the "**Bankruptcy Cases**").

B.   **WHEREAS**, prior to the Petition Date, AVR owned and developed 813 acres of certain real property and other related property located in Pitkin County, Colorado commonly referred to as the Aspen Valley Ranch (the "**Ranch**"); the Ranch initially consisted of 22 parcels of land (consisting of the HOA Parcels and the Homesteads, as such terms are defined below). In connection with the development of the Ranch, the Souki/Debtor

Parties created the HOA and caused to be contributed certain assets thereto, and: (a) on August 20, 2021, AVR caused the *Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch* (the "**CC&Rs**") and other related documents to be recorded with the Pitkin County Colorado Recorder (the "**Recorder**"); and (b) on August 20, 2021, AVR executed a *Bill of Sale* and a *Bargain & Sale Deed*, in favor of the HOA, each of which was subsequently recorded with the Recorder, and addressed an aggregate of 11 parcels of developed and undeveloped land within the Ranch (collectively, referred to as the "**HOA Parcels**"). The CC&Rs and all other documents related to the Ranch are collectively referred to as the "**HOA Documents**." The remaining 11 parcels (the "**Homesteads**") were intended to be sold by the Souki/Debtor Parties.

C.   **WHEREAS**, prior and subsequent to the Petition Date, the Souki/Debtor Parties transferred certain real and personal property and monetary payments to the HOA (collectively with any other transfers to or for the benefit of the HOA by the Souki/Debtor Parties, the "**HOA Transfers**"), including the HOA Assets (as such term is defined in the Sale Order, as defined below").

D.   **WHEREAS**, the HOA alleges that, prior to the Petition Date, the Souki/Debtor Parties failed to satisfy certain amounts due to the HOA with respect to the 8 Homesteads (the "**Debtor Parcels**") owned by AVR totaling approximately $789,199.98 (all such outstanding amounts, the "**Unpaid Prepetition HOA Obligations**").

E.   **WHEREAS**, after the Petition Date, the HOA alleges that the Souki/Debtor Parties failed to pay approximately $458,054 of such postpetition obligations due to the HOA (all such outstanding amounts, the "**Unpaid Postpetition HOA Obligations**," together with the Unpaid Prepetition HOA Obligations, the "**Unpaid HOA Obligations**").

F.   **WHEREAS**, during the Bankruptcy Case, Buyer and AVR entered into a purchase agreement (the "**Purchase Agreement**") for the Debtor Parcels pursuant to section 363 of the Bankruptcy Code, which was approved by the Bankruptcy Court's *Order (A) Authorizing and Approving the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, etc.* [Docket No. 245] (the "**Sale Order**"). AVR closed the purchase and sale of the Debtor Parcels to Buyer pursuant to the Purchase Agreement on January 31, 2024 (the "**Closing**").

G.   **WHEREAS,** on June 21, 2024, Buyer, as seller, sold the Debtor Parcels to Aspen Ranch, as buyer.

H.   **WHEREAS**, there are disputes and Claims (as defined below) among the Parties, including, but not limited to, Claims (i) for avoidance actions and breach of contract, (ii) related to the Bankruptcy Cases, the Sale Order, the Ranch, the HOA, the HOA Parcels, the HOA Documents, the HOA Transfers, the Unpaid HOA Obligations, the Souki Affiliates, and Debtors Parties' other obligations during the Bankruptcy Cases, (iii) the Buyer Parties' purchase of the Debtor Parcels, and (iv) the Secured Parties' lien on the HOA Assets (as such term is defined in the Sale Order) (collectively, "**Ranch Related Claims**").

2

I.   **WHEREAS**, on July 30, 2024, the Bankruptcy Court entered an Order [Docket No. 492] (the "**Settlement Order**"), approving the *Debtors' Emergency Motion to Approve Settlement Term Sheet and Dismissal of Chapter 11 Cases* [Docket No. 486].

J.   **WHEREAS**, as provided in the Settlement Order and the Term Sheet (as defined in the Settlement Order), the Parties to the Term Sheet agreed to settle the Ranch Related Claims, exchange mutual releases with respect to the Ranch Related Claims and enter into the HOA Settlement Agreement (as defined in the Term Sheet). This Settlement Agreement shall constitute the HOA Settlement Agreement under the Term Sheet.

K.   **WHEREAS**, without conceding the merit or lack of merit of the Ranch Related Claims or any other claim or defense or the existence of any liability whatsoever, the Parties wish to settle, compromise, and finally resolve all matters, disputes and Claims, including those which might have been the subject matter of potential litigation, among each of (i) the HOA Parties (as defined below) and the BTB Parties (as defined below), (ii) the Buyer Parties (as defined below), (iii) the Debtor Parties (as defined below), and (iv) the Souki Parties (as defined below), as set forth herein.

L.   **NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Settlement Agreement, and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1.0   DEFINITIONS**

1.1   "**BTB Parties**" means Beyond the Beach, LLC along with its past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.2   "**Buyer Parties**" means each of the Secured Parties and Aspen Ranch, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.3   "**Claims**" means each Ranch Related Claims and any and all past, present and future claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, interests, debts, expenses, charges, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature and description whatsoever, (i) whether disclosed or undisclosed, known or unknown, accrued or unaccrued, matured or not matured, perfected

3

or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened; and (ii) whether at law or equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory (including, but not limited to, claims sounding in tort or contract or arising under federal or state securities laws), no matter how asserted.

1.4 "**Debtor Parties**" means each of the Debtors, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.5 "**HOA Parties**" means Aspen Valley Ranch Homeowners Association, Inc. along with their past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.6 "**Person**" means an individual, corporate entity, partnership, association, joint stock company, limited liability company, estate, trust, government entity (or any political subdivision or agency thereof) and any other type of business or legal entity.

1.7 "**Released Claims**" means any and all Claims released pursuant to Section 4, Section 5, Section 6 or Section 7 of this Settlement Agreement.

1.8 "**Souki Parties**" means the Souki Affiliates along with each of their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a Controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.9 **Terms defined in the Recitals.** All terms defined in the foregoing Recitals shall apply throughout this Settlement Agreement.

**2.0 PAYMENTS AND CONSIDERATION**

2.1 In consideration of the promises and releases set forth herein, Buyer shall pay to the HOA, *via* wire transfer, within one (1) Business Day of the events in (1) and (4) of the definition

4

of "Settlement Date" (provided in Section 8 below) occurring, the sum of $458,054, in indefeasible funds (the "**Settlement Payment**").

2.2   The Parties hereby acknowledge the sufficiency of promises, mutual covenants and the consideration paid, given and referenced herein.

**3.0   TRANSACTION APPROVAL PROCESS AND USE OF PROCEEDS**

3.1   Each Party acknowledges and agrees that each other Party has an interest in this Settlement Agreement and each Party's interest has been disclosed to each other Party. Notwithstanding each Party's interest, each Party acknowledges and agrees that this Settlement Agreement, the releases granted herein are, when taken as a whole, in the best interests of each Party.   Each Party hereby waives, to the maximum extent permitted by law governing the HOA, any claim against any other Party arising from its interest or any claim that this Settlement Agreement is invalid as a result thereof.

3.2   Aspen Ranch, the HOA, and BTB agree that: (1) the Settlement Payment shall be deposited into the HOA's Capital Improvement Reserve Account (the "**Capital Improvement Account**"); (2) the funds in the Capital Improvement Account, inclusive of the funds currently therein and the Settlement Payment, will be used, to the extent necessary, for the following capital improvements (together, the "**Current Capital Improvements**") to the HOA's property: (a) repair and capping of the stone work within the portion of the Ranch maintained by the HOA; (b) repair of the pool water supply line leak and associated stone/cement work; and (c) to the extent funds in the Capital Improvement Account are not needed for the Current Capital Improvements, such remaining funds will remain in the Capital Improvement Account, will be augmented by funds deposited into the Capital Improvement Account, from time to time pursuant to the HOA Documents, and will be utilized solely for future capital improvements to, repair of, and maintenance of the HOA's property.  The approval of this Settlement Agreement pursuant to the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association, Inc. constitutes the approval of the agreements set forth in this Section 3.2, and no further approval is required, and the HOA, including its operating manager(s), are authorized and directed to undertake the Current Capital Improvements following receipt of the Settlement Payment.

**4.0   RELEASE BY THE DEBTORS, HOA, AND BTB IN FAVOR OF THE BUYER PARTIES**

In exchange for the Settlement Payment, the Lien Releases (defined below) on the HOA Assets (as defined in the Sale Order) and the other agreements set forth herein, each and every one of the Debtor Parties, HOA Parties, and BTB Parties shall, upon the Settlement Date have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the Buyer Parties from any and all Claims that the Debtor Parties, HOA Parties,  and BTB Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims;

5

(2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any release by any HOA Parties and/or BTB Parties on matters related to Aspen Ranch's ownership of the Debtor Parcels, Aspen Ranch's obligations under the HOA Documents, Aspen Ranch's obligations as an HOA Member (as defined in the HOA Documents), Aspen Ranch's management, control and/or involvement in the HOA, as, *inter alia*, a member(s), or their designation or appointment of member(s) of the Board of Directors of the HOA, or any Claims or actions to enforce this Settlement Agreement, arising on or after June 21, 2024 (the date on which Aspen Ranch purchased the Debtor Parcels from the Buyer).

**5.0   RELEASE BY THE BUYER PARTIES OF THEIR CLAIMS AGAINST THE HOA ASSETS, THE HOA PARTIES AND THE BTB PARTIES**

**5.1**   Notwithstanding the Sale Order, and without limiting the release of the lien on the HOA Assets as set forth in the Settlement Order, in exchange for the release granted to the Buyer Parties, no later than the fifth business day after the entry of the Settlement Order on the Bankruptcy Court's Docket, the Secured Parties shall deliver, in recordable form, to counsel for the HOA, the documents reasonably necessary in the sole reasonable discretion of counsel for the HOA, to release any and all liens, deeds of trust, claims, security interests, encumbrances and interests of any kind and nature against the HOA Assets (as defined in Sale Order) (the "**Lien Releases**").  The Secured Parties and/or the Buyer, as applicable, agree to take all actions reasonably requested by the HOA to cause the Lien Releases on the HOA Assets.  For the avoidance of doubt, nothing contained herein shall be deemed a release by Buyer Parties of any other Claims held by Buyer Parties against the Souki Parties or any affiliates or insiders of the Souki Parties.  Further, for avoidance of doubt, for all purposes herein, the HOA Parties and the BTB Parties are not, and shall not be asserted or deemed to be, an affiliate or insider of the Debtor Parties or the Souki Parties.

**5.2**   In exchange for the release in Section 4.0 and the other agreements set forth herein, each and every one of the Buyer Parties shall, upon the Settlement Date, have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the HOA Parties and BTB Parties from any and all Claims that the Buyer Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any release by Aspen Ranch of the HOA, arising on or after  June 21, 2024, on matters related to the management and control of the HOA or any Claims or actions to enforce this Settlement Agreement.

**6.0   RELEASE AMONG THE SOUKI PARTIES, THE DEBTOR PARTIES, THE HOA PARTIES, AND THE BTB PARTIES.**

In exchange for the mutual releases provided herein, each of (x) the HOA Parties and BTB Parties, on the one hand, and (y) the Souki Parties and the Debtor Parties, on the other,

4133-7208-9424

shall be effective upon the Settlement Date have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each other from any and all Claims that the HOA Parties, BTB Parties, Debtor Parties and/or Souki Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, including, without limitation, Claims that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any Claims or actions to enforce this Settlement Agreement.

**7.0    RELEASE OF UNKNOWN CLAIMS**

Each Party acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that inclusion of the provisions of this Section 7.0 in this Settlement Agreement was a material and separately bargained for element of this Agreement.  The Parties agree that California law is not applicable to this Settlement Agreement, and do not consent to the jurisdiction of a California court nor the application of California law to adjudicate any disputes under this Settlement Agreement.  Rather, and as reflected in Section 12.0 below, the Parties have agreed that this Settlement Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to conflicts of law principles.

**8.0    SETTLEMENT DATE**

The releases and agreements set forth in Sections 4, 5, 6 and 7 of this Settlement Agreement shall become binding and effective the first business day following the satisfaction of all of the following conditions: (1) execution of this Settlement Agreement by each of the Parties hereto; (2) the receipt of the Settlement Payment by the HOA; (3) the Bankruptcy Court's entry of the Settlement Order and (4) execution of the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association (the occurrence of each of (1), (2), (3) and  (4) shall be the "**Settlement Date**").

**9.0    REPRESENTATIONS AND WARRANTIES**

7

Each Party represents and warrants, to the best of their knowledge and belief, as of the Execution Date and the Settlement Date that:

(i)      It has the full legal authority, right, and capacity to enter into this Settlement Agreement on its behalf and to bind the Party to perform its obligations hereunder, including any third-party authorization necessary to release the claims being released hereunder.  This Settlement Agreement has been duly and validly executed and delivered by such Party and, assuming due authorization, execution and delivery by the other Party, constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies.

(ii)     The execution and delivery of this Settlement Agreement, the performance by such Party of its obligations hereunder and the consummation of the transactions contemplated hereby, will not: (a) result in the violation by such Party of any statute, law, rule, regulation or ordinance or any judgment, decree, order, writ, permit or license of any governmental or regulatory authority applicable to such Party; or (b) require such Party to obtain any consent, approval or action of, make any filing with or give any notice to any person, which action has not already been undertaken and accomplished by such Party;

(iii)    It has not assigned, subrogated, pledged, loaned, hypothecated, conveyed or otherwise transferred, voluntarily or involuntarily, to any other person or entity, its respective Released Claims, or any interest in or part or portion thereof, specifically including any rights arising out of its respective Released Claims; and

(iv)     It has read and understands this Settlement Agreement and it has consulted with its attorneys before signing it.

## 10.0   COVENANTS

In further consideration of the promises set forth herein, as of the Settlement Date:

10.1    Each of the Parties covenants that it shall not encourage, solicit, initiate, institute, commence, file, maintain or otherwise prosecute, whether directly or indirectly, or through a third party, any action, lawsuit, cause of action, claim, demand, or legal proceeding any kind to arising out of relating to any of the Released Claims.  Notwithstanding anything herein to the contrary, each of the Parties may commence an action to enforce the terms of this Settlement Agreement, and each of the Parties covenants and agrees that this Settlement Agreement may be pleaded as a defense, counterclaim or crossclaim, and shall be admissible into evidence without any foundation or testimony whatsoever.

10.2    Each of the Parties agree that they and each of them will not: (a) object to, or otherwise oppose in any way, or encourage, induce, direct, endorse or otherwise support or aid in any way whatsoever any person or entity to object to, oppose, impede, modify, or otherwise challenge or contest the Settlement Order, including as it relates to this Settlement Agreement; and (b) will not seek, aid, encourage, endorse, direct, suggest to, or otherwise

8

support any person or entity to seek to set aside, avoid or otherwise challenge in any way the Settlement Order and this Settlement Agreement (including the enforceability thereof) or otherwise allege that the Settlement Order, and this Settlement Agreement are in, in whole or in part, any way invalid, entered into without fair and reasonable consideration, a fraudulent transfer, or otherwise seek to void or challenge the terms or recitals of the Settlement Order and this Settlement Agreement.

## 11.0   ATTORNEYS' FEES AND LIENS

Each Party hereto shall bear all attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement and the matters and documents referred to herein.

## 12.0   GOVERNING LAW

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of New York without regard to choice of law or conflicts of law principles.

## 13.0   CONSENT TO JURISDICTION

Any disputes relating to this Settlement Agreement shall be brought exclusively in the Bankruptcy Court. All Parties submit to the personal jurisdiction of the Bankruptcy Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.  The Parties otherwise expressly reserve their jurisdictional rights as to any action, suit or proceeding not involving a dispute relating to this Settlement Agreement.

## 14.0   ADDITIONAL DOCUMENTS

The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.  Upon execution of the Settlement Agreement, the Parties agree to support any request by the Debtors to dismiss the Bankruptcy Case.

## 15.0   ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Settlement Agreement constitutes the entire agreement to settle and resolve the Released Claims released by this Settlement Agreement among the Parties and overrides and replaces all prior negotiations and terms proposed, discussed, or agreed to, whether in writing or orally, about the subject matter. No modification of this Settlement Agreement shall be valid unless it is in writing, identified as an amendment to the Settlement Agreement, and signed by all Parties.

## 16.0   NON-ADMISSION OF LIABILITY

The Parties hereto recognize and agree that this Settlement Agreement is a compromise of a disputed claim. Nothing in this Settlement Agreement or the compromise reached shall

be construed as an admission of liability or wrongdoing by any persons or Party as to any claims made.

## 17.0   RELEASE CONFIDENTIAL AND INADMISSIBLE

Other than the permissible disclosures described in Section 16.1 above, the Parties will not voluntarily issue or make any statement to any person or entity including, but not limited to, statements to news media, concerning the terms of this Settlement Agreement, including all facts, circumstances, statements, and documents relating thereto.   Furthermore, the terms of this Settlement Agreement shall not be admissible or submitted as evidence in any proceeding in any forum for any purpose other than in a proceeding to secure enforcement of the terms and conditions of this Settlement Agreement, the Settlement Order, or except as otherwise provided herein.   In any proceeding to enforce the terms of this Settlement Agreement, the Settlement Agreement may be introduced only under seal so as to maintain the confidentiality contemplated herein.

## 18.0   COUNTERPARTS

This Settlement Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute one agreement.

## 19.0   HEADINGS

The headings to the various clauses of this Settlement Agreement have been inserted for convenience only and shall not be used to interpret or construe the meaning of the terms and provisions hereof.

## 20.0   NOTIFICATION REQUIRED BY THIS AGREEMENT

Nothing herein shall prevent the Parties from producing information, documents, or testimony as requested or required by any court or other governmental body, including but not limited to responding to a court order, subpoena, discovery, or other legal process requesting information.   If any Party receives a court order, subpoena, discovery, or other legal process requiring disclosure of this Settlement Agreement or any drafts hereof; matters relating to the events precipitating this Settlement Agreement; the content of the Settlement Agreement (other than as may be permitted by Section 15.1 hereof), including the amount of the settlement and the terms of the Settlement Agreement; any of the discussions pertaining to the Settlement Agreement; and/or any matter covered by this Settlement Agreement, that Party shall immediately provide the other Party with a copy of the court order, subpoena, or other legal process to allow the other Party time to formally object prior to the provision of testimony, production of documents or information, or participation in any other manner in any such proceeding (the "Notification Requirement"). The Notification Requirement does not apply to the extent that it would violate any applicable law and also does not apply to any subpoena, discovery, legal process, or other demands made by any regulatory, governmental, or law enforcement agency.

## 21.0   WAIVER OF TERMS

No waiver of any provision of this Settlement Agreement shall be valid unless in writing and signed by the Party against whom it is sought to be enforced. The failure of any Party at any time to insist upon strict performance of any condition, promise, agreement or understanding set forth herein, shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

**22.0   SEVERABILITY**

If any provision, term or clause of this Settlement Agreement is declared illegal, unenforceable, or ineffective in any legal forum, said provision, term or clause shall be deemed severable, such that all other provisions, terms and clauses of this Settlement Agreement shall remain valid and binding upon all Parties. Should a new agreement without the unenforceable provision be required, the Parties will execute such new agreement without any additional consideration.

**23.0   SURVIVAL OF TERMS OF AGREEMENT**

The Parties understand and agree that the terms set out in this Settlement Agreement, shall survive the signing of this Settlement Agreement and the payment of the Settlement Payment.

**24.0   REPRESENTATION AND VOLUNTARY EXECUTION**

Each Party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement. Each Party has been fully advised with respect to all rights which are affected by this Settlement Agreement. Each Party represents and warrants that it read, knows, and understands the contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily and free from coercion, and has not been influenced by any statements, promises, actions, or representations made by any other party or its agents, representatives, or attorneys, except as specifically memorialized in this Settlement Agreement.

**25.0   NOTICES**

Notices required by this Settlement Agreement shall be communicated by email and any form of overnight mail or in person to:

(i)     On behalf of Aspen Valley Ranch Homeowners Association, Inc.:

Aspen Valley Ranch Homeowners Association, Inc.
Charles Andros, President
c/o Bay Point Advisors
3050 Peachtree Road NW
Suite 740
Atlanta, GA 30305

Ben Johnston, Esq.
Johnston Van Arsdale Martin PLLC
901 Grand Avenue, Suite 201
Glenwood Springs, CO 81601
 E-mail: ben@jvamlaw.com

(iii)     On behalf of Beyond the Beach, LLC:

Pachulski Stang Ziehl & Jones, LLP
700 Louisiana Street, Suite 4500
Houston, TX 77002
Attn: Michael D. Warner
E-mail: mwarner@pszjlaw.com

(iv)     On behalf of Buyer Parties:

UBS Asset Management (Americas) LLC
One North Wacker Dr., Floor 31
Chicago, IL 60606
Attn: Randal Johnson, Lilly Kaufmann, and Connor Burke
E-mail: randal.johnson@ubs.com; lilly.kaufmann@ubs.com;
connor.burke@ubs.com

Alston & Bird LLP
2200 Ross Avenue
Dallas, TX 75201
Attn: Sam Bragg, William Hao, and Chris Riley
E-mail: Sam.Bragg@alston.com; William.Hao@alston.com;
Chris.Riley@alston.com

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Attn: Laura Metzger
E-mail: lmetzger@orrick.com

(v)     On behalf of the Souki Affiliates

Hunton Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77018
Attn:  Tad Davidson
E-mail: taddavidson@huntonak.com

*[SIGNATURE PAGE FOLLOWS]*

12

4133-7208-9424

Docusign Envelope ID: C57568BF-E1FB-4C1C-91B0-FAB0B59CDE3E

## 27.0   SIGNATURES

**IN  WITNESS  WHEREOF** the Parties or their duly authorized representatives have caused this Settlement Agreement to be executed.

**Aspen Valley Ranch Homeowners Association, Inc.**

DATED: 7/31/2024 | 11:44 AM EDT

By: *Charles Andros*
AEF31A8C84EB43C...
Name: [ ] Charles Andros
Title: [ ]
                    Manager

**Beyond the Beach, LLC**

DATED:

By: _____
Name: Seth Brufsky
Title: Manager

4133-7208-9424

## 27.0   SIGNATURES

**IN WITNESS WHEREOF** the Parties or their duly authorized representatives have caused this Settlement Agreement to be executed.

**Aspen Valley Ranch Homeowners Association, Inc.**

DATED:

By: _____
Name: [ ]
Title: [ ]

**Beyond the Beach, LLC**

DATED: 07/31/2024

By: *Seth Brufsky*
Seth Brufsky (Jul 31, 2024 09:28 MDT)
Name: Seth Brufsky
Title: Manager

**Chiron AVR LLC**
**By: UBS Asset Management (Americas) LLC, as investment manager**

DATED:       By: _____
Name: Doyle Horn
Title: Director

DATED:       By: _____
Name: Rodrigo Trelles
Title:   Managing Director

**Nineteen77 Capital Solutions A LP**
**By: UBS Asset Management (Americas) LLC**

DATED:       By: _____
Name: Doyle Horn
Title: Director

DATED:       By: _____
Name: Rodrigo Trelles
Title: Managing Director

**Bermudez Mutuari, Ltd.**
**By: UBS Asset Management (Americas) LLC, as investment manager**

DATED:       By: _____
Name: Doyle Horn
Title: Director

DATED:       By: _____
Name: Rodrigo Trelles
Title: Managing Director

**UBS Asset Management (Americas) LLC**

DATED:

By: _____
Name: Doyle Horn
Title: Director

DATES:

By: _____
Name: Rodrigo Trelles
Title: Managing Director

4133-7208-9424

DATED:  07/31/2024

**Wilmington Trust National Association**, as
Administrative Agent

By: _____
Name:  Jeffery Rose
Title:  Vice President

9

**AVR AH LLC**

DATED: July 30, 2024

By: _____
Name: Douglas J. Brickley
Title: Chief Restructuring Officer

**Strudel Holdings LLC**

DATED: July 30, 2024

By: _____
Name: Douglas J. Brickley
Title: Chief Restructuring Officer

4133-7208-9424

DATED: _JULY 31_, 2024

**Souki Family 2016 Trust**

By: _____
Name: Karim Souki
Title: Trustee

By: _____
Name: Christopher Souki
Title: Trustee

By: _____
Name: Lina Rizzuto
Title: Trustee

DATED: _July 31_, 2024

_____
Karim Souki

DATED: _7/31_, 2024

_____
Christopher Souki

4133-7208-9424

DATED: _____ 07/31 _____, 2024

**Ajax Holdings LLC and the subsidiaries thereof**

By: _____
Name: Will Herndon
Title: Manager


DATED: _____ 07/31 _____, 2024

_____
Will Herndon

4133-7208-9424

DATED: July 31 _____, 2024

_____
Charif Souki

# EXHIBIT 2

*Execution Version*

### SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "**Settlement Agreement**") is made and entered into this 31st day of July, 2024 by and among:

1) Aspen Valley Ranch Homeowners Association, Inc. (the "**HOA**");

2) Beyond the Beach, LLC ("**BTB**");

3) Chiron AVR LLC ("**Buyer**"), UBS O'Connor LLC and UBS Asset Management (Americas) LLC (collectively, "**UBS**"), Wilmington Trust National Association, as administrative agent (in such capacity, "**WT**"), Nineteen77 Capital Solutions A LP ("**NCS**"), and Bermudez Mutuari, Ltd. ("**BML**" together with the Buyer, UBS, WT, and NCS, the "**Secured Parties**");

4) Aspen Ranch Acquisition LLC ("**Aspen Ranch**");

5) AVR AH LLC ("**AVR**") and Strudel Holdings LLC ("**Strudel**," together with AVR, the "**Debtors**"); and

6) Karim Souki, Christopher Souki, and Lina Rizzuto, as Trustees (the "**Trustees**") of the Souki Family 2016 Trust (the "**Trust**"), Charif Souki in his individual capacity or otherwise ("**Charif Souki**"), Chistopher Souki in his individual capacity or otherwise ("**Christopher Souki**"), Ajax Holdings LLC ("**Ajax Holdings**"), any and all of the subsidiaries of Ajax Holdings (the "**Ajax Subsidiaries**", and, together with Ajax Holdings, "**Ajax**"), Will Herndon individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("**Herndon**"), ~~Brooke A. Peterson, individually and in his capacity as manager of Ajax Holdings and the Ajax Subsidiaries ("**Peterson**")~~ and Karim Souki, individually ("**Karim Souki**", and together with Herndon, ~~Peterson,~~ the Trust, the Trustees, Charif Souki, Christopher Souki, and Ajax, the "**Souki Affiliates**").   As used herein "**Souki/Debtor Parties**" shall mean and refer collectively to the Souki Affiliates and the Debtors.

Each of the HOA, BTB, Aspen Ranch, the Secured Parties, the Souki Affiliates and the Souki/Debtor Parties, may be referred to as a "**Party**" and collectively as the "**Parties**."

### RECITALS

A.   **WHEREAS**, on July 27, 2023 (the "**Petition Date**"), the Debtors, commenced cases under Chapter 11 of title 11 U.S. Code §§ 101, *et. seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") under the caption *In re Strudel Holdings LLC*, Chapter 11 Case No. 23-90757 (Jointly Administered) (the "**Bankruptcy Cases**").

B.   **WHEREAS**, prior to the Petition Date, AVR owned and developed 813 acres of certain real property and other related property located in Pitkin County, Colorado commonly referred to as the Aspen Valley Ranch (the "**Ranch**"); the Ranch initially consisted of 22

parcels of land (consisting of the HOA Parcels and the Homesteads, as such terms are defined below). In connection with the development of the Ranch, the Souki/Debtor Parties created the HOA and caused to be contributed certain assets thereto, and: (a) on August 20, 2021, AVR caused the *Amended and Restated Declaration of Protective Covenants for Aspen Valley Ranch* (the "**CC&Rs**") and other related documents to be recorded with the Pitkin County Colorado Recorder (the "**Recorder**"); and (b) on August 20, 2021, AVR executed a *Bill of Sale* and a *Bargain & Sale Deed*, in favor of the HOA, each of which was subsequently recorded with the Recorder, and addressed an aggregate of 11 parcels of developed and undeveloped land within the Ranch (collectively, referred to as the "**HOA Parcels**"). The CC&Rs and all other documents related to the Ranch are collectively referred to as the "**HOA Documents**." The remaining 11 parcels (the "**Homesteads**") were intended to be sold by the Souki/Debtor Parties.

C.   **WHEREAS**, prior and subsequent to the Petition Date, the Souki/Debtor Parties transferred certain real and personal property and monetary payments to the HOA (collectively with any other transfers to or for the benefit of the HOA by the Souki/Debtor Parties, the "**HOA Transfers**"), including the HOA Assets (as such term is defined in the Sale Order, as defined below).

D.   **WHEREAS**, the HOA alleges that, prior to the Petition Date, the Souki/Debtor Parties failed to satisfy certain amounts due to the HOA with respect to the 8 Homesteads (the "**Debtor Parcels**") owned by AVR totaling approximately $789,199.98 (all such outstanding amounts, the "**Unpaid Prepetition HOA Obligations**").

E.   **WHEREAS**, after the Petition Date, the HOA alleges that the Souki/Debtor Parties failed to pay approximately $458,054 of such postpetition obligations due to the HOA (all such outstanding amounts, the "**Unpaid Postpetition HOA Obligations**," together with the Unpaid Prepetition HOA Obligations, the "**Unpaid HOA Obligations**").

F.   **WHEREAS**, during the Bankruptcy Case, Buyer and AVR entered into a purchase agreement (the "**Purchase Agreement**") for the Debtor Parcels pursuant to section 363 of the Bankruptcy Code, which was approved by the Bankruptcy Court's *Order (A) Authorizing and Approving the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, etc.* [Docket No. 245] (the "**Sale Order**"). AVR closed the purchase and sale of the Debtor Parcels to Buyer pursuant to the Purchase Agreement on January 31, 2024 (the "**Closing**").

G.   **WHEREAS,** on June 21, 2024, Buyer, as seller, sold the Debtor Parcels to Aspen Ranch, as buyer.

H.   **WHEREAS**, there are disputes and Claims (as defined below) among the Parties, including, but not limited to, Claims (i) for avoidance actions and breach of contract, (ii) related to the Bankruptcy Cases, the Sale Order, the Ranch, the HOA, the HOA Parcels, the HOA Documents, the HOA Transfers, the Unpaid HOA Obligations, the Souki Affiliates, and Debtors Parties' other obligations during the Bankruptcy Cases, (iii) the Buyer Parties' purchase of the Debtor Parcels, and (iv) the Secured Parties' lien on the HOA Assets (as such term is defined in the Sale Order) (collectively, "**Ranch Related Claims**").

4133-7208-9424

I.      **WHEREAS**, on July 30, 2024, the Bankruptcy Court entered an Order [Docket No. 492] (the "**Settlement Order**"), approving the *Debtors' Emergency Motion to Approve Settlement Term Sheet and Dismissal of Chapter 11 Cases* [Docket No. 486].

J.      **WHEREAS**, as provided in the Settlement Order and the Term Sheet (as defined in the Settlement Order), the Parties to the Term Sheet agreed to settle the Ranch Related Claims, exchange mutual releases with respect to the Ranch Related Claims and enter into the HOA Settlement Agreement (as defined in the Term Sheet).  This Settlement Agreement shall constitute the HOA Settlement Agreement under the Term Sheet.

K.      **WHEREAS**, without conceding the merit or lack of merit of the Ranch Related Claims or any other claim or defense or the existence of any liability whatsoever, the Parties wish to settle, compromise, and finally resolve all matters, disputes and Claims, including those which might have been the subject matter of potential litigation, among each of (i) the HOA Parties (as defined below) and the BTB Parties (as defined below), (ii) the Buyer Parties (as defined below), (iii) the Debtor Parties (as defined below), and (iv) the Souki Parties (as defined below), as set forth herein.

L.      **NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Settlement Agreement, and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1.0     DEFINITIONS

1.1     "**BTB Parties**" means Beyond the Beach, LLC along with its past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.2     "**Buyer Parties**" means each of the Secured Parties and Aspen Ranch, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.3     "**Claims**" means each Ranch Related Claims and any and all past, present and future claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, interests, debts, expenses, charges, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature and description whatsoever, (i) whether disclosed or undisclosed, known or unknown, accrued or unaccrued, matured or not matured, perfected

or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened; and (ii) whether at law or equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory (including, but not limited to, claims sounding in tort or contract or arising under federal or state securities laws), no matter how asserted.

1.4    "**Debtor Parties**" means each of the Debtors, in each case, along with their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.5    "**HOA Parties**" means Aspen Valley Ranch Homeowners Association, Inc. along with their past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.6    "**Person**" means an individual, corporate entity, partnership, association, joint stock company, limited liability company, estate, trust, government entity (or any political subdivision or agency thereof) and any other type of business or legal entity.

1.7    "**Released Claims**" means any and all Claims released pursuant to Section 4, Section 5, Section 6 or Section 7 of this Settlement Agreement.

1.8    "**Souki Parties**" means the Souki Affiliates along with each of their respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners, lawyers, advisors, and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, agents, heirs, trustees, executors, transferees, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, lawyers, advisors, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers, and reinsurers.

1.9    **Terms defined in the Recitals.** All terms defined in the foregoing Recitals shall apply throughout this Settlement Agreement.

2.0    **PAYMENTS AND CONSIDERATION**

2.1    In consideration of the promises and releases set forth herein, Buyer shall pay to the HOA, *via* wire transfer, within one (1) Business Day of the events in (1) and (4) of the definition of "Settlement Date" (provided in Section 8 below) occurring, the sum of $458,054, in

indefeasible funds (the "**Settlement Payment**").

2.2 The Parties hereby acknowledge the sufficiency of promises, mutual covenants and the consideration paid, given and referenced herein.

**3.0    TRANSACTION APPROVAL PROCESS AND USE OF PROCEEDS**

3.1 Each Party acknowledges and agrees that each other Party has an interest in this Settlement Agreement and each Party's interest has been disclosed to each other Party. Notwithstanding each Party's interest, each Party acknowledges and agrees that this Settlement Agreement, the releases granted herein are, when taken as a whole, in the best interests of each Party.   Each Party hereby waives, to the maximum extent permitted by law governing the HOA, any claim against any other Party arising from its interest or any claim that this Settlement Agreement is invalid as a result thereof.

3.2 Aspen Ranch, the HOA, and BTB agree that: (1) the Settlement Payment shall be deposited into the HOA's Capital Improvement Reserve Account (the "**Capital Improvement Account**"); (2) the funds in the Capital Improvement Account, inclusive of the funds currently therein and the Settlement Payment, will be used, to the extent necessary, for the following capital improvements (together, the "**Current Capital Improvements**") to the HOA's property: (a) repair and capping of the stone work within the portion of the Ranch maintained by the HOA; (b) repair of the pool water supply line leak and associated stone/cement work; and (c) to the extent funds in the Capital Improvement Account are not needed for the Current Capital Improvements, such remaining funds will remain in the Capital Improvement Account, will be augmented by funds deposited into the Capital Improvement Account, from time to time pursuant to the HOA Documents, and will be utilized solely for future capital improvements to, repair of, and maintenance of the HOA's property.  The approval of this Settlement Agreement pursuant to the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association, Inc. constitutes the approval of the agreements set forth in this Section 3.2, and no further approval is required, and the HOA, including its operating manager(s), are authorized and directed to undertake the Current Capital Improvements following receipt of the Settlement Payment.

**4.0    RELEASE BY THE DEBTORS, HOA, AND BTB IN FAVOR OF THE BUYER PARTIES**

In exchange for the Settlement Payment, the Lien Releases (defined below) on the HOA Assets (as defined in the Sale Order) and the other agreements set forth herein, each and every one of the Debtor Parties, HOA Parties, and BTB Parties shall, upon the Settlement Date have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the Buyer Parties from any and all Claims that the Debtor Parties, HOA Parties,  and BTB Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided,

4133-7208-9424

<u>however</u>, that this release does not include any release by any HOA Parties and/or BTB Parties on matters related to Aspen Ranch's ownership of the Debtor Parcels, Aspen Ranch's obligations under the HOA Documents, Aspen Ranch's obligations as an HOA Member (as defined in the HOA Documents), Aspen Ranch's management, control and/or involvement in the HOA, as, *inter alia*, a member(s), or their designation or appointment of member(s) of the Board of Directors of the HOA, or any Claims or actions to enforce this Settlement Agreement, arising on or after June 21, 2024 (the date on which Aspen Ranch purchased the Debtor Parcels from the Buyer).

**5.0     RELEASE BY THE BUYER PARTIES OF THEIR CLAIMS AGAINST THE HOA ASSETS, THE HOA PARTIES AND THE BTB PARTIES**

**5.1**     Notwithstanding the Sale Order, and without limiting the release of the lien on the HOA Assets as set forth in the Settlement Order, in exchange for the release granted to the Buyer Parties, no later than the fifth business day after the entry of the Settlement Order on the Bankruptcy Court's Docket, the Secured Parties shall deliver, in recordable form, to counsel for the HOA, the documents reasonably necessary in the sole reasonable discretion of counsel for the HOA, to release any and all liens, deeds of trust, claims, security interests, encumbrances and interests of any kind and nature against the HOA Assets (as defined in Sale Order) (the "**Lien Releases**").  The Secured Parties and/or the Buyer, as applicable, agree to take all actions reasonably requested by the HOA to cause the Lien Releases on the HOA Assets.  For the avoidance of doubt, nothing contained herein shall be deemed a release by Buyer Parties of any other Claims held by Buyer Parties against the Souki Parties or any affiliates or insiders of the Souki Parties.  Further, for avoidance of doubt, for all purposes herein, the HOA Parties and the BTB Parties are not, and shall not be asserted or deemed to be, an affiliate or insider of the Debtor Parties or the Souki Parties.

**5.2**     In exchange for the release in <u>Section 4.0</u> and the other agreements set forth herein, each and every one of the Buyer Parties shall, upon the Settlement Date, have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the HOA Parties and BTB Parties from any and all Claims that the Buyer Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; <u>provided</u>, <u>however</u>, that this release does not include any release by Aspen Ranch of the HOA, arising on or after  June 21, 2024, on matters related to the management and control of the HOA or any Claims or actions to enforce this Settlement Agreement.

**6.0     RELEASE AMONG THE SOUKI PARTIES, THE DEBTOR PARTIES, THE HOA PARTIES, AND THE BTB PARTIES.**

In exchange for the mutual releases provided herein, each of (x) the HOA Parties and BTB Parties, on the one hand, and (y) the Souki Parties and the Debtor Parties, on the other, shall be effective upon the Settlement Date have and be deemed by operation of law to have

4133-7208-9424

completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each other from any and all Claims that the HOA Parties, BTB Parties, Debtor Parties and/or Souki Parties ever had, now have or hereafter can, shall, or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Settlement Date, including, without limitation, Claims that arise from, relate to, or are in connection with: (1) the Ranch Related Claims; (2) the entry into this Settlement Agreement; and (3) the Bankruptcy Cases; provided, however, that this release does not include any Claims or actions to enforce this Settlement Agreement.

**7.0    RELEASE OF UNKNOWN CLAIMS**

Each Party acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that inclusion of the provisions of this Section 7.0 in this Settlement Agreement was a material and separately bargained for element of this Agreement.  The Parties agree that California law is not applicable to this Settlement Agreement, and do not consent to the jurisdiction of a California court nor the application of California law to adjudicate any disputes under this Settlement Agreement.  Rather, and as reflected in Section 12.0 below, the Parties have agreed that this Settlement Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to conflicts of law principles.

**8.0    SETTLEMENT DATE**

The releases and agreements set forth in Sections 4, 5, 6 and 7 of this Settlement Agreement shall become binding and effective the first business day following the satisfaction of all of the following conditions: (1) execution of this Settlement Agreement by each of the Parties hereto; (2) the receipt of the Settlement Payment by the HOA; (3) the Bankruptcy Court's entry of the Settlement Order and (4) execution of the Written Statement of Consent to Action Taken in Lieu of a Meeting of the Owners of Aspen Valley Ranch Homeowners Association (the occurrence of each of (1), (2), (3) and (4) shall be the "**Settlement Date**").

**9.0    REPRESENTATIONS AND WARRANTIES**

Each Party represents and warrants, to the best of their knowledge and belief, as of the Execution Date and the Settlement Date that:

4133-7208-9424

(i)      It has the full legal authority, right, and capacity to enter into this Settlement Agreement on its behalf and to bind the Party to perform its obligations hereunder, including any third-party authorization necessary to release the claims being released hereunder.  This Settlement Agreement has been duly and validly executed and delivered by such Party and, assuming due authorization, execution and delivery by the other Party, constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies.

(ii)     The execution and delivery of this Settlement Agreement, the performance by such Party of its obligations hereunder and the consummation of the transactions contemplated hereby, will not: (a) result in the violation by such Party of any statute, law, rule, regulation or ordinance or any judgment, decree, order, writ, permit or license of any governmental or regulatory authority applicable to such Party; or (b) require such Party to obtain any consent, approval or action of, make any filing with or give any notice to any person, which action has not already been undertaken and accomplished by such Party;

(iii)    It has not assigned, subrogated, pledged, loaned, hypothecated, conveyed or otherwise transferred, voluntarily or involuntarily, to any other person or entity, its respective Released Claims, or any interest in or part or portion thereof, specifically including any rights arising out of its respective Released Claims; and

(iv)    It has read and understands this Settlement Agreement and it has consulted with its attorneys before signing it.

**10.0    COVENANTS**

In further consideration of the promises set forth herein, as of the Settlement Date:

**10.1**   Each of the Parties covenants that it shall not encourage, solicit, initiate, institute, commence, file, maintain or otherwise prosecute, whether directly or indirectly, or through a third party, any action, lawsuit, cause of action, claim, demand, or legal proceeding any kind to arising out of relating to any of the Released Claims.  Notwithstanding anything herein to the contrary, each of the Parties may commence an action to enforce the terms of this Settlement Agreement, and each of the Parties covenants and agrees that this Settlement Agreement may be pleaded as a defense, counterclaim or crossclaim, and shall be admissible into evidence without any foundation or testimony whatsoever.

**10.2**   Each of the Parties agree that they and each of them will not: (a) object to, or otherwise oppose in any way, or encourage, induce, direct, endorse or otherwise support or aid in any way whatsoever any person or entity to object to, oppose, impede, modify, or otherwise challenge or contest the Settlement Order, including as it relates to this Settlement Agreement; and (b) will not seek, aid, encourage, endorse, direct, suggest to, or otherwise support any person or entity to seek to set aside, avoid or otherwise challenge in any way the Settlement Order and this Settlement Agreement (including the enforceability thereof) or otherwise allege that the Settlement Order, and this Settlement Agreement are in, in

whole or in part, any way invalid, entered into without fair and reasonable consideration, a fraudulent transfer, or otherwise seek to void or challenge the terms or recitals of the Settlement Order and this Settlement Agreement.

## 11.0   ATTORNEYS' FEES AND LIENS

Each Party hereto shall bear all attorneys' fees and costs arising from the actions of its own counsel in connection with this Settlement Agreement and the matters and documents referred to herein.

## 12.0   GOVERNING LAW

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of New York without regard to choice of law or conflicts of law principles.

## 13.0   CONSENT TO JURISDICTION

Any disputes relating to this Settlement Agreement shall be brought exclusively in the Bankruptcy Court. All Parties submit to the personal jurisdiction of the Bankruptcy Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.  The Parties otherwise expressly reserve their jurisdictional rights as to any action, suit or proceeding not involving a dispute relating to this Settlement Agreement.

## 14.0   ADDITIONAL DOCUMENTS

The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.  Upon execution of the Settlement Agreement, the Parties agree to support any request by the Debtors to dismiss the Bankruptcy Case.

## 15.0   ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Settlement Agreement constitutes the entire agreement to settle and resolve the Released Claims released by this Settlement Agreement among the Parties and overrides and replaces all prior negotiations and terms proposed, discussed, or agreed to, whether in writing or orally, about the subject matter. No modification of this Settlement Agreement shall be valid unless it is in writing, identified as an amendment to the Settlement Agreement, and signed by all Parties.

## 16.0   NON-ADMISSION OF LIABILITY

The Parties hereto recognize and agree that this Settlement Agreement is a compromise of a disputed claim. Nothing in this Settlement Agreement or the compromise reached shall be construed as an admission of liability or wrongdoing by any persons or Party as to any claims made.

**17.0   RELEASE CONFIDENTIAL AND INADMISSIBLE**

Other than the permissible disclosures described in Section 16.1 above, the Parties will not voluntarily issue or make any statement to any person or entity including, but not limited to, statements to news media, concerning the terms of this Settlement Agreement, including all facts, circumstances, statements, and documents relating thereto. Furthermore, the terms of this Settlement Agreement shall not be admissible or submitted as evidence in any proceeding in any forum for any purpose other than in a proceeding to secure enforcement of the terms and conditions of this Settlement Agreement, the Settlement Order, or except as otherwise provided herein.  In any proceeding to enforce the terms of this Settlement Agreement, the Settlement Agreement may be introduced only under seal so as to maintain the confidentiality contemplated herein.

**18.0   COUNTERPARTS**

This Settlement Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute one agreement.

**19.0   HEADINGS**

The headings to the various clauses of this Settlement Agreement have been inserted for convenience only and shall not be used to interpret or construe the meaning of the terms and provisions hereof.

**20.0   NOTIFICATION REQUIRED BY THIS AGREEMENT**

Nothing herein shall prevent the Parties from producing information, documents, or testimony as requested or required by any court or other governmental body, including but not limited to responding to a court order, subpoena, discovery, or other legal process requesting information.  If any Party receives a court order, subpoena, discovery, or other legal process requiring disclosure of this Settlement Agreement or any drafts hereof; matters relating to the events precipitating this Settlement Agreement; the content of the Settlement Agreement (other than as may be permitted by Section 15.1 hereof), including the amount of the settlement and the terms of the Settlement Agreement; any of the discussions pertaining to the Settlement Agreement; and/or any matter covered by this Settlement Agreement, that Party shall immediately provide the other Party with a copy of the court order, subpoena, or other legal process to allow the other Party time to formally object prior to the provision of testimony, production of documents or information, or participation in any other manner in any such proceeding (the "Notification Requirement").  The Notification Requirement does not apply to the extent that it would violate any applicable law and also does not apply to any subpoena, discovery, legal process, or other demands made by any regulatory, governmental, or law enforcement agency.

**21.0   WAIVER OF TERMS**

No waiver of any provision of this Settlement Agreement shall be valid unless in writing

and signed by the Party against whom it is sought to be enforced. The failure of any Party at any time to insist upon strict performance of any condition, promise, agreement or understanding set forth herein, shall not be construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

**22.0   SEVERABILITY**

If any provision, term or clause of this Settlement Agreement is declared illegal, unenforceable, or ineffective in any legal forum, said provision, term or clause shall be deemed severable, such that all other provisions, terms and clauses of this Settlement Agreement shall remain valid and binding upon all Parties. Should a new agreement without the unenforceable provision be required, the Parties will execute such new agreement without any additional consideration.

**23.0   SURVIVAL OF TERMS OF AGREEMENT**

The Parties understand and agree that the terms set out in this Settlement Agreement, shall survive the signing of this Settlement Agreement and the payment of the Settlement Payment.

**24.0   REPRESENTATION AND VOLUNTARY EXECUTION**

Each Party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement. Each Party has been fully advised with respect to all rights which are affected by this Settlement Agreement. Each Party represents and warrants that it read, knows, and understands the contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily and free from coercion, and has not been influenced by any statements, promises, actions, or representations made by any other party or its agents, representatives, or attorneys, except as specifically memorialized in this Settlement Agreement.

**25.0   NOTICES**

Notices required by this Settlement Agreement shall be communicated by email and any form of overnight mail or in person to:

(i)      On behalf of Aspen Valley Ranch Homeowners Association, Inc.:

Aspen Valley Ranch Homeowners Association, Inc.
Charles Andros, President
c/o Bay Point Advisors
3050 Peachtree Road NW
Suite 740
Atlanta, GA 30305

Ben Johnston, Esq.

Johnston Van Arsdale Martin PLLC
901 Grand Avenue, Suite 201
Glenwood Springs, CO 81601
 E-mail: ben@jvamlaw.com

(iii)    On behalf of Beyond the Beach, LLC:

Pachulski Stang Ziehl & Jones, LLP
700 Louisiana Street, Suite 4500
Houston, TX 77002
Attn: Michael D. Warner
E-mail: mwarner@pszjlaw.com

(iv)    On behalf of Buyer Parties:

UBS Asset Management (Americas) LLC
One North Wacker Dr., Floor 31
Chicago, IL 60606
Attn: Randal Johnson, Lilly Kaufmann, and Connor Burke
E-mail: randal.johnson@ubs.com; lilly.kaufmann@ubs.com;
connor.burke@ubs.com

Alston & Bird LLP
2200 Ross Avenue
Dallas, TX 75201
Attn: Sam Bragg, William Hao, and Chris Riley
E-mail: Sam.Bragg@alston.com; William.Hao@alston.com;
Chris.Riley@alston.com

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Attn: Laura Metzger
E-mail: lmetzger@orrick.com

(v)    On behalf of the Souki Affiliates

Hunton Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77018
Attn:  Tad Davidson
E-mail: taddavidson@huntonak.com

*[SIGNATURE PAGE FOLLOWS]*

12

4133-7208-9424

## 27.0   SIGNATURES

**IN WITNESS WHEREOF** the Parties or their duly authorized representatives have caused this Settlement Agreement to be executed.

**Aspen Valley Ranch Homeowners Association, Inc.**

DATED:                                           By: _____
                                                          Name: [ ]
                                                          Title: [ ]


**Beyond the Beach, LLC**

DATED:                                           By: _____
                                                          Name: Seth Brufsky
                                                          Title: Manager

**Chiron AVR LLC**
**By: UBS Asset Management (Americas)**
**LLC, as investment manager**

DATED:             By: _____
Name: Doyle Horn
Title: Director

DATED:             By: _____
Name: Rodrigo Trelles
Title:   Managing Director

**Nineteen77 Capital Solutions A LP**
**By: UBS Asset Management (Americas)**
**LLC**

DATED:             By: _____
Name: Doyle Horn
Title: Director

DATED:             By: _____
Name: Rodrigo Trelles
Title: Managing Director

**Bermudez Mutuari, Ltd.**
**By: UBS Asset Management (Americas)**
**LLC, as investment manager**

DATED:             By: _____
Name: Doyle Horn
Title: Director

DATED:             By: _____
Name: Rodrigo Trelles
Title: Managing Director

**UBS Asset Management (Americas) LLC**

DATED:                                  By: _____
                                        Name: Doyle Horn
                                        Title: Director

DATES:                                  By: _____
                                        Name: Rodrigo Trelles
                                        Title: Managing Director

**Wilmington Trust National Association**, as
Administrative Agent

DATED:

By: _____
Name:
Title:

**AVR AH LLC**

DATED: _____      By: _____

Name:

Title:

**Strudel Holdings LLC**

DATED: _____      By: _____

Name:

Title:

DATED: _____, 2024          **Souki Family 2016 Trust**


By: _____
Name: Karim Souki
Title: Trustee


By: _____
Name: Christopher Souki
Title: Trustee


By: _____
Name: Lina Rizzuto
Title: Trustee


DATED: _____, 2024          _____

Karim Souki


DATED: _____. 2024          _____

Christopher Souki

DATED: _____, 2024     **Ajax Holdings LLC and the subsidiaries thereof**

By: _____
Name: Will Herndon
Title: ~~Trustee~~Manager

DATED: _____, 2024     _____

Will Herndon

~~DATED: _____, 2024~~     _____

~~Brooke A. Peterson~~

~~4133-7208-9424~~

DATED: _____, 2024

_____
Charif Souki

Document comparison by Workshare on Wednesday, July 31, 2024 2:30:41 PM

| Input: | |
|---|---|
| Document 1 ID | Global Settlement Version AVR - Settlement Agreement and Mutual Release (HOA) 4133-7208-9424 16.docx |
| Description | originalDocument |
| Document 2 ID | Global Settlement Version AVR - Settlement Agreement and Mutual Release (HOA) 4133-7208-9424 17.docx |
| Description | modifiedDocument |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1 | Insertion | 2 |
| 2 | Deletion | Ajax Subsidiaries ("Herndon"), Brooke A. Peterson,...("Peterson") and Karim Souki, individually ("Karim |
| 3 | Deletion | Souki", and together with Herndon, Peterson, the Trust, the Trustees, Charif |
| 4 | Insertion | Sale Order, the Ranch, the HOA, the HOA Parcels, the HOA Documents, |

| 5 | Deletion | |
| 6 | Deletion | ~~4133-7208-9424~~ |
| 7 | Deletion | ~~4133-7208-9424~~ |
| 8 | Deletion | ~~4133-7208-9424~~ |
| 9 | Deletion | ~~4133-7208-9424~~ |
| 10-11 | Change | Title: ~~Trustee~~Manager |
| 12 | Deletion | ~~DATED:                          , 2024~~ |
| 13 | Deletion | ~~Brooke A. Peterson~~ |
| 14 | Deletion | ~~4133-7208-9424~~ |

| Statistics: | |
| --- | --- |
| | Count |
| Insertions | 3 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 14 |